# IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

JULIE A. SU,
**Acting Secretary of Labor, United States Department of Labor,**
*Plaintiff - Appellee,*

v.

**MEDICAL STAFFING OF AMERICA, LLC, d/b/a Steadfast Medical Staffing, a limited liability company; LISA ANN PITTS, individually and as owner and officer of the aforementioned company***,*
*Defendants - Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT NORFOLK

## JOINT APPENDIX - VOLUME IV OF V
## (Pages 1859 - 2171)

Abram J. Pafford
Francis J. Aul
MCGUIREWOODS, LLP
Black Lives Matter Plaza
888 16th Street, NW
Washington, DC 20006
202-857-1725
apafford@mcguirewoods.com
faul@mcguirewoods.com

*Counsel for Appellants*

Anne W. King
U. S. DEPARTMENT OF LABOR
Office of the Solicitor
200 Constitution Avenue, NW
Room N-2716
Washington, DC 20210
202-663-4699
king.anne.w@dol.gov

*Counsel for Appellee*

# TABLE OF CONTENTS

## VOLUME I OF V

Page

District Court Docket Sheet [2:18−cv−00226−RAJ−LRL] ........................ 1

Complaint
    Filed May 2, 2018 [Dkt. 1] .................................................................. 48

Transcript of Trial Proceedings - Day 1
Before the Honorable Raymond A. Jackson
    On August 31, 2021 [Dkt. 312] ........................................................... 53

    COURTNAY HOPE DRAUGHN
        Direct by Examination by Ms. Lewis ..................................... 74
        Cross-Examination by Ms. Rust .............................................. 95
        Redirect Examination by Ms. Lewis..................................... 105

    YETUNDE TAYLOR
        Direct Examination by Mr. Seifeldein ................................. 106
        Cross Examination by Ms. Rust............................................. 129

    CHRISTOPHER RYAN HOPSON
        Direct Examination by Ms. Jones ......................................... 137
        Cross-Examination by Ms. Rust ............................................ 154
        Redirect Examination by Ms. Jones...................................... 151

    SAUDIA BOYKINS
        Direct Examination by Mr. Seifeldein ................................. 165
        Cross-Examination by Ms. Rust ............................................ 180
        Redirect Examination by Mr. Seifeldein .............................. 186

    ROXANNE ADAMS
        Direct Examination by Ms. Lewis ........................................ 188
        Cross-Examination by Ms. Rust ............................................ 206
        Redirect Examination by Ms. Lewis...................................... 218

DAWN M. WOOTEN
    Direct Examination by Mr. Seifeldein ......................................................222
    Cross-Examination by Ms. Rust ............................................................ 239

Transcript of Trial Proceedings - Day 2
Before the Honorable Raymond A. Jackson
    On September 1, 2021 [Dkt. 313] ........................................................ 245

    JOHNESE JONES
        Direct Examination by Ms. Lewis ....................................................247
        Cross-Examination by Ms. Rust ..................................................... 260
        Redirect Examination by Ms. Lewis...................................................264

    ASHLEY MEGGIE
        Direct Examination by Ms. Lewis ....................................................266
        Cross-Examination by Ms. Rust ..................................................... 275

    KIMBERLY BELLAMY
        Direct Examination by Mr. Seifeldein .............................................279
        Cross-Examination by Ms. Rust ..................................................... 290
        Redirect Examination by Mr. Seifeldein..............................................294

    TERESA MOREY (Via ZoomGov.com)
        Direct Examination by Ms. Lewis ....................................................297
        Cross-Examination by Ms. Rust .....................................................306

    TATIANNA CANADY
        Direct Examination by Ms. Jones .....................................................312
        Cross-Examination by Ms. Rust .....................................................326
        Redirect Examination by Ms. Jones....................................................329

    COURTNEY TURNER (Via ZoomGov.com)
        Direct Examination by Ms. Jones .....................................................333

    TYWANN WHITE
        Direct Examination by Ms. Lewis ....................................................340

Transcript of Trial Proceedings - Day 3
Before the Honorable Raymond A. Jackson
  On September 2, 2021 [Dkt. 314] ....................................................................358

  CHANTELLA SMITH
     Direct Examination by Ms. Jones ...........................................361
     Cross-Examination by Ms. Rust ..............................................373
     Redirect Examination by Ms. Jones........................................377

  ANDREA TIRADO
     Direct Examination by Ms. Lewis ...........................................382
     Cross-Examination by Ms. Rust ..............................................398
     Redirect Examination by Ms. Lewis........................................401

  ERICA JOHNSON
     Direct Examination by Mr. Seifeldein ....................................413
     Cross-Examination by Mr. Jewett............................................440
     Redirect Examination by Mr. Seifeldein.................................459
     Recross-Examination by Mr. Jewett ........................................465

  DAVID RAWLINGS
     Direct Examination by Mr. Seifeldein ....................................467
     Cross-Examination by Mr. Jewett............................................487
     Redirect Examination by Mr. Seifeldein.................................501

  ROBERTO MELENDEZ
     Direct Examination by Ms. Lewis ...........................................502
     Cross-Examination by Ms. Rust ..............................................515
     Redirect Examination by Ms. Lewis........................................520

  YAOZU XIONG (Via ZoomGov.com)
     Direct Examination by Ms. Lewis ...........................................523
     Cross-Examination by Ms. Rust ..............................................541
     Redirect Examination by Ms. Lewis .....................................5554

Transcript of Trial Proceedings - Day 4
Before the Honorable Raymond A. Jackson
On September 3, 2021 [Dkt. 315] ........................................................................ 560

LISA PITTS
Direct Examination by Ms. Lewis ........................................................ 565
Cross-Examination by Mr. Jewett ....................................................... 606
Redirect Examination by Ms. Lewis .................................................... 616
Recross-Examination by Mr. Jewett .................................................... 621

CHRISTINE KIM
Direct Examination by Ms. Jones ......................................................... 626
Cross-Examination by Ms. Rust .......................................................... 653
Redirect Examination by Ms. Jones ..................................................... 658

PEYTON LEX
Direct Examination by Ms. Jones ......................................................... 670
Redirect Examination by Ms. Jones ..................................................... 679

## <u>VOLUME II OF V</u>

Transcript of Trial Proceedings - Day 5 (Morning Session)
Before the Honorable Raymond A. Jackson
   On September 7, 2021 [Dkt. 316] ...................................................................... 683

   PENNY CLARK
      Direct Examination by Ms. Rust ........................................................ 687
      Cross-Examination by Ms. Lewis ...................................................... 696
      Redirect Examination by Ms. Rust .................................................... 702

   NAPOLEAN ALSTON
      Direct Examination by Ms. Rust ........................................................ 705
      Cross-Examination by Ms. Lewis ...................................................... 720
      Redirect Examination by Ms. Rust .................................................... 732

   TAWANDA HALL
      Direct Examination by Mr. Siegrist .................................................... 735
      Cross-Examination by Ms. Jones ........................................................ 745

   DASELINE HALL (Via ZoomGov.com)
      Direct Examination by Mr. Siegrist .................................................... 750
      Cross-Examination by Ms. Lewis ...................................................... 768
      Redirect Examination by Mr. Siegrist ................................................ 777

Transcript of Trial Proceedings - Day 5 (Afternoon Session)
Before the Honorable Raymond A. Jackson
   On September 7, 2021 [Dkt. 313] ...................................................................... 786

   CHRISTINE LEE KIM
      Direct Examination by Ms. Rust ........................................................ 790
      Cross-Examination by Ms. Jones ........................................................ 846
      Redirect Examination by Ms. Rust .................................................... 861

   RACHARLOTTE LEE COATES
      Direct Examination by Ms. Rust ........................................................ 864
      Cross-Examination by Mr. Seifeldein .................................................. 875
      Redirect Examination by Ms. Rust .................................................... 890

Transcript of Trial Proceedings - Day 6
Before the Honorable Raymond A. Jackson
    On September 8, 2021 [Dkt. 318] ........................................................ 901

    LESLIE BOONE (Via ZoomGov.com)
        Direct Examination by Ms. Rust.................................................903
        Cross-Examination by Mr. Seifeldein ..................................... 912

    DIXIE DeLUTIS (Via ZoomGov.com)
        Direct Examination by Ms. Rust.............................................932
        Cross-Examination by Ms. Lewis ........................................... 937
        Redirect Examination by Ms. Rust ........................................ 943

    LISA PITTS
        Direct Examination by Mr. Jewett ......................................... 950
        Cross-Examination by Ms. Lewis .........................................1047
        Redirect Examination by Mr. Jewett ...................................1103

Transcript of Trial Proceedings - Day 7
Before the Honorable Raymond A. Jackson
    On September 9, 2021 [Dkt. 319] ..................................................... 1113

    JOHN BREDEHOFT
        Direct Examination by Mr. Jewett ...................................... 1115
        Cross-Examination by Mr. Seifeldein...................................1137
        Redirect Examination by Mr. Jewett ...................................1169

Memorandum Opinion and Order Entered
    Entered January 14, 2022 [Dkt. 324] .............................................1185

Judgment in a Civil Case Entered
    Entered January 14, 2022 [Dkt. 325] .............................................1216

Notice of Appeal Filed
    Filed March 14, 2022 [Dkt. 332] ...................................................1217

## VOLUME III OF V

Attachments and Exhibits to Consent Notice of Filing
of Certain Exhibits for Purposes of Appeal
  Filed August 17, 2022 [Dkt. 356]:

Att. 1:   Alvaro Mazuera Deposition Transcript [Dkt. 356-1] ................1220

Att. 2:   Zira Technologies 30(b)(6) Deposition Transcript
[Dkt. 356-2] ................................................................................1526

Ex. PX-10: Staffing Agreements Between Steadfast and Facilities
(Excerpts of Exhibit) [Dkt. 356-3].........................................1692

Ex. PX-11: Facility Invoices (Excerpt of Exhibit) [Dkt. 356-4]...............1781

Ex. PX-12: Summary Exhibit - Facilities Steadfast Contracts
(Excerpt of Exhibit) [Dkt. 356-5] ...........................................1786

Ex. PX-16: ADP Employee Change Report (Excerpt of Exhibit)
[Dkt. 356-6] ...........................................................................1787

Ex. PX-25: Agreement for Independent Contractor Services
(Excerpts of Exhibit) [Dkt. 356-7].........................................1793

Ex. PX-26: Steadfast Applications (Excerpts of Exhibit)
[Dkt. 356-8] ...........................................................................1831

Ex. PX-37: Timesheet Reminder Memos (Excerpts of Exhibit)
[Dkt. 356-9] ...........................................................................1839

Ex. DX-41: Steadfast Memo - Advisory Atlantic Shores
[Dkt. 356-10] .........................................................................1848

Ex. DX-42: Steadfast Memo - Be on Time [Dkt. 356-11] ........................1849

Ex. DX-44: Steadfast Memo - No Sleeping in Rooms [Dkt. 356-12].......1850

Ex. DX-46: Steadfast Memo - Be on Time [Dkt. 356-13] ........................1851

PX-34 Gmail - Next Day Pay Memo ........................................................1852

DX-50 Memo re Thanksgiving Holiday Pay.............................................1853

DX-58 - Memo re CNA and LPN Needs (155830292.1).........................1854

DX-59 - Memo re CNA and Nurse Needs (155830293.1).......................1857

# VOLUME IV OF V

Defendants' Response to Plaintiff's Motion to Revise the Court's Order
  Filed March 20, 2020 [Dkt. 247]....................................................... 1859

Joint Pretrial Order
  Filed March 21, 2021 [Dkt. 261].................................................... 1865

Notice of Filing Tenth Revised Schedule a In Steadfast II
  Filed August 25, 2021 [Dkt. 287].................................................. 1918

  Ex.1:  Tenth Revised Schedule A [Dkt. 287-1] 1924

Plaintiff's Supplemental Proposed Findings of Fact and Conclusions of Law
  Filed November 3, 2021 [Dkt. 321] ................................................ 1953

Defendants' Motion for Relief in Connection with Plaintiff's
Trial Exhibit Px-21, And Opposition to Plaintiff's March 11
"Updated Back Wage Computations"
  Filed March 13, 2022 [Dkt. 331]..................................................... 1981

  Att. 1:   Memorandum of Points and Authorities [Dkt. 331-1] ............... 1985

  Ex. 1:   Steadfast March 6 letter to DOL [Dkt.  331-2]........................... 2002

  Ex. 2    Attachment A to March 6 letter [Dkt. 331-3]............................. 2006

  Ex. 3:   Attachment B to March 6 letter [Dkt. 331-4] ............................. 2010

  Ex. 4:   Attachment C to March 6 letter [Dkt. 331-5] ............................. 2013

  Ex. 5:   March 8-10 counsel email exchange [Dkt. 331-6] ...................... 2015

  Ex. 6:   W-2 employee corrections [Dkt. 331-7]..................................... 2019

  Ex. 7:   Sample packets re: PX-21 errors [Dkt. 331-8] ........................... 2023

Defendants' Reply Brief in Support of Motion for Relief In
Connection with Plaintiff's Trial Exhibit Px-21, And Opposition to
Plaintiff's March 11 "Updated Back Wage Computations"
    Filed April 4, 2022 [Dkt. 337]........................................................... 2059

        Ex.1:      Spreadsheet [Dkt. 337-1] ............................................ 2080

        Ex. 2:     Sampling Breakdown [Dkt. 337-2]............................... 2081

        Ex.3:      Plaintiff's Answers and Objections to Defendants' First Set
                  Of Request Interrogatories [Dkt. 337-3]...................... 2082

        Ex.4:      Plaintiff's Second Supplemental Answers and Objections To
                  Defendants' First Set of Interrogatories [Dkt. 337-4] ................ 2099

Defendants' Opposition to Plaintiff's "Motion for Entry of Updated Order"
    Filed July 28, 2022 [Dkt. 350]........................................................... 2110

        Ex.1:      July 28 letter to DOL [Dkt. 350-1] ............................................2123

Order Reimposing Injunction
    Filed September 7, 2023 [Dkt. 395] ................................................... 2135

Notice of Appeal (interlocutory)
    Filed November 3, 2023 [Dkt. 404] ................................................... 2144

Order
    Filed November 30, 2023 [Dkt. 410] ................................................. 2147

Memorandum Opinion and Order Denying relief re PX21
    Filed December 7, 2023 [Dkt. 411].................................................... 2149

Updated Order and Judgment
    Filed December 8, 2023 [Dkt. 412].................................................... 2160

Amended Final Judgment
    Filed December 11, 2023 [Dkt. 413].................................................. 2167

Amended Notice of Appeal
    Filed December 11, 2023 [Dkt. 415].................................................. 2169

**VOLUME IV OF V**

PX-21 Wage Transcription and Computation Sheets............................................2172

PX-22 Summary of Back Wage Computations......................................................2782

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| EUGENE SCALIA,<br>SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF LABOR,<br><br>        Plaintiff,<br><br>        v.<br><br>MEDICAL STAFFING OF AMERICA, LLC,<br>d/b/a STEADFAST MEDICAL STAFFING, and<br>LISA ANN PITTS,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 2:18-cv-226 LEAD<br>)<br>)  Case No. 2:19-cv-475<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO REVISE THE COURT'S**
**MAY 8, 2020 ORDER (ECF No. 245)**

For the 245th docket entry in this matter, the Secretary asks the Court to Revise its May 8,

2020 Order Granting in Part the Secretary's Motion to Compel Discovery (ECF No. 244) to include

a determination on the Secretary's request for expenses under Rule 37(a). The Secretary's Motion

is premised on the notion that the Court "inadvertent[ly]" overlooked the Secretary's request for

expenses under Rule 37(a). (ECF No. 246 at 1, 3). The Court's Order directing the parties to oral

argument (ECF No. 218), however, indicates that the cost-shifting provisions of Rule 37(a) were

very much a part of the Court's considerations: "The parties are **ADVISED** that, pursuant to Fed.

R. Civ. P. 37(a)(5), the Court will be prepared to award fees and costs to any party whose position

the Court finds was not substantially justified, unless the Court finds that circumstances would

otherwise make an award of expenses unjust." (ECF No. 218 at 2) There is nothing in the Rules

that entitles either party a multi-factor analysis from the Court about why expenses were not

awarded under Rule 37(a)(5). Rather, the Court's decision not to sanction either party following

**JA1859**

the hearing stands as the Court's decision not to issue sanctions. The Secretary's Motion to Revise the Court's Order should therefore be denied.

In the unlikely event that that the Court did forget about the Secretary's request for expenses – as the Secretary contends in his motion – Defendants submit that the Court should exercise discretion and not award them. Under Rule 37(a)(5)(C), which governs here, the Court has discretion to "apportion the reasonable expenses for the motion" if it is granted in part and denied in part, as the Secretary's Motion to Compel was here.[1]

Before issuing an Order granting expenses to either side, however, the Court would need to sort through a multi-factor analysis under Rule 37(a)(5)(C). "As many district courts have noted, the same factors guide a court's decision under both subsection 37(a)(5)(A) and 37(a)(5)(C)." *Flame*, 2014 WL 4809842, at *3 (E.D. Va. Sept. 25, 2014) (listing cases). Those factors include whether "(1) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (2) the opposing party's nondisclosure, response, or objection was substantially justified; or (3) other circumstances make an award of fees unjust." *Aevoe Corp. v. AE Tech Co.*, 2013 WL 5324787, *1 (D. Nev. Sept. 20, 2013) (citing Fed. R. Civ. P. 37(a)(5)(A)(i-iii). Finally, "[w]hile the Court may consider these exceptions, the Court is not required to do so in declining to award sanctions under Rule 37(a)(5)(C)." *Wilson v. Greater Las*

---

[1] The Secretary argues that his request for expenses falls under the mandatory language of Fed. R. Civ. P. 37(a)(5). (ECF No. 246 at 3). But, as this Court has previously observed, "[w]hile Rule 37(a)(5)(A) provides that the Court *must* award reasonable expenses if the motion is granted (absent the exceptions delineated in subparts (i-iii)), Rule 37(a)(5)(C) provides that the Court *may apportion* the reasonable expenses for the motion if it is granted in part and denied in part (absent the same exceptions)." *Flame S.A. v. Indus. Carriers, Inc.*, 2:13-CV-658, 2014 WL 4809842, at *2 (E.D. Va. Sept. 25, 2014) (Leonard, J)

*Vegas Assn. of Realtors*, 214CV00362APGNJK, 2016 WL 4087272, at *1 (D. Nev. July 28, 2016) (citing *CPA Lead, LLC v. Adeptive ADS LLC*, 2016 WL 3176569, *2 (D. Nev. June 2, 2016) (finding that under "the liberal requirements" of Rule 37(a)(5)(C), the Court is "not required to make a finding that [a party's] opposition was 'substantially justified'" before denying sanctions.))

The record here would not justify an award of sanctions against Defendants. For starters, the Secretary exaggerates his margin of victory, as well as the number of outstanding issues that remained before the Court by the time of oral argument. (ECF No. 246 at 2). By then, the parties had resolved Interrogatory No. 9 and Request for Production Nos. 12, 13, 21 and 22. The only outstanding issue for those Requests was how much time Defendants would have to produce the information and documents that they had previously agreed to produce.[2] Even then, the Secretary did not exactly achieve a win with the deadline that he sought: The Secretary asked for a five-day turnaround; the Court Ordered fourteen. (ECF No. 244 at 7) For these Requests, therefore, the Secretary succeeded in obtaining a court-ordered deadline but gained nothing new of substance.

Similarly, the Secretary contends that the Court "Granted" the Secretary's Motion to Compel Request for Production No. 19, concerning Defendants' good faith attempts to comply with the law. (ECF No. 246 at 2) But, as the Court noted, the Court already dealt with the Secretary's RFP No. 19 in a prior Order (ECF No. 227), with which Defendants had already complied.

---

[2] As counsel noted in oral argument, a significant percentage of the documents that Defendants had agreed to produce are maintained in paper form only, and Defendants' staff had spent many hours scanning those documents for production to the Secretary. Combined with the circumstances of the COVID-19 pandemic, and the concurrent increased demand for nursing services, Defendants' production of these documents was slower-coming than they had hoped.

The parties had fully resolved the Secretary's Request Nos. 21 and 22 prior to the hearing. (ECF no. 244 at 6)

That leaves Interrogatory Nos. 2 and 3 and Requests for Production Nos. 2 and 7. The main source of contention for two of these Requests – and by far the most looming source of the parties' disagreement – was the Secretary's insistence that Defendants produce text messages and cell phone records between Defendants and the nurses. (*See* ECF No. 244 at 3 (ROG No. 2), 5 (RFP No. 7)). But the Court found as "meritorious" Defendants' objections to producing such records, and therefore Sustained Defendants' objection to producing them. *Id.* at 3.

Similarly, the parties had all but resolved the Secretary's Request for Production No. 2, except for Secretary's insistence that Defendants produce every single paystub for every single nurse dating back to 2015. The Court agreed with Defendants that production of those records "is not proportionate to the needs of the case" and therefore sustained Defendants' objection to producing pay stubs.

The Secretary's losses did not end there. As the Court noted, "the Secretary contended that the time frame [for his Discovery Requests] should go back to 2015, tying their requests to *Steadfast I*." (ECF No. 244 at 7) The Court disagreed and limited discovery for the Requests at issue to the timeframe in *Steadfast II*, as Defendants had requested. *Id.*

In sum, there were three big categories upon which the parties were unable to agree heading into the hearing: the production of text messages, pay stubs, and the durational scope of discovery. The Court disagreed with the Secretary on all three issues. Thus, the Secretary can hardly claim a robust victory resulting from the Court's Order granting in part his Motion to Compel.

To be sure, the Court disagreed with Defendants on several issues too. But the magnitude of those issues paled in comparison to the magnitude of the ones on which the Secretary lost. In any event, although the parties' inability to come to an agreement prior to the hearing is certainly frustrating, that failure to agree cannot be said to be the result of Defendants' bad faith conduct.

4

**JA1862**

Rather, if the Court were to weigh the degree of fault, the scale would have to tip toward the Secretary, given his refusal to negotiate on the three big items at issue in his Motion to Compel. It is perhaps for this reason that the Secretary did not even broach the subject of sanctions in oral argument and thus appeared to have abandoned his quest for them, until his recent filing.

In sum, nothing in the Rules requires the Court to provide the Secretary an analysis about why sanctions were not issued under the inherently discretionary language of Rule 37(a)(5). In the unlikely event the Court simply forgot about the Secretary's request for expenses – as the Secretary contends – the balance of the record tilts against an assessment of sanctions against Defendants under the circumstances.

The Secretary's Motion should be denied.

Date:   June 3, 2020                                    Respectfully Submitted,

                                                       By: /s/ *Joshua L. Jewett.*
                                                       Joshua L. Jewett (VSB No. 76884)
                                                       Christopher D. Davis (VSB No. 74809)
                                                       Julia A. Rust (VSB No. 87270)
                                                       Aaron D. Siegrist (VSB No. 91072)
                                                       Pierce / McCoy, PLLC
                                                       101 West Main Street, Suite 101
                                                       Norfolk, VA 23510
                                                       Phone: (757) 216-0226
                                                       Fax: (757) 257-0387
                                                       jjewett@piercemccoy.com
                                                       chris@piercemccoy.com
                                                       julia@piercemccoy.com
                                                       asiegrist@piercemccoy.com

                                                       *Counsel for Defendants*

**JA1863**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of June, 2020, I electronically filed this document with the Clerk of the United States District Court for the Eastern District of Virginia using the CM/ECF system, which will send a notice of electronic filing (NEF) to the following counsel of record:

Ryma Lewis (VSB No. 83322)
Mohamed Seifeldein (VSB No. 84424)
Chervonti Jones (*pro hac vice*)
Office of the Regional Solicitor
U.S. Department of Labor
201 12th Street South, Suite 401
Arlington, VA 22202
Telephone: (202) 693-9369
Facsimile: (202) 693-9392
Lewis.Ryma@dol.gov
Seifeldein.mohamed.e@dol.gov
Jones. Chervonti.J@dol.gov

*Counsel for Plaintiff*

By: /s/ *Joshua L. Jewett*
Joshua L. Jewett (VSB No. 76884)
Christopher D. Davis (VSB No. 74809)
Julia A. Rust (VSB No. 87270)
Aaron D. Siegrist (VSB No. 91072)
Pierce / McCoy, PLLC
101 West Main Street, Suite 101
Norfolk, VA 23510
Phone: (757) 216-0226
Fax: (757) 257-0387
jjewett@piercemccoy.com
chris@piercemccoy.com
julia@piercemccoy.com
asiegrist@piercemccoy.com

*Counsel for Defendants*

6

**JA1864**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

|  |  |  |
|---|---|---|
| MILTON AL STEWART, | ) | |
| ACTING SECRETARY OF LABOR, | ) | |
| UNITED STATES DEPARTMENT OF LABOR, | ) | |
|  | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-226 |
|  | ) | |
| v. | ) | Case No. 2:19-cv-475 |
|  | ) | |
| MEDICAL STAFFING OF AMERICA, LLC, a limited | ) | |
| liability company, d/b/a STEADFAST MEDICAL | ) | |
| STAFFING, and LISA ANN PITTS, individually and as | ) | |
| owner and officer of the aforementioned company, | ) | |
| Defendants. | ) | |
|  | ) | |

**JOINT PRETRIAL ORDER**

Plaintiff Milton Al Stewart,[1] Acting Secretary of Labor, United States Department of

Labor ("Plaintiff"), along with Defendants Medical Staffing of America, LLC d/b/a Steadfast

Medical Staffing ("Steadfast"), and Lisa Ann Pitts, individually and as owner of Medical

Staffing of America (collectively "Defendants"), hereby submit this Joint Pretrial Statement,

pursuant to the Court's November 14, 2018 Amended Rule 16(b) Scheduling Order (ECF No.

15).

## I.    STIPULATION OF UNDISPUTED FACTS

1.    Jurisdiction of this action is conferred upon the Court by Section 17 of the Fair

Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. § 217, and by 28 U.S.C. §§ 1331 and 1345.

2.    Since at least August 18, 2015, Steadfast has been a limited liability corporation

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Acting Secretary of Labor Milton Al
Stewart is substituted for Eugene Scalia as the plaintiff in this action.

with a place of business at 5750 Chesapeake Boulevard, Norfolk, Virginia 23513, and under the ownership of Lisa Ann Pitts.

3. Since at least August 18, 2015, Defendant Steadfast has had an annual gross volume of sales made or business done of not less than $500,000.00.

4. The individuals listed in Schedule A include individuals who worked as Certified Nursing Assistants ("CNA"), Licensed Nurse Practitioners ("LPN"), and Registered Nurses ("RN") at some point between August 18, 2015 and December 24, 2020.

5. Between August 18, 2015 and December 24, 2020, the individuals listed in Schedule A were paid a straight-time hourly rate for all hours worked, including for any and all hours worked over 40 in a workweek.

6. Lisa Pitts has maintained 100% ownership interest in Medical Staffing of America, LLC since at least August 2015.

7. Since August 18, 2015, Steadfast negotiated and entered into contracts with healthcare facilities.

8. Steadfast's negotiated contracts established an hourly rate Steadfast would receive for placing nurses, including the individuals listed in Schedule A.

9. Since August 18, 2015, "Medical Staffing of America" appears on the earnings statements of individuals listed in Schedule A.

## II. EXHIBITS

### A. Plaintiff's Exhibits

Plaintiff anticipates using the below-listed documents as exhibits at the trial in this case. Plaintiff reserves the right to supplement this list based on any information that may be discovered subsequent to the submission of this list:

2

| | | |
|---|---|---|
| PX-1 | Christine Kim Declaration | Expect |
| PX-2 | Deposition Transcript - Excerpt: 30b(6) | Expect |
| PX-3 | Summary Exhibit - Deposition Summaries | Expect |
| PX-4 | First Choice Declaration | May |
| PX-5 | Employee Witness Statements and Declarations | May |
| PX-6 | Payroll Details | Expect |
| PX-7 | Steadfast Payroll Summaries | Expect |
| PX-8 | Earnings Statements and Paystubs | Expect |
| PX-9 | Employee Timesheets | Expect |
| PX-10 | Facility Contracts | Expect |
| PX-11 | Facility Invoices | Expect |
| PX-12 | Summary Exhibit - Facilities Steadfast Contracts | Expect |
| PX-13 | Demonstrative Exhibit - Pay Practices of Other Agencies | Expect |
| PX-14 | Demonstrative Exhibit - Steadfast Payroll Practices | Expect |
| PX-15 | ADP: Request to Manage Account | Expect |
| PX-16 | ADP: Employee Change Report | Expect |
| PX-17 | Steadfast Profit and Loss Statements (2015- 2019) | Expect |
| PX-18 | Steadfast Income Tax Returns (2015 - 2019) | May |
| PX-19 | BB&T Records: Sample Payroll Statements, Signature Card, and Declaration of Bank Records | May |
| PX-20 | Steadfast Wage and Tax Register | Expect |
| PX-21 | WH-55, Wage Transcription and Computation Worksheets[2] | Expect |
| PX-23 | Schedule A | Expect |
| PX-24 | List of Current Employees with notations regarding drug test results | Expect |
| PX-25 | Agreement for Independent Contractor Services | Expect |
| PX-26 | Steadfast Employment Application | Expect |
| PX-27 | MFA/MFNC-Network Systems Access Request Packet | May |
| PX-28 | Steadfast Insurance Policy | Expect |
| PX-29 | Steadfast Job Postings | Expect |
| PX-30 | Steadfast: Acknowledgement and Waiver | Expect |
| PX-31 | Steadfast: Confidentiality Statement | Expect |

---

[2] Plaintiff's Exhibit PX-21, WH-55, Wage Transcription and Computation Worksheets, will be supplemented upon receipt of Defendants' payroll and time records between January 1, 2021 and March 1, 2021.

3

| PX-32 | Steadfast Training Materials: Abuse and Neglect, HIPAA | Expect |
|---|---|---|
| PX-33 | Steadfast Employer Memos | Expect |
| PX-34 | Memo: Next Day Pay Memo | Expect |
| PX-35 | Steadfast Punctuality Memos | Expect |
| PX-36 | WTS Memo | Expect |
| PX-37 | Timesheet Reminder Memos | Expect |
| PX-38 | Sample Steadfast Facility Placements | Expect |
| PX-39 | Steadfast - Website Screenshot | May |
| PX-40 | FLSA Narrative Report | May |
| PX-41 | Case Diary Entries | May |
| PX-42 | Wage and Hour Appointment Letter | May |
| PX-44 | Demonstrative: Independent Contractor Factors | Expect |
| PX-45 | Any and all answered provided by Defendant in response to Request for Production of Document served by the Plaintiff | May |
| PX-46 | Any and all answers provided by Defendant in its answers to Interrogatories served by the Plaintiff | May |
| PX-47 | Any and all answers provided by Defendant in response to Request for Admissions served by the Plaintiff | May |
| PX-48 | Any and all documents provided by Plaintiff in response to Request for Documents served by the Defendant | May |
| PX-49 | Any and all documents provided by Plaintiff in response to its answers to Interrogatories served by the Defendant | May |
| PX-50 | Any and all documents identified and not objected to | May |
| PX-51 | Any and all documents as needed for rebuttal | May |
| PX-52 | All exhibits identified in Defendant's Exhibit List and Prehearing Statement | May |
| PX-53 | Any documents produced by informer witnesses at or before hearing which are not currently in the Plaintiff's possession | May |

In addition, Plaintiff reserves the right to use documents not listed above for the purpose of impeachment, rebuttal, or other issues not anticipated, including any deposition testimony and exhibits used at the time of the depositions.

*B. Defendants' Exhibits*

4

**JA1868**

| DX-1 | R. Adams Agreement | Expect |
|------|-------------------|--------|
| DX-2 | D. Hall Agreement | Expect |
| DX-3 | S. Silver Agreement | Expect |
| DX-4 | J. Kidder Agreement | Expect |
| DX-5 | O. Thorpe Agreement | Expect |
| DX-6 | P. Clark Agreement | Expect |
| DX-7 | J. Adames Agreement | Expect |
| DX-8 | R. Coates Agreement | Expect |
| DX-9 | T. Allen Agreement | Expect |
| DX-10 | N. Alston Agreement | Expect |
| DX-11 | L. Boone Agreement | Expect |
| DX-12 | S. Flournoy Agreement | Expect |
| DX-13 | S. Fulton Agreement | Expect |
| DX-14 | T. Hall Agreement | Expect |
| DX-15 | R. Huff Agreement | Expect |
| DX-16 | J. Kelly Agreement | Expect |
| DX-17 | E. McEntyre Agreement | Expect |
| DX-18 | S. McManes Agreement | Expect |
| DX-19 | R. Matin Agreement | Expect |
| DX-20 | P. Miltier Agreement | Expect |
| DX-21 | T. Pettigrew Iwuamadi Agreement | Expect |
| DX-22 | J. Smith Agreement | Expect |
| DX-23 | C. Spencer Agreement | Expect |
| DX-24 | T. Sutton Agreement | Expect |
| DX-25 | R. Thompson Agreement | Expect |
| DX-26 | A. Vaughn Agreement | Expect |
| DX-27 | W. West Agreement | Expect |
| DX-29 | T. Tate Agreement | Expect |
| DX-30 | A. Stratton Agreement | Expect |
| DX-31 | I. Smith Agreement | Expect |
| DX-32 | D. Wooten Agreement | Expect |
| DX-33 | T. Morey Agreement | Expect |
| DX-34 | K. Scott Agreement | Expect |
| DX-35 | DOL's Answers to Defendants' Interrogatories | Expect |
| DX-36 | Steadfast Memo | Expect |
| DX-37 | Steadfast Memo | Expect |
| DX-38 | Steadfast Memo | Expect |
| DX-39 | Steadfast Memo | Expect |
| DX-40 | Steadfast Memo | Expect |

| DX-41 | Steadfast Memo | Expect |
|-------|----------------|--------|
| DX-42 | Steadfast Memo | Expect |
| DX-43 | Steadfast Memo | Expect |
| DX-44 | Steadfast Memo | Expect |
| DX-45 | Steadfast Memo | Expect |
| DX-46 | Steadfast Memo | Expect |
| DX-47 | Steadfast Memo | Expect |
| DX-48 | Steadfast Memo | Expect |
| DX-49 | Steadfast Memo | Expect |
| DX-50 | Steadfast Memo | Expect |
| DX-51 | Steadfast Memo | Expect |
| DX-52 | Steadfast Memo | Expect |
| DX-53 | Steadfast Memo | Expect |
| DX-54 | Steadfast Memo | Expect |
| DX-55 | Steadfast Memo | Expect |
| DX-56 | Steadfast Memo | Expect |
| DX-57 | Steadfast Memo | Expect |
| DX-58 | Steadfast Memo | Expect |
| DX-59 | Steadfast Memo | Expect |
| DX-60 | Steadfast Memo | Expect |
| DX-61 | Steadfast Memo | Expect |
| DX-62 | Steadfast Memo | Expect |
| DX-63 | Steadfast Memo | Expect |
| DX-64 | DOL Field Assistance Bulletin No. 2018-4 | Expect |
| DX-65 | Job postings | May |
| DX-66 | Job descriptions | May |
| DX-67 | Steadfast Registry Advertisement | May |
| DX-68 | Steadfast Registry Advertisement | May |
| DX-69 | Steadfast Registry Advertisement | May |
| DX-70 | Steadfast Registry Advertisement | May |
| DX-71 | Steadfast Registry Advertisement | May |
| DX-72 | Steadfast Registry Advertisement | May |
| DX-73 | Steadfast Registry Advertisement | May |
| DX-74 | Ltr from Todd Rothlisberger, Esq. | May |
| DX-75 | Screenshots of Zira Workforce App | May |
| DX-76 | Steadfast Zira Workforce Video | May |
| DX-77 | Steadfast Zira Workforce Video for Nurses | May |
| DX-78 | Steadfast Zira Workforce Video for Facilities | May |
| DX-79 | Brian Center Windsor Agreement | May |
| DX-80 | Charlottesville Health and Rehab Agreement | May |

6

| DX-81 | Princess Anne Health and Rehab Agreement | May |
| DX-82 | Chatham Health and Rehab Agreement | May |
| DX-83 | Concordia Bay Pointe | May |
| DX-84 | Concordia Elizabeth City Agreement | May |
| DX-85 | Consulte NN Nursing and Rehab Agreement | May |
| DX-86 | Consulte Windsor Agreement | May |
| DX-87 | Accordius Health Agreements | May |
| DX-88 | Case Diary Entries | May |
| DX-89 | Any exhibit identified by plaintiff in plaintiff's 26(a)(3) disclosures or any exhibit used by plaintiff for purposes of impeachment or rebuttal | May |
| DX-90 | Demonstrative exhibits | May |
| DX-91 | Demonstration of Zira Workforce App (for demonstration only) | May |
| DX-92 | FRE 1006 Payroll Summaries | May |
| DX-93 | The facility contract for any facility identified by Plaintiff in his 26(a)(3) Disclosures (List to be supplemented) | May |
| DX-94 | The independent contractor agreement for any Schedule A individual listed by Plaintiff in his 26(a)(3) Disclosures (List to be supplemented) | May |

Steadfast reserves the right to rely upon any and all materials identified and produced by the plaintiff in connection with discovery or disclosures in this matter and to rely upon such further documents and demonstrative exhibits as may be needed for purposes of impeachment or rebuttal.

## III.   IDENTIFICATION OF EXHIBITS TO WHICH THE PARTIES AGREE

| | |
| --- | --- |
| PX-6 | Payroll Details |
| PX-7 | Steadfast Payroll Summaries |
| PX-10 | Facility Contracts |
| PX-11 | Facility Invoices |
| PX-18 | Steadfast Income Tax Returns (2015-2019) |
| PX-20 | Steadfast Wage and Tax Register |
| PX-23 | Schedule A |

JA1871

| PX-24 | List of Current Employees |
|---|---|
| PX-27 | MFA/MFNC-Network Systems Access Request Packet |
| PX-28 | Steadfast Insurance Policy |
| PX-29 | Steadfast Job Postings |
| PX-30 | Steadfast: Acknowledgment and Waiver |
| PX-31 | Steadfast Confidentiality Statement |
| PX-33 | Steadfast Employer Memos |
| PX-34 | Memo: Next Day Pay Memo |
| PX-35 | Steadfast Punctuality Memos |
| PX-36 | WTS Memo |
| PX-37 | Timesheet Reminder Memos |
| PX-38 | Sample Steadfast Facility Placement |
| PX-39 | Steadfast Website Screenshot |
| PX-47 | Any and all answers provided by Defendant in response to Request for Admissions served by the Plaintiff |
| DX-35 | DOL's Answers to Defendants' Interrogatories |
| DX-36 | Steadfast Memo |
| DX-37 | Steadfast Memo |
| DX-38 | Steadfast Memo |
| DX-39 | Steadfast Memo |
| DX-40 | Steadfast Memo |
| DX-41 | Steadfast Memo |
| DX-42 | Steadfast Memo |
| DX-43 | Steadfast Memo |
| DX-44 | Steadfast Memo |
| DX-45 | Steadfast Memo |
| DX-46 | Steadfast Memo |
| DX-47 | Steadfast Memo |
| DX-48 | Steadfast Memo |
| DX-49 | Steadfast Memo |
| DX-50 | Steadfast Memo |
| DX-51 | Steadfast Memo |
| DX-52 | Steadfast Memo |
| DX-53 | Steadfast Memo |
| DX-54 | Steadfast Memo |
| DX-55 | Steadfast Memo |
| DX-56 | Steadfast Memo |
| DX-57 | Steadfast Memo |
| DX-58 | Steadfast Memo |

8

| DX-59 | Steadfast Memo |
|-------|----------------|
| DX-60 | Steadfast Memo |
| DX-61 | Steadfast Memo |
| DX-62 | Steadfast Memo |
| DX-63 | Steadfast Memo |
| DX-65 | Job postings |
| DX-67 | Steadfast Registry Advertisement |
| DX-68 | Steadfast Registry Advertisement |
| DX-69 | Steadfast Registry Advertisement |
| DX-70 | Steadfast Registry Advertisement |
| DX-71 | Steadfast Registry Advertisement |
| DX-72 | Steadfast Registry Advertisement |
| DX-73 | Steadfast Registry Advertisement |
| DX-79 | Brian Center Windsor Agreement |
| DX-80 | Charlottesville Health and Rehab Agreement |
| DX-81 | Princess Anne Health and Rehab Agreement |
| DX-82 | Chatham Health and Rehab Agreement |
| DX-83 | Concordia Bay Pointe |
| DX-84 | Concordia Elizabeth City Agreement |
| DX-85 | Consulate NN Nursing and Rehab Agreement |
| DX-86 | Consulate Windsor Agreement |
| DX-87 | Accordius Health Agreements |
| DX-89 | Any exhibit identified by plaintiff in plaintiff's 26(a)(3) disclosures or any exhibit used by plaintiff for purposes of impeachment or rebuttal |
| DX-91 | Demonstration of Zira Workforce App (for demonstration only) |
| DX-93 | The facility contract for any facility identified by Plaintiff in his 26(a)(3) Disclosures (List to be supplemented) |
| DX-94 | The independent contractor agreement for any Schedule A individual listed by Plaintiff in his 26(a)(3) Disclosures (List to be supplemented) |

## IV. IDENTIFICATION OF EXHIBITS TO WHICH THERE ARE UNRESOLVED OBJECTIONS[3]

---

[3] The parties agreed to exchange summaries and demonstrative exhibits by April 5, 2021. The parties also agreed to identify underlying FRE 1006 materials which the parties relied on to

A. *Plaintiff's Exhibits*

| | | | |
|---|---|---|---|
| PX-1 | Christine Kim Declaration | Objection Hearsay | *Overruled* |
| PX-4 | First Choice Declaration | Objection Hearsay | *Deferred* |
| PX-5 | Employee Witness Statements and Declarations | Objection, these documents contain hearsay Authenticity Relevance | *Deferring pending briefing within 7 days* |
| PX-8 | Earnings Statements and Paystubs | No objection pending defense counsel's receipt of digital copies of this exhibit which are represented to be unredacted | *Objection withdrawn* |
| PX-9 | Nurse Timesheets | To the extend this refers to Steadfast 2-18, no objection; Further objection reserved pending defense counsel receipt of digital copies of this exhibit because Plaintiffs have declined to identify this exhibit with Bates stamps | *Objection withdrawn* |
| PX-12 | Summary Exhibit - Facilities Steadfast Contracts | All objections reserved. By Agreement of counsel, Summary Exhibits will be produced on April 5th, along with identification underlying documents, pursuant to FRE 1006. | *Deferred* |
| PX-13 | Demonstrative Exhibit - Pay Practices of Other Agencies | All objections reserved. By Agreement of counsel, Demonstrative | *Deferred* |

create summary exhibits. The parties reserve all objections to the summaries and demonstrative exhibits.

JA1874

| | | Exhibits will be produced on April 5th. | |
|---|---|---|---|
| PX-14 | Demonstrative Exhibit - Steadfast Payroll Practices | All objections reserved. By Agreement of counsel, Demonstrative Exhibits will be produced on April 5th | Deferred |
| PX-15 | ADP: Request to Manage Account | Relevance; Hearsay | Overruled |
| PX-16 | ADP: Employee Change Report | Relevance; Hearsay - overruled | deferred |
| PX-19 | BB&T Records: Sample Payroll Statements, Signature Card, and Declaration of Bank Records | Relevance | Deferred |
| PX-21 | WH-55, Wage Transcription and Computation Worksheets | Defendants object to the relevance and computations contained in this exhibit but agree that if liability is established to work with plaintiff's counsel to reach a stipulation as to the calculations. | Deferred |
| PX-25 | Agreement for Independent Contractor Services | Objection, this identification is improper and insufficiently descriptive. All objections reserved. | Overruled |
| PX-26 | Steadfast Employment Application | Objections, authenticity, hearsay, all objections reserved with regard to redacted portions. | Overruled if authenticity is established at trial |
| PX-32 | Steadfast Training Materials: Abuse and Neglect, HIPAA | Objection, relevance; authentication | Same as PX-26 |
| PX-40 | FLSA Narrative Report | Relevance; hearsay | Sustained, but may be permitted as |
| PX-41 | Case Diary Entries | Relevance; hearsay | Same as PX40 prior inconsistent |
| PX-42 | Wage and Hour Appointment Letter | Relevance; hearsay | Same as PX40 statement |
| PX-44 | Demonstrative: Independent Contractor Factors | All objections reserved. By Agreement of counsel, Demonstrative Exhibits will be produced on April 5th | Deferred |
| PX-45 | Any and all answers provided by Defendant in response to Request for Production of Document served by the Plaintiff | Objection, this identification is improper and | Sustained |

11

**JA1875**

| | | | |
|---|---|---|---|
| | | insufficiently descriptive; to the extent that it refers to the words printed by defense counsel in the documents responding to requests for production of documents they are inadmissible and irrelevant. | |
| PX-46 | Any and all answers provided by Defendant in its answers to Interrogatories served by the Plaintiff | Objection, to the extent such answers contain hearsay, are irrelevant, or otherwise inadmissible. | Sustained |
| PX-48 | Any and all documents provided by Plaintiff in response to its answers to Interrogatories served by the Defendant | Objection, this identification is improper and insufficiently descriptive; not all documents produced in discovery are admissible evidence and without sufficiently specific identification Defendant cannot make determinations as to relevance, hearsay, and other admissibility issues; all objections reserved | Sustained |
| PX-49 | Any and all documents provided by Plaintiff in response to its answers to Interrogatories served by the Defendant | Objection, this identification is improper and insufficiently descriptive; not all documents produced in discovery are admissible evidence and without sufficiently specific identification Defendant cannot make determinations as to relevance, hearsay, and other admissibility | Sustained |

**JA1876**

| | | issues; all objections reserved | |
|---|---|---|---|
| PX-50 | Any and all documents identified and not objected to | Objection, this identification is improper and insufficiently descriptive; all objections reserved | Sustained |
| PX-51 | Any and all documents as needed for rebuttal | All objections reserved | Deferred |
| PX-52 | All exhibits identified in Defendant's Exhibit List and Prehearing Statement | All objections reserved | Deferred |
| PX-53 | Any documents produced by informer witnesses at or before hearing which are not currently in the Plaintiff's possession | All objections reserved | Deferred |

B. *Defendants' Exhibits*

| | | | |
|---|---|---|---|
| DX-1 | R. Adams Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Overruled |
| DX-2 | D. Hall Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Overruled |
| DX-3 | S. Silver Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Overruled if authenticity is established |
| DX-4 | J. Kidder Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Same as DX-3 |
| DX-5 | O. Thorpe Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Same as DX-3 |
| DX-6 | P. Clark Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Same as DX-3 |
| DX-7 | J. Adames Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Same as DX-3 |

JA1877

| DX-8 | R. Coates Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Same as DX-3 |
|---|---|---|---|
| DX-9 | T. Allen Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | '' |
| DX-10 | N. Alston Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | '' |
| DX-11 | L. Boone Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | '' |
| DX-12 | S. Flournoy Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | '' |
| DX-14 | T. Hall Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | ''. |
| DX-15 | R. Huff Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Overruled |
| DX-16 | J. Kelly Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Same as DX-3 |
| DX-17 | E. McEntyre Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Overruled |
| DX-20 | P. Miltier Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Same as DX-3 |
| DX-21 | T. Pettigrew Iwuamadi Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | '' |
| DX-23 | C. Spencer Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | '' |
| DX-24 | T. Sutton | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | '' |
| DX-25 | R. Thompson Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | '' |
| DX-26 | A. Vaughn Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Overruled |

14

| DX-27 | W. West Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Same as DX-3 |
|---|---|---|---|
| DX-29 | T. Tate Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Overruled |
| DX-30 | A Stratton Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Same as DX-3 |
| DX-31 | I. Smith Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | " |
| DX-32 | D. Wooten Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | " |
| DX-33 | T. Morey Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | " |
| DX-34 | K. Scott Agreement | Completeness, Fed. R. Evid. 106; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | " |
| DX-64 | DOL Field Assistance Bulletin No. 2018-4 | Relevance, Fed. R. Evid. 402, Confusion, Fed. R. Evid. 403; Hearsay, Fed. R. Evid. 802 | Deferred |
| DX-66 | Job Descriptions | Relevance, Fed. R. Evid. 402; Confusion, Fed. R. Evid. 403; Hearsay, Fed. R. Evid. 802; Authentication, Fed. R. Evid. 901 | Sustained as to Bates #s 071457 - 071476. Court may take judicial notice of Bates # 071477-071507 |
| DX-74 | Ltr from Todd Rothlisberger, Esq. | Relevance, Fed. R. Evid. 402; Hearsay, Fed. R. Evid. 802; Authentication, Fed. R. Evid. 901 | Sustained |
| DX-75 | Screenshots of Zira Workforce App | Hearsay, Fed. R. Evid. 801; Relevance, Fed. R. Evid. 402; Confusion, Fed. R. Evid. 403; Fed. R. Civ. P. 37(c)(1); Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Overruled provided ∆ makes Rule 30(b)(6) witness available within 14 days |
| DX-76 | Steadfast Zira Workforce Video | Hearsay, Fed. R. Evid. 801; Relevance, Fed. R. Evid. 402; Confusion, Fed. R. Evid. 403; Fed. R. Civ. P. 37(c)(1) Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Same as DX-75 |
| DX-77 | Steadfast Zira Workforce Video for Nurses | Hearsay, Fed. R. Evid. 801; Relevance, Fed. R. Evid. 402; Confusion, Fed. R. Evid. 403; Fed. R. Civ. P. 37(c)(1) Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Same as DX-75 |

15

| DX-78 | Steadfast Zira Workforce Video for Facilities | Hearsay, Fed. R. Evid. 801; Relevance, Fed. R. Evid. 402; Confusion, Fed. R. Evid. 403; Fed. R. Civ. P. 37(c)(1) Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Same as DX-75 |
|---|---|---|---|
| DX-88 | Case Diary Entries | Relevance, Fed. R. Evid. 402; Fed. R. Evid. 802 | Same as PX-40 |
| DX-90 | Demonstrative exhibits | Hearsay, Fed. R. Evid. 801; Foundation, Fed. R. Evid. 1006 Relevance, Fed. R. Evid. 402; Prejudicial, Fed. R. Evid. 403; Opinion Testimony, Fed. R. Evid. 701 Authentication, Fed. R. Evid. 901 objections reserved pursuant to the parties' agreement to exchange Demonstrative Exhibits on April 5. | Deferred |
| DX-92 | FRE 1006 Payroll Summaries | Fed. R. Civ. P. 37(c)(1) Defendants failed to identify in their Rule 26(a)(1) initial disclosures and produce in their answers to Plaintiff's Interrogatories (I-5) and Request for Production of Documents (R-6); Prejudicial, Fed. R. Evid. 403; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | Deferred |

## V. WITNESSES

### A. Plaintiff's Witnesses

DOL expects to call:

1. Alvaro Mazuera

2. Lisa Ann Pitts

3. Christine Kim

4. John Bredehoft, Esq.

5. Peyton Lex – First Choice Nursing

6. Designated Corporate Representative – Nurse Springs

7. Designated Corporate Representative – Favorite Healthcare

16

**JA1880**

8.  Designated Corporate Representative – We Care for Yours

9.  Designated Corporate Representative(s) – Consulate Health Care

10. Designated Corporate Representative(s) – Medical Facilities of America

11. Designated Corporate Representative(s) – Princess Anne H&R Ops
    Limited Partnership t/a Princess Anne Health and Rehabilitation Center

12. Designated Corporate Representative(s) – Armor Correctional Health
    Services, Inc.

13. Designated Corporate Representative(s) – Atlantic Shores Cooperative
    Association, Inc., d/b/a Atlantic Shores Living

14. Designated Corporate Representative(s) – Concordia Care and
    Rehabilitation (multiple facilities)

15. Designated Corporate Representative(s) – Liberty Healthcare Corporation
    (multiple facilities)

16. Designated Corporate Representative(s) – Marquis Health Services
    (multiple facilities)

17. Designated Corporate Representative(s) – Trio Healthcare (multiple
    facilities)

18. Designated Corporate Representative(s) – Dunlop House Health and
    Rehab

19. Designated Corporate Representative(s) – Fort Norfolk Retirement
    Community d/b/a Harbor's Edge

20. Any witnesses identified by Defendants Steadfast and Lisa Ann Pitts*

21. Any witnesses needed for rebuttal

22. Testimony from some or all of the following current or former employees
    of Defendants. In providing the following names, Plaintiff makes no
    representation that the U.S. Department of Labor spoke to any specific
    persons during the course of the investigation, nor does Plaintiff otherwise
    identify any of them as having provided information to DOL. Providing
    these names is not intended to be a waiver of the government informant's
    privilege with respect to the identity of any person who was interviewed or
    provided information during the course of the investigation. Plaintiff
    reserves the right to supplement this list with names of witnesses who are
    otherwise protected by the government informant's privilege:

17

**JA1881**

| 1 | Hubert | Adkins |
|---|---|---|
| 2 | Tarnicia | Allen |
| 3 | LaShai | Austin |
| 4 | Marion | Banco or Barco |
| 5 | Ruqayyah | Barnes |
| 6 | Kashine | Berber |
| 7 | Michelle | Bernard |
| 8 | Leslie | Boone |
| 9 | Saudia | Boykins |
| 10 | Latosha | Bradshaw |
| 11 | Shawvone | Brockman |
| 12 | Clelana | Bromell |
| 13 | Ashley | Brooks |
| 14 | Brittny | Brown |
| 15 | Richard | Bryant |
| 16 | Jazmine | Campbell |
| 17 | Erica | Carter |
| 18 | Destiny | Chamblin |
| 19 | Joezette | Chapman |
| 20 | Aliyah | Clements |
| 21 | Racharlotte | Coates |
| 22 | Priscilla | Cobb |
| 23 | Lori | Cox |
| 24 | NuKiesha | Craig |
| 25 | Martina | Crowder |
| 26 | Nicholas T | Crowder |
| 27 | Abimalish | Cruz |
| 28 | Tasheta | Davis |
| 29 | Patricia | Dean |
| 30 | Amaya | Delacruz |
| 31 | Vanessa | Dolberry |
| 32 | Renae | Dumpson |
| 33 | Niara | Early |
| 34 | Kristina | Evans |
| 35 | Luvenia | Ezell |
| 36 | Wynette | Farmer |
| 37 | Mikhela | Felton |
| 38 | Curtis | Filmore |
| 39 | Denise | Flowers |

| 40 | Shoneterria | Fulton |
|---|---|---|
| 41 | LaSonya | Gadberry |
| 42 | Kareen | Gantt |
| 43 | Virgil | Gordon |
| 44 | Sybil | Graves |
| 45 | Greta | Green |
| 46 | Brianna | Gregory |
| 47 | Tawanda | Hall |
| 48 | Kaneisha | Hamlett |
| 49 | LaVonna | Harrel |
| 50 | Quiana | Harris -Allen |
| 51 | Jasmin | Hayes |
| 52 | Galen | Henderson |
| 53 | Christopher | Hopson |
| 54 | Tashena | Jackson (Callens) |
| 55 | Johnese | Jones |
| 56 | Judith | Judith |
| 57 | Keyshira | Keeling |
| 58 | Jonathan | Kidder |
| 59 | Tasheeba | Lassiter |
| 60 | Chenora | Macon |
| 61 | Melissa | Massey |
| 62 | Janelle | McAllister |
| 63 | Piers | Miltier |
| 64 | Latoia | Mitchel |
| 65 | Asia | Mitchell |
| 66 | Latasha | Mitchell |
| 67 | TiShayla | Moore |
| 68 | Zahara | Muhammad |
| 69 | Chareese | Nesbitt |
| 70 | Tynisha | Nowell |
| 71 | Tracey | Nyembe |
| 72 | Stella | Ogwang |
| 73 | Latisha | Ollison |
| 74 | Natasha | Owens |
| 75 | Sherry | Owens |
| 76 | Melisa | Ozirus |
| 77 | Dawn | Pearson |

18

| 78 | Tanya | Pettigrew |
|---|---|---|
| 79 | Sheena | Petty |
| 80 | Charles | Phillips |
| 81 | Dawn | Pittman |
| 82 | Brandy | Plummer |
| 83 | Carolyn | Podawitz |
| 84 | William | Pruitt |
| 85 | Jasmine | Rankin |
| 86 | Patricia | Rawls |
| 87 | Patricia | Rawls |
| 88 | Christina | Raynor |
| 89 | Deirdra | Richardson |
| 90 | Stephanie | Rizer |
| 91 | Jerolyn | Robinson |
| 92 | Matthew | Sawyer |
| 93 | Karentina | Scott |
| 94 | Crystal | Sellers |
| 95 | Sheila | Silver |
| 96 | Juan | Simmons |
| 97 | Laniece | Sims |
| 98 | Ashley | Smith |
| 99 | Chantella | Smith |
| 100 | Ilisha | Smith |
| 101 | Jasmine | Smith |
| 102 | Melissa | Spellman |
| 103 | Jasmin | Stroud |
| 104 | Reshon | Sutphin |

| 105 | Reshonn | Sutphin |
|---|---|---|
| 106 | Ashley | Tate |
| 107 | Camisha | Taylor |
| 108 | Diamond | Taylor |
| 109 | Michael | Taylor |
| 110 | Yetunde | Taylor |
| 111 | Kofa | Teah |
| 112 | Ryan | Thompson |
| 113 | Andrea | Tirado |
| 114 | Tiffany | Trogdon |
| 115 | Cheryl | Truzys |
| 116 | Courtney | Turner |
| 117 | Ashley | Vaughn |
| 118 | Alvina | Ward |
| 119 | Sabrina | White |
| 120 | Tyrone | White |
| 121 | Lauren | Wilkerson |
| 122 | Jeneka | Williams |
| 123 | Nicole | Williams |
| 124 | Tishone | Williams |
| 125 | Sonia | Winborne |
| 126 | Marcela | Womack |
| 127 | Shimeiyah | Woodard |
| 128 | Dawn | Wooten |
| 129 | Lashawn | Wright |

DOL may also call:

1. Arlene Klinedinst, Esq.

2. Record Custodian for Defendant Medical Staffing of America, LLC ("Steadfast")

3. Designated Corporate Representative(s) – Avante (multiple facilities)

4. Designated Corporate Representative(s) – Bon Secours (multiple facilities)

5. Designated Corporate Representative(s) – Bedford County Nursing Home

19

**JA1883**

6. Designated Corporate Representative(s) – Independent Living (multiple facilities)

7. Designated Corporate Representative(s) – Maximus Healthcare Group (multiple facilities)

8. Designated Corporate Representative(s) – Ivy Healthcare Group (multiple facilities)

9. Designated Corporate Representative(s) – Saber Healthcare Group (multiple facilities)

10. Designated Corporate Representative(s) – SavaSeniorCare (multiple facilities)

11. Designated Corporate Representative(s) – Brookdale Senior Living

12. Testimony from some or all of the following current or former employees of Defendants. In providing the following names, Plaintiff makes no representation that the U.S. Department of Labor spoke to any specific persons during the course of the investigation, nor does Plaintiff otherwise identify any of them as having provided information to DOL. Providing these names is not intended to be a waiver of the government informant's privilege with respect to the identity of any person who was interviewed or provided information during the course of the investigation. Plaintiff reserves the right to supplement this list with names of witnesses who are otherwise protected by the government informant's privilege:

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Karimah | Abdusaallaam | | 17 | Loretha | Anderson |
| 2 | Jolonda | Able | | 18 | Sydney | Anderson |
| 3 | Jamie | Adames | | 19 | Miranda | Anthony |
| 4 | Brandie | Adams | | 20 | Trevon | Anthony |
| 5 | Sharon | Adams | | 21 | Patience | Anyikwa |
| 6 | Lisa | Adegbenro | | 22 | Ana | Aquino |
| 7 | Desiree | Adkins | | 23 | Denise | Arbuckle |
| 8 | Christine | Agnew | | 24 | Samara | Archer |
| 9 | Napolean | Aiston jr | | 25 | Cordero | Archie |
| 10 | Quiana | Allen | | 26 | Keyana | Arrington |
| 11 | Sadiqua | Allen | | 27 | Cherell | Atkins |
| 12 | Raymie | Allison | | 28 | India | Averett |
| 13 | Chanelle | Alston | | 29 | Blessing | Azubike |
| 14 | Napolean | Alston | | 30 | Quenique | Bailey |
| 15 | Shannon | Ambrutis | | 31 | Brandy | Bailey |
| 16 | Felicia | Anderson | | 32 | Valentina | Bailey |

20

JA1884

| | | | | | | |
|---|---|---|---|---|---|---|
| 33 | Whitney | Bailey | | 73 | Shawanda | Bowen |
| 34 | Kayla | Baker | | 74 | Alesha | Bradshaw |
| 35 | Elizabeth | Bandy | | 75 | Deyonna | Bragg |
| 36 | Tenishia | Banks-cooper | | 76 | Kyara | Branch |
| 37 | Marion | Barco | | 77 | Lakeisha | Branch |
| 38 | Shantel | Barker | | 78 | Carrila | Brandon |
| 39 | Lolitha | Barksdale | | 79 | Tanyard | Bray |
| 40 | Shadarius | Barksdale | | 80 | Brandie | Brooks |
| 41 | Shanmeka | Barnes | | 81 | Tonya | Brooks |
| 42 | Tiana | Barnes | | 82 | Collete | Brown |
| 43 | Latasha | Barnes-Jenkins | | 83 | Deshae | Brown |
| 44 | Rayshara | Barrow | | 84 | Kashawanda | Brown |
| 45 | Taquira | Bartee | | 85 | Lakenya | Brown |
| 46 | Octavious | Batts | | 86 | Nicole | Brown |
| 47 | Jerri | Baugham | | 87 | Roxanne | Brown |
| 48 | Leasha | Baxter | | 88 | Serenety | Brown |
| 49 | Keshaun | Beale | | 89 | Temika | Brumsey |
| 50 | Faith | Beamon | | 90 | Todd | Buffa |
| 51 | Keimia | Beavers | | 91 | Vivian | Buggs |
| 52 | Kimberly | Bellamy | | 92 | David | Bullock |
| 53 | Levance | Bethea | | 93 | Debra | Bun-Kamara |
| 54 | Paula M | Bethea | | 94 | Imani | Burden |
| 55 | Chelsea | Bingham | | 95 | Anastasia T | Burns |
| 56 | Courtney | Blakey | | 96 | Olga | Burt |
| 57 | Shondra | Blyden | | 97 | Lisa | Burton |
| 58 | Candice | Bolden | | 98 | Marguerite S | Byers |
| 59 | Jules | Bolden | | 99 | Lashawnda | Caffee |
| 60 | Latishia | Bolden | | 100 | Tashena | Callands |
| 61 | Nekisha | Bolden | | 101 | Zakia | Campbell |
| 62 | Nicole | Bolden | | 102 | Tatianna | Canady |
| 63 | Dakeem | Bond | | 103 | Sharon D | Cannon |
| 64 | Nicole | Bond | | 104 | Aubrey | Carson |
| 65 | Tracey | Booker | | 105 | Claudia | Carson |
| 66 | Nekisha | Boone | | 106 | Dequarius | Carter |
| 67 | Earlene | Boone-Hill | | 107 | Lauren | Carter |
| 68 | Margie | Boone-McIntyre | | 108 | Stephanie | Carter |
| 69 | Latasha | Booner | | 109 | Shereta | Cashwell |
| 70 | Sarah | Bostick | | 110 | Valentina | Champagne |
| 71 | Jalena | Bouizidi | | 111 | Kym | Chandler |
| 72 | Lori | Bowen | | 112 | Marnishia D | Chapell |

JA1885

| | | | | | | |
|---|---|---|---|---|---|---|
| 113 | Saranette | Chapman | | 153 | Deandria | Davis |
| 114 | Tequila | Chapman | | 154 | Janella | Davis |
| 115 | Gladys E | Charles | | 155 | Pattie | Davis |
| 116 | Kaneesha | Cherry | | 156 | Zoquanna | Davis |
| 117 | Latoria | Chesson | | 157 | Barbara J | Dawson |
| 118 | Donita M | Church | | 158 | Christina | Dawson |
| 119 | Baylee | Clark | | 159 | Mary | Day |
| 120 | Penny | Clark | | 160 | Jessica | Dean |
| 121 | Sherrie | Clark | | 161 | Dellora | Deberry |
| 122 | Tomeka D | Clark | | 162 | Kevin | Delleh |
| 123 | Yolanda | Clayton | | 163 | Bonny | Denney |
| 124 | Samantha | Cobb | | 164 | Lunneisha | Dillard |
| 125 | Lashunda | Cohen | | 165 | Lynneshia | Dillard |
| 126 | Kaeisha | Coles | | 166 | Deborah | Djorgee |
| 127 | Yasilis | Collado | | 167 | Courtney | Dorton |
| 128 | Stephanie | Collier | | 168 | David | Douglas |
| 129 | Morenike | Collier-Taiwo | | 169 | Judith | Drake |
| 130 | Dytania | Collins | | 170 | Courtney-Hope | Draughn |
| 131 | Shameka | Collins | | 171 | Brandon | Drumwright |
| 132 | Tracey | Colquit | | 172 | Elina | Dryden |
| 133 | Brittany | Colquit-Robinson | | 173 | Kaneesha | Dudley |
| 134 | Bandetra | Confron | | 174 | Robert | Duhart |
| 135 | Abigail | Conner | | 175 | Leila | Duncan |
| 136 | Rashawn | Cooke | | 176 | Cherice D | Dyson-Taylor |
| 137 | Brenda | Cooper | | 177 | Shenica | Edmonds |
| 138 | Gloria | Corona | | 178 | Claudine N | Edmund |
| 139 | Latarshia | Couch | | 179 | Erica | Edwards |
| 140 | Jonecca | Couser | | 180 | Geneva | Edwards |
| 141 | Trynasha G | Creenshaw | | 181 | Gold | Ekechukwu |
| 142 | Cynthia | Crew | | 182 | Sampson | Ekwet |
| 143 | Ancetra | Crocker | | 183 | Destini | Eldridge |
| 144 | Stephanie | Cross | | 184 | Chikezie | Emeruem |
| 145 | Eloise | Cruger | | 185 | Ann | Eng |
| 146 | Davis | Crystal | | 186 | Ashley | Eubanks |
| 147 | Eloise | Cuffee-Smith | | 187 | Blannie | Eure |
| 148 | LaFaunta | Damon | | 188 | Latoya | Exhem |
| 149 | Catherine | Daniels | | 189 | Shanmeka | Fallin |
| 150 | Shaneika | Darrel | | 190 | Karona | Felton |
| 151 | Ashley | Davis | | 191 | Shareen | Fennell |
| 152 | Ashley | Davis | | | | |

JA1886

| | | | | | | |
|---|---|---|---|---|---|---|
| 192 | Cherrie D | Ferebee | | 232 | Erica | Gregory |
| 193 | Shannon | Ferebee | | 233 | Keisha | Gregory |
| 194 | D'Andrea | Ferguson | | 234 | Shameka | Gregory |
| 195 | Barbara | Fields | | 235 | Renorda | Griffin |
| 196 | Ayanna | Figeroux | | 236 | Teresa | Griffin |
| 197 | Costella | Fisher | | 237 | Brandy | Hairston |
| 198 | Andrea N | Fitzgerald | | 238 | Lakeisha | Hairston |
| 199 | Deidra | Flack | | 239 | Nikeya | Hairston |
| 200 | Sherry | Flournoy | | 240 | Izetta J | Hale |
| 201 | Seth | Floyd | | 241 | Dermishia | Hall |
| 202 | Rachael | Fogleboch | | 242 | Edna | Hall |
| 203 | Shrondary | Ford | | 243 | Sonia t | Hall |
| 204 | Rachael M. | Forrest | | 244 | Beverly | Hall Davis |
| 205 | Joann | Franklin | | 245 | Happie | Harris |
| 206 | Ashelley | Franks | | 246 | Karen | Harris |
| 207 | Jennifer | Fraser | | 247 | Marion | Harris |
| 208 | Shawlawn | Freeman- Hicks | | 248 | Mea | Harris |
| 209 | Regina | Gadson | | 249 | Nicole | Harris |
| 210 | Andre S. | Gardiner | | 250 | Angela | Hart |
| 211 | Alliyab | Gaston | | 251 | Cynthia | Harvey |
| 212 | Anthony D | Gatewood | | 252 | Andrea | Haskins |
| 213 | Tisha | Gatling | | 253 | Latasha | Hathaway |
| 214 | Manisha | Gautam | | 254 | Darron | Hathorn |
| 215 | Deborah | Gauvin | | 255 | Jamie | Hawkins |
| 216 | Staci | Giel | | 256 | Charlette | Hayes |
| 217 | Mary | Gingles | | 257 | Ferenia | Hearns |
| 218 | Latoya | Gipson | | 258 | Brandy | Hicks |
| 219 | Ann | Glass | | 259 | Tiffany | Hicks |
| 220 | Tareuian | Glover | | 260 | Tonya | Higdon |
| 221 | Lasonya | Godberry | | 261 | Donna | Highter |
| 222 | Ashley | Goggins | | 262 | Emma | Hill |
| 223 | Nakia | Goodman | | 263 | Monique | Hines |
| 224 | Thomasina | Gordon | | 264 | Donna | Hinton |
| 225 | Takiyah | Goynes | | 265 | Aisha | Hodge |
| 226 | Brianah | Grant | | 266 | Marcela | Holder |
| 227 | Kareen | Grant | | 267 | Lavonne | Holley |
| 228 | Torsha | Graves | | 268 | Pattie | Hollingsworth |
| 229 | Ebonie | Gray | | 269 | Summer S | Holloway |
| 230 | Zokorra | Green | | 270 | Yvetrisse M | Hoskie |
| 231 | Raven | Greene | | 271 | Grace | Howard |

23

**JA1887**

| 272 | Shannon | Howard |
|---|---|---|
| 273 | Ursula | Howard |
| 274 | Joshua | Howell |
| 275 | Shannon | Howell |
| 276 | Deja | Hudson |
| 277 | Rickie | Huff |
| 278 | Tyra | Hutchinson |
| 279 | Shakqueen | Ingram |
| 280 | Aisha | Jabar |
| 281 | Britney | Jackson |
| 282 | Estelle L | Jackson |
| 283 | Monica | Jackson |
| 284 | Rose | Jackson |
| 285 | Shantalae | Jackson |
| 286 | Shatonne | Jackson |
| 287 | Tashena | Jackson |
| 288 | Valencia | Jackson |
| 289 | Gloria | James |
| 290 | Kiara | Jamison |
| 291 | Arnel | Jean Pierre |
| 292 | Akea | jefferson |
| 293 | Whitney | Jefferson |
| 294 | Elizabeth | Jenkins |
| 295 | LaCewshia | Jenkins |
| 296 | Latonya | Jenkins |
| 297 | Aquaya | Johnson |
| 298 | Bristol | Johnson |
| 299 | Cherelle | Johnson |
| 300 | Crystal | Johnson |
| 301 | Dajah | Johnson |
| 302 | Darshana | Johnson |
| 303 | Jackie | Johnson |
| 304 | Jazmine | Johnson |
| 305 | Joseph | Johnson |
| 306 | Maurice | Johnson |
| 307 | Shameka | Johnson |
| 308 | Sherita D | Johnson |
| 309 | Sherry | Joice |
| 310 | Reo | Jones |
| 311 | Caithlyn | Jones |

| 312 | Cierra | Jones |
|---|---|---|
| 313 | Dejaneke | Jones |
| 314 | Jameyle | Jones |
| 315 | Jarissa | Jones |
| 316 | Jessica | Jones |
| 317 | Latonja | Jones |
| 318 | Ptika | Jones |
| 319 | Shamane | Jones |
| 320 | Shannon A | Jones |
| 321 | Shawanda | Jones |
| 322 | Sheralyn | Jones |
| 323 | Quentina | Jones -Thomas |
| 324 | Ptika | Joseph |
| 325 | Janice | Josephs |
| 326 | Rikea | Josey |
| 327 | Bonmeyong E | Kanla |
| 328 | Shanelle | Kellam |
| 329 | Janice | Kelly |
| 330 | Stephanie | Kelly |
| 331 | Brittany | Kennedy |
| 332 | Shirley M | Key |
| 333 | Tanglae | Keys |
| 334 | Nora D | Kielty |
| 335 | Deborah | King |
| 336 | Lawson | Kira |
| 337 | Teah | Kofa |
| 338 | Chevon | Kyle-Linder |
| 339 | Chevon | Kyle-Linder |
| 340 | Daneesha | Lamb |
| 341 | Wanda | Lamont |
| 342 | Latisha | Lancaster |
| 343 | Marion | Land |
| 344 | Sherese | Lankford |
| 345 | Maria L | Lanza |
| 346 | Lashwanda | Lassiter |
| 347 | Moesha | Lassiter |
| 348 | Doneka | Lawrence |
| 349 | Kira | Lawson |
| 350 | Resheema | Lawyer |
| 351 | Latosha | Lea |

24

**JA1888**

| | | | | | | |
|---|---|---|---|---|---|---|
| 352 | Amanda | Leake | | 392 | Faye | McCrae |
| 353 | Marianna | Lear | | 393 | Dianne | McCray |
| 354 | Robin | Lee | | 394 | Holly | McDaniels |
| 355 | Quintarah | Lemon | | 395 | Sherry | McDonald |
| 356 | Zipporah | Lesane | | 396 | Ebony D | McEntyre |
| 357 | Secipon | Lewia | | 397 | Bria | McGee |
| 358 | Nayshaw | Lewis | | 398 | Chardonnay | McGlothen |
| 359 | Wanda | Lightner | | 399 | Vernee | McInnis |
| 360 | Emily | Lincoln | | 400 | Tiffanee | McKenzie |
| 361 | Mekeita | Linder | | 401 | Marquita | McLean |
| 362 | David | Lineberry | | 402 | Topaz | McLenon |
| 363 | Costella | Little | | 403 | Shakeia | McLeod |
| 364 | Rashea M | Lockhart | | 404 | Syreetta S | McManes |
| 365 | Dianne | Long | | 405 | Rebeca | McManis |
| 366 | Imari | Lopez | | 406 | Crystal | McNeil |
| 367 | Paul | Lott | | 407 | Valerie M | McQueen |
| 368 | Michelle | Lylerly | | 408 | Shawanda | Meier |
| 369 | Cherelle | Lyles | | 409 | Shawanda | Meir |
| 370 | Stephanie | Maiorno | | 410 | Marqueta | Melton |
| 371 | Cynthia S | Malaki | | 411 | Allisa | Merinsky |
| 372 | Adrienne | Malcom | | 412 | Mary | Merrit |
| 373 | Elle | Maldonado | | 413 | Peggy | Mickle |
| 374 | Latoya | Malloy | | 414 | LeQuesha | Miller |
| 375 | Alyssa | Marquez | | 415 | Najab | Miller |
| 376 | Sherika | Marrow | | 416 | Christopher | Mitchell |
| 377 | Chandre | Marshall | | 417 | Faith | Mitchell |
| 378 | Jonathan | Marshall | | 418 | Monica | Mitchell |
| 379 | Denitra L | Martin | | 419 | Yakemia | Mitchell |
| 380 | Julie | Martin | | 420 | Shaquana | Mizell |
| 381 | Rhosonda | Marzette | | 421 | Toya | Moffitt |
| 382 | Rugayyah | Matin | | 422 | Victor | Mokoena |
| 383 | Rugayyah | Matin | | 423 | Johnelle | Montero |
| 384 | Jamie | Mayaka | | 424 | Attalah | Moore |
| 385 | Kitteria | Mayo | | 425 | Chaloyna M | Moore |
| 386 | Marcell | Mayorga | | 426 | Dara | Moore |
| 387 | Natasha L | McBee | | 427 | Selma | Moore |
| 388 | Elizabeth | McCann | | 428 | Tony | Morales |
| 389 | Nicole | McCann | | 429 | Sequita | Moreland-Clark |
| 390 | Zemikia | McClease | | 430 | Nicholas T | Moretti- Diaz |
| 391 | John | McCloud | | 431 | Teresa D | Morey |

25

| 432 | Mitchell | Morris |
|-----|----------|--------|
| 433 | Natasha | Morris |
| 434 | Tia | Mosley |
| 435 | Tariq | Muhammad |
| 436 | Zahara | Muhammad |
| 437 | Zahara | Muhammad |
| 438 | Allison | Mullinix |
| 439 | Candice | Murray |
| 440 | Darlene | Murray |
| 441 | Novia | Najair-Lynch |
| 442 | Margie E | Neville |
| 443 | Mary | New |
| 444 | Shanece | Newton |
| 445 | Desiree | Nichols |
| 446 | Samara N | Nurse |
| 447 | Leshawn | Oblechina |
| 448 | Chukwvemeka | Okocha |
| 449 | Ayanna | Olds |
| 450 | Dionne | Olibrus |
| 451 | Jeanay | Oliver |
| 452 | Willette | Oliver |
| 453 | Sonia | Oneal |
| 454 | Carlotta | Osborne |
| 455 | Caitlin | O'Sullivan |
| 456 | Jeannete | Outlaw |
| 457 | Johny Jr | Overton |
| 458 | Trudy | Overton |
| 459 | Rachel | Owen |
| 460 | Gwendolyn | Owens |
| 461 | Lynell | Pace |
| 462 | Lolita | Padget |
| 463 | Frentrell | Palmer |
| 464 | Nancy | Pangilinan |
| 465 | Krisann | Parker |
| 466 | Shameika | Parker |
| 467 | Denita | Parks |
| 468 | Gwendolyn | Paschall |
| 469 | Dawn | Pearson |
| 470 | Alovnya | Perry |
| 471 | Nadin | Person |

| 472 | Latoria | Pettie |
|-----|---------|--------|
| 473 | Lakeisha | Phillips |
| 474 | Quimby | Phillips |
| 475 | Sandra | Pierce |
| 476 | Tiffany | Pierre |
| 477 | Marvina | Pigford |
| 478 | Fernanda | Plummer |
| 479 | Darnesha | Poke |
| 480 | Karen | Pritchett |
| 481 | Treasuera | Proctor |
| 482 | Aijuel | Redd |
| 483 | Erica | Reddings-Ray |
| 484 | Kimberly | Reynolds |
| 485 | Dana | Rice |
| 486 | Amanda | Richardson |
| 487 | Rolanda | Riley |
| 488 | Ira | Robertson |
| 489 | Tomika | Robertson -Sykes |
| 490 | Precious | Robinson |
| 491 | Ty'chi | Robinson |
| 492 | Leneisha E | Robinson |
| 493 | Nakeesha | Rollins |
| 494 | Kesha | Rose |
| 495 | Symone | Rose |
| 496 | Verna R | Roundtree |
| 497 | Britney | Salley |
| 498 | Tenesha | Saunders |
| 499 | Marlene | Saunders |
| 500 | Kasey | Saxon |
| 501 | Blanch M | Scott |
| 502 | Shemika | Scott |
| 503 | Natasha | Scott-Gordon |
| 504 | Linda L | Scruggs |
| 505 | Tiffany | Shirley |
| 506 | Amanda | Simmon-Fernandez |
| 507 | Kjinder K | Singh |
| 508 | Andrew | Smith |
| 509 | April | Smith |
| 510 | Karen | Smith |

26

**JA1890**

| | | | | | | |
|---|---|---|---|---|---|---|
| 511 | O'Lillian | Sow | | 551 | Anjelica | Turner |
| 512 | Amanda | Spencer | | 552 | Ma'Hagaine | Turner |
| 513 | Carol W | Spencer | | 553 | Quinnana | Turner |
| 514 | Sylvia | Spencer | | 554 | Sabrina | Turner |
| 515 | Nicole | Spinks | | 555 | Katia C | Tyler |
| 516 | Daisy | Spivey | | 556 | Tianna | Tyler |
| 517 | Ti | Starnes | | 557 | Brittany | Underhill |
| 518 | Tocarra | Steele | | 558 | Ashley | Vaughan |
| 519 | Jessica | Stephens | | 559 | Shekayla | Vaughan |
| 520 | Christie | Stewart | | 560 | Phillip | Vaughn |
| 521 | Jessica | Stewart | | 561 | Meaghan | Vega |
| 522 | Teisha | Stone | | 562 | Cherish | Vickers |
| 523 | Ashley | Straton | | 563 | Roslyn | Vincent |
| 524 | Trenika | Stringfield | | 564 | Katrina | Wade |
| 525 | Yvette | Strother | | 565 | Lakrisha | Wade |
| 526 | Deshona | Suggars | | 566 | Yolanda | Walker |
| 527 | Lanora | Sullivan | | 567 | Terelle | Wallace |
| 528 | Monique | Sumpter | | 568 | Carlise | Waller |
| 529 | Alexis N | Sutphin | | 569 | Morrel | Warren |
| 530 | Reshonn | Sutphin | | 570 | Tameka | Watford |
| 531 | Tiffany | Sutton | | 571 | Robyn | Watkins |
| 532 | Brooke | Swecker | | 572 | Taren | Watkins |
| 533 | Makeisha | Sykes | | 573 | Genea | Watson |
| 534 | Charell | Tabb | | 574 | Hope | Watson |
| 535 | Heather | Tallent | | 575 | Jazmine N | Watson |
| 536 | Latavia S | Tarpley | | 576 | Renea | Watson |
| 537 | Tasha | Tate | | 577 | Tiffany J | Watson |
| 538 | Shasha | Taylor | | 578 | Catherine | Weber |
| 539 | Devona | Tayor | | 579 | William | Wells |
| 540 | Lakisha | Tennessee | | 580 | Bianca | West |
| 541 | Ndeye | Thiam | | 581 | Bianna | West |
| 542 | Marquita | Thomas-Jones | | 582 | Nicole | West |
| 543 | Amanda D | Thurman | | 583 | Windy | West |
| 544 | Nneka | Tillman | | 584 | Berlinda | Westbrook |
| 545 | Iraida | Torres-Diaz | | 585 | Taree | Wharton |
| 546 | Shashownie | Townes | | 586 | Tamiko | White |
| 547 | Prentis | Townsend | | 587 | Amber L | White |
| 548 | Sierra | Townsend | | 588 | Donita | White |
| 549 | Aisha | Trogdon | | 589 | Rachel | Whitehead-Aremus |
| 550 | Paulette | Tucker | | | | |

27

**JA1891**

| | | | | | | |
|---|---|---|---|---|---|---|
| 590 | Elwood | Whitney | | 612 | Romeishia | Wilson |
| 591 | Varnyshia A | Whitsett | | 613 | Rhonda | Womack |
| 592 | Michelle | Wiggins | | 614 | Nicole | Wood |
| 593 | Tiffany | Wiliamson | | 615 | Latonya | Woodall |
| 594 | Brandie | Wilkerson | | 616 | Nakisha | Woodard |
| 595 | Karen | Williams | | 617 | Belinda | Woods |
| 596 | Alana | Williams | | 618 | Camia | Woods |
| 597 | Alberta | Williams | | 619 | Tiffany L | Worrel |
| 598 | Amanda | Williams | | 620 | Daphne | Worsley |
| 599 | Catrina | Williams | | 621 | Kimverly | Wray |
| 600 | Chershondra | Williams | | 622 | Andrea | Wright |
| 601 | Cynthia | Williams | | 623 | Daria | Wright |
| 602 | Emani | Williams | | 624 | Irene | Wright |
| 603 | Jakiea | Williams | | 625 | Lucie | Wright |
| 604 | Jamie | Williams | | 626 | Karen | Wynter |
| 605 | Kristy | Williams | | 627 | Amna | Yasin |
| 606 | Ladawnte | Williams | | 628 | Indya | Young |
| 607 | Lisa | Williams | | 629 | Muhamed | Young |
| 608 | Tamara | Williams | | 630 | Meagan | Younger |
| 609 | Koneika | Willis | | 631 | Mercy | Zinsou |
| 610 | Charmaine | Wilson | | 632 | Waade | Zonen |
| 611 | David | Wilson | | | | |

Plaintiff expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition of the following:

- Christine Kim 30(b)(6) Deposition Transcript dated February 28, 2019
  - 11:21-12:8
  - 12:3 - 8
  - 23:11-14
  - 24:4-25:16
  - 26:6 – 10
  - 27:6-23
  - 28:14-18
  - 36:21- 40:5
  - 70:21- 71:22
  - 72:7-19
- Lisa Ann Pitts Transcript dated January 23, 2019
  - 12:21- 13:5
  - 15:13-16:3
  - 20:9-19
  - 44:1-5
  - 44:13-17

- o 45: 18-20
- o 96:4-19
- o 100:1-10
- o 107:11-21
- o 114:4-11; 22-25
- Lisa Ann Pitts Transcript dated March 12, 2020
  - o 178:15-180:25

Plaintiff reserves the right to use additional deposition testimony any and all depositions taken in this matter as may be needed for purposes of impeachment or rebuttal.

29

### B. Defendants' Witnesses

Steadfast <u>expects</u> to call:

1.  Lisa Ann Pitts

2.  Christine Kim

3.  John Bredehoft, Esq.

4.  Bryan Jarrett

5.  Roxanne Adams

6.  Daseline Hall

7.  Sheila Silver

8.  Jon Kidder

9.  Ozey Thorpe

10. Penny Clark

11. Jamie Adames

12. Racharlotte Coates

13. Tarnicia Allen

14. Napoleon Alston

15. Leslie Boone

16. Tawanda Hall

17. Tasha Tate

18. Tanya Pettigrew-Iwumadi

19. Shonterrira Fulton

Steadfast <u>may also</u> call

20. Sherry Flournoy

21.   Ricki Huff

22.   Janice Kelly

23.   Ebony McEntyre

24.   Syreeta McManes

25.   Rugayyah Matin

26.   Piers Militiers

27.   Jasmine Smith

28.   Carol Spencer

29.   Tiffany Sutton

30.   Ryan Thompson

31.   Ashley Vaughan

32.   Windy West

33.   Ashely Stratton

34.   Ilisha Smith

35.   Dawn Wooten

36.   Teresa Morey

37.   Karentina Scott

38.   Alvaro Mazuera

39.   Designated Corporate Representatives(s): Nightingale Nursing Services

40.   Designated Corporate Representatives(s): Essential Medical Staffing

41.   Designated Corporate Representatives(s): WTS Staffing

42.   Designated Corporate Representatives(s): Brian Center Windsor

JA1895

43.   Designated Corporate Representatives(s): Charlottesville Health and Rehab

44.   Designated Corporate Representatives(s): Princess Anne Health and Rehab

45.   Custodian of Records and/or Technician Zira Technologies, Inc.

46.   Any witness called by the DOL

47.   Any witness for impeachment or rebuttal

48.   Any witness identified by the DOL on their 26(a)(3) disclosures, including any nurses listed on "Schedule A" to the Complaint should the need arise.

Defendant expects to present by deposition the following:

- Alvaro Mazuera's deposition- page/line numbers:
  3/8-12
  12/13-17
  22/19 – 23/6
  29/5-8
  30/2-8
  31/3-7
  39/12 – 40/9
  43/9-21
  48/9-15
  52/7-22
  57/2-16
  57/22-23
  58/2-9
  71/16-22
  72/2-7
  72/20-23
  74/1-8
  75/22-25
  81/2-16
  82/2-8
  82/13-20
  85/13-19
  87/19-21

32

**JA1896**

87/24 – 88/1
92/21-23
93/18-21
95/3-6
99/10-21
106/7-15
108/1-9
193/5-9
196/10-20
203/3-9
206/1-5
206/19-23
207/11-15
207/22-25
208/23 – 209/3
219/7-14
219/18 – 220/3
220/19-23
221/21 – 222/9
222/14-25
224/4-19
224/25 – 225/6
225/7-14
225/20 – 226/2
226/3-19
227/2-9
228/17-20
228/22 – 229/6
237/11-14
238/2-6
239/9-12
243/1-10
267/21-22
269/4-7
269/11-17
289/11 – 290/7

Defendant reserves the right to use additional deposition testimony any and all depositions taken in this matter as may be needed for purposes of impeachment or rebuttal.

33

**JA1897**

## VI. IDENTIFICATION OF WITNESSES TO WHOM THERE ARE UNRESOLVED OBJECTIONS

### A. Plaintiff's Witnesses

DOL expects to call:

| No. | Witness | Objection | |
|---|---|---|---|
| 1. | Alvaro Mazuera | Objection to the extent Mr. Mazuera will attempt to testify to hearsay statements from individuals he interviewed. | *Objections to be made at trial* |
| 4. | John Bredhoft, Esq. | Objection; to the extent that counsel seeks testimony outside the limited waiver of privilege on the issue of good faith compliance based on reasonable reliance on advice of counsel | *Objections to be made at trial* |
| 5. | Peyton Lex- First Choice Nursing Home | Relevance | *Obj. withdrawn* |
| 6. | Designated Corporate Representative(s) – Consulate Heath Care | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | *Objection moot* |
| 7. | Designated Corporate Representative(s) – Medical Facilities of America | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | *based on π's representation* |
| 8. | Designated Corporate Representative(s) – Princess Anne H&R Ops Limited Partnership t/a Princess Anne Health and Rehabilitation Center | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | *that each of these witnesses will not be called upon to testify regarding industry standards or custom* |
| 9. | Designated Corporate Representative(s) – Armor Correctional Health Services, Inc. | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | |
| 10. | Designated Corporate Representative(s) – Atlantic Shores | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | |

| | | | |
|---|---|---|---|
| | Cooperative Association, Inc. d/b/a Atlantic Shores Living | | |
| 11. | Designated Corporate Representative(s) – Concordia Care and Rehabilitation (multiple facilities) | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | |
| 12. | Designated Corporate Representative(s) – Liberty Healthcare Corporation (multiple facilities) | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | |
| 13. | Designated Corporate Representative(s) – Marquis Health Services (multiple facilities) | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | |
| 14. | Designated Corporate Representative(s) – Trio Healthcare (multiple facilities) | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | |
| 16. | Any witnesses needed for rebuttal | Objection to the extent the/these person(s) are individuals known to Plaintiffs as people with knowledge yet not disclosed. | Deferred |
| 17. | Expected Schedule A Individuals (105 total) | Objection, this list does not sufficiently identify the witnesses that Plaintiff is actually going to call, or, in the alternative, the list is unnecessarily cumulative. | Objection moot as all witnesses are previously listed |

DOL may also to call:

| | | | |
|---|---|---|---|
| 1. | Arlene Klinedinst, Esq. | Objection, relevance, this witness has been withdrawn by Defendants for their advice of counsel defense; also object to the extent that counsel seeks testimony outside the limited waiver of privilege on the issue of good faith compliance based on reasonable reliance on advice of counsel. | Overruled, any specific objections to be made at trial |

35

**JA1899**

| | | | |
|---|---|---|---|
| 3. | Designated Corporate Representative(s) – Nurse Springs | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | Objection withdrawn |
| 4. | Designated Corporate Representative(s) – Favorite Healthcare | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | Objection withdrawn |
| 5. | Designated Corporate Representative(s) – We Care for Yours | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | Objection withdrawn |
| 6. | Designated Corporate Representative(s) – Avante (multiple facilities) | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | Same as #6-14 |
| 7. | Designated Corporate Representative(s) – Bon Secours (multiple facilities) | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | " |
| 8. | Designated Corporate Representative(s) – Bedford County Nursing Home | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | " |
| 9. | Designated Corporate Representative(s) – Independent Living (multiple facilities) | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | " |
| 10. | Designated Corporate Representative(s) – Maximus Healthcare Group (multiple facilities) | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | " |
| 11. | Designated Corporate Representative(s) – Ivy Healthcare Group (multiple facilities) | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | " |
| 12. | Designated Corporate Representative(s) – Saber Healthcare Group (multiple facilities) | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | " |
| 13. | Designated Corporate Representative(s) – SavaSeniorCare (multiple facilities) | Objection; relevance, to the extent that the witness is called upon to testify to industry custom | " |

36

**JA1900**

| 14. | Maybe Schedule A Individuals (597 total) | Objection, this list does not sufficiently identify the witnesses that Plaintiff may call, or, in the alternative, the list is unnecessarily cumulative. | *Same as # 17* |

### B. Defendants' Witnesses

| 4. | Bryan Jarrett | Fed. R. Civ. P. 37(c)(1), Defendants failed to identify this individual in their Rule 26(a)(1) initial disclosures and their answers to Plaintiff's Interrogatories; Relevance, Fed. R. Evid. 402, 403; Lack of Personal Knowledge, Fed. R. Evid. 602; Ultimate Issue, Fed. R. Evid. 704, Hearsay, Fed. R. Evid. 802; Deliberative process privilege | *Deferred* |
| 39. | Designated Corporate Representatives(s): Nightingale Nursing Services | Fed. R. Civ. P. 37(c)(1) - Defendants failed to timely identify this entity/individual in their Rule 26(a)(1) initial disclosures, their answers to Plaintiff's Interrogatories prior to close of discovery, or during depositions; Relevance, Fed. R. Evid. 402, 403; Lack of Personal Knowledge, Fed. R. Evid. 602; Opinion Testimony, Fed. R. Evid., 701; Evidence Ruling, Fed. R. Evid. 103 - See ECF Nos. 201 and 244 | *Deferred to individual substantive objections at trial* |
| 41. | Designated Corporate Representatives(s): WTS Medical Staffing | Relevance, Fed. R. Evid. 402, 403; Lack of Personal Knowledge, Fed. R. Evid. 602; Opinion Testimony, Fed. R. Evid., 701; Evidence Ruling, Fed. R. Evid. 103 - See ECF Nos. 201 and 244 | *Same as #39* |
| 45. | Custodian of Records and/or Technician Zira Technologies | Fed. R. Civ. P. 37(c)(1) - Defendants failed to timely identify this entity/individual in their Rule 26(a)(1) initial disclosures, their answers to Plaintiff's Interrogatories (I-11 and 12) prior to close of discovery, or during depositions; Relevance, Fed. R. Evid. 402, 403; Lack of Personal Knowledge, Fed. R. Evid. 602; Opinion Testimony, Fed. R. Evid., 701; Evidence Ruling, Fed. R. Evid. 103 - See ECF No. 244 | *Same as ruling on DX-75* |

37

**JA1901**

| | | Deposition Designation: WHI Alvaro Mazuera Deposition Testimony | This witness is available to testify at trial, therefore, Defendants may not present his testimony by deposition. *See* Fed. R. Civ. P. 32(a)(4). Additionally, "if a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts." Fed. R. Civ. P. 32(a)(6). | *Objection is moot as △ has disclosed deposition designations to which there is no objection, and △ does not intend to offer entire deposition* |

## VII. FACTUAL CONTENTIONS OF EACH PARTY

### A. Plaintiff's factual contentions

Plaintiff reserves the right to supplement, amend, or revise his factual contentions. Plaintiff also reserves the right to develop additional facts at trial.

Jurisdiction, Venue, and FLSA Coverage

1. Jurisdiction of this action is conferred upon the Court by Section 17 of the Fair Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. § 217, and by 28 U.S.C. §§ 1331 and 1345.

2. Since at least August 18, 2015, Steadfast has been a limited liability corporation with a place of business at 5750 Chesapeake Boulevard, Norfolk, Virginia 23513, and under the ownership of Lisa Ann Pitts.

3. Since at least August 18, 2015, Defendant Steadfast has provided medical personnel support services to healthcare facilities ("facilities" or client facilities"). However, it is not an employment agency.

4. Since at least August 18, 2015, Defendants have placed RNs, CNAs, and LPNs in healthcare facilities that are in need of nurses.

5. Since at least August 18, 2015, Steadfast employees have handled goods and supplies from states other than Virginia, such as providing staffing services for businesses

38

**JA1902**

located across state lines. Steadfast employees also process billing invoices using an out of state billing company.

6. Since at least August 18, 2015, Defendant Steadfast has had an annual gross volume of sales made or business done of not less than $500,000.00.

Defendant's Overtime Violations

7. The individuals listed Schedule A worked for Defendants at some point between August 18, 2015 and December 24, 2020.

8. The individuals listed Schedule A include individuals who worked as CNAs, LPNs, and RNs at some point between August 18, 2015 and December 24, 2020.

9. Defendant Steadfast compensated each of the individuals listed in Schedule A for work performed on behalf or for the benefit of Steadfast at some point between August 18, 2015 and December 24, 2020.

10. Since August 18, 2015, Defendants paid the individuals listed Schedule A their straight-time, hourly rate for all hours worked, including for any and all hours worked over 40 in a workweek.

11. Since August 18, 2015, Defendants have not paid the individuals listed Schedule A at a rate of one and one-half times their regular rate of pay for hours worked over 40 hours in a week.

12. Defendants knew that their overtime compensation practice was unlawful when the Department of Labor concluded its investigation on June 9, 2017.

13. Since June 10, 2017, following the conclusion of the Department of Labor's initial investigation, Defendants have not changed the practice of failing to pay employees, to include

39

individuals listed in Schedule A, a rate of one and one half times the regular rate for hours worked over 40 in a week.

14.  No exemptions apply to any of the individuals listed in Schedule A that would exempt them from Section 7 of the FLSA.

Back Wages[4]

15.  Steadfast's payroll summaries accurately identify the total hours individuals listed Schedule A worked each week from August 18, 2015 through December 24, 2020, as well as their gross weekly wages.

16.  Plaintiff used Steadfast's payroll summary to calculate overtime back wages for individuals listed Schedule A from August 18, 2015 through December 24, 2020.

17.  Plaintiff's back wage transcriptions, Plaintiff's Exhibits 21 and 22, accurately reflect the total hours worked each week by the individuals listed Schedule A from August 18, 2015 to December 24, 2020, as well as their gross weekly wages.

18.  Plaintiff calculated back wages by taking the individual's gross weekly wage, which appears on Steadfast's payroll summary, and dividing that amount by the hours worked, which also appears on the payroll summary. This resulted in the individual's regular rate of pay. Plaintiff then multiplied the regular rate of pay by the hours worked over 40 in that workweek and multiplied the resulting number by .5 to account for the fact that Steadfast paid these individuals straight time for overtime, resulting in the total back wages owed to the individual for that particular workweek.

---

[4] Defendants' payroll record show they have continued to pay straight time for overtime. In light of Defendant's continued violation of the Section 7, Plaintiff will update the back wage computations following receipt of additional payroll records produced by Defendants.

19.  Plaintiff's aforementioned methodology for calculating back wages is not in dispute.

20.  Defendants are not entitled to any offsets or credits that would reduce the amount due to individuals listed Schedule A.

Liquidated Damages

21.  Defendants did not consult any personnel within the Department of Labor to determine whether their compensation and overtime policies, which have been in effect since August 18, 2015, complied with the FLSA.

22.  Prior to the subject Wage and Hour investigation, Defendants did not consult an attorney to determine whether their compensation and overtime policies, which have been in effect since August 18, 2015, complied with the FLSA.

23.  The parties stipulate to the authenticity of Plaintiff's Exhibit 21 and 22  and that said exhibit may be offered in evidence.

Recordkeeping Violations

24.  Between August 18, 2015 and present, Defendants failed to accurately record total premium pay for overtime and total additions or deductions form wages each pay period, as required pursuant to 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2.

25.  At some point between August 18, 2015 and June 9, 2017, Defendants failed to combine hours worked by one non-exempt employee working dual jobs when calculating total hours worked during the workweek.

Lisa Pitts / Employer

26.  Lisa Pitts has maintained 100% ownership interest in Medical Staffing of America, LLC since at least August 2015.

27.  Lisa Pitts is responsible for the day-to-day operations of Defendant Medical Staffing

41

of America, LLC, including determining the rate and method of pay for individuals listed in

Schedule A, hiring and firing of all employees, controlling conditions of employment,

maintaining employment records for office staff and all individuals listed in Schedule A,

including but not limited to, tax forms, applicable licenses, and employment applications,

supervising employees, and assuring that individuals listed in Schedule A fulfilled Steadfast's

contractual obligations at each facility which Steadfast had a contract.

Employee Status

28.   Since August 18, 2015, individuals listed in Schedule A who applied to work for

Defendants completed an employment application which sought, among other things,

employment history, skill set, and references.

29.   Defendants also required individuals listed in Schedule A to undergo and pass

background checks and drug tests – which Steadfast paid for – prior to working with Steadfast.

30.   As part of the onboarding process, Steadfast provided in-service training on topics

such as Abuse and Neglect, the Health Insurance Portability and Accountability Act, and Sexual

Harassment.

31.   Defendants misclassified the individuals listed in Schedule A as independent

contractors.

32.   Since August 18, 2015, Defendants exerted significant control over the individuals

listed in Schedule A, at the level expected of an employer-employee relationship.

33.   Since August 18, 2015, the individuals listed in Schedule A did not have

opportunities for profit or loss dependent on their managerial skill.

34.   Since August 18, 2015, the individuals listed in Schedule A did not invest in

equipment or material, or in his/her employment of other workers.

42

35. Since August 18, 2015, the individuals listed in Schedule A did not perform work that required a high degree of skill.

36. Since August 18, 2015, Defendants' work relationship with the individuals listed in Schedule A was not limited to a specific period of time. Rather than a relationship of a set period, Defendants' relations with the individuals listed in Schedule A was permanent in nature.

37. Since August 18, 2015, the individuals listed in Schedule A rendered services that were an integral part of Defendants' business.

38. Since August 18, 2015, the individuals listed in Schedule A have not been not able to negotiate their hourly rates of pay with Defendants.

39. Since August 18, 2015, the individuals listed in Schedule A have not been able to create their own schedules with Steadfast.

40. Since August 18, 2015, Steadfast's clients, i.e., healthcare facilities with which Steadfast contracted, have paid Defendants a set hourly rate for hours worked by the individuals listed in Schedule A.

41. Defendants did not pay that same set hourly rate to individuals listed in Schedule A. Instead, Defendants retained a percentage of that hourly rate.

42. Defendants required the individuals listed in Schedule A to track their hours when working at Defendants' client facilities using timesheets. Steadfast created the timesheets used by the individuals listed in Schedule A.

43. The client facilities did not require the individuals listed in Schedule A to complete timesheets for compensation, nor were the facilities involved in any compensation issues between Steadfast and the individuals listed in Schedule A. Rather, the facilities required Steadfast to submit invoices detailing the total hours worked by Steadfast employees for the sole

43

**JA1907**

purpose of compensating Steadfast for services rendered.

44. Since August 18, 2015, Defendants were solely responsible for compensating the individuals listed in Schedule A for their work.

45. Steadfast paid individuals listed in Schedule A from their own accounts, rather than directly from the client facilities, or an escrow account.

46. Since August 18, 2015, Steadfast has required the individuals listed in Schedule A to notify the company when they wanted to take time off or were sick and could not work or complete a shift.

47. Since August 18, 2015, the individuals listed in Schedule A could only increase his/her wages by working more hours.

48. Since August 18, 2015, Defendants have not allowed the individuals listed in Schedule A to hire other nurses, employees or contractors to work for them at Defendants' clients' facilities.

49. Since August 18, 2015, the individuals listed in Schedule A have not owned their own businesses and have not advertised their services in any way.

50. Defendants have paid the individuals listed in Schedule A an hourly rate since August 18, 2015.

51. Since August 18, 2015, "Medical Staffing of America" appears on the paystubs and earnings statements of the individuals listed in Schedule A.

52. Since August 18, 2015, Lisa Pitts has been responsible for disciplining the individuals listed in Schedule A. If a client facility had an issue with an individuals listed in Schedule A regarding tardiness, conduct and other similar issues, the facility contacted Defendant Pitts to address the disciplinary issue with the employee directly.

44

**JA1908**

53. Since August 18, 2015, Defendants have not permitted the individuals listed in Schedule A to work for Steadfast's competitors without first obtaining express written permission from Steadfast.

54. Between August 18, 2015 and present, individuals listed in Schedule A who were employed as CNAs, LPNs and RNs, did not exercise independent judgment. These employees performed the same day-to-day activities typical of employees performing the same work in the medical industry. These employees handled and passed out medications, cared for patients, treated wounds, monitored patients, and took notes. The contracts between Steadfast and the facilities dictated the services they would provide.

55. Between August 18, 2015 and present, the individuals listed in Schedule A were employees as defined by 29 U.S.C. § 203(e)(1).

Damages[5]

56. Defendants owe back wages for violating Section 7 of the Act between August 18, 2015 and December 24, 2020 in the amount of $1,828,295.08.

57. Defendants owe liquidated damages for violating Section 7 of the Act between August 18, 2015 and December 24, 2020 in the amount of $1,828,295.08.

### B. Defendants' factual contentions

1. Steadfast was formed in 2015. Its sole owner is Lisa Pitts. Steadfast employs approximately one dozen office staff workers, who assist Ms. Pitts with the administration of the business.

---

[5] Defendants' payroll record show they have continued to pay straight time for overtime. In light of Defendant's continued violation of the Section 7, Plaintiff will update the back wage computations following receipt of additional payroll records produced by Defendants.

45

2.      Steadfast operates a registry for independent, licensed nurses to select from available short-term or "as needed" opportunities to provide nursing services at various hospitals and nursing homes.

3.      Steadfast's registry is comprised of Licensed Practical Nurses (LPNs), Certified Nursing Assistants (CNAs), and Registered Nurses (RNs).

4.      Prior to being eligible to select jobs in Steadfast's registry, nurses must undergo a background check, which includes confirming that the nurse is licensed in the Commonwealth of Virginia, passing a drug screening and tuberculosis test, and signing a HIPPA confidentiality form. Nurses also complete independent contractor agreements.

5.      Once on the registry, the nurses choose how often, when, and where they work. To do this, nurses typically reach out to a "scheduler" at Steadfast and ask what shifts are available or provide their interest and availability. Other times, Steadfast will send out an email blast about available jobs to eligible nurses, or staffing coordinators will reach out by phone to nurses about available shifts and let them choose if, when, and where they want to work. More recently, Steadfast has begun using a software scheduling application by Zira Technologies designed to replace its call center model that permits facilities to post jobs to the scheduling app and the nurses to login and accept available postings through the same app.

6.      The total number of hours a nurse works at a facility during a particular pay period are tracked through timesheets, and nurses are responsible for maintaining and submitting their own timesheets so that they can get paid. Once filled out by a nurse, timesheets must be approved and signed by a specific staff member at the facility – typically the administrator, Director of Nursing, or Unit Manager. Steadfast does not approve or sign off on any nurses' timesheets, and the facility must sign off on a nurse's timesheet before it's submitted to Steadfast. The Company's

46

only involvement is receiving the timesheet from the nurse, sending it to the facility for approval, and then paying the nurse for her work.

7.     The nurses, not Steadfast, control their schedule. Nurses choose how often, when, and where they work. The nurses are free to choose what, if any, shifts they would like to work, how many days a week, and the particular hours. As independent contractors, Nurses enjoy the freedom to work only when and if they want to work with the opportunities offered by Steadfast.

8.     Steadfast never assigns any particular shifts to nurses, and the nurses are never required to accept an available shift or work any set or "minimum" number of hours.

9.     Nurses are not required to request time off, seek permission, or give notice for leave; nor are they required to schedule their unavailability with Steadfast. Some nurses take extended leaves from the registry but continue to remain on the registry to take the occasional shift for extra money. Some nurses listed on Schedule A have worked a single shift in the Registry and Steadfast never heard from the nurse again.

10.    The Schedule A nurses also work full time jobs as W-2 employees for hospitals or other medical facilities, they accept jobs in nursing registries that compete with Steadfast, and some of the nurses have even started their own registry to compete for the same pool of facility contracts for which Steadfast competes.

11.    The pay rates for the nurses are dependent on the nurses' licensure (CNA, LPN, RN), and whether the job is at a skilled facility and the facility's demand for additional staff. The nurses are free to negotiate their rates, and some of the nurses do just that.

12.    Steadfast does not "train" the nurses or even provide them with any sort of handbook. Instead, to the extent the nurses receive orientation or training, it comes from the facilities, not Steadfast. Facilities may also provide the nurses with a packet or orientation to share

47

the facility's rules and policies.

13.    All work performed by the nurses who participate in Steadfast's registry is performed at the facilities, not Steadfast's office. And no one from Steadfast is on-site at the facilities where the nurses perform their work.

14.    Since all work is performed at the facility, once a contractor accepts a certain job, the facility provides nurses with the rules and policies of the facility. Steadfast doesn't supervise or control the nurses in the performance of their work. Rather, the nurses must follow the facility chain of command.

15.    Steadfast also does not control the nurse's activities or tell them how to perform their jobs as nurses. Steadfast has never provided any nurses with performance reviews and does not otherwise evaluate the performance of the nurses.

16.    Because Steadfast does not "hire" nurses and instead simply places them on its registry, Steadfast cannot "fire" those nurses. Instead, if the nurse's work performance is not meeting the facility's standards, the facility will merely put a "do not return" next to the nurse's name. And, in more serious instances, the facility refers the nurse to the Board of Nursing.

17.    Nurses are also responsibility for providing their own equipment, and the equipment required for each job is dictated by the facility, not Steadfast. In most cases, the "standard equipment" that nurses normally must bring with them to the facility includes scrubs, thermometer, pulseox, blood pressure cuffs, and stethoscopes.

18.    Nurses on Steadfast's registry must obtain and maintain their own licensure within the Commonwealth of Virginia.

19.    Steadfast does not restrict nurses from working for anyone else, including competitive registries. Similarly, many registry nurses simultaneously work as full or part-time

48

employees for healthcare providers.

20.     Nurses have no set schedule and can work as little or as much as they like. Indeed, many nurses' schedules fluctuate greatly from week to week, month to month, or year to year. And, while some nurses do regularly work shifts through the registry, that is only a small portion of the nurses. Many nurses work one pay period or a few in a row and then never work another shift. In fact, most nurses use the registry to pick up a few shifts here and there to supplement other income, so they'll take shifts throughout the year but only every few weeks.

21.     On the advice of counsel, Steadfast classified all of the nurses on the registry as independent contractors and has continued to do so since the initiation of the Secretary's investigation based on advice of counsel and the DOL's own guidance concerning registries.

## VIII.   TRIABLE ISSUES AS CONTENDED BY EACH PARTY

### A.  *Plaintiff's Triable Issues*

1.     Whether Defendant Lisa Pitts is an "employer" under Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and is therefore individually jointly and severally liable for the violations of the FLSA, along with Defendant Medical Staffing of America, LLC.

2.     Whether Steadfast is a covered enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

3.     Whether the individuals listed in Schedule A "suffered to work" for Defendants and, therefore, are employees as defined by 29 U.S.C. § 203.

4.     Whether Defendants Lisa Pitts and Medical Staffing of America, LLC d/b/a Steadfast Medical Staffing (collectively, the "Defendants") violated the Section 7 overtime requirements of the FLSA, 29 U.S.C. § 207(a)(l), by failing to pay employees, including RNs, CNAs and LPNs, an overtime premium at a rate of at least one and one-half times their regular

49

rates.

5.    Whether Defendants Lisa Pitts and Medical Staffing of America, LLC d/b/a Steadfast Medical Staffing (collectively, the "Defendants") willfully violated the Section 7 overtime requirements of the FLSA, 29 U.S.C. § 207(a)(l), by failing to pay workers, including RNs, CNAs and LPNs, overtime at a rate of at least one and one-half times their regular rate.

6.    Whether Defendants Lisa Pitts and Medical Staffing of America, LLC d/b/a Steadfast Medical Staffing's violation of Section 7 of the FLSA resulted in back wages totaling $1,828,295.08 owed to 701 individuals listed in the Schedule A between August 18, 2015 and December 24, 2020.[6]

7.    Whether Defendants are liable for liquidated damages totaling $1,828,295.08, as a result of Defendants Lisa Pitts and Medical Staffing of America, LLC d/b/a Steadfast Medical Staffing's violation of Section 7 of the FLSA.

8.    Whether Defendants failed to maintain records of the number of hours the individuals listed in Schedule A worked each day and workweek from August 18, 2015 to June 9, 2017, in violation of 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2.

9.    Whether Defendants willfully failed to maintain records of the number of hours the individuals listed in Schedule A worked each day and workweek after June 9, 2017, in violation of 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2.

10.    Whether Defendants failed to combine hours worked by one non-exempt employee working dual jobs when calculating total hours worked during the workweek, in violation of 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2.

---

[6] As Defendants payroll records confirm they continued to pay straight time for overtime, Defendants are liable for continuing violations up to present.

11.    Defendants failed to accurately record total premium pay for overtime and total additions or deductions form wages each pay period, in violation of 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2.

12.    Whether Defendants' violations warrant injunctive relief.

    *B. Defendants' Triable Issues*

1.    Whether the individuals listed on Schedule A are independent contractors and therefore not subject to the overtime requirements listed in the FLSA, 29 U.S.C. § 207(a)(1).

2.    Only if liability is found, whether Defendants acted in good faith in treating the individuals listed on Schedule A to the Complaint as independent contractors.

3.    Only if liability is found, whether such violation was willful.

Respectfully submitted,

Elena S. Goldstein
Deputy Solicitor of Labor

Oscar L. Hampton III
Regional Solicitor

Samantha N. Thomas
Associate Regional Solicitor

Adam F. Welsh
Regional Counsel for Wage Hour

/s/ Ryma Lewis
Ryma Lewis (VSB No. 83322)
Senior Trial Attorney
lewis.ryma@dol.gov

/s/ Chervonti Jones

51

**JA1915**

Chervonti Jones
Trial Attorney
*appearing pro hac vice*
jones.chervonti.j@dol.gov

/s/Mohamed Seifeldein
Mohamed Seifeldein
Trial Attorney (VSB No. 84424)
Seifeldein.mohamed.e@dol.gov

U.S. DEPARTMENT OF LABOR
Attorneys for Plaintiff

Date:  March 8, 2021

By: /s/ *Christopher D. Davis*
Joshua L. Jewett (VSB No. 76884)
Christopher D. Davis (VSB No. 74809)
Julia A. Rust (VSB No. 87270)
Aaron D. Siegrist (VSB No. 91072)
Pierce / McCoy, PLLC
101 West Main Street, Suite 101
Norfolk, VA 23510
Phone: (757) 216-0226
Fax: (757) 257-0387
jjewett@piercemccoy.com
chris@piercemccoy.com
julia@piercemccoy.com
asiegrist@piercemccoy.com

*Counsel for Defendants*

52

**JA1916**

LAWRENCE R. LEONARD
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
March 10, 2021

**JA1917**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| MARTIN J. WALSH, <br> SECRETARY OF LABOR, <br> UNITED STATES DEPARTMENT OF LABOR, <br><br>             Plaintiff, <br><br>        v. <br><br> MEDICAL STAFFING OF AMERICA, LLC, a limited <br> liability company,  d/b/a STEADFAST MEDICAL <br> STAFFING, and LISA ANN PITTS, individually and as <br> owner and officer of the aforementioned company, <br><br>             Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Case No. 2:18-cv-226 <br> ) <br> )    Case No. 2:19-cv-475 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**NOTICE OF FILING TENTH REVISED SCHEDULE A IN *STEADFAST II***

Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor,

hereby files the attached Revised Schedule A to the Complaint, ECF No. 1, in the *Steadfast II*

litigation (2:19-cv-475). Plaintiff filed his First Notice of Filing Revised Schedule A on March

17, 2020, which added employees Steadfast failed to pay overtime up to December 31, 2019.

After receiving payroll records from Defendants' payroll company, ADP, LLC ("ADP"),

which revealed new, additional employees who are entitled to back wages, Plaintiff filed his

Notice of Second Revised Schedule A on April 7, 2020. The Second Revised Schedule A

added employees whom Defendants failed to pay overtime up to February 14, 2020. At the

time of filing the Second Revised Schedule A, Defendants had failed to produce any payroll

or time records for the year 2020. Thus, the April 7, 2020, Second Revised Schedule A did not

include any employees Defendants failed to pay overtime after February 14, 2020. Defendants

then supplemented their discovery responses, which included payroll records up to July 31,

**JA1918**

2020. On September 2, 2020, Plaintiff filed his Third Revised Schedule A to account for employees Defendants hired and failed to pay overtime at some point between February 4, 2020, and July 31, 2020. ECF No. 252. On January 8, 2021, Plaintiff filed his Fourth Revised Schedule A to account for employees Defendants hired and failed to pay overtime at some point between July 2020, and September 25, 2020. ECF No. 256. On January 28, 2021 and February 3, 2021, Defendants supplemented their discovery responses and produced the 2020 Fourth Quarter Payroll detail and Payroll Summary Reports, which include records between September 2020 and December 28, 2020. On February 12, 2021, Plaintiff filed his Fifth Revised Schedule A to account for employees Defendants hired and failed to pay overtime at some point between September 2020, and December 28, 2020. ECF No. 257. On March 9, 2021, Defendants supplemented their discovery responses and produced Payroll Details and Payroll Summary Reports, which include records between December 29, 2020 and March 1, 2021. These records revealed additional new employees who are entitled to back wages and who should also be included in the Schedule A attached to the *Steadfast II* Complaint. Between May 7, 2021 and June 1, 2021, Defendants supplemented their discovery responses and produced Next Day Pay Records, which included time and pay records between February 2019 and December 2019, which had not been previously produced. These records revealed additional new employees who are entitled to back wages and who should also be included in the Schedule A attached to the *Steadfast II* Complaint. On July 1, 2021, Defendants supplemented their discovery responses and produced Payroll Details and Payroll Summary Reports, which include records between March 16, 2021 and June 21, 2021. Then, on July 12, 2021, Defendants supplemented their discovery responses and produced Next Day Pay Records, which included time and pay records between March 16, 2021 and June 21, 2021 which had not been previously produced. The records produced between July 1, 2021 and July 12, 2021 revealed additional

new employees who are entitled to back wages and who should also be included in the Schedule A attached to the *Steadfast II* Complaint. On July 27, 2021, Defendants supplemented their discovery responses and produced Payroll Details and Payroll Summary Reports, which include records between June 22, 2021 and June 28, 2021. These records revealed additional new employees who are entitled to back wages and who should also be included in the Schedule A attached to the *Steadfast II* Complaint. On August 23, 2021, Defendants supplemented their discovery responses and produced Next Day Pay Records, which Defendants previously withheld for November 2019 and October 2020. These records revealed additional new employees who are entitled to back wages and who should also be included in the Schedule A attached to the *Steadfast II* Complaint.

In filing the Notice of Tenth Revised Schedule A, Plaintiff relies upon Fed. R. Civ. P. 15 and case law that specifically states the Secretary is not required to seek leave of the Court to file a revised Schedule A. *See U.S. Dept. of Labor v. Fire & Safety Investigation Consulting Services, LLC*, No. 1:17-CV-25, 2018 WL 2065941, at *3 (N.D.W. Va. May 3, 2018) ("The allegations in the original complaint … were not confined to those employees specifically listed in Schedule A. … Therefore, there has been no attempt by the DOL to amend its complaint by filing a Revised Schedule A."); s*ee also Acosta v. Medical Staffing of America, LLC*, No. 2:18- cv-226, 2019 WL 4307867, at * 2 ("[A]s a general matter, the Secretary should be permitted to submit a Revised Schedule A without amending his complaint.").

The *Steadfast II* Complaint expressly reserves the right to amend the Schedule A based on Defendants withholding documents that would have permitted Plaintiff to identify employees adversely affected by Defendants' FLSA violations as alleged in *Steadfast II*:

> Plaintiff requested employment records from Defendants in order to readily identify all affected employees. Defendants have not provided these records. Accordingly, Plaintiff reserves the right to revise the

**JA1920**

Schedule A once these records are received.

*Steadfast II*, ECF No. 1, at ¶ 6, n. 1. The Complaint further states:

> Additional amounts of back wages and liquidated damages may also be owed to certain current and former employees of Defendants listed in the attached Schedule A for violations continuing after the filing of this Complaint, and may be owed to certain *current and former employees presently unknown to the Secretary for the period covered by this Complaint, who may be identified during this litigation and added to Schedule A.*

*Steadfast II*, ECF No. 1, at ¶ (2) (emphasis added). It also must be noted that the Schedule A

originally filed with the *Steadfast II* Complaint referenced unknown employees as Employee

1, Employee 2, Employee 3, etc.

In *Fire & Safety*, the Department of Labor ("DOL") filed a revised Schedule A –

without moving to amend the complaint – to add employee names that were not listed in the

first Schedule A. The employer objected to the revised Schedule A, arguing: "[B]y filing

Revised Schedule A, the DOL has essentially amended the complaint after motions for

summary judgment have been filed." 2018 WL 2065941, at *3. The Court rejected the

employers' objection, concluding, "The allegations in the original complaint, however, were

not confined to those employees specifically listed in Schedule A." *Id.*

> In addition to referencing "certain present and former employees listed in the attached Schedule A," the complaint indicated that back wages and liquidated damages may be due for "certain present and former employees presently unknown." ***Therefore, there has been no attempt by the DOL to amend its complaint by filing a Revised Schedule A***, and the Court **OVERRULES** the defendants' objection.

*Id.* (emphasis added). Thus, because the allegations in the complaint were unchanged and not

limited to Schedule A employees, adding names to the Schedule A did not result in an

amendment to the complaint. Accordingly, in *Fire & Safety* the DOL was not required to seek

leave from the court to revise the Schedule A.

In the present case, Plaintiff's Complaint contains language similar to that highlighted by the *Fire & Safety* court. *Steadfast II*, ECF No. 1 at ¶ (2). This language clearly encompasses "current and former employees presently unknown to the Secretary for the period covered by this Complaint, who may be identified during this litigation and added to Schedule A." *Id*. Moreover, the period covered by the Complaint includes "continuing after the filing of this Complaint." *Id*. Thus, like DOL in *Fire & Safety*, here, Plaintiff is not amending the *Steadfast II* Complaint by adding names to Schedule A, because the Complaint already accounted for the new employees listed in the Second Revised Schedule A. As such, Plaintiff filing the Second Revised Schedule A and linking it to the September 11, 2019 Complaint, without seeking leave of the Court under Fed. R. Civ. P. 15, is entirely appropriate. *Medical Staffing of America, LLC*, 2019 WL 4307867, at * 2 ("[T]he addition of employees to a Revised Schedule A [is] a 'purely technical matter.'"), citing *Reich v. Great Lakes Collection Bureau*, 176 F.R.D. 81-85 (W.D.N.Y. June 27, 1997).

**JA1922**

Respectfully submitted,

Mailing Address:                    **UNITED STATES DEPARTMENT OF LABOR**

U.S. Department of Labor            Seema Nanda
Office of the Regional Solicitor    Solicitor of Labor
201 12th Street South
Suite 401                           Oscar L. Hampton III
Arlington, VA 22202-5450            Regional Solicitor
(202) 693-9369(voice)
(202) 693-9392 (fax)                Samantha N. Thomas
lewis.ryma@dol.gov                  Associate Regional Solicitor
seifeldein.mohamed.e@dol.gov
jones.chervonti.j@dol.gov           */s/ Ryma Lewis*
                                    Ryma Lewis (Bar No. 83322)
                                    Senior Trial Attorney

August 25, 2021                     /s/ Mohamed Seifeldein
                                    Mohamed Seifeldein (Bar No. 84424)
                                    Trial Attorney

                                    /s/ Chervonti Jones
                                    Chervonti Jones
                                    Trial Attorney
                                    *appearing pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2021, a true and correct copy of the forgoing

Plaintiff's Notice of Filing Tenth Revised Schedule A in *Steadfast II* was electronically filed

with the Clerk of Court using the CM/ECF system, which will automatically notify

Defendants by electronically serving a copy to Defendants' counsel:

Joshua J. Jewett, jjewett@piercemccoy.com
Julia A. Rust, julia@piercemccoy.com
Pierce/McCoy PPLC
101 W. Main St., Suite 101
Norfolk, VA 23510

/s/ Ryma Lewis
Ryma Lewis

**JA1923**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| MARTIN J. WALSH, <br> SECRETARY OF LABOR, <br> UNITED STATES DEPARTMENT OF LABOR, <br><br> Plaintiff, <br><br> v. <br><br> MEDICAL STAFFING OF AMERICA, LLC, a limited liability company,  d/b/a STEADFAST MEDICAL STAFFING, and LISA ANN PITTS, individually and as owner and officer of the aforementioned company, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 2:18-cv-226<br>)<br>)  Case No. 2:19-cv-475<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Tenth Revised Schedule A**

| | First Name | Last Name |
|---|---|---|
| 1 | Abigail | Conner |
| 2 | Ada | Rodgers |
| 3 | Adrienne | Malcolm |
| 4 | Ahley | Goggins |
| 5 | Aijuel | Redd |
| 6 | Aisha | Hodges |
| 7 | Aisha | Jabber |
| 8 | Aisha | Trogdon |
| 9 | Aishia | Patterson |
| 10 | Akea | Jefferson |
| 11 | Akeya | Payne |
| 12 | Akirra | White |
| 13 | Alanna | Williams |
| 14 | Alayzhia | Graham |
| 15 | Alberta | Williams |
| 16 | Alesha | Bradshaw |
| 17 | Alexandria | Blanding |
| 18 | Alexis | Coates |
| 19 | Alexis | Sutphin |
| 20 | Alisha | Cunningham |

**JA1924**

| 21 | Aliyah | Clements |
|----|--------|----------|
| 22 | Allison | Mullinix |
| 23 | Alliyah | Gaston |
| 24 | Alvina | Ward |
| 25 | Alvonya S | Perry |
| 26 | Amanda | Fernandez |
| 27 | Amanda | Leake |
| 28 | Amanda | Lent |
| 29 | Amanda | Richardson |
| 30 | Amanda | Simon-Fernandez |
| 31 | Amanda | Spencer |
| 32 | Amanda | Thurman |
| 33 | Amanda | Williams |
| 34 | Amaya | Irby |
| 35 | Amber L | White |
| 36 | Amna | Yasin |
| 37 | Amy | Williams |
| 38 | Ana | Aquino |
| 39 | Anaja | Cameron |
| 40 | Anastasia | Burns |
| 41 | Ancetra | Crocker |
| 42 | Andrea | Fitzgerald |
| 43 | Andrea | Haskins |
| 44 | Andrea | Tirado |
| 45 | Andrea | Wright |
| 46 | Andrew | Smith |
| 47 | Angela | Boyce |
| 48 | Angela | Chargois |
| 49 | Angela | Hart |
| 50 | Angela | Thompson |
| 51 | Anissa | Bass |
| 52 | Anjelica | Turner |
| 53 | Ann | Glass |
| 54 | Anne | Cox |
| 55 | Anne | Eng |
| 56 | Antashia | Jones |
| 57 | Anthony | Gatewood |
| 58 | Antrina | Smith |
| 59 | April | Ingram |
| 60 | April | Poss |

**JA1925**

| 61 | April | Smith |
|---|---|---|
| 62 | Aquaya | Johnson |
| 63 | Archelle | Johnson |
| 64 | Arnel | Jean-Pierre |
| 65 | Ashelley | Franks |
| 66 | Ashlee | Starks |
| 67 | Ashley A | Davis |
| 68 | Ashley | Brooks |
| 69 | Ashley | Eubanks |
| 70 | Ashley | McClendon |
| 71 | Ashley | Meggie |
| 72 | Ashley | Renfrow |
| 73 | Ashley | Smith |
| 74 | Ashley | Straton |
| 75 | Ashley | Tate |
| 76 | Ashley | Vaughn |
| 77 | Ashley | Wesson |
| 78 | Asia | Campbell |
| 79 | Attache | Brown |
| 80 | Attalah | Moore |
| 81 | Aubrey | Carson |
| 82 | Aundre | Gardiner |
| 83 | Ayana | Olds |
| 84 | Ayanna | Figeroux |
| 85 | Bandetra | Confron |
| 86 | Barbara | Dawson |
| 87 | Barbara | Fields |
| 88 | Barbara | Hargrove |
| 89 | Baylee | Clark |
| 90 | Beatrice | Callinder |
| 91 | Belinda | Woods |
| 92 | Benisea | McCoy |
| 93 | Benita | Herring |
| 94 | Berlinda | Westbrook |
| 95 | Beverly | Hall-Davis |
| 96 | Bianca | Kelsey |
| 97 | Bianca | West |
| 98 | Blanch | Scott |
| 99 | Blannie | Eure |
| 100 | Blessing | Azubike |

**JA1926**

| 101 | Bonmeyoung | Kanla |
|-----|-----------|-------|
| 102 | Bonny | Denney |
| 103 | Brandi | Wilkerson |
| 104 | Brandie | Adams |
| 105 | Brandon | Carrila |
| 106 | Brandon | Chambers |
| 107 | Brandon | Drumwright |
| 108 | Brandy N | Bailey |
| 109 | Brandy | Brooks |
| 110 | Brandy | Hairston |
| 111 | Brandy | Hicks |
| 112 | Brandy | Plummer |
| 113 | Brenda | Cooper |
| 114 | Bria | East |
| 115 | Bria | Evans |
| 116 | Brian | Tate |
| 117 | Brianna | Gregory |
| 118 | Bristol | Johnson |
| 119 | Brittanee | Parsons |
| 120 | Brittany | Banks-Abrams |
| 121 | Brittany | Colquitt-Robinson |
| 122 | Brittany | Cornwell |
| 123 | Brittany | Farley |
| 124 | Brittany | Marshall |
| 125 | Brittany | Robinson |
| 126 | Brittany | Underhill |
| 127 | Brittney | Jackson |
| 128 | Brittney | Salley |
| 129 | Brittny | Brown |
| 130 | Brooke | Swecker |
| 131 | Brttany | Kennedy |
| 132 | Buddy | Thibeault |
| 133 | Burleson | Deloatch |
| 134 | Caithlyn | Jones |
| 135 | Callie | Gurganus |
| 136 | Camesha | Willis |
| 137 | Camia | Woods |
| 138 | Candace | Kimbrough |
| 139 | Candace | Murray |

4

**JA1927**

| 140 | Candice | Bolden |
|-----|---------|--------|
| 141 | Candis | Mcmullen |
| 142 | Capri | Stacy |
| 143 | Carilla | Brandon |
| 144 | Carlise | Waller |
| 145 | Carlotta | Osborne |
| 146 | Carnisha | Taylor |
| 147 | Carol | Robertson |
| 148 | Carol | Spencer |
| 149 | Carolyn | Mann |
| 150 | Cassandra | Walters |
| 151 | Catherine | Byrum |
| 152 | Catherine | Capobianchi |
| 153 | Catherine | Daniels |
| 154 | Catrina | Williams |
| 155 | Chakeria | Sykes |
| 156 | Chaloyna M. | Moore |
| 157 | Chandre | Marshall |
| 158 | Chanelle | Alston |
| 159 | Chaniqua | Brooks |
| 160 | Chante | Porter |
| 161 | Chantel | Ferguson |
| 162 | Chantella | Smith |
| 163 | Chardonnay A | McGlothen |
| 164 | Charell | Tabb |
| 165 | Charese | Nesbitt |
| 166 | Charita | Johnson |
| 167 | Charles | Curtis-Thomas |
| 168 | Charlette | Hayes |
| 169 | Charmaine | Wilson |
| 170 | Chavelle | Dickens |
| 171 | Chelsea | Bingham |
| 172 | Chelsea | Stanley |
| 173 | Chenora | Macon |
| 174 | Cherell | Atkins |
| 175 | Cherelle | Bryant |
| 176 | Cherelle | Johnson |
| 177 | Cherelle | Lyles |
| 178 | Cherice | Dyson-Taylor |
| 179 | Cherish | Vickers |

5

**JA1928**

| 180 | Cherry | Ferebee |
| 181 | Chershondra | Williams |
| 182 | Cheryl | Hall |
| 183 | Cheryl | Truys |
| 184 | Chevon | Kyle-Linder |
| 185 | Chikezie | Emeruem |
| 186 | Chris | Mitchell |
| 187 | Christie | Steward |
| 188 | Christina | Dawson |
| 189 | Christina | Merritt |
| 190 | Christine L | Kim |
| 191 | Christine | Agnew |
| 192 | Christine | McCary |
| 193 | Christopher | Hopson |
| 194 | Christopher | Mitchell |
| 195 | Christy | Smith |
| 196 | Chunita | Gray |
| 197 | Chu-Sun | Widger |
| 198 | Cierra | Jones |
| 199 | Claudia | Carson |
| 200 | Claudine | Edmund |
| 201 | CleLana | Bromel |
| 202 | Clintina | Deshazo |
| 203 | Colette | Brown |
| 204 | Cordero | Archie |
| 205 | Coretta | Rose |
| 206 | Costella | Fisher |
| 207 | Costella | Little |
| 208 | Courtney | Blakey |
| 209 | Courtney | Dorton |
| 210 | Courtney | Turner |
| 211 | Courtney-Hope | Draughn |
| 212 | Crystal | Campbell |
| 213 | Crystal | Davis |
| 214 | Crystal | Johnson |
| 215 | Crystal | Mcneill |
| 216 | Crystal | Overbey |
| 217 | Crystal | Sellers |
| 218 | Cynthia | Crew |
| 219 | Cynthia | Green |

6

**JA1929**

| 220 | Cynthia | Harvey |
|---|---|---|
| 221 | Cyntiha | Williams |
| 222 | D'Adrea | Ferguson |
| 223 | Daisy | Spivey |
| 224 | Dajah | Johnson |
| 225 | Dakeem | Bond |
| 226 | Dana | Rice |
| 227 | Daneesha | Lamb |
| 228 | Danielle | Boyd |
| 229 | Danielle | Burton |
| 230 | Daphine | Johnson |
| 231 | Daphne | Worsley |
| 232 | Dara | Moore |
| 233 | Darena | Mcrae |
| 234 | Daria | Wright |
| 235 | Darlene | Murray |
| 236 | Darnesha | Poke |
| 237 | Darron | Hathorn |
| 238 | Darshana | Johnson |
| 239 | Daseline | Hall |
| 240 | Dashannay | Allen |
| 241 | David | Bailey |
| 242 | David | Bullock |
| 243 | David | Douglas |
| 244 | David | Lineberry |
| 245 | David | Wilson |
| 246 | Dawn | Pearson |
| 247 | Dawn | Pittman |
| 248 | Dawn | Wooten |
| 249 | Dayla | Dunn |
| 250 | Deandria | Davis |
| 251 | Deborah | Djorgee |
| 252 | Deborah | Gauvin |
| 253 | Deborah | King |
| 254 | Debra | Bun-Kamara |
| 255 | Deidra | Flack |
| 256 | Deirdra | Richardson |
| 257 | Deja | Hudson |
| 258 | Dejaneke | Jones |
| 259 | Delia | Paige |

**JA1930**

| 260 | Delora | Deberry |
|-----|--------|---------|
| 261 | Denise | Arbuckle |
| 262 | Denise | Flowers |
| 263 | Denita | Parks |
| 264 | Denitra | Martin |
| 265 | Dequarius | Carter |
| 266 | Dequisha | Chandler |
| 267 | Dermisha | Hall |
| 268 | Deshauna | Catoe |
| 269 | Deshea | Brown |
| 270 | Desiree | Adkins |
| 271 | Desiree | Nichols |
| 272 | Desmond | Bell |
| 273 | Desrine | Smith |
| 274 | Destini | Eldridge |
| 275 | Destiny | Chamblin |
| 276 | Destiny | Henson |
| 277 | Destiny | Lyerly |
| 278 | Devona | Taylor |
| 279 | Deyonna | Bragg |
| 280 | Diamond | Taylor |
| 281 | Diana | Morales |
| 282 | Diane | McCray |
| 283 | Dianne | Long |
| 284 | Dina | Massey |
| 285 | Dionne | Olibrus |
| 286 | Dominique | Smith |
| 287 | Doneka | Lawerence |
| 288 | Donita | Church |
| 289 | Donita | White |
| 290 | Donna | Highter |
| 291 | Donna | Randolph |
| 292 | Dytania | Collins |
| 293 | Earlene | Boone-Hill |
| 294 | Eashia | Middlebrooks |
| 295 | Eboni D. | McEntyre |
| 296 | Ebonie | Gray |
| 297 | Ebony | Bonaparte |
| 298 | Ebony | Johnson |
| 299 | Edna | Hall |

8

**JA1931**

| 300 | Elina | Dryden |
| 301 | Elizabeth | Bandy |
| 302 | Elizabeth | Cranston |
| 303 | Elizabeth | Jenkins |
| 304 | Elizabeth | McCan |
| 305 | Elle | Maldonado |
| 306 | Elois | Cruger |
| 307 | Elois | Cuffee-Smith |
| 308 | Elsie | Kum |
| 309 | Elwood | Whitney |
| 310 | Emani | Williams |
| 311 | Emily | Lincoln |
| 312 | Emma | Hill |
| 313 | Enid | White |
| 314 | Erica | Brown |
| 315 | Erica | Carter |
| 316 | Erica | Edwards |
| 317 | Erica | Gregory |
| 318 | Erica | Reddings-Ray |
| 319 | Erica | Spratley |
| 320 | Erin | Barnes |
| 321 | Estelle A. | Jackson |
| 322 | Faith | Mitchell |
| 323 | Fake | Beamon |
| 324 | Fatmata | Kanu |
| 325 | Faye | McCrae |
| 326 | Felicia | Anderson |
| 327 | Ferenia | Hearns |
| 328 | Fernanda | Plummer |
| 329 | Francine | Ramsey-Peart |
| 330 | Francine | Williams |
| 331 | Frentrell | Palmer |
| 332 | Galen | Henderson |
| 333 | Genea | Watson |
| 334 | Geneva | Edwards |
| 335 | Genivia | Steverson |
| 336 | Gladys | Charles |
| 337 | Gloria | Corona |
| 338 | Gloria | James |
| 339 | Gloria | Robinson |

9

**JA1932**

| 340 | Gold | Ekechukwu |
|-----|------|-----------|
| 341 | Grace | Howard |
| 342 | Greta | Green |
| 343 | Gwendolyn | Owens |
| 344 | Gwendolyn | Paschall |
| 345 | Happie | Harris |
| 346 | Harry | Carnegia |
| 347 | Heather | Huss |
| 348 | Heather | Tallent |
| 349 | Heaven | Lassiter |
| 350 | Helene | Hooper |
| 351 | Holly | McDaniels |
| 352 | Hope | Watson |
| 353 | Hubert | Adkins |
| 354 | Ieasha | Baxter |
| 355 | Ilisha | Smith |
| 356 | Imari | Lopez |
| 357 | India | Averett |
| 358 | India | Deloatch |
| 359 | India | Llano |
| 360 | Indya | Young |
| 361 | Ira | Robertson |
| 362 | Iraida | Torres-Diaz |
| 363 | Irene | Wright |
| 364 | Iyana | Lee |
| 365 | Izetta | Hale |
| 366 | Jackie | Johnson |
| 367 | Jacqueline | Davis |
| 368 | Jada | White |
| 369 | Jade | Chaplin |
| 370 | Jakiea | Williams |
| 371 | Jaleesa | Turk |
| 372 | Jalena S | Bouzidi |
| 373 | Jameane | Harris |
| 374 | Jameshia | Seabron |
| 375 | Jameyle | Jones |
| 376 | Jamie | Adames |
| 377 | Jamie | Hawkins |
| 378 | Jamie | Mayaka |
| 379 | Jamie | Williams |

**JA1933**

| 380 | Jamirah | Green |
| 381 | Janella | Davis |
| 382 | Janelle | McCalister |
| 383 | Janet | James |
| 384 | Janet | Lambert |
| 385 | Janet | Taylor |
| 386 | Janet | Watley |
| 387 | Janice | Josephs |
| 388 | Janice | Kelly |
| 389 | Jarissa | Jones |
| 390 | Jasmin | Johnson |
| 391 | Jasmin | Stroud |
| 392 | Jasmine | Jones |
| 393 | Jasmine | Rankin |
| 394 | Jasmine | Smith |
| 395 | Jasmine | Thompson |
| 396 | Jasmine | Watson |
| 397 | Javane | Barksdale |
| 398 | Jaylon | Johnson |
| 399 | Jazmine | Campbell |
| 400 | Jazmine | Johnson |
| 401 | Jeanay | Oliver |
| 402 | Jeanette | Outlaw |
| 403 | Jefferson | Whitney |
| 404 | Jem | Gulev |
| 405 | Jenay | Cradle |
| 406 | Jeneka | Williams |
| 407 | Jennay | Cradlle |
| 408 | Jennifer | Brown |
| 409 | Jennifer | Fraser |
| 410 | Jennifer | Winfield |
| 411 | Jericka | Hinton |
| 412 | Jerolyn | Robinson |
| 413 | Jeronica | Pettus |
| 414 | Jerri | Baugham |
| 415 | Jessica | Dean |
| 416 | Jessica | Ford |
| 417 | Jessica | Johnson |
| 418 | Jessica | Jones |
| 419 | Jessica | Martin |

**JA1934**

| 420 | Jessica | Phillips |
|-----|---------|----------|
| 421 | Jessica | Stephens |
| 422 | Jessica | Stewart |
| 423 | Joezette | Chapman |
| 424 | John | McCloud |
| 425 | Johnelle | Montero |
| 426 | Johnnese | Jones |
| 427 | Johnny | Overton Jr |
| 428 | Jolonda E | Able |
| 429 | Jonathan | Ikezue |
| 430 | Jonathan | Kidder |
| 431 | Jonathan | Marshall |
| 432 | Jonathan | Wood |
| 433 | Jonecca | Couser |
| 434 | Josefa | Rodriguez |
| 435 | Joseph | Johnson |
| 436 | Joshua E | Howell |
| 437 | Joy | Magnan |
| 438 | Joyce | Sharpe |
| 439 | Joyce | Watson-Sharpe |
| 440 | Juan | Simmons |
| 441 | Judith | Drake |
| 442 | Judity | Buchanan |
| 443 | Jules | Bolden |
| 444 | Julia | Mcbride |
| 445 | Julie | Johnson |
| 446 | Julie | Martin |
| 447 | Kaavya | Shukla |
| 448 | Kaeshia | Coles |
| 449 | Kaleigh | Pittman |
| 450 | Kamirah | Harris |
| 451 | Kandice | Williams |
| 452 | Kaneesha | Cherry |
| 453 | Kaneisha | Hamlett |
| 454 | Kanesha | Dudley |
| 455 | Kanikka | Demelo |
| 456 | Kareen | Grantt |
| 457 | Karen | Harris |
| 458 | Karen | Johnson-Reason |
| 459 | Karen | Pritchett |

**JA1935**

| 460 | Karen | Reams |
|---|---|---|
| 461 | Karen | Smith |
| 462 | Karen | Wynter |
| 463 | Karentina | Scott |
| 464 | Karessa | Gray |
| 465 | Karonna | Felton |
| 466 | Karren | New |
| 467 | Kasey | Saxon |
| 468 | Kashawnda | Brown |
| 469 | Katherine | Kirby |
| 470 | Katia | Tyler |
| 471 | Katriah | Kenebrew |
| 472 | Kawanna | Wilkins |
| 473 | Kayla | Baker |
| 474 | Kayla | Cameron |
| 475 | Kayla | Dibler |
| 476 | Keimia | Beavers |
| 477 | Keisha | Gregory |
| 478 | Kelli | Register |
| 479 | Kemeesha | White |
| 480 | Kenya | Boone |
| 481 | Kenya | Taylor |
| 482 | Kesha | Rose |
| 483 | Kevin | Delleh |
| 484 | Keyana | Arrington |
| 485 | Keyshae | Simmons |
| 486 | Khiyla | Blackman |
| 487 | Kiana | Best |
| 488 | Kiana | Dillahunt |
| 489 | Kiara | Jamison |
| 490 | Kihana | Sanders |
| 491 | Kimberley | Wray |
| 492 | Kimberly | Bellamy |
| 493 | Kimberly | Creighton |
| 494 | Kimberly | Jillson |
| 495 | Kimberly | Lambert |
| 496 | Kimberly | McDonald |
| 497 | Kimberly | Rawls |
| 498 | Kimberly | Reynolds |
| 499 | Kimmy | Bunch |

**JA1936**

| 500 | Kira | Lawson |
|---|---|---|
| 501 | Kitteria | Mayo |
| 502 | Kjinder | Singh |
| 503 | Koneika | Willis |
| 504 | Krisann | Parker |
| 505 | Kristina L | Paige |
| 506 | Kristina | Evans |
| 507 | Kristy | Williams |
| 508 | Kyara | Branch |
| 509 | Kym | Chandler |
| 510 | Kyra | Smith |
| 511 | La'Candice | Phillips |
| 512 | LaCewshia Jenkins | Jenkins |
| 513 | Lacresha | Robinson |
| 514 | Ladana | Little |
| 515 | Ladawnte | Williams |
| 516 | Lafaunta | Damon |
| 517 | Lakeisha | Branch |
| 518 | Lakeisha | Gray |
| 519 | Lakeisha | Hairston |
| 520 | Lakeisha | Phillips |
| 521 | Lakeisha | Rogers |
| 522 | Lakenya | Brown |
| 523 | Lakisha | Sanders |
| 524 | Lakisha | Stowe |
| 525 | Lakisha | Stringfield |
| 526 | Lakisha | Tennessee |
| 527 | Lakrisha | Wade |
| 528 | Lamar | McArthur |
| 529 | Laniece | Sims |
| 530 | Lanora | Sullivan |
| 531 | Lashai | Austin |
| 532 | Lashawn | Wright |
| 533 | Lashawnda | Lassiter |
| 534 | Lasherre | Osborne |
| 535 | Lashonda | Hawkins |
| 536 | Lashunda | Cohen |
| 537 | Lasonya | Godberry |
| 538 | Latanya | Jenkins |

14

**JA1937**

| 539 | Latarshia | Couch |
| 540 | Latasha M | Bonner |
| 541 | Latasha | Barnes-Jenkins |
| 542 | Latasha | Hathaway |
| 543 | Latavia | Tarpley |
| 544 | Latisha | Bolden |
| 545 | Latisha | Lancaster |
| 546 | Latisha | Ollison |
| 547 | Latoia | Mitchell |
| 548 | Latonja | Jones |
| 549 | Latonya | Woodall |
| 550 | Latoria | Chesson |
| 551 | Latoria | Pettie |
| 552 | Latosha | Bradshaw |
| 553 | Latosha | Lea |
| 554 | Latoya | Cromuel |
| 555 | Latoya | Exhem |
| 556 | Latoya | Gipson |
| 557 | Latoya | Malloy |
| 558 | Latoya | Skinner |
| 559 | Latoyia | Williams |
| 560 | Latoyrea | Gordon |
| 561 | Latrice | Mays |
| 562 | Latrisha | Puryear |
| 563 | Laura | Everton |
| 564 | Lauren | Carter |
| 565 | Laurie | Hood |
| 566 | Lavelle | Nimmo |
| 567 | LaVonna | Harrel |
| 568 | Lavonne | Holley |
| 569 | Lawayne | Perkins |
| 570 | Laye | Tayn |
| 571 | Leatrice | Lampkin |
| 572 | Leigh | Edwards |
| 573 | Leila | Duncan |
| 574 | Leneisha | Robinson |
| 575 | Leon | Liverman |
| 576 | LeQuesha | Miller |
| 577 | LeShawn | Oblechina |
| 578 | Leslie | Boone |

15

**JA1938**

| 579 | Leslie | Cradle |
|-----|--------|--------|
| 580 | Leslie | Graves |
| 581 | Levance | Bethea |
| 582 | Lilly | Tyriana |
| 583 | Linda | Scruggs |
| 584 | Lisa | Adegbenro |
| 585 | Lisa | Burton |
| 586 | Lisa | Williams |
| 587 | Lolita | Padgett |
| 588 | Lollitha | Barksdale |
| 589 | Loretha | Anderson |
| 590 | Lori | Bowen |
| 591 | Lori | Cox |
| 592 | Lucie L | Wright |
| 593 | Lucinda | Williams |
| 594 | Lucricia | Smith |
| 595 | Luvenia | Ezell |
| 596 | Lydia | Smith |
| 597 | Lynette | Pearson |
| 598 | Lynneshia | Dillard |
| 599 | Madinah | Cox |
| 600 | Ma'Hagaine | Turner |
| 601 | Makayla | Washington |
| 602 | Makeisha | Sykes |
| 603 | Maness | Keonda |
| 604 | Manisha | Gautam |
| 605 | Marcella | Holder |
| 606 | Marcella | Mayorga |
| 607 | Marcella | Womack |
| 608 | Margarita | Byers |
| 609 | Margie | Boone-Mcintyre |
| 610 | Maria | Lanza |
| 611 | Maria | Stock |
| 612 | Mariah | Russell |
| 613 | Marianna | Lear |
| 614 | Marion | Barco |
| 615 | Marion | Harris |
| 616 | Marion | Land |
| 617 | Marlene | Saunders |
| 618 | Marnesha | Chappell |

**JA1939**

| 619 | Marnesha | Williams |
|---|---|---|
| 620 | Marquetta | Melton |
| 621 | Marquita S. | Jones |
| 622 | Marquita | Jones-Thomas |
| 623 | Marquita | Mclean |
| 624 | Marquita | Simon-Fernandez |
| 625 | Marquita | Thomas-Jones |
| 626 | Martina | Crowder |
| 627 | Marvina | Pigford |
| 628 | Mary | Davis |
| 629 | Mary | Day |
| 630 | Mary | Gingles |
| 631 | Mary | Merritt |
| 632 | Mary | Nelson |
| 633 | Mary | New |
| 634 | Mary | Watts |
| 635 | Matin | Rugayyah |
| 636 | Matthew | Sawyer |
| 637 | Maurice R | Johnson |
| 638 | Maurissa | Adams |
| 639 | Maxia | Montas |
| 640 | Mccoy | Benisea |
| 641 | Mcdaniels | Holly |
| 642 | Mea | Harris |
| 643 | Meadow | Borecky |
| 644 | Meagan | Younger |
| 645 | Meaghan R | Vega |
| 646 | Meisha | Heike |
| 647 | Mekeita | Linder |
| 648 | Mekia | Kates |
| 649 | Mekre | McCray |
| 650 | Melisa | Ozirus |
| 651 | Melissa | Massey |
| 652 | Melissa | Spates |
| 653 | Melissa | Tripp |
| 654 | Melnae | Harris |
| 655 | Mercy | Zinsou |
| 656 | Michael | Taylor |
| 657 | Michelle | Lyerly |
| 658 | Michelle | Wiggins |

17

**JA1940**

| 659 | Mildred | Felton |
| 660 | Miranda | Anthony |
| 661 | Mitchell | Eulanda |
| 662 | Mitchell | Morris |
| 663 | Mohogany | Smith |
| 664 | Mom | Constance |
| 665 | Monica | Jackson |
| 666 | Monica | Mitchell |
| 667 | Monique | Hines |
| 668 | Monique | King |
| 669 | Monique | Phillip |
| 670 | Moore | Allison |
| 671 | Morenike | Collier-Taiwo |
| 672 | Morgan | Accura |
| 673 | Morgan | Jones |
| 674 | Morgan | Roselia |
| 675 | Moriah | Cain |
| 676 | Morrell | Warren |
| 677 | Mozeak | Kello |
| 678 | Muhammed | Young |
| 679 | Mylik | Price |
| 680 | Nadine | Person |
| 681 | Nahjah | Kelly |
| 682 | Na'Iyma | Clifton-Barnes |
| 683 | Najah | Miller |
| 684 | Nakeesha | Rollins |
| 685 | Nakia | Goodman |
| 686 | Nakisha | Woodard |
| 687 | Nakita | Mickens |
| 688 | Nancy | Williams |
| 689 | Nannette | Holley |
| 690 | Napolean | Alston Jr |
| 691 | Natalie | Moretti-Diaz |
| 692 | Natalie | Scott |
| 693 | Natasha | Martin |
| 694 | Natasha | McBee |
| 695 | Natasha | Morris |
| 696 | Natasha | Nunley |
| 697 | Natasha | Owens |
| 698 | Natasha | Phelps |

18

**JA1941**

| 699 | Natasha | Scott-Gordon |
|---|---|---|
| 700 | Natasia | Vieira |
| 701 | Nathalie | Hawkins |
| 702 | Natika | Chambers |
| 703 | Nayshaw | Lewis |
| 704 | Ndeye | Thiam |
| 705 | Ne'Alex | Slaughter |
| 706 | Nekia | Ford |
| 707 | Nekisha | Bolden |
| 708 | Nekisha | Boone |
| 709 | Nezzetta | Hampton |
| 710 | Niara | Early |
| 711 | Nicholas | Crowder |
| 712 | Nicole L | Bolden |
| 713 | Nicole Lauren | Wilkerson |
| 714 | Nicole | Bond |
| 715 | Nicole | Brown |
| 716 | Nicole | Harris |
| 717 | Nicole | McCann |
| 718 | Nicole | Pierce |
| 719 | Nicole | Salazar |
| 720 | Nicole | Spinks |
| 721 | Nicole | West |
| 722 | Nicole | Williams |
| 723 | Nicole | Woods |
| 724 | Nigrilya | Harvey |
| 725 | Nikeya | Hairston |
| 726 | Nikolla | Evans |
| 727 | Nina | Massicci |
| 728 | Nneka | Tillman |
| 729 | Noel | Garrett |
| 730 | Nora | Kielty |
| 731 | Novia | Najair-Lynch |
| 732 | Nyashia | Lee |
| 733 | Nyola | Shaw |
| 734 | Octavious | Batts |
| 735 | Okocha | Chukwvemeka |
| 736 | Olga | Burt |
| 737 | Olivia | Delph |
| 738 | Olivia | Watkins |

**JA1942**

| 739 | Orinthia | Spivey |
|---|---|---|
| 740 | Ozey | Thorpe |
| 741 | Pamela | Light |
| 742 | Pamela | Murdock |
| 743 | Parris | Robinson |
| 744 | Patience | Anyikwa |
| 745 | Patrice | Stewart |
| 746 | Patricia | Browne |
| 747 | Patricia | Dean |
| 748 | Patricia | Rawls |
| 749 | Patrick | Reams |
| 750 | Pattie | Davis |
| 751 | Pattie | Hollingsworth |
| 752 | Paul | Lott |
| 753 | Paula | Bethea |
| 754 | Paula | Hervert |
| 755 | Paulette | Tucker |
| 756 | Peggy | Mickle |
| 757 | Peggy | Wilson |
| 758 | Penny | Clark |
| 759 | Philips | La'Candice |
| 760 | Phillip | Vaughn |
| 761 | Piers | Miltiers |
| 762 | Polly | Towns |
| 763 | Prentis | Townsend Iii |
| 764 | Priscilla | Cobb |
| 765 | Priscilla | Johnson |
| 766 | Ptika | Jones |
| 767 | Ptika | Joseph |
| 768 | Quentina | Jones-Thomas |
| 769 | Quiana | Allen |
| 770 | Quiana | Harris |
| 771 | Quimby | Phillips |
| 772 | Quinana | Turner |
| 773 | Quintarah | Lemon |
| 774 | Quintina | Artis |
| 775 | Racharlotte | Coates |
| 776 | Rachel | Davis |
| 777 | Rachel | Fogleboch |
| 778 | Rachel | Forrest |

**JA1943**

| 779 | Rachel | Owen |
| 780 | Rachel | Whitehead-Artemus |
| 781 | Rahniqua | Harris |
| 782 | Rahshaun | Bradley |
| 783 | Ramisi | Wilson |
| 784 | Randi | Peterson |
| 785 | Randy | Allen |
| 786 | Rashawn | Cooke |
| 787 | Rashea | Lockhart |
| 788 | Rashetta | Banks |
| 789 | Raven | Graves |
| 790 | Raven | Greene |
| 791 | Raven | Taylor |
| 792 | Raymie | Allison |
| 793 | Rayshara | Barrow |
| 794 | Reashelle | Madkins |
| 795 | Reba | Hembrick |
| 796 | Rebeca | McManis |
| 797 | Rebekah | Bane |
| 798 | Regina | Gadson |
| 799 | Renae | Dumpson |
| 800 | Renea | Watson |
| 801 | Renord | Griffin |
| 802 | Resheema | Lawyer |
| 803 | Reshonn | Sutphin |
| 804 | Rhomeshia | Wilson |
| 805 | Rhonaca | Carpenter |
| 806 | Rhonda | Cherry |
| 807 | Rhonda | Womack |
| 808 | Rhosonda | Marzette |
| 809 | Richard | Bryant |
| 810 | Richard | Salter |
| 811 | Rickie | Huff |
| 812 | Rikea | Josey |
| 813 | Robert | Dunhart |
| 814 | Robert | Williford |
| 815 | Roberta | Blue |
| 816 | Robin | Ingram |
| 817 | Robyn | Lee |

**JA1944**

| 818 | Robyn | Watkins |
|-----|-------|---------|
| 819 | Rolanda | Riley |
| 820 | Ronald | Williams Iii |
| 821 | Rose | Jackson |
| 822 | Roslyn | Vincent |
| 823 | Roxanne | Adams |
| 824 | Roxanne | Brown |
| 825 | Rozanta | Harris |
| 826 | Rudina | Green |
| 827 | Rugayyah | Matin |
| 828 | Ryan | Thompson |
| 829 | Sabrina | Coolidge |
| 830 | Sabrina | Turner |
| 831 | Sadiqua | Allen |
| 832 | Samantha | Cobb |
| 833 | Samara N. | Nurse |
| 834 | Samara | Archer |
| 835 | Sampson | Ekwet |
| 836 | Sandra | Pierce |
| 837 | Sandra | Warren |
| 838 | Sarah | Bostick |
| 839 | Sarah | Pullido |
| 840 | Saranette | Chapman |
| 841 | Saudia | Boykins |
| 842 | Secipon | Lewis |
| 843 | Sedyta | Fulton |
| 844 | Selma | Moore |
| 845 | Serenity | Brown |
| 846 | Seth | Floyd |
| 847 | Shada | Alexander |
| 848 | Shadae | Roscoe |
| 849 | Shadarius | Barksdale |
| 850 | Shakeia | Mcleod |
| 851 | Shakina | James |
| 852 | Shakqueen | Ingram |
| 853 | Shaloda | Williams |
| 854 | Shamane | Jones |
| 855 | Shameika | Parker |
| 856 | Shameka | Fallin |
| 857 | Shameka | Gregory |

22

**JA1945**

| 858 | Shameka | Johnson |
|-----|---------|---------|
| 859 | Shamiqua | Thompson |
| 860 | Shanece | Newton |
| 861 | Shaneika | Darrell |
| 862 | Shanequa | Whichard |
| 863 | Shaniqah | Mcleod |
| 864 | Shanmeka | Barnes |
| 865 | Shanmeka | Collins |
| 866 | Shannon A | Jones |
| 867 | Shannon | Ambrutis |
| 868 | Shannon | Ferebee |
| 869 | Shannon | Howard |
| 870 | Shannon | Howell |
| 871 | Shannon | Moser |
| 872 | Shantalae | Jackson |
| 873 | Shanteequa | Jones |
| 874 | Shantel | Barker |
| 875 | Shaquana | Grier |
| 876 | Shaquana | Mizell |
| 877 | Sha'Quara | Brown |
| 878 | Sharan | Adams |
| 879 | Sharee | Snuggs |
| 880 | Shareen | Fennell |
| 881 | Sharon | Cannon |
| 882 | Shasha | Taylor |
| 883 | Shashownie | Townes |
| 884 | Shatonne | Jackson |
| 885 | Shavona | Butler |
| 886 | Shawanda | Bowen |
| 887 | Shawanda | Jones |
| 888 | Shawlawn | Freeman-Hicks |
| 889 | Shawnda | Winston |
| 890 | Shawnia | Harris |
| 891 | Shawvone | Brockman |
| 892 | Sheena | Petty |
| 893 | Sheila | Kronske |
| 894 | Sheila | Silver |
| 895 | Sheila | White |
| 896 | Shekayla | Vaughan |
| 897 | Shelby-Lyn | Landrum |

23

**JA1946**

| 898 | Shemika | Scott |
|-----|---------|-------|
| 899 | Shenica | Edmonds |
| 900 | Sherese | Lankford |
| 901 | Sheretta | Cashwell |
| 902 | Sheri | Lineberry |
| 903 | Sherika | Marrow |
| 904 | **Sherita D** | **Johnson** |
| 905 | Sherri | Williams |
| 906 | Sherrie | Clark |
| 907 | Sherry | Flournoy |
| 908 | Sherry | Joice |
| 909 | Sherry | McDonald |
| 910 | Sherry | Owens |
| 911 | Shimeiyah | Woodard |
| 912 | Shirley | Key |
| 913 | Shondra | Blyden |
| 914 | Shoneterria | Fulton |
| 915 | Shonnette | Patteson |
| 916 | Shrondari | Ford |
| 917 | Sierra | Townsend |
| 918 | Simonia | Lyles |
| 919 | Sita | McCoy |
| 920 | Sokhna | Dieng |
| 921 | Sokorra | Green |
| 922 | Sonia | Watson |
| 923 | Sonia | Winborne |
| 924 | Sonya | Hall |
| 925 | Sonya | O'Neal |
| 926 | Sophia | Mcintyre |
| 927 | Stella | Ogwang |
| 928 | Stephaine | Symuleski |
| 929 | Stephanie | Carter |
| 930 | Stephanie | Collier |
| 931 | Stephanie | Maiorno |
| 932 | Stephanie | Marshall |
| 933 | Steverson | Genivia |
| 934 | Summer | Holloway |
| 935 | Sybil | Graves |
| 936 | Sydney | Anderson |
| 937 | Sylvia | Minor |

24

**JA1947**

| 938 | Sylvia | Spencer |
|-----|--------|---------|
| 939 | Symone | Rose |
| 940 | Syreeta | McManes |
| 941 | Syreta | Fowlkes-Cox |
| 942 | Tabbitha | Wilson |
| 943 | Takara | Alston Jr |
| 944 | Takera | Purvis |
| 945 | Takiyah | Goynes |
| 946 | Tamakia | Flowers |
| 947 | Tamara | Williams |
| 948 | Tameka | Watford |
| 949 | Tamiko | White |
| 950 | Tammia | Gatlin |
| 951 | Tanglae | Keys |
| 952 | Tania | Alexander |
| 953 | Tanisha | Boone |
| 954 | Tanishia | Banks-Cooper |
| 955 | Tanya | Bentick |
| 956 | Tanya | Pettigrew |
| 957 | Tanyard | Bray |
| 958 | Tappata | Hoggard |
| 959 | Taquira | Bartee |
| 960 | Taree | Wharton |
| 961 | Taren | Watkins |
| 962 | Tareuian | Glover |
| 963 | Tariq | Muhammad |
| 964 | Tarnicia | Allen |
| 965 | Tasha | Tate |
| 966 | Tashanika | Tucker |
| 967 | Tashara | Brown |
| 968 | Tasheba | Lassiter |
| 969 | Tashena | Callands |
| 970 | Tashena | Jackson |
| 971 | Tasheta | Davis |
| 972 | Tashima | Newsome |
| 973 | Tatiana | Mooney |
| 974 | Tatianna | Canady |
| 975 | Tawanda | Hall |
| 976 | Tawqua | Stewart |
| 977 | Taylor | Simmons |

**JA1948**

| 978 | Teah | Kofa |
|------|------|------|
| 979 | Teara | Velez |
| 980 | Teisha | Stone |
| 981 | Temeka | Adams |
| 982 | Tenisha | Charles |
| 983 | Tequila | Chapman |
| 984 | Terelle | Wallace |
| 985 | Teresa D | Morey |
| 986 | Teresa | Griffin |
| 987 | Teresa | Robinson |
| 988 | Terri | Weeks |
| 989 | Thomasina | Gordon |
| 990 | Ti | Starnes |
| 991 | Tia | Mosley |
| 992 | Tiana | Barnes |
| 993 | Tianna | Tyler |
| 994 | Tiauna | Thorne |
| 995 | Tietiyana | Freeman |
| 996 | Tiffanee | McKenzie |
| 997 | Tiffany L. | Worrel |
| 998 | Tiffany | Hicks |
| 999 | Tiffany | Howard |
| 1000 | Tiffany | Light |
| 1001 | Tiffany | Pierre |
| 1002 | Tiffany | Pointer |
| 1003 | Tiffany | Shirley |
| 1004 | Tiffany | Speller |
| 1005 | Tiffany | Sutton |
| 1006 | Tiffany | Trogdon |
| 1007 | Tiffany | Watson |
| 1008 | Tina | Manago |
| 1009 | Tineeka | Holmes |
| 1010 | Tiquita | Williams |
| 1011 | Tisha | Gatling |
| 1012 | Tishone | Williams |
| 1013 | Tocarra | Steele |
| 1014 | Todd | Buffa |
| 1015 | Tomeka | Clark |
| 1016 | Tomerrial | Williams |
| 1017 | Tomika | Johnson |

JA1949

| 1018 | Tomika | Robertson-Sykes |
|------|--------|-----------------|
| 1019 | Tonia | Jackson |
| 1020 | Tony | Morales |
| 1021 | Tonya | Brooks |
| 1022 | Tonya | Higdon |
| 1023 | Topaz | McLennon |
| 1024 | Torsha | Graves |
| 1025 | Toya | Moffitt |
| 1026 | Tracey | Booker |
| 1027 | Tracey | Nyembe |
| 1028 | Tracey | Wasson |
| 1029 | Tracy | Colquitt |
| 1030 | Tracyann | Wilmer |
| 1031 | Trang | Dinh |
| 1032 | Trayana | Jackson |
| 1033 | Treasuera | Proctor |
| 1034 | Trenika | Stringfield |
| 1035 | Trevon | Anthony |
| 1036 | Tronda | Ellis |
| 1037 | Trudy | Overton |
| 1038 | Trynasha | Crenshaw |
| 1039 | Twiggy | Oryang |
| 1040 | Tynisha | Nowell |
| 1041 | Tyra | Hutchinson |
| 1042 | Tyravia | Angle |
| 1043 | Tyshaun | Lassiter |
| 1044 | Tyshema | Etheridge |
| 1045 | Tywan | White |
| 1046 | Ursula | Howard |
| 1047 | Valencia | Jackson |
| 1048 | Valentina | Bailey |
| 1049 | Valentina | Champagne |
| 1050 | Valerie | Franks |
| 1051 | Valerie | McQueen |
| 1052 | Vaneka | Thompson |
| 1053 | Varnysha | Whitsett |
| 1054 | Venevia | Osuagwu |
| 1055 | Verna | Roundtree |
| 1056 | Vernee | McInnis |
| 1057 | Victor | Mokoena |

**JA1950**

| 1058 | Virgil | Gordon |
|------|--------|--------|
| 1059 | Virginia | Wilson |
| 1060 | Vivian | Buggs |
| 1061 | Vontella | Gregory |
| 1062 | Wade | Zonen |
| 1063 | Wanda | Lamont |
| 1064 | Wanda | Lightner |
| 1065 | Waneka | Murphy |
| 1066 | Wayne | Clapp |
| 1067 | Wendell | Wilson |
| 1068 | Whitney | Bailey |
| 1069 | Willette M | Oliver |
| 1070 | William Ashley | Wells |
| 1071 | William | Pruitt |
| 1072 | Williams | Marnesha |
| 1073 | Windy | West |
| 1074 | Xantis | Chisholm |
| 1075 | Xavier | Vera |
| 1076 | Yakemia | Mitchell |
| 1077 | Yaquita | Godfrey |
| 1078 | Yasilis | Collado |
| 1079 | Yasmen | Featherstone |
| 1080 | Yavonnta | Lawrence |
| 1081 | Yazmin | Beretervide |
| 1082 | Yetunde | Taylor |
| 1083 | Yolanda | Briggs |
| 1084 | Yolanda | Clayton |
| 1085 | Yolanda | Hunter |
| 1086 | Yolanda | Romious |
| 1087 | Yolanda | Walker |
| 1088 | Yolandezz | Siler |
| 1089 | Yvetrisse | Hoskie |
| 1090 | Yvette | Strother |
| 1091 | Yvonne | Eisenberg |
| 1092 | Yvonne | Whatley |
| 1093 | Zahara | Muhammad |
| 1094 | Zahra | Asika |
| 1095 | Zeffrem | Guidry |
| 1096 | Zemikia | McClease |
| 1097 | Zenee | Outlaw |

**JA1951**

| 1098 | Zipporah | Lesane |
|------|----------|--------|
| 1099 | Zoquanna | Davis |
| 1100 | Karimah | Abdussalaam |
| 1101 | Sheralyn | Jones |
| 1102 | Cynthia | Malaki |
| 1103 | Tenika | Stringfield |
| 1104 | Tiffany | Williamson |
| 1105 | Shawnda | Meir |

**JA1952**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| MARTIN J. WALSH,<br>SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF LABOR,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>MEDICAL STAFFING OF AMERICA, LLC, et al.<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)　　Case No. 2:18-cv-226<br>)<br>)　　Case No. 2:19-cv-475<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S SUPPLEMENTAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The Court tried this matter on August 31, 2021. At the close of the evidence, the Court directed the parties to file post-trial briefings in the form of Supplemental Proposed Findings of Fact and Conclusions of Law. *See* ECF 311. In accordance with the Court's direction, Plaintiff, Martin J. Walsh, Secretary of Labor, United States Department of Labor ("Plaintiff"), hereby submits the following Supplemental Proposed Findings of Fact and Conclusions of Law, based on the evidence admitted and arguments presented at trial.

## I.　PROPOSED FINDINGS OF FACT

Jurisdiction, Venue, and FLSA Coverage

1.　　Jurisdiction of this action is conferred upon the Court by Section 17 of the Fair Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. § 217, and by 28 U.S.C. §§ 1331 and 1345. Jurisdiction was not disputed. ECF No. 84 ¶¶ 1, 2.

2.　　Since at least August 18, 2015, Steadfast has been a limited liability corporation with a place of business at 5750 Chesapeake Boulevard, Norfolk, Virginia 23513, and under the

**JA1953**

ownership of Lisa Ann Pitts. ECF No. 84 ¶¶ 1, 5; *see also* ECF No. 315 at 512:1–513:21 & 513:22–514:4.

3.    Since at least August 18, 2015, Defendants' employees have handled goods and supplies from states other than Virginia, such as providing staffing services for businesses located across state lines. ECF No. 84 ¶; *see, e.g.*, ECF No. 312 at 128:11–17; ECF No. 317 at 820:6–9 (nurses recalling working for Defendants' clients outside of Virginia). Defendants' employees also process billing invoices using an out-of-state billing company; ECF No. 315 at 588:20–589:4 (recognizing PX-11 as an example of a Steadfast invoice); PX-11 at 1 (showing an invoice with a Pennsylvania billing address).

4.    Since at least August 18, 2015, Defendant Steadfast has had an annual gross volume of sales made or business done of not less than $500,000.00.  ECF No. 84 ¶ 2; *see also* ECF No. 315 at 514:17–15:2; PX-17, 18, 20.

5.    Since at least August 18, 2015, Defendants have placed registered nurses ("RNs"), certified nursing assistants ("CNAs"), and licenses practical nurses ("LPNs") in healthcare facilities ("facilities" or "client facilities"). ECF No. 312 at 23:9–11; ECF No. 313 at 227:14–15; ECF No. 315 at 514:5–9, 13-16.

Defendants' Overtime Violations

6.    The individuals listed in Schedule A worked for Defendants as CNAs, LPNs, and RNs some point between August 18, 2015 and March 1, 2021. ECF No. 287-1, Tenth Revised Schedule A;[1] *see also* PX-6; PX-7; PX-7a; PX-21; PX-22; PX-24; ECF No. 312 at 55:13-18; at 86:7-9; at 114:1-6; ECF No. 315 at 520:6-19.

---

[1] Defendants are still not in compliance with the Act. Plaintiff is seeking back wages to the present for known and unknown employees.

**JA1954**

7.    Defendants compensated each of the individuals listed in Schedule A for work performed on behalf or for the benefit of Defendants at some point between August 18, 2015 and March 1, 2021. PX-6; PX-7; PX-7a; PX-8; PX-22.

8.    Since August 18, 2015, Defendants paid the individuals listed in Schedule A their straight-time, hourly rate for all hours worked, including for any and all hours worked over 40 in a workweek. *See e.g.* ECF No. 312 at 32:23-25; at 94:21-25; at 95:1-6; at 121:12-17; at 176:7-10;  ECF No. 313 at 200:22-25; at 231:11-20; ECF No. 314 at 316:9-20; ECF No. 316 at 677:17-23 (employee witnesses confirming they were paid straight time for all hours worked).

9.    Since August 18, 2015, Defendants have not paid the individuals listed in Schedule A at a rate of one and one-half times their regular rate of pay for hours worked over 40 hours in a week. *Id.*; *see also* ECF No 315 at 550:24-25; at 551:1-14; PX-7; PX, 7a.

10.    Defendants knew that their overtime compensation practice were unlawful when the Department of Labor concluded its initial investigation on June 9, 2017. ECF No 315 at 550:24-25; at 551:1-9 (confirming the Department of Labor informed Defendants that their compensation practices violated the Act).

11.    Since June 10, 2017, following the conclusion of the Department of Labor's initial investigation, Defendants have not changed the practice of failing to pay employees, including the individuals listed in the Schedule A, a rate of one and one half times the regular rate for hours worked over 40 in a week. ECF No 315 at 550:24-25; at 551:10-25 (confirming Defendants continue to pay straight time for all hour worked after the Department of Labor's investigation).

12.    No exemptions apply to any of the individuals listed in Schedule A that would exempt them from Section 7 of the Act. ECF No. 315 at 562:19-25.

Back Wages[2]

13.  Defendants' payroll summaries accurately identify the total hours individuals listed in the Schedule A worked each week from August 18, 2015 through June 27, 2021, as well as their gross weekly wages. ECF No. 84 at ¶3; PX-21, PX-22.

14.  Plaintiff used Defendants' payroll summary to calculate overtime back wages for individuals listed in the Schedule A from August 18, 2015 through June 27, 2021. ECF No. 84 at ¶4; PX-7, PX-7a; ECF No. 314 at 459:3-6, 376:13-477:1

15.  Plaintiff also used Defendants' Next Day Pay ("NDP") records to compute back wages for individuals listed in the Schedule A between February 1, 2019 and June 27, 2021. PX-7, PX-7a; ECF No. 314 at 478:2-479:2,

16.  Plaintiff combined Payroll Summaries and NDP records to determine total hours worked and the individual on Schedule A's regular rate of pay between February 1, 2019 and June 27, 2021. ECF No. 314 at 480:4-18, 485:11-25

17.  Between February 1, 2019 and June 27, 2021, where hours worked exceeded 168 hours a workweek, Plaintiff used an average of 112 hours as the maximum hours worked to adjust the back-wage computation based upon employee interviews. ECF No. 314 at 481:8-25.

18.  Plaintiff's back wage transcriptions, Plaintiff's Exhibits 21 and 22, accurately reflect the total hours worked each week by the individuals listed in Schedule A from August 18, 2015 to March 1, 2021, as well as their gross weekly wages. ECF No. 314 at 454:13-23, 459:15-18.

19.  Plaintiff calculated back wages by taking the individual's gross weekly wage, which

---

[2] Defendants' payroll records show they have continued to pay straight time for overtime. In light of Defendants' continued violation of Section 7, Plaintiff will update the back wage computations following receipt of additional payroll records produced by Defendants.

4

**JA1956**

appears on Defendants' payroll summary, and dividing that amount by the hours worked, which also appears on the payroll summary. This resulted in the individual's regular rate of pay. Plaintiff then multiplied the regular rate of pay by the hours worked over 40 in that workweek and multiplied the resulting number by .5 to account for the fact that Defendants paid these individuals straight time for overtime, resulting in the total back wages owed to the individual for that particular workweek. ECF No. 314 at 459:21-460:13, 482:8-20; PX-21, 22

20.   Plaintiff's aforementioned methodology for calculating back wages is not in dispute. ECF No. 84; see also ECF No. 314 at 468:12-18, 469:15-470:1

21.   Defendants are not entitled to any offsets or credits that would reduce the amount due to individuals listed in Schedule A. *Id*.

Liquidated Damages

22.   Defendants have not established that their violations of the FLSA was in good faith or that they had reasonable grounds for believing that their failure to pay overtime compensation was not a violation of the FLSA. *see e.g.*: ECF No. 315 at 535: 24-536:2; ECF No. 318 at 1016: 23-1017: 23, 1044: 20-1045:20; ECF No. 319, 1092: 13-1093:11.

a.   Defendants did not consult any personnel within the Department of Labor to determine whether their compensation and overtime policies, which have been in effect since August 18, 2015, complied with the Act. *See* ECF No. 315 at 547:4-16, 548:11-549:11, 552:14-19.

b.   Prior to the Wage and Hour investigation, Defendants did not consult an attorney to determine whether their compensation and overtime policies, which have been in effect since August 18, 2015, complied with the Act. See ECF No. 318 at 904: 2-24, 1045: 13-20, 1106: 10-13.

5

**JA1957**

     c.  After the Department of Labor administrative investigation, Defendants were counseled regarding hiring practices, non-compete agreement, and level of control and oversight exercised by Defendants and advised to revise their practices. ECF No. 319 at 1100: 2-1101:8, ECF No. 318 at 1013: 10-24. *see also* PX-25; *see e.g.:*

       i.       Defendant were advised to remove the non-compete clause in their Independent Contractor Agreement. *Id.*

       ii.      Defendants were advised to stop using the Employment Application form. ECF No. 319 at 1097: 21-1098:5, 20-22.

     d.  Despite receiving advice from their attorney on managing their relationships with the individuals on Schedule A, Defendants ignored that advice. *See* ECF No. 318 at 1012:4-1013: 24; *see also* PX-25 at 43, 54, 58, and 68.

    23.  Liquidated damages is the equal amount of back wage due. PX-22; ECF No. 314 at 487:17-18.

Recordkeeping Violations

    24.  Since at least August 18, 2015 Defendants failed to maintain records of their employees' wages, hours, and other conditions and practices of employment. ECF No. 315 at 593:12-19, 594:14-25; *see e.g.* ECF No. 313 at 219:17-19 (stating she never received paystubs) and 221:3-17 (stating 1099 was inaccurate); *Id*. at 294:4-5

    25.  Between August 18, 2015 and present, Defendants failed to accurately record total premium pay for overtime and total additions or deductions from wages for each pay period, as required pursuant to 29 U.S.C. § 211(c) and 29 C.F.R. § 516.2. PX-6, 7, 7a, 8.

**JA1958**

26.   Between August 18, 2015 and present, Defendants failed to accurately record straight time pay and hours worked separately from overtime pay and hours worked. 29 C.F.R. § 516.2(a). PX-6, 7, 7a, 8; ECF No. 318 at 803:3-8

27.   Defendants' payroll summaries accurately identify the total hours worked by employees between August 18, 2015 and December 23, 2019, as well as their gross weekly wages. PX-1; PX-7.

<u>Lisa Pitts / Employer</u>

28.   Lisa Pitts has maintained 100% ownership interest in Medical Staffing of America, LLC since at least August 2015. ECF No. 84 ¶5.

29.   Lisa Pitts is responsible for the day-to-day operations of Defendant Medical Staffing of America, LLC, including determining the rate and method of pay for individuals listed in Schedule A, recruiting, hiring and firing of all employees (PX-29), controlling conditions of employment (PX-33-35), maintaining employment records for office staff and all individuals listed in Schedule A, including but not limited to, tax forms, applicable licenses, and employment applications, supervising employees, and assuring that individuals listed in Schedule A fulfilled Defendants' contractual obligations at each facility with which Defendants had a contract. ECF No. 84 ¶6.

<u>Employee Status</u>

30.   Since August 18, 2015, the individuals listed in Schedule A who applied to work for Defendants completed an employment application which sought, among other things, employment history, skill set, and references. PX-26; *see also* ECF No. 312 at 87:14-25, 88-13 (employee witness detailing information required to complete Defendants' employment application).

31.   Defendants also required individuals listed in Schedule A to undergo and pass background checks and drug tests – which Defendants paid for – prior to working for Defendants. ECF No. 313 at 246:3-10, 282:2-19, 289:24-25, 290:1-2.

32.   As part of the onboarding process, Defendants provided in-service training on topics such as Abuse and Neglect, the Health Insurance Portability and Accountability Act, and Sexual Harassment. PX-32; ECF No. 312 at 66:7-25.

33.   Defendants misclassified the individuals listed in Schedule A as independent contractors. ECF No. 315 at 518:19-25; at 519:1-22; at 522:11-17 (Defendants Pitts confirming Defendants' nurses are classified as independent contractors).

34.   Since August 18, 2015, Defendants exerted significant control over the individuals listed in Schedule A, at the level expected of an employer-employee relationship. ECF No. 312 at 29:8-10 (Defendants determined employees rates of pay); 41:20-25; at 44:1- 8 (Defendants hired and fired employees); at 74:8-13; at 96:12-16 (Defendants determined where employees worked for assignments); at 98:9-15 (Defendants determined employees schedules); at 117:21-24 (Defendants required employees to submit timesheets).

35.   Defendants also disciplined nurses. *See* ECF No.  312 at 40:21-25; at 41:1-19, ECF No. 313 at 206:4-22. Defendants' client facilities confirm that they contacted Defendants when there were issues with Defendants' nurses. ECF No. 314 at 373:24-25; at 375: 1-16; at 423: 16-25; at 424:1-3; ECF No. 318 at 883:18-25.; *see e.g.* ECF No. 318 at 883:18 - 886:9-20 (Dixie DeLutis, the Director of Nursing for Sentara, confirming that she contacted Defendant Pitts to discipline Defendants' nurse who appeared intoxicated at the facility and detailing the corrective action Defendants took discipline the nurse.).

36.   Since August 18, 2015, the individuals listed in Schedule A did not have

8

**JA1960**

opportunities for profit or loss dependent on their managerial skill. ECF No. 313 at 292:18-20; ECF No. 314 at 317:13-15.

37.   Since August 18, 2015, the individuals listed in Schedule A did not invest in equipment or material, or in his/her employment of other workers. ECF No. 313 at 236:4-25; ECF No. 314 at 318:14-24; at 319:1-5; at 384:2-21.

38.   Since August 18, 2015, Defendants' work relationship with the individuals listed on Schedule A was not limited to a specific period of time. Rather Defendants' relationship with the individuals listed in Schedule A was permanent in nature. *See e.g.* PX-25; ECF No. 312 at 86:5-11 (employee employed by Steadfast since 2016); ECF No. 317 at 811:19-25 (employee employed by Steadfast from 2016 to May 2021); *see also* PX-21 and PX-16.

39.   Since August 18, 2015, the individuals listed in Schedule A rendered services that were an integral part of Defendants' business. *See* ECF No. 84 at ¶8; ECF No. 315 at 522: 25-523:7, 575: 13-15.

40.   Since August 18, 2015, the individuals listed in Schedule A have not been not able to negotiate their hourly rates of pay with Defendants. ECF No. 314 at 330: 19-24, *see e.g.*:

   a.   Saudia Boykins, employee, testified that she could not negotiate a different pay rate with Defendants. ECF No. 312 at 116: 2-6.

   b.   Roxanne Adams, employee, testified that Defendants were stern about their set hourly rate and she could never negotiate her hourly rate with Defendants. *See* ECF No. 312 at 144: 15-22, 151: 8-17 (pointing out the incorrect Statements Defendants made her sign).

   c.   Kimberly Bellamy, employee, testified that could not negotiate her pay rate with Defendants. ECF No. 314 at 229: 15-25.

   d.   Ashley Meggie, employee, testified that she could not negotiate her hourly rate.

ECF NO. 313 at 217: 10-22, 222: 13-19.

e.   Yetunde Taylor, employee, testified that she tried to negotiate a different rate with Defendants, but Defendant Pitts refused. ECF No. 61: 3-11.

f.   Tywann White, employee, tried to negotiate 1 or 2 dollars with Defendants, but he could not. ECF No. 292: 1-5.

g.   Johnese Jones, a former office scheduler and CNA, testified that Defendants did not negotiate the rates of pay with the nurses and she did not negotiate her rate when she provided clinical care as a CNA. *See* ECF No. 313 at 198:18-23, 203:20-21.

41.   The nurses could not negotiate their rate of pay with the facilities. *See* ECF No. 312 at 123: 8-16, 183: 3-9, ECF No. 313 at 270:20-23, 198: 18-21, 203: 12-21 282: 24-25.

42.   Since August 18, 2015, the individuals listed in Schedule A have not been able to create their own schedules with Defendants. *See* ECF No. 312 at 27: 19-24, 35:14-20, 36: 8-25, 37:1-14, 38:20-24, 44:15-23, 79: 9-13, 97: 9-15, 118:14-119: 5, 124:7-9, 180: 17-25, 183: 13-25, ECF No. 313 at 203: 12-204: 5, 206: 4-22, 225: 5-8, 25-226:10, 269: 15-270:19, 277:3-12, 284:22-285: 24, 298: 16-299: 10, ECF No. 316 at 672: 19-673:14.

43.   Since August 18, 2015, Defendants' clients, i.e., healthcare facilities with which Defendants contracted, have paid Defendants a set hourly rate for hours worked by the individuals listed in Schedule A. *See* PX-10 at 119, 124, 141, 146, 152, 159, PX-11, *See also* ECF No. 314 at 375: 10-18, 24: 376: 1-10, 430: 21-431:10, 432: 25-433:2, ECF No. 315 at 586: 11-17, 587:3-15, 527: 5-10, 18-24.

44.   Defendants did not pay that same set hourly rate to individuals listed in Schedule A. Instead, Defendants retained a percentage of the hourly rate based upon business needs. *See* ECF No. 315 at 534: 6-16, ECF No. 318 at 942: 12-20, 943: 2-10.

10

**JA1962**

45.   Defendants required the individuals listed in Schedule A to track their hours when working at Defendants' client facilities using timesheets. Defendants created the timesheets used by the individuals listed in Schedule A. *See* ECF No. 312 at 38: 25-39:6, 5-20, 92:13-93:11, 117: 21-118:4, 178: 3-20, ECF No. 313 at 204: 6-17, 215: 8-216:25, 224: 11-17, 230: 10-231:6, 265: 25-266:9, 283:10-284:3, ECF No. 314 at 315:1-13, 433:7-10, *see also* PX-9, PX-53-01, PX-55.

46.   The client facilities did not require the individuals listed in Schedule A to complete timesheets for compensation, nor were the facilities involved in any compensation issues between Defendants and the individuals listed in Schedule A. Rather, the facilities required Defendants to submit invoices detailing the total hours worked by Defendants' employees for the sole purpose of compensating Defendants for services rendered. *See* 312 at 135: 9-20, ECF No. 314 at 375: 1-18, 377: 5-24,  378: 6-9, 379: 6-380:4, 380: 5-381:19, 381: 14-19, 430: 25-433:10, 431: 15-432:5, 432: 8-19,

47.   Since August 18, 2015, Defendants were solely responsible for compensating the individuals listed in Schedule A for their work. *See* ECF No. 312 at 97: 19-24, 93: 5-11, 138: 22-24, 184: 4-6, ECF No. 313, 199: 6-8, 222: 20-25, 232: 19-25, 286: 16-18, 292: 14-17, 293 24-25, 297: 22-24, 33: 19-34:10, ECF No. 314 at 377: 5-18, ECF No. 315 at 531:22-532:11, ECF No. 316 at 673: 18-21, *see also* PX-8, PX-19, PX-20, PX-21-22.

48.   Defendants withheld fund from nurses' paychecks for garnishments. *See* ECF No. 312 at 33:19-35:6, ECF 315 at 595: 6-16. See also PX-7a at 46.

49.   Defendants paid individuals listed in Schedule A from their own accounts, rather than directly from the client facilities or an escrow account. *See* ECF No. 312 at 97:19 & 138:22–24; ECF No. 315 at 539:22–540:14; ECF No. 317 at 804:23–805:9; *see also* PX-8 & PX-19.

11

**JA1963**

50. Since August 18, 2015, Defendants paid the individuals listed in Schedule A on a regular pay day or on an expedited basis using "Next Day Pay." PX-34; ECF No. 318 at 1039:4-1042:1.

51. Since August 18, 2015, Defendants have required the individuals listed in Schedule A to notify the company when they wanted to take time off or were sick and could not work or complete a shift. *See, e.g.*, ECF No. 312 at 37:15–22, 95:7–23, & 121:24–22:11; *see e.g.*:

    a. Yetunde Taylor, employee, testified that she was required to provide notice to Defendants when she was running late or unavailable to work. She explained that even when she provided such notice, Defendants responded that she would be fired if she called out. *See* ECF No. 312 at 70:13–72:11; *see also* PX-53 at 3.

    b. Andrea Tirado, employee, testified that she was required to let Defendants know when she was unavailable to work. Tirado recalled an instance where she provided Defendants a month's notice that she would be on vacation and unavailable to work. Nonetheless, Tirado's scheduled shifts were cancelled when she returned from vacation. *See* ECF No. 314 at 335:18–338:20.

52. Since August 18, 2015, the individuals listed in Schedule A could only increase their wages by working more hours. *See* ECF No. 316 at 674:21–23; *see e.g.*:

    a. Teresa Morey, employee, testified that she often worked "70 to 80 to somewhere upwards of 120 hours a week" for Defendants, getting "three or four hours of sleep a night." ECF No. 313 at 247:2–20. Defendants permitted her to "work all the overtime [she] wanted," but did not pay her time and a half. *Id*. at 252:1–11.

    b. Courtney Turner, employee, testified that, despite not receiving overtime compensation from Defendants, she had to work more than 40 hours a week to have enough

income to care for her children. *See id*. at 284:8–13.

53.   Defendants provided individuals on Schedule A letters, as their employer, to permit them to travel to work during the pandemic lockdowns. PX-33.008; see ECF No. 318 at 1002:12–1003:25.

54.   Since August 18, 2015, Defendants have not allowed the individuals listed in Schedule A to hire other nurses, employees, or contractors to work for them at Defendants' clients' facilities. *See, e.g.*, ECF No. 312 at 73:24–74:7, 122:15–25, & 141:12–18; ECF No. 317 at 823:23–824:5.

55.   Since August 18, 2015, Defendants' client facilities provided all required of the tools and equipment that the individuals listed in Schedule A needed to perform their jobs. *See, e.g.*, ECF No. 312 at 84:1–14; 98:8–99:4; & 184:16–23. While some nurses and nursing assistants *preferred* to use their own equipment, such as stethoscopes and blood pressure cuffs, they were not *required* to use their own equipment. *See, e.g*., ECF No. 317 at 825:13–826:8.

56.   Since August 18, 2015, the individuals listed in Schedule A were required to wear badges bearing the name "Steadfast Medical" while working at client facilities. *See, e.g.*, ECF No. 312 at 72:16–73:3, 99:25–100:5, & 124:14–20.

57.   Since August 18, 2015, the individuals listed in Schedule A have not owned their own businesses and have not advertised their services in any way. *See, e.g.*, ECF No. 312 at 92:8–12, 140:25–141:5, & 176:25–177:5; ECF No. 313 at 290:18–23; ECF No. 316 at 715:10–716:3.

58.   Defendants have paid the individuals listed in Schedule A an hourly rate since August 18, 2015. *See, e.g.*, ECF No. 312 at 60:24–25, 90:5–7, & 115:24–116:1; *see generally* PX-21.

**JA1965**

59.   Defendants garnished employee wages, as an employer, pursuant to court orders, such as Income Withholding Orders and Child Support Orders. ECF No. 312 at 33:19-35:6; ECF No. 315 at 595:6-22; *see also* PX-7a.

60.   Since August 18, 2015, "Medical Staffing of America" appears on the paystubs and earnings statements of the individuals listed in Schedule A. ECF No. 84 ¶ 7; *see also, e.g.*, ECF No. 313 at 292:14–17; PX-8.

61.   Since August 18, 2015, Lisa Pitts covers the individuals listed on Schedule A on her insurance policy and handles all workers compensation claims arising out of injuries that occur at facilities. PX-28; *see also* ECF No. 312 at 42:25-43:15.

62.   Since August 18, 2015, Lisa Pitts has been responsible for disciplining the individuals listed in Schedule A. If a client facility had an issue with an individual listed in Schedule A regarding tardiness, conduct and other similar issues, the facility contacted Defendant Pitts to address the disciplinary issue with the employee directly. *See, e.g.,* ECF No. 314 at 373:24–374:19, 396:1–11, 423:16–17, & 424:11–18, *see e.g.*:

   a.   Courtnay Hope-Draughn, a former office employee (call center agent, account manager), testified that Defendant Pitts removed nurses from the schedule if Defendants discovered that the nurse had discussed their compensation with a co-worker or a client. ECF No. 312 at 30:1–25. Defendant Pitts also removed nurses from the schedule as punishment for attempting to contact client facilities to set their own schedules. *Id.* at 35:14–20; *see also* ECF No. 316 at 647:8–16. Additionally, other witnesses recalled Pitts' practice of removing nurses from the schedule as a means of discipline. *See, e.g.*, ECF No. 312 at 119:17–120:16; ECF No. 314 at 335:18–336:7.

   b.   David Rawlings, Dunlop House corporate representative, testified that "if there

14

**JA1966**

were any problems regarding a Steadfast's employee, we would contact Steadfast." ECF No.

314 at 424:9–10. He further clarified that the facility would only address a Steadfast

employee's performance regarding a "standard of practice" that "needed to be corrected

immediately because of safety or the care of a resident, but not from a disciplinary

standpoint." *Id*. at 424:15–18.

      c.  Roxanne Adams, employee, testified: "The facility never supervises us. If

anything goes on in the facility, they call Steadfast, and Steadfast let us know that we have

done something wrong, may it be that we have been DNR'd [told not to return to the

facility], or whatever, but we never get anything like that from the facility itself." ECF No.

312 at 150:20–24.

      63.  Since August 18, 2015, Defendants have not permitted the individuals listed in

Schedule A to work for Steadfast's competitors without first obtaining expressed written

permission from Steadfast. PX-25.057- 72 (Independent Contract Agreements containing non-

compete clause) *cf* PX-10 and PX-12 (Facility Contracts containing non-compete/prohibition

clause); PX-36; ECF No. 312 at 31:5-22; *see e.g.*:

      a.  Yetunde Taylor, employee, testified that she was prohibited from working for

another agency. ECF No. 312 at 62:6-63:3

      b.  Dawn Wooten, employee, testified that Defendants removed her from a facility

after the facility express an interest in hiring her permanently. ECF No. 312 at 177:15-178:2

      c.  Teresa Morey, employee, testified that Defendants restricted her from accepting

placement opportunities at other companies. ECF No. 313 at 248:22-250:22, 273:6-14.

      64.  Between August 18, 2015 and present, individuals listed in Schedule A who were

employed as CNAs, LPNs and RNs, did not exercise independent judgment. These employees

performed the same day-to-day activities typical of employees performing the same work in the

medical industry. These employees administered medications, cared for patients, treated wounds,

monitored patients, and took notes. *See e.g.* ECF No. 312 at 99:11-21(discussing services LPNs

provide), ECF No. 314 at 365:19-25. The contracts between Defendants and the facilities

dictated the services Steadfast's employees would provide. PX-10, 12; *see also* ECF No. 314 at

363:25-386:4 (Princess Anne corporate representative direct examination) and *Id.* at 415:3-434:4

(Dunlop House corporate representative direct examination).

    65.   Between August 18, 2015, and present, the individuals listed in Schedule A were

employees as defined by 29 U.S.C. § 203(e)(1). PX-1; PX-23

Damages[3]

    66.   Defendants owe back wages for violating Section 7 of the Act between August 23,

2016 and June 27, 2021 in the amount of $3,619,716.49.  PX-21; PX-22, PX-43; ECF No. 314 at

456:12-17, 457:7-11, 461:20-24, 467:6-15, 468:12-18, 477:2-9; *see e.g.* ECF No. 314 at 458:11-

459:2 and 477:12-23; *see also* ECF No. 84 (requiring Defendants to complete a "math check")

and ECF No. 244 at p. 7 (stating Defendants will be "bound by their discovery answers in

accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.").

    67.   Defendants owe liquidated damages for violating Section 7 of the Act between

August 23, 2016 and March 1, 2021 in the amount of $3,619,716.49. PX-22; ECF 314 at 487:11-

21.

Willfulness

---

[3] Defendants' payroll records show they have continued to pay straight time for overtime. In
light of Defendants' continued violation of Section 7, Plaintiff will update the back wage
computations following receipt of additional payroll records produced by Defendants.

68.   Since at least June 9, 2017, Defendants knew their overtime practices were prohibited by the Act, but regardless of that knowledge, they continued to pay straight time for overtime. ECF No. 315 at 550:25-551:14; *see also* PX-12, PX-21, PX-22.

69.   Defendants made a conscious decision to continue misclassifying employees after being informed by the sole government agency tasked with enforcing the Act that their pay practices of paying straight time for all worked was unlawful under the Act. *Id.*

70.   Employees complained to Defendants regarding not receiving overtime to which they were entitled under the Act. ECF No. 312 at 78:5-13, 127:5-15, 185:24-186:7; ECF No. 314 at 344:12-345:1 ECF No.313 at 221:21-222:7.

71.   Defendants directed the developer of its mobile app, Zira Technology, to remove notices to Defendants alerting it when nurses worked over 40 hours in a workweek (overtime). ECF No. 318 at 1016:23-1017:23 (confirming direction to Zira to remove overtime notices to monitor compliance with the Act); PX-2.075, 2.081- 82, PX-3.

72.   Despite, Defendants review of FAB 2018-4 and understanding that Defendants' practice were wholly inconsistent with the FAB 2018-4, they continued to classify individuals on Schedule A as independent contractors.  ECF No. 318 at 1032:4-1043:22, *see e.g.:*

a.   Defendants sets rates of pay *cf* FAB: "A registry that directs and controls the caregiver's work and sets the caregiver's rate of pay may be an employer of the caregiver." *Id* at 1033:22-1034:5;

b.   Defendants requires nurses to contact the registry if they are going to be late or miss or cancel a shift *cf* FAB: "[R]equiring a caregiver to call only the registry, instead of the client if the caregiver will be late or miss a shift […] is indicative of an employer/employee relationship." *Id* at 1035:3-17; see also PX-33.004,5,9,11 and PX-35, 37;

17

**JA1969**

    c.   Defendants guarantee payment of work ("We use our money and we pay the staff.") *cf* FAB: "A registry's direct payment of its own funds to the caregiver, however may indicate that the registry is the caregiver's employer. This is true regardless of whether the registry typically received reimbursement from the client because...the registry may be effectively guaranteeing the payment...". *Id* at 1039:4-1042:1; *see also* PX-34

Injunctive Relief

73.   Defendants are still violating the Act – even after the Plaintiff warned them that their overtime practice was unlawful. PX-21; *see also* ECF No 315 at 550:24-25; at 551:10-25.

74.   Defendants' failure to comply with the mandates of the Act has affected the market, resulting in unfair competition. Specifically, Defendants' failure to pay overtime has hindered competition by precluding competitors from obtaining facility contracts due to their compliance with the overtime provisions of the Act. ECF No. 315 at 623:18-25; at  624:1-2; *see also* ECF No. 308.

75.   Since Defendants do not pay overtime as required by the Act, they are able to charge lower rates for hours worked over 40 in a workweek making their rates more desirable to facilities – directly impacting competition and commerce. ECF No. 315 at 624:3-6.

## II.  PROPOSED CONCLUSIONS OF LAW

1.     Defendant Lisa Pitts is an "employer" under Section 3(d) of the Act, 29 U.S.C. § 203(d), and is therefore individually liable for the violations of the Act, along with Defendant Medical Staffing of America, LLC. *See* ; *See Kerr v. Marshall Univ. Bd. of Governors,* 824 F.3d 62, 83 (4th Cir. 2016)

2.     Defendants Medical Staffing of America, LLC, and Lisa Pitts have been an

**JA1970**

enterprise within the meaning of Section 3(r) of the Act, 29 U.S.C. § 203(r), in that Defendants have been, through unified operation or common control, engaged in the performance of related activities for a common business purpose. *See Brock v.Hamad*, 867 F.2d 804, (4th Cir. 1989) 806–07; *Acosta v. At Home Pers. Care Servs. LLC*, No. 1:18-CV-549, 2019 WL 1601997, at *13 (E.D. Va. Apr. 15, 2019). These activities constituted (and/or were related to) the providing of medical staffing services in furtherance of the business purposes of Defendants' unified business entity.

3.      The Act broadly defines employment as "to suffer or permit to work." *See* 29 U.S.C. §203(g). Both Congress and the courts have recognized that this definition of employee is broader than under any other piece of social legislation.  *See McComb v. Homeworkers' Handicraft Cooperative*, 176 F.2d 633, 636 (4th Cir. 1949); *Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985), *cert. denied* 474 U.S. 919 (1985). Schedule A individuals "suffered to work" for Defendants and, therefore, were employees as defined under Section 3(g) of the Act. Schedule A individuals suffered to work for, and were permitted to work by, Defendants as demonstrated, in part, by the paystubs carrying Steadfast's name.

4.      As Schedule A workers were employees, Defendants were required to pay them the overtime premium rate of not less than one and one-half times their regular rates of pay for hours worked over 40 in a workweek.  *See* 29 U.S.C. § 207(a)(l); *United States Dep't of Lab. v. Fire & Safety Investigation Consulting Servs.*, 915 F.3d 277, 280 (4th Cir. 2019).

5.      Plaintiff is entitled to a three-year period of back wages and liquidated damages where an employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited" by the Act. *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011); *see also Mumby v. Pure Energy Services (USA), Inc.,* 636 F.3d 1266, 1270 (10th Cir. 2011).

**JA1971**

6.     Defendants willfully violated the Act after the first investigation concluded. 29 U.S.C. § 255(a). After the events that led to Plaintiff filing *Steadfast I* and *after* being informed that their practices were unlawful, Defendants made a separate decision to continue to misclassify their employees after July 10, 2017 (the close of the *Steadfast I* investigative period). Defendants exercised perpetual "indifference toward the requirements imposed" by the Act by failing to systematically resolve the ongoing pay issues. *Garcia v. Tenafly Gourmet Farms, Inc.*, 2012 WL 715316, *2 (D.N.J. 2012) (internal citations omitted); *Abbey v. United States,* 106 Fed. Cl .254, 265 (Fed. Cl. 2012).

7.     Defendants refused and have not paid their employees overtime compensation. *Herman v. Palo Group Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999); *Montfort, Inc.,* 144 F.3d at 1334-35 (willfulness established where the employer knew about violations from a sister plant); *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) (finding willfulness where the employer "could easily have inquired into" relevant compliance issues after learning of their illegality). *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 358 (4th Cir. 2011) (citing *Lyle v. Food Lion*, 954 F.2d 984, 987–88 (4th Cir. 1992). Defendant knew the employees worked overtime because they facilitated the work. Defendants willfully violated the Act.

8.     Defendants are jointly and severally liable for back wages totaling $3,619,716.49 owed to at least 900 employees listed in Schedule A of the Complaint. *See* 29 U .S.C. § 203(d); *Donovan v. Grim Hotel Co*., 747 F.2d 966, 971-72 (5th Cir. 1984) (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983) (the "overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the Act for unpaid wages.").

9.      The measure of actual damages sustained by an employee resulting from an

employer's violation of the FLSA is the difference between the amount the employee was paid

and the amount that he should have been paid but for the violation. 29 U.S.C. 216(b).

10.      The proper method of calculating back wages owed to the employees listed in

Schedule A is to take the individual's gross weekly wage and divide that amount by the hours

worked, which provides the employees regular rate of pay. Then, multiply the regular rate of pay

by the hours worked over 40 in that workweek and multiply the resulting number by .5. *See* 29

C.F.R. §778.107; 29 C.F.R. § 778.110.

11.      Defendants are not entitled to any offsets or credits that would reduce the

amount due to the individuals listed in Schedule A attached to Plaintiff's Complaint. *See Scott v.

City of New York*, 592 F. Supp.2d 475, 481 (S.D.N.Y. 2008) (under Section 7 of the Act, only

three categories of compensation may be used to offset overtime compensation); 29 U.S.C. §

207(h)(2) (each of those categories requires "extra compensation provided by a premium rate.").

12.      No exemptions apply to any of the Schedule A employees that would exempt

them from Section 7 of the Act. *See Iontchev v. AAA Cab Serv., Inc.,* 685 Fed. Appx. 548, 549

(9th Cir. 2017) (employer has the burden of proving by "clear and convincing evidence that

[employees] are independent contractors under the Act"); *Piña v. Pakalex Inc.*, No. CV TDC-15-

0638, 2015 WL 6082372, at *2 (D. Md. Oct. 14, 2015); *Leon v. Alvarez*, No. CBD-16-0416,

2017 WL 4236813, at *2 (D. Md. Sept. 25, 2017); *Corning Glass Works v. Brennan,* 417 U.S.

188, 196–97 (1974)

13.      The Act imposes requirements on the employer of keeping records of an

employee's hours worked, regular hourly rate of pay for any workweek, total premium pay for

overtime hours, and total additions to or deductions from wages paid, amongst other

recordkeeping requirements, which Defendants failed to keep.  29 C.F.R. § 516.2(a)(7), 516.3.

14.     Plaintiff satisfied his burden of proving the amount of back wages owed to the employees listed in Schedule A of the Amended Complaint as a result of Defendants' violation of Section 7 of the Act between August 18, 2015 and June 27, 2021, by performing the above-listed calculation based on the information set forth in Defendants' timesheet and payroll summaries. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-688 (1946) (The Secretary need only show the employees at issue performed the work for which they were improperly compensated. That burden requires evidence showing the amount and extent of the work performed as a matter of just and reasonable inference. Once the inference is established, "the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence).

15.     When an employer is found to have violated the overtime payment requirements of the Act, the employer "shall be liable" to the employee for liquidated damages in an amount equal to the amount of overtime compensation owed. 29 U.S.C. § 216. Liquidated damages are "the norm" where a violation of the Act is found. Liquidated damages are not penal in nature, but represent compensation to the employee for otherwise obscure and difficult to prove damages. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945).

16.     Defendants bear the burden of proving by a preponderance of the evidence that Plaintiff is not entitled to liquidated damages because Defendants violated the Act in good faith, as set forth in 29 U.S.C. § 260. That burden is a high one. *Lockwood v. Prince George's Cty., Md*., 58 F. Supp. 2d 651, 657 (D. Md. 1999), aff'd, 217 F.3d 839 (4th Cir. 2000); *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997).

22

**JA1974**

17.     Defendant must present "plain and substantial" evidence that it acted with subjective good faith and objective reasonableness to assert a good faith affirmative defense. *See* 29 U.S.C. § 260; *see also Richard, et al. v. Marriott Corp.*, 549 F.2d 303, 306 (4th Cir. 1977); *Brinkley–Obu v. Hughes Training, Inc.*, 36 F.3d 336, 357 (4th Cir. 1994); *Lockwood*, 58 F. Supp. 2d at 657.

18.     To meet this burden, an employer must affirmatively establish a subjective defense, i.e., that the employer acted in good faith by taking active steps to ascertain the dictates of the Act and then moved to comply with them. *See Quirk v. Baltimore Cty., Md.*, 895 F. Supp. 773, 788 (D. Md. 1995) ("Good faith requires some investigation of potential liability. An employer cannot simply remain blissfully ignorant of FLSA requirements."); *accord, Fraternal Order of Police, Lodge 3 v. Baltimore City Police Dep't*, No. Civ. B-92-1066, 1996 WL 1187049, at *17 (D. Md. Oct. 30, 1996).

19.     Defendants must prove that they investigated their potential liability under the Act before implementing their pay practice of paying straight time for overtime hours worked before the Court can relieve them of their obligation to pay liquidated damages under Section 216(c).

20.     Under the Fair Labor Standards Act, an award of liquidated damages is mandatory. Indeed, mere reliance on the advice of counsel, alone and regardless of the nature of said advice, is insufficient to satisfy a defendant's burden in proving good faith. *See Fuentes v. CAI Int'l, Inc.*, 728 F. Supp. 2d 1347, 1358 (S.D. Fla. 2010); *see also Rakip v. Paradise. Awnings Corp.*, No. 10–20004–CIV, 2010 WL 4553675, at *7 (S.D. Fla. Nov. 3, 2010).

21.     Defendants failed to satisfy the subjective prong of the good faith affirmative defense. *Perez v. Am. Future Sys., Inc.*, No. CV 12-6171, 2015 WL 8973055, at *13 (E.D. Pa. Dec. 16, 2015) ("[w]here such a legal opinion has been sought and obtained, defendant cannot

23

**JA1975**

demonstrate that it has acted in good faith unless it comes forward with at least some evidence

that it acted in conformance with that legal advice (or, at the very least, that it has not

contravened the legal advice)."), *aff'd sub nom. Sec'y United States Dep't of Labor v. Am. Future*

*Sys., Inc*., 873 F.3d 420 (3d Cir. 2017); *Roy v. Cty. of Lexington, S.C.,* 141 F.3d 533, 543 (4th

Cir. 1998).

22.     The employer must also establish an objective defense, i.e., that there were

reasonable grounds for believing the employer was in compliance with the Act. *Lockwood,* 58 F.

Supp. 2d at 658; *Anderson*, 2007 WL 2819533, at *2; *Marshall*, 668 F.2d at 753; *see also* 29

C.F.R. § 790.22.

23.     Defendants failed to meet its burden of proving both that it acted in good faith and

that it had a reasonable belief that its actions complied with the Act; therefore, an award of

liquidated damages equal to the back pay owed is mandatory. 29 U.S.C. § 216

24.      As an affirmative defense, Defendants bear the burden of proving by a

preponderance of the evidence that the individuals listed in Schedule A of the Complaint are

independent contractors. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97 (1974);

*Iontchev v. AAA Cab Serv., Inc.,* 685 Fed. Appx. 548, 549 (9th Cir. 2017); *Piña v. Pakalex Inc*.,

No. CV TDC-15-0638, 2015 WL 6082372, at *2 (D. Md. Oct.14, 2015); *Leon v. Alvarez*, No.

CBD-16-0416, 2017 WL 4236813, at *2 (D. Md. Sept. 25, 2017); *Ceant v. Aventura Limousine*

*& Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1383 (S.D. Fla. 2012).

25.      The federal common law test "for determining who qualifies as an

'employee'[… provides that] all of the incidents of the relationship must be assessed and

weighed with no one factor being decisive." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318,

23 (1992). In the Fourth Circuit, as in most other circuits, the courts consider the economic

24

**JA1976**

realities of the relationship and ask "whether the worker 'is economically dependent on the business to which he renders service or is, as a matter of economic [reality], in business for himself.'" *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006), quoting *Henderson v Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994) (citing *Bartels v. Birmingham*, 322 U.S. 126, 130 (1947)).

26.     The Fourth Circuit applies a six-factor test to determine whether the individual rendering services is an employee or an independent contractor. The factors are: (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) [whether] the worker's opportunities for profit or loss [are] dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business. Schultz, 466 F.3d at 304–05. *See e.g. Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 2016); *Gayle v. Harry's Nurses Registry*, 594 Fed. Appx. 714 (2d Cir. 2014); *Hughes v. Family Life Care, Inc*., 117 F. Supp. 3d 1365 (N.D. Fla. 2015); *LeMaster v. Alternative Healthcare Solutions, Inc.*, Case No. 3:08– 1101, 726 F. Supp. 2d 854 (M.D. Tenn. 2010); *Crouch v. Guardian Angel Nursing, Inc.*, Civil Action No. Action No. 3:07–cv–00541, 2009 WL 3737887 (M.D. Tenn. 2009); *Richardson v. Genesee County Cmty. Mental Health Servs.,* 45 F. Supp. 2d 610 (E.D. Mich. 1999).

27.     No single factor is determinative for the Court's analysis. *See Schultz*, 466 F.3d at 305. The totality of the circumstances, and not any one factor, which determines whether a worker is the employee of a particular alleged employer. *See Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 676 (1st Cir. 1998).  The focal point of this analysis is "whether the

worker is economically dependent on the business to which he renders service or is, as a matter of economic reality, in business for himself." *Schultz*, 466 F.3d at 304.

28.     Defendants failed to meet their burden of proving that the Schedule A employees were independent contractors and, therefore, exempt from Section 7 of the Act. *See Acosta v. At Home Pers. Care Servs. LLC*, No. 1:18-CV-549, 2019 WL 1601997, at \*13 (E.D. Va. Apr. 15, 2019) citing *Donovan v. Tehco, Inc.,* 642 F.2d 141 (5th Cir. Unit A 1981 ); *see also Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-688 (1946)

29.     As there are clear violations of the Act in this case, Plaintiff is entitled to injunctive relief against Defendants to enjoin future violations of the Act such that:

    a.   Defendants shall not violate Section 7 of the Act, 29 U.S.C. § 207;

    b.   Defendants shall pay all non-exempt employees at least time and one-half their regular rates for all hours worked in excess of forty per workweek under Section 7;

    c.   Defendant shall not violate Section 11 of the Act, 29 U.S.C. § 211, and 29 C.F.R. § 516, *et seq.*;

    d.   Defendants shall maintain and preserve records pursuant to Section 11 of the Act and 29 C.F.R. § 516, *et seq.*; andDefendants shall preserve these records for at least three years. *See McComb v. Homeworks' Handicraft Co–op*, 176 F.2d 633 (4th Cir. 1949); *see also Martin v. Funtime,* 963 F.2d 110, 113 (6th Cir. 1992)

26

**JA1978**

Respectfully submitted,

Mailing Address:                        **UNITED STATES DEPARTMENT OF LABOR**

U.S. Department of Labor                Seema Nanda
Office of the Regional Solicitor        Solicitor of Labor
201 12th Street South
Suite 401                               Oscar L. Hampton III
Arlington, VA 22202-5450                Regional Solicitor
(202) 693-9393(voice)
(202) 693-9392 (fax)                    Samantha N. Thomas
lewis.ryma@dol.gov                      Associate Regional Solicitor
jones.chervonti.j@dol.gov
Seifeldein.mohamed.e@dol.gov            */s/* Ryma Lewis
                                        Ryma Lewis (Bar No. 83322)
                                        Wage and Hour Counsel

November 3, 2021                        /s/ Chervonti Jones
                                        Chervonti Jones
                                        *appearing pro hac vice*
                                        Senior Trial Attorney

                                        /s/ Mohamed Seifeldein
                                        Mohamed Seifeldein (Bar No. 84424)
                                        Trial Attorney


**CERTIFICATE OF SERVICE**

    I hereby certify that on November 3, 2021, a true and correct copy of the foregoing Plaintiff's Supplemental Proposed Findings of Fact and Conclusions of Law was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically notify Defendants by electronically serving a copy to Defendants' counsel:

    Joshua J. Jewett, Esq.
    Julia A. Rust, Esq.
    Aaron Seigrist, Esq.
    Pierce/McCoy PPLC
    101 W. Main St., Suite 101
    Norfolk, VA 23510
    jjewett@piercemccoy.com
    julia@piercemccoy.com
    asiegrist@piercemccoy.com

_/s/ Ryma Lewis_
Ryma Lewis

28

**JA1980**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| MARTIN J. WALSH,<br>SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF<br>LABOR,<br><br>        Plaintiff,<br><br>   v.<br><br>MEDICAL STAFFING OF AMERICA, LLC,<br>D/B/A STEADFAST MEDICAL STAFFING,<br><br>&<br><br>LISA PITTS,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **Case No. 2:18-cv-226**<br>)<br>)  **Case No. 2:19-cv-475**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' MOTION FOR RELIEF IN CONNECTION**
**WITH PLAINTIFF'S TRIAL EXHIBIT PX-21, AND OPPOSITION TO PLAINTIFF'S**
**MARCH 11 "UPDATED BACK WAGE COMPUTATIONS"**

Defendants Medical Staffing of America, d/b/a Steadfast Medical Staffing ("Steadfast")

and Lisa Pitts (together, "Defendants"), by and through undersigned counsel, respectfully move

under Fed. R. Civ. P. 52(b), 54(b), and 60(a)-(b) for an order that (a) affords Defendants sufficient

time to review and evaluate the Department of Labor's March 11 "Notice of Filing Updated Back

Wage Computations," including the attached 247-page "Exhibit A" computation table; and (b)

directs the Department of Labor to review its backpay computation table entered into evidence at

trial as exhibit PX-21, evaluate the issues raised in Defendants' March 6 letter concerning PX-21,

correct any errors in PX-21, create a revised and updated computation of alleged backpay, and

allow Defendants sufficient time to review the proposed final backpay calculation prior to its submission to the Court.

This requested relief should include an extension of at least 30 days in which the Department of Labor can confer with Defendants, perform a revised computation of backpay allegedly owed, and allow Defendants sufficient time to review the revised computation to ensure correction of the computation and data entry errors identified in PX-21. These errors in PX-21 include (1) charging backpay for 80 of Steadfast's W-2 employees who have already been paid overtime at 1.5x their regular rate for all overtime hours worked; (2) repeatedly taking the "hours worked" number shown in Steadfast's payroll records, and *doubling that number* when entering data in the weekly "Total Hours" column in PX-21; (3) arbitrarily increasing figures in the PX-21 weekly "Total Hours" column above the hours shown in Steadfast's corresponding payroll records, while stopping short of doubling; and (4) treating hours worked across multiple workweeks as if worked in a single workweek, thereby inflating the amount of backpay allegedly owed.

These clear errors in PX-21 must be corrected pursuant to Rules 52(b), 54(b), and 60(a)-(b) to avoid manifest injustice. In support of this motion, Defendants rely upon the attached memorandum of points and authorities.

Dated: March 13, 2022                           Respectfully Submitted,

                                                By: */s/ Abram J. Pafford*_____
                                                Abram J. Pafford (VSB #79999)
                                                MCGUIREWOODS LLP
                                                888 16th Street, NW
                                                Suite 500
                                                Black Lives Matter Plaza
                                                Washington, DC 20006
                                                Phone: (202) 857-1725
                                                Fax: (202) 828-3350
                                                apafford@mcguirewoods.com

**JA1982**

Joshua L. Jewett (VSB # 76884)
Julia A. Rust (VSB # 87270)
PIERCE / McCOY, PLLC
101 West Main Street, Suite 101
Norfolk, VA  23510
Phone: (757) 216-0226
Fax: (757) 257-0387
jjewett@piercemccoy.com
julia@piercemccoy.com

*Counsel for Defendants*

**JA1983**

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of March 2022, I electronically filed this document with the Clerk of the United States District Court for the Eastern District of Virginia using the CM/ECF system which will copy of the following users:

> Ryma Lewis (VSB #83322)
> Chervonti Jones (*pro hac vice*)
> Mohamed Seifeldein (VSB No. #84424)
> Office of the Regional Solicitor
> U.S. Department of Labor
> 201 12th Street South
> Arlington, VA 22202
> Telephone: (202) 693-9370
> Facsimile: (202) 693-9392
> Lewis.Ryma@dol.gov
> jones.chervonti.j@dol.gov
> Seifeldein.mohamed.e@dol.gov

> *Counsel for Plaintiff*

> By: */s/ Abram J. Pafford*_____

**JA1984**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

|  |  |  |
|---|---|---|
| MARTIN J. WALSH, | ) | |
| SECRETARY OF LABOR, | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| LABOR, | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | |
|  | ) | **Case No. 2:18-cv-226** |
| MEDICAL STAFFING OF AMERICA, LLC, | ) | |
| D/B/A STEADFAST MEDICAL STAFFING, | ) | **Case No. 2:19-cv-475** |
|  | ) | |
| & | ) | |
|  | ) | |
| LISA PITTS, | ) | |
|  | ) | |
| Defendants. | ) | |
|  | ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN**
**SUPPORT OF MOTION FOR RELIEF IN CONNECTION**
**WITH PLAINTIFF'S TRIAL EXHIBIT PX-21, AND OPPOSITION TO PLAINTIFF'S**
**MARCH 11 "UPDATED BACK WAGE COMPUTATIONS"**

Backpay computation tables under the Fair Labor Standards Act ("FLSA") must accurately incorporate data from the underlying business records on which the computations are based. Defendants Medical Staffing of America, d/b/a Steadfast Medical Staffing ("Steadfast") and Lisa Pitts (together, "Defendants"), by and through undersigned counsel, respectfully move under Fed. R. Civ. P. 52(b), 54(b), and 60(a)-(b) for relief in connection with the computation of alleged backpay reflected in Exhibit PX-21 submitted by the Department of Labor ("DOL") at trial, and referenced in Paragraphs 82-87 of the Court's January 14 Memorandum Opinion and Order.

As explained below, PX-21 appears to be riddled with data entry and computation errors that conflict with the Steadfast business records on which PX-21 is supposedly based. Defendants

1

**JA1985**

brought these issues to the attention of the DOL in a detailed March 6 letter, but despite multiple requests, have received no substantive response. Instead, DOL on March 11 filed "Updated Back Wage Computations" that make no changes to PX-21, and in fact seek an additional $917,926.34 in alleged backpay for the period from June 10, 2021 to January 28, 2022. *See* ECF No. 329 at 1-2. The DOL's computation of $917,926.34 for this eight-month period is accompanied by a new 247-page "Exhibit A" computation table (for the June 2021 to January 2022 time period) that Defendants have had no opportunity to review. *See* ECF No. 329-1.

Given these circumstances, Defendants oppose any adoption of the DOL's March 11 "Updated Back Wage Computations," and seek an order that (a) gives Defendants sufficient time to review and potentially challenge the computations incorporated in the DOL's March 11 filing, and (b) directs the DOL to review PX-21, evaluate the issues raised by Defendants' March 6 letter, correct any errors in PX-21, and create a revised backpay computation that does not misstate data drawn from Steadfast's business records concerning the hours worked by Steadfast's workers, and the amounts paid by Steadfast as compensation for those hours.

## INTRODUCTION

PX-21 is a backpay computation table consisting of approximately 10,000 entries that the DOL labels collectively as "Wage Transcription and Computation Sheets." Each line-item entry supposedly addresses a specific paycheck for a specific Steadfast worker who purportedly worked more than 40 hours in a specific workweek, and yet allegedly did not receive overtime pay at the appropriate statutory rate. The DOL claimed at trial that the data in PX-21 was drawn from Steadfast's payroll and business records. That is certainly where the data *should have* come from, but upon closer scrutiny, the DOL's PX-21 computation table contains data entry and computation errors that appear to compromise fatally the exhibit's reliability and integrity.

2

**JA1986**

There are four systematic errors that have been identified, documented, and brought to DOL's attention via a March 6 letter from Steadfast's counsel to DOL. **First**, intermixed with thousands of entries related to Steadfast's 1099 workers, PX-21 also contains entries relating to 80 of Steadfast's <u>W-2 employees</u> *who have already been paid overtime at 1.5x their regular rate for all overtime hours worked*. **Second**, based upon sampling conducted by Steadfast's counsel, it appears the DOL repeatedly took the "hours worked" number shown in Steadfast's payroll records, and inexplicably *doubled that number* when entering data in the weekly "Total Hours" column in PX-21. **Third**, along similar lines, a random sampling review of more than 500 PX-21 entries reveals *more than 200 additional instances* in which the DOL appears arbitrarily to have increased the figures in the PX-21 weekly "Total Hours" column above the hours shown in Steadfast's payroll records. **Fourth**, as previously flagged by Steadfast's trial counsel, the DOL repeatedly treated hours worked across multiple workweeks as though they were worked in a single workweek, resulting in an inaccurate computation of the amount of backpay owed.

Steadfast brought these matters to the DOL's attention in a March 6 letter that explained and documented the circumstances that led to Steadfast's initial concerns, the review and sampling process that followed, and the ensuing results. *See* **Exhibit 1** (Steadfast March 6 letter to DOL) & **Exhibit 1A** ("Narrative Summary" appended as Attachment A to Steadfast's March 6 letter to DOL). Despite repeated requests, DOL has not provided a substantive response, and has not even been willing to state whether it is reviewing PX-21, or whether it intends to acknowledge or address the systematic data entry and computation errors documented by Steadfast. *See* **Exhibit 2** (March 8-10 email thread between counsel for Steadfast and counsel for DOL). Instead, on the evening of March 11, DOL filed a "Notice of Filing Updated Back Wage Computations" that incorporated by reference the PX-21 backpay calculation presented at trial (totaling

**JA1987**

$3,619,716.49), and made no mention of the hundreds of data entry and computation errors in PX-21 that Steadfast has identified and documented using random sampling. *See* ECF No. 329 at 2.

As a result, Steadfast finds it necessary to seek pre-judgment relief from the Court. The significance of the PX-21 errors identified by Steadfast is difficult to overstate. The DOL's initial backpay computation in PX-21 adds up to $3,619,716.49. *See* ECF No. 324 at 16, ¶85. As already explained to DOL, Steadfast engaged in a random sampling analysis of 573 entries from PX-21, which accounted for $318,771.40 of the alleged backpay (nearly 10%). Steadfast's sampling analysis suggests that the wrongful inclusion of 80 W-2 employees who were already paid overtime, coupled with the other error categories described above, results in a backpay calculation that is inflated *by more than 60%* compared to the backpay figure that would result if PX-21 accurately reflected the data in the underlying Steadfast business records DOL possessed and presumably used when creating PX-21. It would be a manifest injustice to adopt a backpay computation in which repeated (and thus far unexplained) data entry and computation errors have led to an inflated backpay computation that is directly contradicted by the Steadfast business records upon which the DOL's witnesses testified the calculation was based. Steadfast seeks pre-judgment relief in order to obtain an accurate calculation of the back pay actually owed to Steadfast workers in accordance with the Court's findings of fact.

Situations like this are the reason Rules 52(b), 54(b), and 60(a)-(b) exist. Accordingly, Defendants respectfully request that the Court enter an order permitting Defendants a reasonable amount of time to review and evaluate DOL's "Updated Back Wage Computations" submitted on March 11, and directing the DOL to review PX-21, correct any errors, create a revised and updated computation of backpay, and allow Defendants sufficient time to review the proposed final backpay calculation prior to its submission to the Court.

**JA1988**

## FACTUAL BACKGROUND

As the Court presided over trial in this matter, it is already familiar with the facts and evidence in the case. The DOL submitted PX-21 as the primary exhibit underlying its backpay calculations. 9/2/21 Tr. at 459-61 (R. Melendez, DOL District Director, Wage & Hour Division), 482-84 (Y. Xiong, DOL Investigator, Wage & Hour Division). The DOL's witnesses testified that the data in PX-21 was drawn from Steadfast's underlying payroll records, invoices, and worker time sheets, all of which were produced in discovery and are in the trial record. *Id.* at 459 (R. Melendez) (payroll records, invoices, and worker time sheets) & 477-78 (Y. Xiong) (payroll summaries and Next Day Pay records). The DOL's lead backpay calculation witness also testified that transposing data from Steadfast's underlying business records to PX-21 was a manual process, and that transposition errors likely occurred. *Id.* at 464-65. This same witness indicated that due to the volume of individual entries, DOL did not check each entry or line item in PX-21 for accuracy, because "that would not be efficient of our agency to do that." *Id.* at 466.

Witnesses affiliated with Steadfast provided additional information pertinent to an accurate backpay computation, noting (for example) that nurses would sometimes hold timesheets and then submit timesheets for multiple workweeks at the same time, and explaining that the invoices sent by Steadfast to its healthcare facility clients could be crosschecked against Steadfast's payroll records to confirm the specific days and number of hours a nurse worked within each workweek. 9/7/21 Tr. at 773-81 (C. Kim, Steadfast Payroll Manager). Steadfast witnesses also testified that apart from the nurses classified as 1099s, Steadfast employed a number of personnel in various overhead functions, that it classified these team members as employees, and it paid them overtime at a rate of 1.5x their regular rate for any hours worked over 40 in a workweek. 9/3/21 Tr. at 599 (C. Kim) and 535 (L. Pitts, owner of Steadfast).

**JA1989**

The Court's findings of fact described the DOL's method or formula for calculating backpay and found that Defendants "did not offer evidence to refute Plaintiff's damages calculations or offer a counter-calculation of damages." ECF No. 324 at 16, ¶ 87. The Court's findings did not specifically address testimony on the computation-related issues described above, and neither Steadfast nor the DOL undertook a comprehensive line-by-line examination of PX-21 prior to trial.

However, the Court's findings did include a paragraph dealing with a specific computation issue raised for the first time by a DOL trial witness – Wage and Hour investigator Yaozu Xiong – concerning what Mr. Xiong referred to as "excessive hours." 9/2/21 Tr. at 481. As stated by the Court, "Between February 21, 2019 and June 7, 2021, where the total number of hours worked in one workweek exceeded 168 (the maximum number of hours in a week) Plaintiff used an average of 112 hours as the maximum hours worked to adjust the back-wage calculation based on employee interviews." ECF No. 324 at 15, ¶ 83.

Working more than 168 hours in a week is obviously impossible. The DOL apparently reduced such instances to "an average of 112 hours" when computing backpay wages, but it was still troubling for Steadfast to learn that the DOL's review of Steadfast's underlying records could somehow have led DOL initially to interpret those records as repeatedly showing nurses working more than 168 hours in a single workweek. This red flag led Steadfast (through counsel) to review a random sample of 573 line-item entries in PX-21, and this sampling process resulted in discovery of the seemingly systemic data entry and computation errors described in the introduction above.[1]

---

[1] This same red flag is present in the DOL's latest "Updated Back Wage Computations," filed March 11, because DOL's notice of filing again references this downward adjustment to 112 hours "[w]here the total number of hours a nurse worked in a one [sic] workweek exceeded 168," which again raises serious concerns about the method the DOL is using to determine "hours worked,"

**JA1990**

This review also led to the separate discovery that despite earlier discussions with the DOL, PX-21 still included 80 Steadfast W-2 employees, even though Steadfast's payroll records (produced to DOL in discovery) clearly showed that each of these employees had *already been paid overtime* at 1.5x their regular rate for any hours worked over 40 in a workweek.

**ARGUMENT**

There is no doubt that the DOL's backpay computations reflected in its PX-21 computation table contain serious errors, intermixed within roughly 10,000 multi-column individual line entries. The DOL's basic backpay calculation methodology – at least as described in the Court's findings of fact – appears sound. Total hours worked in a week were purportedly divided by the gross weekly pay for that week to arrive at a "regular rate." ECF No. 324 at 16, ¶ 84. That regular hourly rate was multiplied by the number of hours worked over 40 in that week, and the resulting figure was then multiplied by .5, to arrive at the amount of backpay allegedly owed. *See id.*

Unfortunately, a sound method is of little value if paired with flawed execution, which seems to be what happened here. Rules 52(b), 54(b), and 60(a)-(b) arm the Court with ample discretion to correct the resulting harm, and it is important that any final backpay computation adopted by the Court be accurate and fair. Anything less would be unjust. It simply cannot be an appropriate result for the United States Department of Labor to embrace a backpay computation in which the weekly hours shown in payroll records are repeatedly doubled or increased when entering data in the weekly "Total Hours" column of DOL's computation table, and to sponsor a backpay calculation under which a company that already paid overtime wages to its 80 W-2 employees is asked to pay those same overtime wages twice.

---

and the accuracy of the computations in the untitled 247-page document that DOL filed as "Exhibit A." *See* ECF No. 329 at 2 & ECF No. 329-1.

**JA1991**

**I.       Rules 52(b), 54(b), and 60(a)-(b) support Defendants' request for relief.**

Federal Rule of Civil Procedure Rule 54 permits a district court to revise any order or other decision prior to the entry of a judgment that adjudicates all claims and all parties' rights and liabilities.  Where a district court issues an interlocutory order that adjudicates fewer than all claims and all liabilities, the court retains discretion to revise such order "at any time before the entry of a judgment adjudicating all the claims." *Carlson v. Boston Scientific Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). Here, the final backpay computations, and any associated liquidated damages figure, have not yet been resolved. The Court's Memorandum Opinion noted the DOL's initial backpay calculation of $3,619,716.49 and ordered the DOL to "provide the Court with an updated calculation of back pay and liquidated damages within sixty (60) days of the date of this opinion." ECF No. 324 at 16, 31.

As explained above, the DOL filed this updated calculation on the evening of March 11, and Defendants have not yet had the opportunity to review and evaluate the 247-page "Exhibit A" that reflects the DOL's updated backpay computation for the period from June 10, 2021, to January 28, 2022. *See supra* at 1-2 (discussing ECF No. 329). Similarly, the Court has not yet had a chance to hear arguments or evaluate evidence from both sides in relation to the DOL's updated March 11 computation, and has not yet entered a final order rendering a specific judgment in relation to the amount of backpay Steadfast owes. Because the Court has not yet entered a judgment adjudicating this and all other claims, rights, and liabilities, Rule 54(b) provides a proper foundation for the relief sought herein.[2]

---

[2] The Court's January 14 Memorandum Opinion and Order did conclude that Steadfast was liable for failing to pay overtime and maintain pay records, ECF No. 324 at 30, and the accompanying judgment order enjoined Defendants "from committing further violations of the FLSA." ECF No. 325. Defendants believe the Court's January 14 order was interlocutory in nature, because documents still had to be exchanged between the parties, and final backpay and liquidated damage

8

**JA1992**

Rule 54(b) permits the Court broad flexibility to revise interlocutory orders prior to a final judgment, as the litigation develops, and new facts and issues come to light. *See Carlson*, 856 F.3d at 325; *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003). The broad discretion afforded the Court under Rule 54(b) provides a basis for revising or modifying the content of an interlocutory order in a range of situations, including to prevent a "clear error causing manifest injustice." *See id.* at 515. Enforcing a demonstrably inaccurate and artificially inflated FLSA backpay computation would be just such an injustice, and preventing this injustice is an appropriate basis for relief under Rule 54(b). *See Williams v. Shelby Cty. Bd. Of Educ.*, 2021 WL 698861 at *3 (W.D. Tenn. Feb. 23, 2021) (granting Rule 54(b) motion to correct backpay miscalculation prior to the entry of a final judgment, on the grounds that it would be a manifest injustice to leave an inaccurate backpay amount uncorrected).

Federal Rule of Civil Procedure Rule 60(a) permits a district court to correct a clerical mistake or a mistake arising from oversight or omission "whenever one is found in a judgment, order, or other part of the record." This includes mechanical adjustments to judgments or orders, such as correcting a mathematical miscalculation. *Sartin v. McNair Law Firm PA*, 756 F.3d 259 (4th Cir. 2014). Corrections within the scope of Rule 60(a) includes corrections of a clerical error, or a copying or computational mistake. *See Rhodes v. Hartford Fire Ins. Co.*, 548 Fed.Appx. 857, 859 (4th Cir. 2014). "The basic distinction between clerical mistakes and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consist of blunders in execution whereas the

---

figures had to first be computed by the DOL, and then submitted to the Court for review. *See* ECF No. 324 at 31. However, in an abundance of caution, and pursuant to Fed. R. App. P. 4(a)(2), Defendants intend to file a Notice of Appeal on or before March 15. As to the instant motion, Defendants are seeking relief pursuant to (in the alternative) Rules 52(b), 54(b), 60(a), and 60(b), in part to account for any potential uncertainty concerning whether the Court's January 14 order is considered interlocutory or final.

**JA1993**

latter consist of instances where the court *changes its mind,* either because it made a legal or factual mistake in making its original determination, or because on second thought it has decided to exercise its discretion in a manner different from the way it was exercised in the original determination." *Id.* at 859-60. Here, Defendants are not asking the Court to change its mind on an issue of law (or even one of fact), but rather, simply to direct that the DOL take whatever steps are necessary to correct "blunders in execution" that have undermined the accuracy, integrity, and reliability of DOL's initial backpay computations set forth in PX-21.

Federal Rules of Civil Procedure 52(b) and 60(b) also provide potential grounds for relief. Relief may be granted under Rule 52(b) to correct "manifest errors of law or fact," and also (in limited situations) to present newly discovered evidence. *See Centripetal Networks, Inc. v. Cisco Systems, Inc.*, 526 F.Supp.3d 137, 165 (E.D. Va. 2021). Under Rule 60(b)(1), relief may be granted based on "mistake, inadvertence, or excusable neglect," although such a motion will only be granted where the moving party can demonstrate "exceptional circumstances." *See, e.g., Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.,* 843 F.2d 808, 811 (4th Cir.1988); *In re A.H. Robins Co., Inc.*, 197 B.R. 613, 615 (E.D. Va. 1996). Relief may also be granted under Rule 60(b)(6) in extraordinary circumstances where failure to grant relief would "create a substantial danger that the underlying judgment was unjust." *See Murchison v. Astrue*, 466 Fed.Appx. 225, 229 (4th Cir. 2012) (granting relief under Rule 60(b)(6) where Social Security Administration's provision of inaccurate information to EEOC led to dismissal of plaintiff's claims, giving rise to unjust result subject to correction under Rule 60(b)).

As summarized above, this is an exceptional situation in which data entries in a government backpay computation table, authenticated under oath by government witnesses, and purportedly based upon Steadfast's own business records, are repeatedly in direct conflict with those same

**JA1994**

records. And as outlined below, the magnitude of the harm Steadfast may face as a result is unusual and severe, because Steadfast's review and sampling analysis suggests that PX-21 may overstate the proper backpay computation by more than 60%. *See infra* at 14. In addition, given the potential imposition of liquidated damages under the FLSA, any significant overstatement in the PX-21 backpay computation inflicts double financial prejudice on Steadfast.

It should be emphasized that Defendants' sampling analysis also revealed various instances in which the DOL actually *undercalculated* the amount of applicable back pay for certain entries in PX-21 (thus resulting in an understatement of what those specific nurses may be owed under the Court's decision). The net effect of these undercalculations is included and accounted for in the summary spreadsheet that was Attachment C to Defendants' March 6 letter to the DOL and is included here as **Exhibit 1C**.[3] As noted above and explained below, *even with the undercalculations accounted for*, Defendants' sampling analysis of PX-21 suggests that the DOL's backpay computations may be overstated <u>by more than 60%</u>. *See infra* at 14.

Under the framework established by the rules and cases discussed above, this is an exceptional circumstance in which a failure to correct the errors in the DOL's PX-21 backpay computation table will inflict severe unfair prejudice on Steadfast, and may also deprive certain of Steadfast's workers of the full relief they are entitled to under the Court's findings. On the other hand, fixing the mistakes in PX-21 to ensure an accurate and correct backpay computation will not impose any unfair prejudice on the DOL, or on the workers for whom DOL seeks relief. Pursuant

---

[3] The working spreadsheets provided to the DOL as Attachment D to Steadfast's March 6 letter used purple highlighting to draw the DOL's attention to the sample entries from PX-21 that undercalculated the backpay owed. Sample entries that overstated the backpay owed were highlighted in orange. Sample entries that appeared correct were highlighted in green. Steadfast was transparent with the DOL, and many of the highlighted sample entries on the Attachment D working spreadsheets were accompanied by explanatory notes and revised computations.

11

**JA1995**

to the rules cited above, and given the significant prejudicial computation errors summarized above and discussed in more detail below, Defendants have a strong claim for the limited relief they seek.

**II.    Defendants have identified clear backpay computation errors that will result in manifest injustice if not corrected.**

As outlined above, Steadfast's review and sampling process has identified multiple categories of repeated errors embedded within the 10,000 individual DOL entries in PX-21. These include improper inclusion of W-2 employees who were already paid the proper statutory rate for their overtime hours, improper inflation of the backpay computation by repeatedly doubling or otherwise increasing the figure in the weekly "Total Hours" column when transposing data from Steadfast's payroll records into PX-21, and improper treatment of hours worked across multiple workweeks as though they were worked in a single workweek. *See supra* at 2-3.

Steadfast brought these errors to the attention of the DOL via a March 6 letter, attached to this motion as **Exhibit 1**. The March 6 letter contained four attachments: Attachments A-D.[4] Attachment A is a narrative summary in which Steadfast explained in detail its random sampling methodology, and the results of its sampling review. **Exhibit 1A**. Attachment B to Steadfast's March 6 letter is a summary spreadsheet showing details concerning the 80 W-2 employees mistakenly included in PX-21. **Exhibit 1B**. Attachment C to Steadfast's March 6 letter was a summary spreadsheet showing the details of Steadfast's sampling review, including the dollar impact of the DOL's "doubling," "arbitrary increase," and "multiple workweek" errors, as well as the proper dollar figure for backpay in relation to the 573 sample entries once those errors were

---

[4] Attachments A, B, and C are appended to this Motion as **Exhibits 1A, 1B, 1C**. Steadfast has not included Attachment D, because the 24 spreadsheets enclosed in the Attachment D zip file cannot readily be converted to PDF, due to their format and size. In addition, Excel spreadsheets are usually incompatible with the ECF system; however, Steadfast can certainly submit the Attachment D materials to the Court via other means upon request.

12

**JA1996**

corrected. **Exhibit 1C**. Attachment D to Steadfast's March 6 letter was a zip file containing the working Excel spreadsheets Steadfast used when performing its sampling analysis, including color-coded highlighting identifying each of the 573 sample entries from PX-21 that were reviewed and checked against Steadfast's underlying business records.

While Steadfast has painstakingly documented the presence of clear and recurring computation and data entry errors throughout the PX-21 backpay computation table, it also bears emphasis that Steadfast's analysis is based entirely on documents *produced to the DOL in discovery*, and thus available to the DOL when preparing PX-21. For example, Steadfast's payment of proper FLSA overtime wages to each of the 80 W-2 employees improperly included in PX-21 is clear on the face of the ADP payroll records for each of those employees, which detail the hours worked, the total pay received, the regular rate paid for the first 40 hours, and the 1.5x overtime rate paid for any hours above 40. **Exhibit 3** to this motion is a table that lists each of the 80 W-2 employees in question, and shows the specific bates ranges of the Steadfast payroll records that document the overtime pay each has already received.

The repeated doubling or arbitrary increasing of hours in the weekly "Total Hours" column of PX-21 is even more perplexing, because even if DOL limited the scope of its review to Steadfast's payroll records, all it had to do was what its trial witnesses claimed it did – look at the Steadfast payroll records (both ADP and Next Day Pay) to identify the total number of hours a nurse worked in a week, and then enter that number in the "Total Hours" column on PX-21. Yet somehow, the transposition process appears to have gone entirely off the rails, because of the 573 PX-21 sample entries reviewed, *113 entries* improperly doubled the hours shown on the corresponding Steadfast payroll records, and *an additional 240 entries* arbitrarily increased the hours, without any basis in or correlation to the payroll records. *See* **Exhibit 1A** at 3.

As to the "multiple workweek" issue, arising from periodic delayed submission of timesheets by Steadfast's nurses, the solution to this problem was explained in depositions, and testified to at trial. *See supra* at 5. If the hours listed in Steadfast payroll records for a particular workweek are cross-checked against Steadfast's invoices to its healthcare facility clients for that same time period, one can confirm the precise days and hours the nurse worked, thereby ensuring that the total hours paid in a single paycheck are properly allocated to the correct workweeks, and avoiding an artificially inflated backpay computation. **Exhibit 4** to this motion consists of sample packets demonstrating the bate stamped documents used in this cross-checking process, as well as similar samples in relation to the "doubling hours" and "arbitrary increase" errors discussed above.

The final point to consider when evaluating the manifest injustice facing Steadfast is that the impact of the DOL's apparent errors is difficult to overstate. The DOL's initial backpay computation in PX-21 amounts to $3,619,716.49 in alleged backpay. The 573 entries from PX-21 reviewed as part of Steadfast's random sampling effort account for $318,771.40 of the alleged backpay (nearly 10%). *See* **Exhibit 1A** at 2-3, **Exhibit 1C**. Of this $318,771.40 figure, Steadfast's sampling review determined that $187,452.83 is demonstrably incorrect, with the correct figure able to be confirmed from the pertinent payroll records and facility invoices totaling only $131,318.57. *See* **Exhibit 1** at 2, **Exhibit 1A** at 2-3, and **Exhibit 1C**. This results in a confirmed error rate within the sample of nearly 59%. This is on top of the separate financial impact arising from the improper inclusion of Steadfast's W-2 employees who already received their overtime pay, as the alleged "backpay" traceable to these employees in PX-21 is $193,071.35, and the correct figure is zero. *See* **Exhibit 3** and **Exhibit 1A** at 2. When this deduction is factored in, there appears to be a distinct possibility that PX-21 overstates the proper backpay computation (under the formula used by DOL and adopted by the Court) *by more than 60%*.

14

**JA1998**

The bottom line is that while the DOL has in theory offered a coherent model for computing and calculating backpay, in practice, it has undermined this model through repeated errors in its backpay computation table that it has thus far refused to address, explain, or even acknowledge. To impose an inaccurate backpay computation of this sort on a small business that provided vital staffing services throughout a global pandemic would be a manifest injustice, of the sort that Rules 52(b), 54(b), and 60(b) are designed to correct or prevent. In addition, the computation errors at issue here, potentially traceable to flawed data entry and transposition mistakes, are classic examples of the type of problems the Fourth Circuit has repeatedly held can and should be corrected under Rule 60(a). *See, e.g., See Kosnoski v. Howley*, 33 F.3d 376 (4th Cir. 1994) (Rule 60(a) used to correct computation of pre-judgment interest); *Hylind v. Xerox Corp.*, 632 Fed.Appx. 114, 116 (4th Cir. 2015) (suggesting correction of mathematical errors is proper ground for relief under Rule 60(a)); *American First Federal, Inc. v. New Dominion Bank, Inc.*, 2018 WL 10075602 (W.D. N.C. Aug. 13, 2018) (granting Rule 60(a) motion correcting calculation of attorneys' fees and costs).

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court grant their motion in relation to PX-21, note their opposition to any potential adoption of the DOL's March 11 "Updated Back Wage Computations," and enter an order that (a) affords Defendants sufficient time to review and potentially challenge the computations contained and incorporated in the DOL's March 11 filing, and (b) directs the DOL to review PX-21, evaluate the issues raised in Defendants' March 6 letter, correct any errors in PX-21, create a revised and updated computation of alleged backpay, and allow Defendants sufficient time to review the proposed final backpay calculation prior to its submission to the Court.

Dated: March 13, 2022

Respectfully submitted,

**MEDICAL STAFFING OF AMERICA, LLC,
LISA ANN PITTS**

By: */s/ Abram J. Pafford*
Abram J. Pafford (VSB #79999)
McGuireWoods LLP
888 16th Street, NW
Suite 500
Black Lives Matter Plaza
Washington, DC 20006
Phone:  (202) 857-1725
Fax:  (202) 828-3350
apafford@mcguirewoods.com

Joshua L. Jewett (VSB #76884)
Julia A. Rust (VSB #87270)
Pierce / McCoy, PLLC
101 West Main Street, Suite 101
Norfolk, VA  23510
Phone: (757) 216-0226
Fax: (757) 257-0387
jjewett@piercemccoy.com
julia@piercemccoy.com

*Counsel for Defendants*

**JA2000**

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2022, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

Dated: March 13, 2022                    Respectfully submitted,

                                        **MEDICAL STAFFING OF AMERICA, LLC**

                                        By: */s/ Abram J. Pafford*
                                        Abram J. Pafford (VSB #79999)
                                        MCGUIREWOODS LLP
                                        888 16th Street, NW
                                        Suite 500
                                        Black Lives Matter Plaza
                                        Washington, DC 20006
                                        Phone:  (202) 857-1725
                                        Fax:  (202) 828-3350
                                        apafford@mcguirewoods.com

17

**JA2001**

# Exhibit 1

**McGuireWoods LLP**
888 16th Street N.W.
Suite 500
Black Lives Matter Plaza
Washington, DC 20006
Phone: 202.857.1700
Fax: 202.857.1737
www.mcguirewoods.co

**Abram J. Pafford**

# McGuireWoods

apafford@mcguirewoods.com
Fax: 202.828.3350

March 6, 2022

Ryma Lewis, Esq.
Office of the Regional Solicitor
U.S. Department of Labor
201 12th Street South
Arlington, VA 22202

BY E-MAIL

*RE: Walsh v. Medical Staffing of America, LLC* – No. 18-cv-226 & No. 2:19-cv-475

Dear Ms. Lewis:

We are writing on behalf of our client Medical Staffing of America, LLC, d/b/a Steadfast Medical Staffing ("Steadfast"), defendant in the above-referenced action. We have been retained by Steadfast to serve as co-counsel alongside Pierce McCoy in anticipation of a potential appeal, and in relation to any matters that remain to be addressed in the District Court.

After reviewing the District Court's January 14 memorandum opinion, we noted with concern the Court's reference in paragraph 83 to situations "where the total number of hours a nurse worked in one workweek exceeded 168 (the maximum number of hours in a week)[.]" Working more than 168 hours in a week is obviously impossible. Although the Department of Labor ("the Department") apparently reduced such instances to "an average of 112 hours" when calculating backpay damages, it was still troubling that the Department's review of Steadfast's underlying records could somehow have led the Department initially to interpret those records as repeatedly showing workweeks in excess of 168 hours worked.

These concerns led us to work with Pierce McCoy to review a random sample of more than 500 line-item entries in the Department's "Wage Transcript and Computation Sheets" submitted as Exhibit PX-21 at trial. The results were surprising and disturbing. Within the 573 entries reviewed, there are more than 100 instances where the Department's calculations appear to have doubled the actual number of hours worked (as reflected in Steadfast's ADP and Next Day Pay

Atlanta | Austin | Baltimore | Charlotte | Charlottesville | Chicago | Dallas | Houston | Jacksonville | London | Los Angeles - Century City
Los Angeles - Downtown | New York | Norfolk | Pittsburgh | Raleigh | Richmond | San Francisco | Tysons | Washington, D.C. | Wilmington, NC

("NDP") payroll records). There are more than 200 additional entries where the Department's calculations appear arbitrarily to have increased the actual number of hours worked, while stopping short of doubling the hours reflected in the pertinent payroll records. There are dozens of entries where the Department's backpay calculations tied to a single paycheck improperly lump together in one workweek hours worked across multiple workweeks, even though the facility invoices produced by Steadfast in discovery show the actual dates on which each nurse's hours were worked. And on top of these hundreds of material errors in the 573 sample entries, we also identified more than 80 Steadfast W-2 employees improperly included in the Department's backpay calculations, even though the ADP payroll detail records produced by Steadfast clearly show any overtime hours worked by each, and the overtime wages they already received, paid at 1.5 times their regular rate.

We are attaching to this letter spreadsheets showing our sampling analysis, and summarizing the bottom-line results in relation to the Department's alleged backpay calculations. The magnitude of these errors is difficult to overstate – the 573 entries reviewed in our sample account for $318,771.40 of the alleged backpay. Of the alleged $318,771.40 of back pay, our sampling determined that $187,452.83 is demonstrably incorrect (with the correct figure able to be confirmed from the pertinent payroll records and facility invoices), and another $39,762.57 cannot be confirmed or reconstructed, even after reviewing the payroll records and facility invoices produced by MSA. A confirmed error rate of nearly 59% is (in our collective experience) unprecedented in a government damages calculation of this sort.

In this circumstance, we believe it is incumbent upon the Department to seek an extension from the District Court of at least 75 days for purposes of revisiting and revising its calculation of alleged backpay, and then updating that revised calculation by incorporating the recent payroll records produced by Steadfast post-trial. This would allow sufficient time for the Department to do a revised calculation, and for Steadfast to review the revised calculation prior to its submission to the Court. We also expect that any updated calculation from the Department will be accompanied by an explanation as to the source of the errors described above, especially the problematic instances in which the hours of Steadfast's nurses were arbitrarily increased, and in many cases doubled, above the hours actually shown on the relevant ADP and NDP payroll records.

Given the unusual circumstances, and the fact that the District Court has not yet entered an order reflecting a final backpay and damages calculation, we would be grateful for a response no later than close of business Tuesday, March 8, indicating whether the Department will seek the suggested extension for the purposes described above. If we have not reached an acceptable understanding with the Department by close of business on March 8, we reserve the right to file a motion raising these issues with the District Court at any time thereafter, without

further consultation or advance notice.

Attachment A to this letter is a short summary document, providing further narrative details concerning our sampling approach, and the specific categories and types of errors identified within the Department's backpay calculation worksheets. Attachment B is a one-page spreadsheet summarizing the impact of the Department's miscalculations in connection with Steadfast's W-2 employees who were already paid for their overtime hours. Attachment C is a one-page summary spreadsheet noting the number of individual entries reviewed from within the Department's PX-21 "Wage Transcript and Computation Sheets", the types of errors found, and the dollar impact of those errors in relation to the Department's calculation of alleged backpay. Attachments D-1 through D-24 (provided via zip file) are the individual working spreadsheets created as part of the review effort, and reflecting (via highlighting, notes, and supplemental calculations) the specific entries reviewed by our team, and the analysis associated with that review.

We are grateful for your consideration of the matters raised herein. To the extent there are questions, or if additional information is needed, please let us know, and we will do our best to respond promptly. The best ways to reach me are by email at apafford@mcguirewoods.com, and on my cell at (703) 851-8096. We look forward to hearing from you soon.

Sincerely,

Abram J. Pafford, Esq.

McGuireWoods LLP
*Counsel to Medical Staffing of America, LLC*

cc: Chervonti Jones, Esq.
Mohamed Seifeldein, Esq.
(*U.S. Department of Labor*)

John E. Thomas, Esq.
Matthew A. Fitzgerald, Esq.
Evan X. Tucker, Esq.
(*McGuireWoods LLP*)

Joshua Jewett, Esq.
Julia Rust, Esq.
(*Pierce McCoy, LLC*)

**JA2005**

# Exhibit 1A

*Walsh v. Medical Staffing of America, LLC* – Nos. 18-cv-226 & 2:19-cv-475
<u>Attachment A to Steadfast's March 6, 2022 Backpay Calculation Letter</u>

*Narrative Summary - Steadfast Sampling Analysis of DOL Backpay Calculations*

1.      **Steadfast's sampling approach** – The Department's backpay calculations are set forth in its "Wage Transcript and Computation Sheets" that were submitted as Exhibit PX-21 at trial. This document contains approximately 10,000 line-item entries, each supposedly addressing a specific paycheck for a specific Steadfast team member who purportedly worked more than 40 hours in a specific workweek, and yet allegedly did not receive overtime pay at the statutorily prescribed 1.5x rate.

Of these 10,000 entries, approximately 8,588 were in a format that could be efficiently transposed into Excel format.[1] To spread the sampling work amongst multiple team members, the collected set of 8,588 entries was broken into segments and incorporated into 23 separate Excel spreadsheets, with each spreadsheet on average containing more than 300 individual entries. The individual entries for the most part appear to be in alphabetical order from A to Z, based upon last names of the Steadfast team members included in the Department's calculations.

Steadfast's legal counsel then began sampling individual entries at random, assigning different spreadsheets to different team members. 573 entries were reviewed. This effort began with the first spreadsheet, and continued through sampling at least a handful of entries from most of the first 17 spreadsheets. The 573 entries reviewed via sampling therefore disproportionately involve entries tied to Steadfast team members whose last names begin with letters in the first two-thirds of the alphabet, but this alphabetical concentration has no impact on the integrity or results of the overall sampling effort.

In some instances, only one or two entries for an individual would be sampled, and then the sampling would proceed further down the spreadsheet. In others, a slightly larger cluster of entries in relation to one individual would be sampled, in part to make sure that the sampling analysis was accurate in situations where a Department's entry for an individual paycheck actually encompassed hours worked by the Steadfast team member in multiple separate workweeks.

Attachment C to Steadfast's March 6 letter summarizes the sampling effort described above, and outlines the results. Attachments D-1 through D-23 collectively contain the 8,588 entries from the Department's Exhibit PX-21 that were broken into segments and incorporated into spreadsheets. Each of the 573 "sample entries" is marked by highlighting – green where no errors were found, orange where errors were found and confirmed, and yellow in instances where the

---

[1] See "*" comment in Column B, Row 27 of Attachment C spreadsheet for further details.

**JA2007**

Department's numbers appear to be in conflict with the underlying Steadfast records produced in discovery, but for one reason or another, Steadfast has not been able to calculate or confirm the correct numbers.

2.   **Categorization of errors in DOL's calculation of alleged backpay –** As noted in Steadfast's March 6 letter, Steadfast's sampling effort has identified four major categories of error in the Department's PX-21 backpay calculations. Each of the four is described and summarized below.

   A.  **Category 1 – W-2 employees who already received overtime pay.**

   The Department's backpay calculations included 80 employees of Steadfast who performed overhead functions, were classified as W-2 employees, and were paid overtime at 1.5x their regular rate on any occasions where they worked more than 40 hours in a single workweek. For each of these individuals, the ADP payroll detail records produced by Steadfast show for each workweek their hours worked, their regular rate of pay, their gross pay at the regular rate, their overtime rate of pay, and their gross overtime pay at their overtime rate. These records are clear on their face, and given these records, we do not understand why the Department chose to include these individuals in its backpay calculations.

   Attachment B to Steadfast's March 6 letter is a spreadsheet listing these 80 employees, and showing the amount of alleged "backpay" the Department sought to recover for each. The total alleged backpay associated with this error is $193,071.35, which should be reduced to zero. *This "W-2" error is separate and apart from the errors discussed in Categories 2-4 below*, because we removed all entries relating to these W-2 employees from the Attachment D spreadsheets *before* conducting the sampling analysis described above, summarized in Attachment C, and reflected in detail in the spreadsheets included in Attachment D. Entries relating to these employees, in other words, are not part of the universe of 8,588 PX-21 entries that provided the data set from which the 573 "sample entries" were drawn.

   B.  **Category 2 – Treating hours worked in multiple workweeks as though they were worked in a single week.**

   Within the 573 samples we reviewed, the Department's backpay calculations appear repeatedly to have assumed that the hours stated for a particular paycheck on Steadfast's ADP payroll records were all worked within the same workweek. As was explained in discovery and at trial, many of Steadfast's nurses do not submit timesheets on a weekly basis, and thus one paycheck may often encompass hours worked within two or more workweeks. But the weekly invoices Steadfast submits to its facility clients show the specific days and hours worked by each nurse listed on the invoice. Thus, when the ADP payroll hours for a particular workweek are checked against the corresponding facility invoices covering the same time period, it

2

**JA2008**

is possible to properly determine the number of hours a nurse worked in a particular week, and thus determine how much overtime pay, if any, the nurse might be entitled to. This cross-checking process corrects the "multiple workweek" error that tainted the Department's backpay calculations, resulting in 41 incorrect entries in the sample of 573 reviewed, reducing the alleged backpay associated with those specific entries by more than 50% - from $23,660.88 before the correction, to $11,641.20 after. *See* Attachment C, Rows 31-33.

### C. Category 3 – Inflating the backpay calculations by doubling the hours actually worked by Steadfast's nurses.

The ADP and Next Day Pay ("NDP") payroll records produced in the litigation list the number of hours for which each Steadfast team member was paid in connection with a particular paycheck or pay period. Each entry in the Department's PX-21 "Wage Transcript and Computation Sheets" likewise list the hours supposedly worked by the Steadfast team member to whom the entry relates. But in more than 100 examples out of the 573 sample entries reviewed, the Department appears to have taken the number of hours shown in Steadfast's payroll records, and then doubled that number when entering the hours in the PX-21 backpay calculation document.[2]

This unexplained (and perhaps inexplicable) error results in a grossly inflated backpay calculation. The alleged backpay associated with the 113 sample entries in which this error occurred is $68,332.72; when the error is corrected, the alleged backpay figure associated with those same entries is reduced by $54,658.94, resulting in a corrected figure of $13,673.79. *See* Attachment C, Rows 35-37.

### D. Category 4 – Inflating the backpay calculations by arbitrarily increasing the hours actually worked by Steadfast's nurses.

The Category 4 errors are similar in substance to the Category 3 "doubling error" described above. The only difference is that in these instances (240 out of the 575 sample entries reviewed), the Department's PX-21 backpay calculation document appears arbitrarily to have increased by various random amounts the hours supposedly worked by Steadfast's nurses, while stopping short of actually doubling the number of hours shown in the corresponding Steadfast ADP and NDP payroll records. The alleged backpay associated with these 240 erroneous entries is $119,704.32; when the errors are fixed, this figure is reduced by $67,721.49, resulting in a corrected figure of $51,982.83. *See* Attachment C, Rows 39-41.

---

[2] This improper doubling of hours also occurred with a number of the W-2 employees discussed under Category 1 above, and listed on Attachment B. These errors are noted in Column G of the Attachment B spreadsheet. It is important to remember that these "doubling errors" are *in addition to* the 113 examples of improper doubling found in the 573 sample entries that were reviewed. This is because, as noted above, entries related to the 80 W-2 employees listed on Attachment B were removed from Steadfast's Attachment D working spreadsheets *before* the sampling review summarized on Attachment C took place.

3

**JA2009**

# Exhibit 1B

| First Name | Last Name | DOL BW Start Date | DOL BW End Date | DOL's Total BWs | Steadfast Classification | DOL Hour & Wage Data Errors |
|---|---|---|---|---|---|---|
| Aishia | Patterson | 10/11/2020 | 3/28/2021 | $3,969.51 | Employee | Gross Pay & Hours Doubled |
| Amanda | Lent | 1/10/2021 | 1/17/2021 | $891.55 | Employee | Gross Pay & Hours Doubled |
| Amber L | White | 3/10/2019 | 6/9/2019 | $1,783.77 | Employee | |
| Andrea | Wright | 6/21/2020 | 7/26/2020 | $1,306.90 | Employee | Gross Pay & Hours Doubled |
| Ashley A | Davis | 1/13/2019 | 4/28/2019 | $3,029.26 | Employee | |
| Bonny | Denney | 6/1/2018 | 6/1/2018 | $45.77 | Employee | |
| Buddy | Thibeault | 1/3/2021 | 6/27/2021 | $7,509.20 | Employee | Gross Pay & Hours Doubled |
| Brandon | Chambers | 1/24/2021 | 1/31/2021 | $948.09 | Employee | Gross Pay & Hours Doubled |
| Bria | East | 3/21/2021 | 3/21/2021 | $495.48 | Employee | Gross Pay & Hours Doubled |
| Chandre | Marshall | 12/22/2017 | 2/2/2018 | $345.32 | Employee | |
| Chante | Porter | 10/27/2019 | 2/9/2020 | $1,504.54 | Employee | Gross Pay & Hours Doubled |
| Chardonnay A | McGlothen | 7/26/2020 | 11/1/2020 | $892.59 | Employee | Gross Pay & Hours Doubled |
| Charell | Tabb | 2/17/2019 | 3/10/2019 | $784.28 | Employee | |
| Christine L | Kim | 12/30/2018 | 1/31/2021 | $17,919.78 | Employee | Gross Pay & Hours Doubled |
| Chu-Sun | Widger | 1/3/2021 | 3/21/2021 | $5,127.29 | Employee | Gross Pay & Hours Doubled |
| Courtney-Hope | Draughn | 8/10/2018 | 11/10/2019 | $2,649.96 | Employee | |
| Dakeem | Bond | 5/12/2019 | 5/12/2019 | $196.95 | Employee | |
| Deborah | Gauvin | 2/23/2018 | 4/20/2018 | $198.05 | Employee | |
| Deirdra | Richardson | 1/5/2020 | 1/26/2020 | $2,108.45 | Employee | Gross Pay & Hours Doubled |
| Delora | Deberry | 11/2/2018 | 11/23/2018 | $74.52 | Employee | |
| Destiny | Henson | 1/31/2021 | 2/14/2021 | $1,166.55 | Employee | |
| Earlene | Boone-Hill | 10/13/2017 | 12/29/2017 | $482.80 | DUAL 1099 & W-2 | Gross Pay & Hours Doubled |
| Elizabeth | Cranston | 6/28/2020 | 7/26/2020 | $1,473.69 | Employee | Gross Pay & Hours Doubled |
| Elwood | Whitney | 1/13/2019 | 1/13/2019 | $180.70 | Employee | |
| Erica | Brown | 5/19/2019 | 5/19/2019 | $41.92 | Employee | |
| Estelle A. | Jackson | 12/7/2018 | 4/7/2019 | $2,963.45 | Employee | |
| Ieasha | Baxter | 8/18/2019 | 4/5/2020 | $5,991.59 | Employee | Hours Stated by DOL Incorrect |
| Jalena S | Bouzidi | 7/19/2020 | 9/20/2020 | $2,403.83 | Employee | Gross Pay & Hours Doubled |
| Janet | Taylor | 5/30/2021 | 6/20/2021 | $1,326.93 | Employee | Gross Pay & Hours Doubled |
| Jasmine | Rankin | 2/9/2020 | 7/19/2020 | $1,591.73 | Employee | Gross Pay & Hours Doubled |
| Jaylon | Johnson | 6/9/2019 | 7/19/2020 | $18,122.39 | Employee | Salary - Hours and Rate Stated by DOL Incorrect; Gross Salary Doubled |
| Jeanay | Oliver | 12/8/2019 | 2/23/2020 | $3,669.92 | Employee | Gross Pay Doubled |
| Jonathan | Wood | 3/21/2021 | 3/21/2021 | $273.93 | Employee | Gross Pay Doubled |
| Kaavya | Shukla | 2/14/2021 | 6/20/2021 | $2,452.16 | Employee | Gross Pay Doubled |
| Karen | Reams | 1/5/2020 | 10/11/2020 | $4,706.41 | Employee | Gross Pay Doubled |
| Kayla | Dibler | 1/3/2021 | 2/28/2021 | $4,718.06 | Employee | Gross Pay & Hours Doubled |
| Kelli | Register | 1/31/2021 | 2/28/2021 | $2,504.99 | Employee | Gross Pay & Hours Doubled |
| Kristina L | Paige | 12/6/2020 | 3/21/2021 | $3,107.62 | Employee | Gross Pay & Hours Doubled |
| Kristy | Williams | 8/10/2018 | 11/9/2018 | $794.12 | Employee | |
| Lashawnda | Lassiter | 10/20/2019 | 2/16/2020 | $2,897.78 | Employee | Gross Pay & Hours Doubled |
| Laura | Everton | 11/15/2020 | 2/21/2021 | $5,121.08 | Employee | Hours Stated by DOL Incorrect |
| Lavonne | Holley | 5/19/2019 | 3/15/2020 | $3,452.15 | Employee | Gross Pay & Hours Doubled |
| Leigh | Edwards | 1/24/2021 | 6/27/2021 | $7,478.83 | Employee | Gross Pay & Hours Doubled |
| Lori | Cox | 9/30/2016 | 3/30/2018 | $569.95 | Employee | |
| Lucie L | Wright | 11/3/2017 | 12/15/2017 | $40.07 | Employee | |
| Manisha | Gautam | 6/2/2019 | 6/23/2019 | $378.02 | Employee | |
| Maria | Stock | 6/28/2020 | 7/26/2020 | $1,767.60 | Employee | Gross Pay & Hours Doubled |
| Marion | Harris | 6/9/2019 | 6/9/2019 | $261.61 | Employee | |
| Meadow | Borecky | 6/28/2020 | 6/20/2021 | $8,583.52 | Employee | Gross Pay & Hours Doubled |
| Meaghan R | Vega | 5/17/2020 | 8/2/2020 | $2,656.00 | Employee | Gross Pay & Hours Doubled |
| Melissa | Spates | 6/6/2021 | 6/20/2021 | $61.20 | Employee | Gross Pay & Hours Doubled |
| Melnae | Harris | 3/21/2021 | 6/20/2021 | $2,392.75 | Employee | Gross Pay & Hours Doubled |
| Na'Iyma | Clifton-Barnes | 12/29/2019 | 12/29/2019 | $319.85 | Employee | Gross Pay & Hours Doubled |
| Nakisha | Woodard | 5/19/2019 | 7/14/2019 | $737.26 | Employee | |
| Nicole L | Bolden | 12/14/2018 | 5/19/2019 | $2,940.03 | Employee | |
| Patrice | Stewart | 12/29/2019 | 2/23/2020 | $3,454.57 | Employee | Gross Pay & Hours Doubled |
| Patrick | Reams | 5/31/2020 | 7/26/2020 | $2,057.92 | Employee | Gross Pay & Hours Doubled |
| Prentis | Townsend Iii | 9/27/2020 | 9/27/2020 | $194.68 | Employee | |
| Rachel | Forrest | 11/23/2018 | 2/10/2019 | $1,303.81 | Employee | |
| Raven | Taylor | 1/24/2021 | 1/24/2021 | $258.90 | Employee | |
| Rebekah | Bane | 6/7/2020 | 2/28/2021 | $4,590.72 | Employee | Gross Pay & Hours Doubled |
| Richard | Salter | 11/10/2019 | 6/20/2021 | $6,590.39 | Employee | Gross Pay & Hours Doubled |
| Shannon A | Jones | 7/7/2017 | 7/14/2017 | $52.50 | Employee | |
| Sheila | Kronske | 5/30/2021 | 6/20/2021 | $1,928.00 | Employee | |

| | | | | | |
|---|---|---|---|---|---|
| Shelby-Lyn | Landrum | 1/3/2021 | 1/10/2021 | $530.45 | Employee | Gross Pay & Hours Doubled |
| Shenica | Edmonds | 7/5/2020 | 7/12/2020 | $844.59 | Employee | Gross Pay & Hours Doubled |
| Shimeiyah | Woodard | 5/12/2019 | 5/19/2019 | 338.18 | Employee | |
| Stephaine | Symuleski | 4/25/2021 | 6/20/2021 | 1482.73 | Employee | Gross Pay & Hours Doubled |
| Tamiko | White | 10/11/2020 | 10/11/2020 | 212.1 | Employee | Hours Stated by DOL Incorrect |
| Tasheta | Davis | 1/5/2020 | 1/5/2020 | 259.36 | Employee | Gross Pay & Hours Doubled |
| Terelle | Wallace | 5/25/2018 | 6/8/2018 | 46.47 | Employee | |
| Tiffany | Pierre | 12/22/2019 | 10/25/2020 | 8459.13 | Employee | Gross Pay & Hours Doubled |
| Tomerrial | Williams | 3/21/2021 | 4/11/2021 | 375.62 | Employee | |
| Tony | Morales | 8/11/2019 | 8/11/2019 | 203.62 | Employee | |
| Trang | Dinh | 6/28/2020 | 7/26/2020 | 1480.65 | Employee | Gross Pay & Hours Doubled |
| Treasuera | Proctor | 12/22/2017 | 12/22/2017 | 138.36 | Employee | |
| Tynisha | Nowell | 12/29/2019 | 2/9/2020 | 731.07 | Employee | Gross Pay & Hours Doubled |
| Virgil | Gordon | 9/14/2018 | 10/19/2018 | 84.78 | DUAL 1099 & W-2 | |
| Zemikia | McClease | 11/24/2019 | 6/27/2021 | 7532.93 | DUAL 1099 & W-2 | |
| Sheralyn | Jones | 8/3/2018 | 6/29/2018 | 508.07 | Employee | |
| | | | Totals: | $193,071.35 | | |

**JA2012**

# Exhibit 1C

| | Starting Totals | | Sampling Totals | | Sampling Breakdown Totals # of Entries | | | DOL's Calculation Errors # of Entries | | | Results | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Part | Total # of Entries | DOL's "Total Due" | # of Entries Reviewed | Back Wages Calculated by DOL | Correct Entries | Need Further Review | Incorrect Entries | Category 2: Included 2+ Workweeks | Category 3: Doubled Hours Paid | Category 4: Incorrect Hours Paid | DOL's Back Wages that Need Further Review | CORRECTED Back Wage Total | DOL $$ Overage |
| 1 | 315 | $92,907.33 | 106 | $62,489.18 | 41 | 10 | 55 | 3 | 21 | 31 | $3,328.77 | $46,417.70 | $16,071.48 |
| 2 | 347 | $91,770.76 | 7 | $2,622.46 | 0 | 0 | 7 | 1 | 1 | 5 | $0.00 | $280.40 | $2,342.06 |
| 3 | 287 | $127,354.46 | 39 | $40,996.75 | 0 | 5 | 35 | 7 | 7 | 21 | $6,993.87 | $18,049.24 | $22,947.51 |
| 4 | 387 | $106,175.22 | 67 | $33,561.14 | 7 | 6 | 54 | 1 | 28 | 25 | $3,349.57 | $7,772.46 | $25,788.68 |
| 5 | 490 | $173,942.84 | 173 | $78,807.80 | 41 | 13 | 119 | 16 | 14 | 85 | $9,856.36 | $29,275.46 | $49,532.34 |
| 6 | 375 | $122,366.37 | | | | | | | | | | | |
| 7 | 220 | $66,222.13 | 16 | $3,772.67 | 2 | 3 | 12 | 3 | 0 | 9 | $1,128.75 | $655.91 | $3,116.76 |
| 8 | 386 | $151,943.11 | 24 | $15,810.67 | 1 | 4 | 20 | 3 | 6 | 10 | $2,207.91 | $4,613.44 | $11,197.23 |
| 9 | 287 | $97,659.91 | 28 | $17,403.39 | 13 | 1 | 14 | 1 | 4 | 9 | $394.57 | $12,475.23 | $4,928.16 |
| 10 | 368 | $121,592.26 | 1 | $601.33 | 0 | 0 | 1 | 0 | 0 | 1 | $0.00 | $0.00 | $601.33 |
| 11 | 723 | $237,482.01 | | | | | | | | | | | |
| 12 | 415 | $131,397.60 | 57 | $33,809.62 | 0 | 15 | 42 | 1 | 12 | 24 | $9,110.28 | $8,123.72 | $25,685.90 |
| 13 | 255 | $67,613.88 | 30 | $10,890.58 | 4 | 5 | 21 | 3 | 8 | 11 | $1,789.49 | $2,207.07 | $8,683.51 |
| 14 | 346 | $96,167.62 | | | | | | | | | | | |
| 15 | 313 | $115,237.71 | | | | | | | | | | | |
| 16 | 229 | $78,796.67 | 7 | $6,433.16 | 0 | 2 | 5 | 0 | 0 | 5 | $1,603.00 | $28.31 | $6,404.85 |
| 17 | 351 | $98,512.16 | 18 | $11,572.65 | 0 | 0 | 18 | 2 | 12 | 4 | $0.00 | $1,419.63 | $10,153.02 |
| 18 | 352 | $133,213.58 | | | | | | | | | | | |
| 19 | 351 | $133,213.58 | | | | | | | | | | | |
| 20 | 481 | $135,128.17 | | | | | | | | | | | |
| 21 | 595 | $154,316.40 | | | | | | | | | | | |
| 22 | 471 | $120,260.44 | | | | | | | | | | | |
| 23 | 244 | $74,393.22 | | | | | | | | | | | |
| 24* | | $698,977.71 | | | | | | | | | | | |
| TOTALS: | 8588 | $3,426,645.14 | 573 | $318,771.40 | 109 | 64 | 403 | 41 | 113 | 240 | $39,762.57 | $131,318.57 | $187,452.83 |

DOL Overage Percentage: 58.80%

| | Category 2 |
|---|---|
| TOTAL DOL DOLLAR VALUE ON CATEGORY 2 ERRORS | $23,660.88 |
| TOTAL CORRECT DOLLAR VALUE ON CATEGORY 2 ERRORS | $11,641.20 |
| DIFFERENCE BETWEEN VALUES | $12,019.68 |

| | Category 3 |
|---|---|
| TOTAL DOL DOLLAR VALUE ON CATEGORY 3 ERRORS | $68,332.73 |
| TOTAL CORRECT DOLLAR VALUE ON CATEGORY 3 ERRORS | $13,673.79 |
| DIFFERENCE BETWEEN VALUES | $54,658.94 |

| | Category 4 |
|---|---|
| TOTAL DOL DOLLAR VALUE ON CATEGORY 4 ERRORS | $119,704.32 |
| TOTAL CORRECT DOLLAR VALUE ON CATEGORY 4 ERRORS | $51,982.83 |
| DIFFERENCE BETWEEN VALUES | $67,721.49 |

# JA2014

# Exhibit 2

## RE: Walsh v. Medical Staffing of America, LLC – Nos. 18-cv-226 & 2:19-cv-475 (E.D. Va.) - Backpay calculation letter

**Pafford, Abram J. <APafford@mcguirewoods.com>**

Thu 3/10/2022 4:55 PM

To: Lewis, Ryma N - SOL <Lewis.Ryma@dol.gov>; Jones, Chervonti J - SOL <Jones.Chervonti.J@dol.gov>; Seifeldein, Mohamed E - SOL <Seifeldein.Mohamed.E@DOL.GOV>; hampton.oscar@dol.gov <hampton.oscar@dol.gov>; thomas.samantha.n@dol.gov <thomas.samantha.n@dol.gov>

Cc: Thomas, John E. Jr. <JEThomas@mcguirewoods.com>; Dougherty, V. Kathleen <vkdougherty@mcguirewoods.com>; Tucker, Evan X. <ETucker@mcguirewoods.com>; Julia Rust <julia@piercemccoy.com>; Josh Jewett <jjewett@piercemccoy.com>

📎 2 attachments (269 KB)

Steadfast March 6 Letter to DOL – Backpay Calculations.pdf; Steadfast March 6 Letter to DOL – Attachment A (narrative summary).pdf;

Ms. Lewis, I wanted to follow up because I don't believe there has been a response to my March 8 email below, and we are hoping to get clarity as to whether the Department plans to review and address the substantive concerns raised in my March 6 letter. I know it is possible that you may be in trial or otherwise occupied, but as this is somewhat time-sensitive, I would be grateful for a response. I have copied Ms. Thomas and Mr. Hampton because given the uncertainty, I wanted to bring this to their attention as well (and because they were not included in the initial distribution, I am attaching a copy of my March 6 letter, along with Attachment A to that letter).

I look forward to hearing from you, and if there is additional information we can provide from our end, please do not hesitate to let me know. I am at a conference today and tomorrow, so the best ways to reach me are by email, or on my cell at (703 851-8096.

Regards,

Abe Pafford

**Abram J. Pafford**
McGuireWoods LLP
T: +1 202 857 1725 I M: +1 703 851 8096

---

**From:** Pafford, Abram J. <apafford@mcguirewoods.com>
**Sent:** Tuesday, March 8, 2022 4:45 PM
**To:** Lewis, Ryma N - SOL <Lewis.Ryma@dol.gov>
**Cc:** Jones, Chervonti J - SOL <Jones.Chervonti.J@dol.gov>; Seifeldein, Mohamed E - SOL <Seifeldein.Mohamed.E@DOL.GOV>; Thomas, John E. Jr. <JEThomas@mcguirewoods.com>; Fitzgerald, Matthew A. <MFitzgerald@mcguirewoods.com>; Tucker, Evan X. <ETucker@mcguirewoods.com>; Julia Rust <julia@piercemccoy.com>; Josh Jewett <jjewett@piercemccoy.com>
**Subject:** RE: Walsh v. Medical Staffing of America, LLC – Nos. 18-cv-226 & 2:19-cv-475 (E.D. Va.) - Backpay calculation letter

Ms. Lewis,

Thank you for your reply. Leaving aside questions of timetable, does the Department plan to review and address the substantive concerns raised in our March 6 letter, in connection with any updated backpay calculation? I understand of course that our letter was only sent a couple of days ago, and the Department needs a reasonable amount of time to review the issues we have raised. That is why I had suggested seeking an extension in connection with any updated calculation, but either way, it would be helpful to have an understanding of the Department's plans in connection with the concerns and apparent calculation errors outlined in the letter.

To the extent we can do anything on our end to facilitate the process or provide additional clarity, please let me know, and we will do our best to assist in a timely fashion. The best ways to reach me this week are by email, and on my cell phone at (703) 851-8096.

Regards,

Abe Pafford

On Mar 8, 2022 4:21 PM, "Lewis, Ryma N - SOL" <Lewis.Ryma@dol.gov> wrote:

**EXTERNAL EMAIL; use caution with links and attachments**

Mr. Pafford:

The Secretary is in receipt of your correspondence dated, March 6, 2022, which requests that the Secretary request an extension to file the updated back wage computations in the *Steadfast, et al* matter. Please be advised that the Secretary will not seek an extension and will comply with the Court's order directing us to file an updated calculation of back pay.

Sincerely,

Ryma Lewis

Wage and Hour Counsel

Office of the Regional Solicitor

U.S. Department of Labor

201 12th Street South – Suite 401

Arlington, VA 22202-5450

O:  202-693-9369

F: 202-688-4982

*This message may contain information that is privileged or otherwise exempt from disclosure under applicable law. Do not disclose without consulting the Office of the Solicitor. If you think you have received this e-mail in error, please notify the sender immediately by e-mail or by phone.*

**From:** Pafford, Abram J. <APafford@mcguirewoods.com>
**Sent:** Sunday, March 6, 2022 1:07 PM
**To:** Lewis, Ryma N - SOL <Lewis.Ryma@dol.gov>; Jones, Chervonti J - SOL <Jones.Chervonti.J@dol.gov>; Seifeldein, Mohamed E - SOL

**JA2017**

<[Seifeldein.Mohamed.E@DOL.GOV](mailto:Seifeldein.Mohamed.E@DOL.GOV)>
**Cc:** Thomas, John E. Jr. <[JEThomas@mcguirewoods.com](mailto:JEThomas@mcguirewoods.com)>; Fitzgerald, Matthew A.
<[MFitzgerald@mcguirewoods.com](mailto:MFitzgerald@mcguirewoods.com)>; Tucker, Evan X. <[ETucker@mcguirewoods.com](mailto:ETucker@mcguirewoods.com)>; Julia Rust
<[julia@piercemccoy.com](mailto:julia@piercemccoy.com)>; Josh Jewett <[jjewett@piercemccoy.com](mailto:jjewett@piercemccoy.com)>
**Subject:** Walsh v. Medical Staffing of America, LLC – Nos. 18-cv-226 & 2:19-cv-475 (E.D. Va.) -
Backpay calculation letter

CAUTION - The sender of this message is external to the DOL network. Please use care when clicking on links and
responding with sensitive information. Send suspicious email to [spam@dol.gov](mailto:spam@dol.gov).

Dear Ms. Lewis, Ms. Jones, and Mr. Seifeldein,

Please see the attached time-sensitive correspondence sent on behalf of our client Medical
Staffing of America, LLC, d/b/a Steadfast Medical Staffing.

Sincerely,

Abe Pafford

**Abram J. Pafford**
Partner
McGuireWoods LLP
888 16th Street N.W.
Suite 500
Black Lives Matter Plaza
Washington, DC 20006
T:   +1 202 857 1725
M: +1 703 851 8096
F:   +1 202 828 3350
[apafford@mcguirewoods.com](mailto:apafford@mcguirewoods.com)
[Bio](Bio) | [VCard](VCard) | [www.mcguirewoods.com](http://www.mcguirewoods.com)



*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the
intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to
others.*

# Exhibit 3

| First Name | Last Name | DOL BW Start Date | DOL BW End Date | DOL's Total BWs | Steadfast Classification | DOL Hour & Wage Data Errors | Payroll Detail (bates) | Payroll Summary (bates) |
|---|---|---|---|---|---|---|---|---|
| Aishia | Patterson | 10/11/2020 | 3/28/2021 | $3,969.51 | Employee | Gross Pay & Hours Doubled | 78305, 92752, 92753 | 78311-14, 92758-61 |
| Amanda | Lent | 1/10/2021 | 1/17/2021 | $891.55 | Employee | Gross Pay & Hours Doubled | 92751-52 | 92760-61 |
| Amber L | White | 3/10/2019 | 6/9/2019 | $1,783.77 | Employee | | 01942, 02045 | 02267, 02272, 02277, 02341, 02345, 02349, 02353, 02357, 02362, 02366, 02370, 02375, 02380, 02384, 02389 |
| Andrea | Wright | 6/21/2020 | 7/26/2020 | $1,306.90 | Employee | Gross Pay & Hours Doubled | 074590, 074727-28 | 074680, 074731-32 |
| Ashley A | Davis | 1/13/2019 | 4/28/2019 | $3,029.26 | Employee | | 01857, 01979 | 02263, 02269, 02274, 02278, 02283, 02288, 02294, 02301, 02306, 02312, 02317, 02322, |
| Bonny | Denney | 6/1/2018 | 6/1/2018 | $45.77 | Employee | | 02475 | 000267 |
| Buddy | Thibeault | 1/3/2021 | 6/27/2021 | $7,509.20 | Employee | Gross Pay & Hours Doubled | 092755, 094127 | 092758-61, 094130-33 |
| Brandon | Chambers | 1/24/2021 | 1/31/2021 | $948.09 | Employee | Gross Pay & Hours Doubled | 092747-48 | 092760 |
| Bria | East | 3/21/2021 | 3/21/2021 | $495.48 | Employee | Gross Pay & Hours Doubled | 092749 | 092758 |
| Chandre | Marshall | 12/22/2017 | 2/2/2018 | $345.32 | Employee | | 002311, 002403 | 000174, 000177, 000235, 000238, 000241, 000244, 000246, |
| Chante | Porter | 10/27/2019 | 2/9/2020 | $1,504.54 | Employee | Gross Pay & Hours Doubled | 02184, 070410-11 | 02449-50, 02452-53, 02455, 02457, 02459, 02462, 02464, 070423-26 |
| Chardonnay A | McGlothen | 7/26/2020 | 11/1/2020 | $892.59 | Employee | Gross Pay & Hours Doubled | 074723, 078305 | 074729-31, 078313-15 |
| Charell | Tabb | 2/17/2019 | 3/10/2019 | $784.28 | Employee | | 01935 | 02276, 02282, 02286, 02292 |
| Christine L | Kim | 12/30/2018 | 1/31/2021 | $17,919.78 | Employee | Gross Pay & Hours Doubled | 002773-74, 01891-92, 02009-10, 02100-01, 02171-72, 070402-03, 07458-59, 074722-23, 078302-03, 092750-51 | 02208, 02265, 02270, 02275, 02280, 02285, 02290, 02296, 02302, 02308, 02314, 02319, 02324, 02329, 02335, 02339, 02344, 02348, 02352, 02356, 02360, 02365, 02369, 02373, 02378, 02383, 02388, 017087, 017090, 017092, 017095, 017098, 017100, 017103, 017106, 017108, 017111, 017114, 017117, 017120, 02449-50, 02452-53, 02455, 02457, 02459, 02461, 02463, 02466, 02468, 02471, 02475, 070418-28, 074680-84, 074729-32, 078311-15, 092758-61 |
| Chu-Sun | Widger | 1/3/2021 | 3/21/2021 | $5,127.29 | Employee | Gross Pay & Hours Doubled | 092755-56 | 092758-61 |
| Courtney-Hope | Draughn | 8/10/2018 | 11/10/2019 | $2,649.96 | Employee | | 002606, 002739-40, 01860, 01981-82, 02079-80, 02156-57 | 000302, 000307, 000312, 000316, 000322, 000327, 000331, 000336, 02207, 02211, 02215, 02219, 02223, 02227, 02232, 02236, 02240, 02244, 02248, 02253, 02258, 02263, 02269, 02274, 02279, 02283, 02289, 02294, 02301, 02306, 02312, 02317, 02322, 02382, 02334, 02338, 02342, 02346, 02351, 02355, 02359, 02364, 02367, 02372, 02377, 02382, 02386, 017086, 017089, 017092, 017094, 017097, 017100, 017102, 017105, 017108, 017110, 017113, 017116, 017119, 02458, 02461, 02463, 02465, 02467, 02470, 02474, |
| Dakeem | Bond | 5/12/2019 | 5/12/2019 | $196.95 | Employee | | 01962-63 | 02358 |

| First Name | Last Name | DOL BW Start Date | DOL BW End Date | DOL's Total BWs | Steadfast Classification | DOL Hour & Wage Data Errors | Payroll Detail (bates) | Payroll Summary (bates) |
|---|---|---|---|---|---|---|---|---|
| Deborah | Gauvin | 2/23/2018 | 4/20/2018 | $198.05 | Employee | | 002380-81, 002489 | 000208, 000212, 000215, 000219, 000222, 000225, 000289, 000293 |
| Deirdra | Richardson | 1/5/2020 | 1/26/2020 | $2,108.45 | Employee | Gross Pay & Hours Doubled | 070412 | 070424-28 |
| Delora | Deberry | 11/2/2018 | 11/23/2018 | $74.52 | Employee | | 002737-38 | 02227, 02231, 02236, 02240 |
| Destiny | Henson | 1/31/2021 | 2/14/2021 | $1,166.55 | Employee | | 092750 | 092758-60 |
| Earlene | Boone-Hill | 10/13/2017 | 12/29/2017 | $482.80 | Employee | UAL 1099 & W- | 002274 | 000201, 000199, 000192, 000187, 000184, 000181, 000178, 000176, 000173 |
| Elizabeth | Cranston | 6/28/2020 | 7/26/2020 | $1,473.69 | Employee | Gross Pay & Hours Doubled | 074577, 074720 | 074680, 074731-32 |
| Elwood | Whitney | 1/13/2019 | 1/13/2019 | $180.70 | Employee | | 01943 | 02320 |
| Erica | Brown | 5/19/2019 | 5/19/2019 | $41.92 | Employee | | 01968 | 02354 |
| Estelle A. | Jackson | 12/7/2018 | 4/7/2019 | $2,963.45 | Employee | | 002766, 01885-01886, 02003-02004 | 02208, 02212, 02216, 02220, 02264, 02270, 02275, 02279, 02284, 02290, 02296, 02302, 02308, 02313, 02318, 02323, 02329, 02382, 02387 |
| Ieasha | Baxter | 8/18/2019 | 4/5/2020 | $5,991.59 | Employee | Hours Stated by DOL Incorrect | 02064, 02147, 070392, | 017086, 017088, 017091, 017094, 017097, 017099, 017102, 02449, 02451-52, 02454, 02456, 02458, 02460, 02462, 02464, 02467, 02470, 02473 |
| Jalena S | Bouzidi | 7/19/2020 | 9/20/2020 | $2,403.83 | Employee | Gross Pay & Hours Doubled | 078300 | 074729-31 |
| Janet | Taylor | 5/30/2021 | 6/20/2021 | $1,326.93 | Employee | Gross Pay & Hours Doubled | 094126 | 094130-32 |
| Jasmine | Rankin | 2/9/2020 | 7/19/2020 | $1,591.73 | Employee | Gross Pay & Hours Doubled | 074585, 074724 | 070418-23, 074680-84, 074731-32 |
| Jaylon | Johnson | 6/9/2019 | 7/19/2020 | $18,122.39 | Employee | Salary - Hours and Rate Stated by DOL Incorrect; Gross Salary Doubled | 02097-02098 | 02335, 02339, 02343, 02348, 017087, 017090, 017092, 017095, 017100, 017103, 017106, 017108, 017111, 017114, 017117, 017120, 02449-51, 02453, 02455, 02457, 02459, 02461, 02463, 02465, 02468, 02471, 02474, 070418-28, 074680-84, 074731-32 |
| Jeanay | Oliver | 12/8/2019 | 2/23/2020 | $3,669.92 | Employee | Gross Pay Doubled | 070407-070408, 074583 | 02449-50, 02452-53 |
| Jonathan | Wood | 3/21/2021 | 3/21/2021 | $273.93 | Employee | Gross Pay Doubled | 092756 | 092758 |
| Kaavya | Shukla | 2/14/2021 | 6/20/2021 | $2,452.16 | Employee | Gross Pay Doubled | 094125 | 092758-59, 094130-33 |
| Karen | Reams | 1/5/2020 | 10/11/2020 | $4,706.41 | Employee | Gross Pay Doubled | 074725 | 070418-28, 074680-84, 074729-32, 078314-15 |
| Kayla | Dibler | 1/3/2021 | 2/28/2021 | $4,718.06 | Employee | Gross Pay & Hours Doubled | 087604 | 092758-61 |
| Kelli | Register | 1/31/2021 | 2/28/2021 | $2,504.99 | Employee | Gross Pay & Hours Doubled | 087608 | 092758-60 |
| Kristina L | Paige | 12/6/2020 | 3/21/2021 | $3,107.62 | Employee | Gross Pay & Hours Doubled | 078305, 092752-092753 | 07811-12, 092758-61 |
| Kristy | Williams | 8/10/2018 | 11/9/2018 | $794.12 | Employee | | 0002698-002699, 002829-002830 | 02238, 02247, 02251, 02256, 02261, 000305, 000310, 000315, 000320, 000325, 000330, 000334, 000338, 000343, 000347 |
| Lashawnda | Lassiter | 10/20/2019 | 2/16/2020 | $2,897.78 | Employee | Gross Pay & Hours Doubled | 02172 | 02452, 02466 |
| Laura | Everton | 11/15/2020 | 2/21/2021 | $5,121.08 | Employee | Hours Stated by DOL Incorrect | 078301, 087605 | 078311, 078312, |
| Lavonne | Holley | 5/19/2019 | 3/15/2020 | $3,452.15 | Employee | Gross Pay & Hours Doubled | 2000 | 02335, ,02393, |
| Leigh | Edwards | 1/24/2021 | 6/27/2021 | $7,478.83 | Employee | Gross Pay & Hours Doubled | 087604, 092749 | 92758-60 |

| First Name | Last Name | DOL BW Start Date | DOL BW End Date | DOL's Total BWs | Steadfast Classification | DOL Hour & Wage Data Errors | Payroll Detail (bates) | Payroll Summary (bates) |
|---|---|---|---|---|---|---|---|---|
| Lori | Cox | 9/30/2016 | 3/30/2018 | $569.95 | Employee | | 017128-017129,017167, 002217 ,002284 ,002367 | 000084-87 |
| Lucie L | Wright | 11/3/2017 | 12/15/2017 | $40.07 | Employee | | 2344 | 181, 184, 187, 189, 192, 193, 196 |
| Manisha | Gautam | 6/2/2019 | 6/23/2019 | $378.02 | Employee | | 01990 | 02334 |
| Maria | Stock | 6/28/2020 | 7/26/2020 | $1,767.60 | Employee | Gross Pay & Hours Doubled | 074588 | 074680-84 |
| Marion | Harris | 6/9/2019 | 6/9/2019 | $261.61 | Employee | | 01998 | 2343 |
| Meadow | Borecky | 6/28/2020 | 6/20/2021 | $8,583.52 | Employee | Gross Pay & Hours Doubled | 074576, 074719, 078299, 087603 | 074729, 092758, 094130 |
| Meaghan R | Vega | 5/17/2020 | 8/2/2020 | $2,656.00 | Employee | Gross Pay & Hours Doubled | 074727 | 074730-32 |
| Melissa | Spates | 6/6/2021 | 6/20/2021 | $61.20 | Employee | Gross Pay & Hours Doubled | 094125-094126 | 094130-31 |
| Melnae | Harris | 3/21/2021 | 6/20/2021 | $2,392.75 | Employee | Gross Pay & Hours Doubled | 094121 - 094122 | 094130-32, 099066-69 |
| Na'Iyma | Clifton-Barnes | 12/29/2019 | 12/29/2019 | $319.85 | Employee | Gross Pay & Hours Doubled | 2152 | 02449, 02450, 02451 |
| Nakisha | Woodard | 5/19/2019 | 7/14/2019 | $737.26 | Employee | | 02052-02053 | 017088 |
| Nicole L | Bolden | 12/14/2018 | 5/19/2019 | $2,940.03 | Employee | | 002719 - 002720, 01837-01838 | 02206, 02208, 02262 |
| Patrice | Stewart | 12/29/2019 | 2/23/2020 | $3,454.57 | Employee | Gross Pay & Hours Doubled | 02187, 070414 | 02449, 02450, 070418, 070419, 070420 |
| Patrick | Reams | 5/31/2020 | 7/26/2020 | $2,057.92 | Employee | Gross Pay & Hours Doubled | 074586 | 074729, 074730, |
| Prentis | Townsend Iii | 9/27/2020 | 9/27/2020 | $194.68 | Employee | | 078309 | 74729 |
| Rachel | Forrest | 11/23/2018 | 2/10/2019 | $1,303.81 | Employee | | 002747,  01866 | 2207 |
| Raven | Taylor | 1/24/2021 | 1/24/2021 | $258.90 | Employee | | 087609 | 092760 |
| Rebekah | Bane | 6/7/2020 | 2/28/2021 | $4,590.72 | Employee | Gross Pay & Hours Doubled | 074576,  074719, 087603, 092747 | 074729-31, 078311-13, 092758-60 |
| Richard | Salter | 11/10/2019 | 6/20/2021 | $6,590.39 | Employee | Gross Pay & Hours Doubled | 02185, 070413, 092754,094124-094125 | 02449, 02450, 02452, 092758, 092759, 092760 |
| Shannon A | Jones | 7/7/2017 | 7/14/2017 | $52.50 | Employee | | 002233 | 169, 171 |
| Sheila | Kronske | 5/30/2021 | 6/20/2021 | $1,928.00 | Employee | | 094123 | 094130-32 |
| Shelby-Lyn | Landrum | 1/3/2021 | 1/10/2021 | $530.45 | Employee | Gross Pay & Hours Doubled | 087606 | 092760 |
| Shenica | Edmonds | 7/5/2020 | 7/12/2020 | $844.59 | Employee | Gross Pay & Hours Doubled | 074721 | 074731 |
| Shimeiyah | Woodard | 5/12/2019 | 5/19/2019 | 338.18 | Employee | | 02362 | 02053 |
| Stephaine | Symuleski | 4/25/2021 | 6/20/2021 | 1482.73 | Employee | Gross Pay & Hours Doubled | 94126 | 94130-32 |
| Tamiko | White | 10/11/2020 | 10/11/2020 | 212.1 | Employee | Hours Stated by DOL Incorrect | 078310 | 078313, 078314 |
| Tasheta | Davis | 1/5/2020 | 1/5/2020 | 259.36 | Employee | Gross Pay & Hours Doubled | 070396 | 070427 |
| Terelle | Wallace | 5/25/2018 | 6/8/2018 | 46.47 | Employee | | 02690 | 000252 |
| Tiffany | Pierre | 12/22/2019 | 10/25/2020 | 8459.13 | Employee | Gross Pay & Hours Doubled | 070409, 074584, 074723-074724, 078306 | 02449, 02450, 074680-83, 074684, 074729, 074730, 074731, 07812-14 |
| Tomerrial | Williams | 3/21/2021 | 4/11/2021 | 375.62 | Employee | | 094127-094128 | 94133 |
| Tony | Morales | 8/11/2019 | 8/11/2019 | 203.62 | Employee | | 02110 | 017103 |
| Trang | Dinh | 6/28/2020 | 7/26/2020 | 1480.65 | Employee | Gross Pay & Hours Doubled | 74720-21 | 074730 |
| Treasuera | Proctor | 12/22/2017 | 12/22/2017 | 138.36 | Employee | | 2322 | 177 |
| Tynisha | Nowell | 12/29/2019 | 2/9/2020 | 731.07 | Employee | Gross Pay & Hours Doubled | 2178, 070406 | 2449 |
| Virgil | Gordon | 9/14/2018 | 10/19/2018 | 84.78 | DUAL 1099 & W-2 | | 02620 | 000302 |
| Zemikia | McClease | 11/24/2019 | 6/27/2021 | 7532.93 | DUAL 1099 & W-2 | | 70404-05, 74625, 74784-85, 78380-81, 92817-18, 94200 | 074687, 74687, 092859 |
| Sheralyn | Jones | 8/3/2018 | 6/29/2018 | 508.07 | Employee | | 002507 | 003412 |
| | | | | Totals: | $193,071.35 | | | |

**JA2022**

# Exhibit 4

**<u>Sample Packet:</u>**
**Category 3 Error - DOL Doubled Hours Paid**

**DOL Entry for Hubert Adkins on 1/19/2020**

| Packet Page # | Document Description | Bates Stamp |
|---|---|---|
| 2 | **DOL Wage Transcription and Computation Sheet** Excerpt Entry Highlighted | Trial Exhibit PX-21 |
| 3 | **Steadfast Payroll Summary** Actual Steadfast Check Date: **1/24/2020** Hours Paid by Steadfast: **36.25** | Steadfast 6th 070493 |

| <u>Summary:</u> | <u>DOL</u> | <u>Steadfast</u> |
|---|---|---|
| **Date** | 1/19/20 | 1/24/20 |
| **Hours Paid** | 73.5 | 36.25 |
| **Back Pay** | $487.50 | $0.00 |
| **DOL Overage** | $487.50 | - |

**JA2024**

| Date | First Name | Last Name | Gross Pay | Total Hrs | Rate | OT Hrs | Sec 7: RR Due | Sec 7: 1/2T Due | Sec 7: Total Due |
|---|---|---|---|---|---|---|---|---|---|
| 6/16/2019 | Lisa | Adegbenro | $2,410.00 | 60.25 | $40.00 | 20.25 | $0.00 | $405.00 | $405.00 |
| 6/30/2019 | Lisa | Adegbenro | $2,342.70 | 59.08 | $39.65 | 19.08 | $0.00 | $378.29 | $378.29 |
| 7/7/2019 | Lisa | Adegbenro | $3,178.00 | 76.75 | $41.41 | 36.75 | $0.00 | $760.86 | $760.86 |
| 7/14/2019 | Lisa | Adegbenro | $2,140.00 | 53.5 | $40.00 | 13.5 | $0.00 | $270.00 | $270.00 |
| 7/21/2019 | Lisa | Adegbenro | $2,761.46 | 70.05 | $39.42 | 30.05 | $0.00 | $592.30 | $592.30 |
| 8/11/2019 | Lisa | Adegbenro | $2,390.00 | 59.75 | $40.00 | 19.75 | $0.00 | $395.00 | $395.00 |
| 8/18/2019 | Lisa | Adegbenro | $2,400.00 | 60 | $40.00 | 20 | $0.00 | $400.00 | $400.00 |
| 11/10/2019 | Lisa | Adegbenro | $2,000.00 | 50 | $40.00 | 10 | $0.00 | $200.00 | $200.00 |
| 11/24/2019 | Desiree | Adkins | $765.00 | 45 | $17.00 | 5 | $0.00 | $42.50 | $42.50 |
| 12/1/2019 | Desiree | Adkins | $1,013.20 | 59.6 | $17.00 | 19.6 | $0.00 | $166.60 | $166.60 |
| 12/22/2019 | Desiree | Adkins | $650.80 | 41.92 | $15.52 | 1.92 | $0.00 | $14.90 | $14.90 |
| 12/29/2019 | Desiree | Adkins | $3,066.50 | 61.02 | $16.79 | 21.02 | $0.00 | $176.50 | $176.50 |
| 1/5/2020 | Desiree | Adkins | $2,952.22 | 61.02 | $17.87 | 21.02 | $0.00 | $187.87 | $187.87 |
| 1/12/2020 | Desiree | Adkins | $2,034.90 | 61.02 | $17.00 | 21.02 | $0.00 | $178.67 | $178.67 |
| 1/19/2020 | Desiree | Adkins | $1,999.80 | 61.02 | $15.00 | 21.02 | $0.00 | $157.65 | $157.65 |
| 1/26/2020 | Desiree | Adkins | $1,371.98 | 88.82 | $15.45 | 48.82 | $0.00 | $377.06 | $377.06 |
| 2/2/2020 | Desiree | Adkins | $1,932.00 | 61.02 | $16.24 | 21.02 | $0.00 | $170.63 | $170.63 |
| 2/9/2020 | Desiree | Adkins | $980.90 | 57.7 | $17.00 | 17.7 | $0.00 | $150.45 | $150.45 |
| 2/16/2020 | Desiree | Adkins | $1,960.80 | 61.02 | $15.23 | 21.02 | $0.00 | $160.10 | $160.10 |
| 3/8/2020 | Desiree | Adkins | $622.50 | 41.5 | $15.00 | 1.5 | $0.00 | $11.25 | $11.25 |
| 3/15/2020 | Desiree | Adkins | $701.20 | 44.33 | $17.50 | 4.33 | $0.00 | $37.89 | $37.89 |
| 3/29/2020 | Desiree | Adkins | $813.75 | 54.25 | $15.00 | 14.25 | $0.00 | $106.88 | $106.88 |
| 4/5/2020 | Desiree | Adkins | $1,178.55 | 78.57 | $15.00 | 38.57 | $0.00 | $289.28 | $289.28 |
| 6/7/2020 | Desiree | Adkins | $1,017.50 | 52.75 | $19.29 | 12.75 | $0.00 | $122.97 | $122.97 |
| 6/14/2020 | Desiree | Adkins | $900.00 | 45 | $20.00 | 5 | $0.00 | $50.00 | $50.00 |
| 6/21/2020 | Desiree | Adkins | $1,500.00 | 75 | $20.00 | 35 | $0.00 | $350.00 | $350.00 |
| 6/28/2020 | Desiree | Adkins | $2,885.00 | 61.02 | $19.69 | 21.02 | $0.00 | $206.97 | $206.97 |
| 7/5/2020 | Desiree | Adkins | $2,663.20 | 61.02 | $22.54 | 21.02 | $0.00 | $236.88 | $236.88 |
| 7/12/2020 | Desiree | Adkins | $1,806.80 | 90.34 | $20.00 | 50.34 | $0.00 | $503.40 | $503.40 |
| 7/19/2020 | Desiree | Adkins | $2,393.20 | 61.02 | $20.00 | 21.02 | $0.00 | $210.20 | $210.20 |
| 7/26/2020 | Desiree | Adkins | $2,402.00 | 61.02 | $20.00 | 21.02 | $0.00 | $210.20 | $210.20 |
| 8/2/2020 | Desiree | Adkins | $1,025.20 | 52.46 | $19.54 | 12.46 | $0.00 | $121.75 | $121.75 |
| 8/9/2020 | Desiree | Adkins | $1,210.00 | 60.5 | $20.00 | 20.5 | $0.00 | $205.00 | $205.00 |
| 8/16/2020 | Desiree | Adkins | $1,116.60 | 55.83 | $20.00 | 15.83 | $0.00 | $158.30 | $158.30 |
| 8/23/2020 | Desiree | Adkins | $884.66 | 44.97 | $19.67 | 4.97 | $0.00 | $48.89 | $48.89 |
| 8/30/2020 | Desiree | Adkins | $1,150.20 | 58.21 | $19.76 | 18.21 | $0.00 | $179.91 | $179.91 |
| 9/6/2020 | Desiree | Adkins | $1,629.75 | 72.46 | $20.49 | 32.46 | $0.00 | $332.49 | $332.49 |
| 9/13/2020 | Desiree | Adkins | $1,055.60 | 52.78 | $20.00 | 12.78 | $0.00 | $127.80 | $127.80 |
| 9/20/2020 | Desiree | Adkins | $1,175.54 | 59.61 | $19.72 | 19.61 | $0.00 | $193.36 | $193.36 |
| 12/26/2020 | Desiree | Adkins | $1,779.00 | 74.29 | $23.95 | 34.29 | $0.00 | $410.57 | $410.57 |
| 1/3/2021 | Desiree | Adkins | $3,071.40 | 66.55 | $24.41 | 26.55 | $0.00 | $324.06 | $324.06 |
| 1/10/2021 | Desiree | Adkins | $2,006.00 | 100.3 | $20.00 | 60.3 | $0.00 | $603.00 | $603.00 |
| 1/17/2021 | Desiree | Adkins | $1,676.80 | 83.84 | $20.00 | 43.84 | $0.00 | $438.40 | $438.40 |
| 1/24/2021 | Desiree | Adkins | $886.80 | 44.34 | $20.00 | 4.34 | $0.00 | $43.40 | $43.40 |
| 1/31/2021 | Desiree | Adkins | $2,173.60 | 108.68 | $20.00 | 68.68 | $0.00 | $686.80 | $686.80 |
| 2/7/2021 | Desiree | Adkins | $1,369.60 | 68.48 | $20.00 | 28.48 | $0.00 | $284.80 | $284.80 |
| 2/14/2021 | Desiree | Adkins | $900.00 | 45 | $20.00 | 5 | $0.00 | $50.00 | $50.00 |
| 2/21/2021 | Desiree | Adkins | $1,708.80 | 56.96 | $30.00 | 16.96 | $0.00 | $254.40 | $254.40 |
| 2/28/2021 | Desiree | Adkins | $1,389.50 | 59.5 | $23.35 | 19.5 | $0.00 | $227.69 | $227.69 |
| 3/7/2021 | Desiree | Adkins | $975.73 | 47.96 | $20.34 | 7.96 | $0.00 | $80.97 | $80.97 |
| 3/21/2021 | Desiree | Adkins | $2,275.00 | 91 | $25.00 | 51 | $0.00 | $637.50 | $637.50 |
| 4/4/2021 | Desiree | Adkins | $1,680.13 | 59.78 | $28.11 | 19.78 | $0.00 | $277.96 | $277.96 |
| 4/11/2021 | Desiree | Adkins | $1,290.00 | 51.6 | $25.00 | 11.6 | $0.00 | $145.00 | $145.00 |
| 4/18/2021 | Desiree | Adkins | $1,048.50 | 41.94 | $25.00 | 1.94 | $0.00 | $24.25 | $24.25 |
| 5/2/2021 | Desiree | Adkins | $1,199.50 | 47.98 | $25.00 | 7.98 | $0.00 | $99.75 | $99.75 |
| 5/9/2021 | Desiree | Adkins | $1,621.70 | 58.1 | $27.91 | 18.1 | $0.00 | $252.61 | $252.61 |
| 5/16/2021 | Desiree | Adkins | $1,029.50 | 41.18 | $25.00 | 1.18 | $0.00 | $14.75 | $14.75 |
| 5/23/2021 | Desiree | Adkins | $1,756.25 | 70.25 | $25.00 | 30.25 | $0.00 | $378.13 | $378.13 |
| 5/30/2021 | Desiree | Adkins | $3,369.76 | 66.55 | $28.11 | 26.55 | $0.00 | $373.22 | $373.22 |
| 6/6/2021 | Desiree | Adkins | $2,796.00 | 111.84 | $25.00 | 71.84 | $0.00 | $898.00 | $898.00 |
| 6/13/2021 | Desiree | Adkins | $1,286.50 | 51.46 | $25.00 | 11.46 | $0.00 | $143.25 | $143.25 |
| 6/20/2021 | Desiree | Adkins | $2,271.50 | 90.86 | $25.00 | 50.86 | $0.00 | $635.75 | $635.75 |
| 1/12/2020 | Hubert | Adkins | $2,175.00 | 72.5 | $30.00 | 32.5 | $0.00 | $487.50 | $487.50 |
| 1/19/2020 | Hubert | Adkins | $2,175.00 | 72.5 | $30.00 | 32.5 | $0.00 | $487.50 | $487.50 |

# Payroll Summary

| Check Date | Name | Hours | Total Paid | Tax Withheld | Deductions | Net Pay | Check No | Employer Liability | Total Expense |
|---|---|---|---|---|---|---|---|---|---|
| 01/31/2020 | Mosley CNA, Tia | 19.75 | 296.25 | 0.00 | 0.00 | 296.25 | DD | 0.00 | 296.25 |
| 01/31/2020 | Owen LPN, Rachel | 42.78 | 1,283.40 | 0.00 | 0.00 | 1,283.40 | DD | 0.00 | 1,283.40 |
| 01/31/2020 | Owens LPN, Gwendolyn | 33.18 | 951.70 | 0.00 | 0.00 | 951.70 | DD | 0.00 | 951.70 |
| 01/31/2020 | Parks RN, Denita | 11.50 | 460.00 | 0.00 | 0.00 | 460.00 | DD | 0.00 | 460.00 |
| 01/31/2020 | Perkins LPN, Lawayne | 16.00 | 480.00 | 0.00 | 0.00 | 480.00 | DD | 0.00 | 480.00 |
| 01/31/2020 | Pierce LPN, Sandra | 8.38 | 226.26 | 0.00 | 0.00 | 226.26 | DD | 0.00 | 226.26 |
| 01/31/2020 | Pigford LPN, Marvina | 24.17 | 692.10 | 0.00 | 0.00 | 692.10 | DD | 0.00 | 692.10 |
| 01/31/2020 | Plummer LPN, Brandy | 38.33 | 1,042.74 | 0.00 | 0.00 | 1,042.74 | DD | 0.00 | 1,042.74 |
| 01/31/2020 | Robertson LPN, Toccara | 18.50 | 555.00 | 0.00 | 0.00 | 555.00 | DD | 0.00 | 555.00 |
| 01/31/2020 | Robinson LPN, Jerolyn | 53.18 | 1,595.40 | 0.00 | 0.00 | 1,595.40 | DD | 0.00 | 1,595.40 |
| 01/31/2020 | Silver LPN, Sheila | 8.75 | 262.50 | 0.00 | 0.00 | 262.50 | 40587589 | 0.00 | 262.50 |
| 01/31/2020 | Simmons LPN, Juan | 22.50 | 675.00 | 0.00 | 0.00 | 675.00 | DD | 0.00 | 675.00 |
| 01/31/2020 | Singh RN, Kjinder | 12.00 | 480.00 | 0.00 | 0.00 | 480.00 | DD | 0.00 | 480.00 |
| 01/31/2020 | Smith LPN, Antrina | 11.50 | 322.00 | 0.00 | 0.00 | 322.00 | DD | 0.00 | 322.00 |
| 01/31/2020 | Spencer LPN, Carol | 29.23 | 789.21 | 0.00 | 0.00 | 789.21 | DD | 0.00 | 789.21 |
| 01/31/2020 | Spivey CNA, Daisy | 22.50 | 337.50 | 0.00 | 0.00 | 337.50 | DD | 0.00 | 337.50 |
| 01/31/2020 | Springs LPN, Angela | 12.83 | 384.90 | 0.00 | 0.00 | 384.90 | DD | 0.00 | 384.90 |
| 01/31/2020 | Stanley LPN, Chelsea | 23.83 | 667.24 | 0.00 | 0.00 | 667.24 | DD | 0.00 | 667.24 |
| 01/31/2020 | Street LPN, Ta'shonna | 2.00 | 56.00 | 0.00 | 0.00 | 56.00 | DD | 0.00 | 56.00 |
| 01/31/2020 | Sutphin CNA, Reshonn | 51.06 | 765.90 | 0.00 | 0.00 | 765.90 | DD | 0.00 | 765.90 |
| 01/31/2020 | Sutton LPN, Tiffany | 8.50 | 229.50 | 0.00 | 0.00 | 229.50 | DD | 0.00 | 229.50 |
| 01/31/2020 | Swecker LPN, Brooke | 56.00 | 1,680.00 | 0.00 | 0.00 | 1,680.00 | DD | 0.00 | 1,680.00 |
| 01/31/2020 | Tucker LPN, Paulette | 19.18 | 575.40 | 0.00 | 0.00 | 575.40 | DD | 0.00 | 575.40 |
| 01/31/2020 | Tyes CNA, Nicole | 7.87 | 118.05 | 0.00 | 0.00 | 118.05 | DD | 0.00 | 118.05 |
| 01/31/2020 | Vera LPN, Xavier | 40.50 | 1,190.00 | 0.00 | 0.00 | 1,190.00 | DD | 0.00 | 1,190.00 |
| 01/31/2020 | Washington LPN, Makayla | 24.00 | 720.00 | 0.00 | 0.00 | 720.00 | DD | 0.00 | 720.00 |
| 01/31/2020 | Wells LPN, William A | 9.50 | 266.00 | 0.00 | 0.00 | 266.00 | DD | 0.00 | 266.00 |
| 01/31/2020 | Williams LPN, Chershondra | 12.50 | 375.00 | 0.00 | 0.00 | 375.00 | DD | 0.00 | 375.00 |
| 01/31/2020 | Wilson LPN, Virginia | 19.00 | 570.00 | 0.00 | 0.00 | 570.00 | DD | 0.00 | 570.00 |
| 01/31/2020 | Womack LPN, Rhonda | 9.50 | 285.00 | 0.00 | 0.00 | 285.00 | DD | 0.00 | 285.00 |
| 01/31/2020 | Wright RN, LaShawn | 16.00 | 640.00 | 0.00 | 0.00 | 640.00 | DD | 0.00 | 640.00 |
| 01/31/2020 | Young LPN, Indya | 32.80 | 959.34 | 0.00 | 0.00 | 959.34 | DD | 0.00 | 959.34 |
| 01/24/2020 | Adames CNA, Jamie | 37.50 | 562.50 | 0.00 | 0.00 | 562.50 | DD | 0.00 | 562.50 |
| 01/24/2020 | Adams RN, Roxanne | 93.75 | 4,404.00 | 0.00 | 0.00 | 4,404.00 | DD | 0.00 | 4,404.00 |
| 01/24/2020 | Adkins CNA, Desiree | 66.66 | 999.90 | 0.00 | 0.00 | 999.90 | DD | 0.00 | 999.90 |
| 01/24/2020 | Adkins LPN, Hubert | 36.25 | 1,087.50 | 0.00 | 0.00 | 1,087.50 | DD | 0.00 | 1,087.50 |
| 01/24/2020 | Allen CNA, Sadiqua | 24.00 | 408.00 | 0.00 | 0.00 | 408.00 | DD | 0.00 | 408.00 |
| 01/24/2020 | Allen LPN, Tarnicia | 21.66 | 584.82 | 0.00 | 0.00 | 584.82 | DD | 0.00 | 584.82 |
| 01/24/2020 | Alston LPN, Napolean | 16.50 | 495.00 | 0.00 | 0.00 | 495.00 | DD | 0.00 | 495.00 |
| 01/24/2020 | Bailey RN, Whitney | 38.75 | 1,550.00 | 0.00 | 0.00 | 1,550.00 | DD | 0.00 | 1,550.00 |
| 01/24/2020 | Bandy CNA, Elizabeth | 15.25 | 259.25 | 0.00 | 0.00 | 259.25 | 40584428 | 0.00 | 259.25 |
| 01/24/2020 | Bellamy LPN, Kimberly | 12.75 | 382.50 | 0.00 | 0.00 | 382.50 | DD | 0.00 | 382.50 |
| 01/24/2020 | Bowen CNA, Shawanda | 62.27 | 958.05 | 0.00 | 0.00 | 958.05 | DD | 0.00 | 958.05 |
| 01/24/2020 | Bowen RN, Lori | 24.40 | 976.00 | 0.00 | 0.00 | 976.00 | DD | 0.00 | 976.00 |
| 01/24/2020 | Boykins CNA, Saudia | 32.42 | 551.14 | 0.00 | 0.00 | 551.14 | DD | 0.00 | 551.14 |
| 01/24/2020 | Bracero LPN, Tatiana | 9.50 | 285.00 | 0.00 | 0.00 | 285.00 | DD | 0.00 | 285.00 |
| 01/24/2020 | Bragg LPN, Deyonna | 32.50 | 971.00 | 0.00 | 0.00 | 971.00 | DD | 0.00 | 971.00 |
| 01/24/2020 | Brown RN, Brittny | 4.00 | 160.00 | 0.00 | 0.00 | 160.00 | DD | 0.00 | 160.00 |
| 01/24/2020 | Bryant LPN, Richard | 36.25 | 1,087.50 | 0.00 | 0.00 | 1,087.50 | DD | 0.00 | 1,087.50 |

**JA2026**

## Sample Packet:
## Category 3 Error - DOL Doubled Hours Paid

**DOL Entry for Denise Flowers on 1/31/2020**

| Packet Page # | Document Description | Bates Stamp |
|---|---|---|
| 2 | **DOL Wage Transcription and Computation Sheet**<br>Excerpt Entry Highlighted | Trial Exhibit PX-21 |
| 3 | **Steadfast Payroll Summary**<br><br>Actual Steadfast Check Date: **2/5/2020**<br>Hours Paid by Steadfast: **50** | Steadfast 6th 092877 |

| **Summary:** | **DOL** | **Steadfast** |
|---|---|---|
| **Date** | 1/31/20 | 2/5/20 |
| **Hours Paid** | 100 | 50 |
| **Back Pay** | $900.00 | $150.00 |
| **DOL Overage** | $750.00 | |

| Date | First Name | Last Name | Gross Pay | Total Hrs | Rate | OT Hrs | Sec 7: RR Due | Sec 7: 1/2T Due | Sec 7: Total Due |
|------|-----------|-----------|-----------|-----------|------|--------|---------------|-----------------|------------------|
| 3/15/2020 | Sherry | Flournoy | $4,610.00 | 73.13 | $40.00 | 33.13 | $0.00 | $662.60 | $662.60 |
| 3/22/2020 | Sherry | Flournoy | $3,010.00 | 75.25 | $40.00 | 35.25 | $0.00 | $705.00 | $705.00 |
| 5/24/2020 | Sherry | Flournoy | $2,302.50 | 68.5 | $33.61 | 28.5 | $0.00 | $478.99 | $478.99 |
| 6/28/2020 | Sherry | Flournoy | $4,800.00 | 73.13 | $40.00 | 33.13 | $0.00 | $662.60 | $662.60 |
| 7/19/2020 | Sherry | Flournoy | $2,740.00 | 52 | $52.69 | 12 | $0.00 | $316.15 | $316.15 |
| 7/26/2020 | Sherry | Flournoy | $7,293.14 | 73.13 | $44.07 | 33.13 | $0.00 | $729.98 | $729.98 |
| 8/2/2020 | Sherry | Flournoy | $3,950.00 | 98.75 | $40.00 | 58.75 | $0.00 | $1,175.00 | $1,175.00 |
| 8/9/2020 | Sherry | Flournoy | $4,120.00 | 103 | $40.00 | 63 | $0.00 | $1,260.00 | $1,260.00 |
| 8/23/2020 | Sherry | Flournoy | $2,080.00 | 52 | $40.00 | 12 | $0.00 | $240.00 | $240.00 |
| 8/30/2020 | Sherry | Flournoy | $3,850.00 | 96.25 | $40.00 | 56.25 | $0.00 | $1,125.00 | $1,125.00 |
| 9/6/2020 | Sherry | Flournoy | $5,772.00 | 73.13 | $40.82 | 33.13 | $0.00 | $676.14 | $676.14 |
| 9/13/2020 | Sherry | Flournoy | $4,040.00 | 101 | $40.00 | 61 | $0.00 | $1,220.00 | $1,220.00 |
| 9/20/2020 | Sherry | Flournoy | $4,470.00 | 111.75 | $40.00 | 71.75 | $0.00 | $1,435.00 | $1,435.00 |
| 9/27/2020 | Sherry | Flournoy | $2,540.00 | 63.5 | $40.00 | 23.5 | $0.00 | $470.00 | $470.00 |
| 10/4/2020 | Sherry | Flournoy | $3,510.00 | 87.75 | $40.00 | 47.75 | $0.00 | $955.00 | $955.00 |
| 10/11/2020 | Sherry | Flournoy | $1,780.00 | 44.5 | $40.00 | 4.5 | $0.00 | $90.00 | $90.00 |
| 11/8/2020 | Sherry | Flournoy | $3,386.85 | 84 | $43.84 | 44 | $0.00 | $964.39 | $964.39 |
| 11/15/2020 | Sherry | Flournoy | $1,800.00 | 45 | $40.00 | 5 | $0.00 | $100.00 | $100.00 |
| 11/29/2020 | Sherry | Flournoy | $1,610.00 | 40.25 | $40.00 | 0.25 | $0.00 | $5.00 | $5.00 |
| 12/26/2020 | Sherry | Flournoy | $8,146.88 | 73.13 | $61.49 | 33.13 | $0.00 | $1,018.51 | $1,018.51 |
| 1/17/2021 | Sherry | Flournoy | $8,387.50 | 81.64 | $55.00 | 41.64 | $0.00 | $1,145.10 | $1,145.10 |
| 1/31/2021 | Sherry | Flournoy | $5,017.50 | 111.5 | $45.00 | 71.5 | $0.00 | $1,608.75 | $1,608.75 |
| 4/11/2021 | Sherry | Flournoy | $2,137.50 | 47.5 | $45.00 | 7.5 | $0.00 | $168.75 | $168.75 |
| 5/2/2021 | Sherry | Flournoy | $2,764.80 | 85.91 | $32.18 | 45.91 | $0.00 | $738.75 | $738.75 |
| 12/30/2018 | Denise | Flowers | $2,452.50 | 72.25 | $33.94 | 32.25 | $0.00 | $547.36 | $547.36 |
| 1/13/2019 | Denise | Flowers | $1,365.00 | 45.5 | $30.00 | 5.5 | $0.00 | $82.50 | $82.50 |
| 1/27/2019 | Denise | Flowers | $1,627.50 | 54.25 | $30.00 | 14.25 | $0.00 | $213.75 | $213.75 |
| 2/3/2019 | Denise | Flowers | $1,870.50 | 63.25 | $29.57 | 23.25 | $0.00 | $343.79 | $343.79 |
| 2/10/2019 | Denise | Flowers | $1,500.00 | 50 | $30.00 | 10 | $0.00 | $150.00 | $150.00 |
| 2/24/2019 | Denise | Flowers | $1,597.50 | 53.25 | $30.00 | 13.25 | $0.00 | $198.75 | $198.75 |
| 6/16/2019 | Denise | Flowers | $1,498.00 | 53.5 | $28.00 | 13.5 | $0.00 | $189.00 | $189.00 |
| 6/23/2019 | Denise | Flowers | $1,897.00 | 67.75 | $28.00 | 27.75 | $0.00 | $388.50 | $388.50 |
| 6/30/2019 | Denise | Flowers | $1,267.00 | 45.25 | $28.00 | 5.25 | $0.00 | $73.50 | $73.50 |
| 7/7/2019 | Denise | Flowers | $2,093.00 | 70.5 | $29.69 | 30.5 | $0.00 | $452.74 | $452.74 |
| 1/17/2021 | Denise | Flowers | $5,220.00 | 83.39 | $33.04 | 43.39 | $0.00 | $716.76 | $716.76 |
| 1/24/2021 | Denise | Flowers | $2,565.00 | 85.5 | $30.00 | 45.5 | $0.00 | $682.50 | $682.50 |
| 1/31/2021 | Denise | Flowers | $3,000.00 | 100 | $30.00 | 60 | $0.00 | $900.00 | $900.00 |
| 2/7/2021 | Denise | Flowers | $3,495.00 | 83.39 | $30.00 | 43.39 | $0.00 | $650.85 | $650.85 |
| 2/14/2021 | Denise | Flowers | $3,975.00 | 83.39 | $30.00 | 43.39 | $0.00 | $650.85 | $650.85 |
| 2/28/2021 | Denise | Flowers | $4,620.00 | 83.39 | $30.00 | 43.39 | $0.00 | $650.85 | $650.85 |
| 3/21/2021 | Denise | Flowers | $4,545.00 | 83.39 | $30.00 | 43.39 | $0.00 | $650.85 | $650.85 |
| 4/18/2021 | Denise | Flowers | $3,887.40 | 83.39 | $30.00 | 43.39 | $0.00 | $650.85 | $650.85 |
| 5/9/2021 | Denise | Flowers | $4,780.00 | 83.39 | $33.72 | 43.39 | $0.00 | $731.58 | $731.58 |
| 5/23/2021 | Denise | Flowers | $4,538.00 | 83.39 | $39.31 | 43.39 | $0.00 | $852.77 | $852.77 |
| 6/6/2021 | Denise | Flowers | $7,120.00 | 83.39 | $43.82 | 43.39 | $0.00 | $950.57 | $950.57 |
| 6/13/2021 | Denise | Flowers | $5,847.20 | 83.39 | $40.00 | 43.39 | $0.00 | $867.80 | $867.80 |
| 6/27/2021 | Denise | Flowers | $2,586.80 | 64.67 | $40.00 | 24.67 | $0.00 | $493.40 | $493.40 |
| 2/21/2021 | Tamakia | Flowers | $2,390.00 | 97 | $24.64 | 57 | $0.00 | $702.22 | $702.22 |
| 5/2/2021 | Tamakia | Flowers | $3,112.50 | 68.75 | $25.00 | 28.75 | $0.00 | $359.38 | $359.38 |
| 5/9/2021 | Tamakia | Flowers | $1,012.50 | 40.5 | $25.00 | 0.5 | $0.00 | $6.25 | $6.25 |
| 3/10/2019 | Seth | Floyd | $892.50 | 52.5 | $17.00 | 12.5 | $0.00 | $106.25 | $106.25 |
| 3/24/2019 | Seth | Floyd | $1,389.71 | 81.75 | $17.00 | 41.75 | $0.00 | $354.88 | $354.88 |
| 5/31/2020 | Rachel | Fogleboch | $2,130.52 | 76.09 | $28.00 | 36.09 | $0.00 | $505.26 | $505.26 |
| 6/14/2020 | Rachel | Fogleboch | $2,692.76 | 85.67 | $34.00 | 45.67 | $0.00 | $776.39 | $776.39 |
| 6/21/2020 | Rachel | Fogleboch | $1,926.96 | 68.82 | $28.00 | 28.82 | $0.00 | $403.48 | $403.48 |
| 6/28/2020 | Rachel | Fogleboch | $2,306.08 | 82.36 | $28.00 | 42.36 | $0.00 | $593.04 | $593.04 |
| 7/5/2020 | Rachel | Fogleboch | $2,098.88 | 74.96 | $28.00 | 34.96 | $0.00 | $489.44 | $489.44 |
| 7/12/2020 | Rachel | Fogleboch | $3,339.28 | 68.38 | $28.00 | 28.38 | $0.00 | $397.32 | $397.32 |
| 7/19/2020 | Rachel | Fogleboch | $2,626.96 | 93.82 | $28.00 | 53.82 | $0.00 | $753.48 | $753.48 |
| 7/26/2020 | Rachel | Fogleboch | $1,250.48 | 44.66 | $28.00 | 4.66 | $0.00 | $65.24 | $65.24 |
| 8/9/2020 | Rachel | Fogleboch | $2,369.76 | 63.42 | $37.37 | 23.42 | $0.00 | $437.56 | $437.56 |
| 8/23/2020 | Rachel | Fogleboch | $1,620.00 | 40.5 | $40.00 | 0.5 | $0.00 | $10.00 | $10.00 |
| 12/26/2020 | Rachel | Fogleboch | $2,028.40 | 53.52 | $37.90 | 13.52 | $0.00 | $256.20 | $256.20 |
| 1/3/2021 | Rachel | Fogleboch | $1,605.10 | 45.86 | $35.00 | 5.86 | $0.00 | $102.55 | $102.55 |

# Payroll Summary

| Check Date | Name | Hours | Total Paid | Tax Withheld | Deductions | Net Pay | Check No | Employer Liability | Total Expense |
|---|---|---|---|---|---|---|---|---|---|
| 02/05/2021 | Bond CNA, Nicole | 47.00 | 893.00 | 0.00 | 0.00 | 893.00 | DD | 0.00 | 893.00 |
| 02/05/2021 | Boyce LPN, Angela | 28.00 | 900.00 | 0.00 | 0.00 | 900.00 | DD | 0.00 | 900.00 |
| 02/05/2021 | Boykins CNA, Saudia | 31.00 | 775.00 | 0.00 | 0.00 | 775.00 | DD | 0.00 | 775.00 |
| 02/05/2021 | Branch CNA, Kyara | 7.50 | 187.50 | 0.00 | 0.00 | 187.50 | DD | 0.00 | 187.50 |
| 02/05/2021 | Brown CNA, Deshae | 6.50 | 195.00 | 0.00 | 0.00 | 195.00 | DD | 0.00 | 195.00 |
| 02/05/2021 | Brown CNA, Nicole | 12.00 | 300.00 | 0.00 | 0.00 | 300.00 | DD | 0.00 | 300.00 |
| 02/05/2021 | Bynum CNA, Bresha | 6.00 | 120.00 | 0.00 | 0.00 | 120.00 | DD | 0.00 | 120.00 |
| 02/05/2021 | Catoe CNA, Deshauna | 15.50 | 465.00 | 0.00 | 0.00 | 465.00 | DD | 0.00 | 465.00 |
| 02/05/2021 | Clark RN, Tomeka | 35.50 | 1,775.00 | 0.00 | 0.00 | 1,775.00 | DD | 0.00 | 1,775.00 |
| 02/05/2021 | Confron LPN, Bandetra | 27.50 | 880.00 | 0.00 | 0.00 | 880.00 | DD | 0.00 | 880.00 |
| 02/05/2021 | Couser LPN, Jonecca | 73.30 | 3,665.00 | 0.00 | 0.00 | 3,665.00 | DD | 0.00 | 3,665.00 |
| 02/05/2021 | Cox LPN, Madinah | 15.75 | 490.61 | 0.00 | 0.00 | 490.61 | DD | 0.00 | 490.61 |
| 02/05/2021 | Crocker CNA, Ancetra | 15.00 | 225.00 | 0.00 | 0.00 | 225.00 | DD | 0.00 | 225.00 |
| 02/05/2021 | Cunningham CNA, Alisha | 38.25 | 765.00 | 0.00 | 0.00 | 765.00 | DD | 0.00 | 765.00 |
| 02/05/2021 | Davis RN, Jacqueline | 25.50 | 1,530.00 | 0.00 | 0.00 | 1,530.00 | DD | 0.00 | 1,530.00 |
| 02/05/2021 | Deloatch LPN, India | 16.60 | 498.00 | 0.00 | 0.00 | 498.00 | DD | 0.00 | 498.00 |
| 02/05/2021 | Demelo CNA, Kanikka | 30.00 | 540.00 | 0.00 | 0.00 | 540.00 | DD | 0.00 | 540.00 |
| 02/05/2021 | Dickens LPN, Chavelle | 35.68 | 1,070.40 | 0.00 | 0.00 | 1,070.40 | DD | 0.00 | 1,070.40 |
| 02/05/2021 | Dieng CNA, Sokhna | 22.50 | 405.00 | 0.00 | 0.00 | 405.00 | DD | 0.00 | 405.00 |
| 02/05/2021 | Dillard CNA, Lynneshia | 46.50 | 930.00 | 0.00 | 0.00 | 930.00 | DD | 0.00 | 930.00 |
| 02/05/2021 | Edwards CNA, Geneva | 22.50 | 675.00 | 0.00 | 0.00 | 675.00 | DD | 0.00 | 675.00 |
| 02/05/2021 | Eisenberg RN, Yvonne | 16.00 | 880.00 | 0.00 | 0.00 | 880.00 | DD | 0.00 | 880.00 |
| 02/05/2021 | Ekechukwu CNA, Gold | 12.25 | 306.25 | 0.00 | 0.00 | 306.25 | DD | 0.00 | 306.25 |
| 02/05/2021 | Fallin RN, Shameka | 32.00 | 1,920.00 | 0.00 | 0.00 | 1,920.00 | DD | 0.00 | 1,920.00 |
| 02/05/2021 | Fitzgerald LPN, Andrea | 49.00 | 2,410.00 | 0.00 | 0.00 | 2,410.00 | DD | 0.00 | 2,410.00 |
| 02/05/2021 | Flack LPN, Deidra | 2.00 | 100.00 | 0.00 | 0.00 | 100.00 | DD | 0.00 | 100.00 |
| 02/05/2021 | Flournoy RN, Sherry | 55.75 | 2,508.75 | 0.00 | 0.00 | 2,508.75 | DD | 0.00 | 2,508.75 |
| 02/05/2021 | Flowers LPN, Denise | 50.00 | 1,500.00 | 0.00 | 0.00 | 1,500.00 | 40731747 | 0.00 | 1,500.00 |
| 02/05/2021 | Fogleboch LPN, Rachel | 58.33 | 2,010.56 | 0.00 | 0.00 | 2,010.56 | DD | 0.00 | 2,010.56 |
| 02/05/2021 | Franklin CNA, Lashell | 13.50 | 307.50 | 0.00 | 0.00 | 307.50 | DD | 0.00 | 307.50 |
| 02/05/2021 | Fulton LPN, Sedyta | 8.00 | 240.00 | 0.00 | 0.00 | 240.00 | DD | 0.00 | 240.00 |
| 02/05/2021 | Gatling LPN, Tisha | 8.50 | 255.00 | 0.00 | 0.00 | 255.00 | DD | 0.00 | 255.00 |
| 02/05/2021 | Goynes LPN, Takiyah | 70.55 | 3,527.50 | 0.00 | 0.00 | 3,527.50 | DD | 0.00 | 3,527.50 |
| 02/05/2021 | Graves CNA, Leslie | 37.50 | 712.50 | 0.00 | 0.00 | 712.50 | DD | 0.00 | 712.50 |
| 02/05/2021 | Graves CNA, Raven | 22.50 | 675.00 | 0.00 | 0.00 | 675.00 | DD | 0.00 | 675.00 |
| 02/05/2021 | Gray CNA, Ebonie | 22.50 | 675.00 | 0.00 | 0.00 | 675.00 | DD | 0.00 | 675.00 |
| 02/05/2021 | Green CNA, Sokorra | 15.50 | 310.00 | 0.00 | 0.00 | 310.00 | DD | 0.00 | 310.00 |
| 02/05/2021 | Green LPN, Cynthia | 42.89 | 1,818.94 | 0.00 | 0.00 | 1,818.94 | DD | 0.00 | 1,818.94 |
| 02/05/2021 | Hairston LPN, Lakeisha | 12.00 | 600.00 | 0.00 | 0.00 | 600.00 | DD | 0.00 | 600.00 |
| 02/05/2021 | Hale CNA, Izetta | 16.50 | 313.50 | 0.00 | 0.00 | 313.50 | DD | 0.00 | 313.50 |
| 02/05/2021 | Hall LPN, Tawanda | 30.92 | 1,000.90 | 0.00 | 0.00 | 1,000.90 | DD | 0.00 | 1,000.90 |
| 02/05/2021 | Hall-Davis LPN, Beverly | 85.50 | 4,275.00 | 0.00 | 0.00 | 4,275.00 | DD | 0.00 | 4,275.00 |
| 02/05/2021 | Harris LPN, Happie | 8.00 | 360.00 | 0.00 | 0.00 | 360.00 | DD | 0.00 | 360.00 |
| 02/05/2021 | Harvey CNA, Cynthia | 11.50 | 287.50 | 0.00 | 0.00 | 287.50 | DD | 0.00 | 287.50 |
| 02/05/2021 | Hathaway LPN, Latasha | 0.00 | 233.06 | 0.00 | 0.00 | 233.06 | DD | 0.00 | 233.06 |
| 02/05/2021 | Hawkins LPN, Jamie | 48.50 | 1,940.00 | 0.00 | 0.00 | 1,940.00 | DD | 0.00 | 1,940.00 |
| 02/05/2021 | Hooper LPN, Helene | 23.66 | 709.80 | 0.00 | 0.00 | 709.80 | DD | 0.00 | 709.80 |
| 02/05/2021 | Hudson CNA, Deja | 46.00 | 874.00 | 0.00 | 0.00 | 874.00 | DD | 0.00 | 874.00 |
| 02/05/2021 | Huff LPN, Rickie | 25.25 | 825.00 | 0.00 | 0.00 | 825.00 | DD | 0.00 | 825.00 |

Check dates from: 1/8/2021 - Payroll 1 to: 3/26/2021 - Payroll 1     25087115 - RB/959
Pay Period from: 12/29/2020 to: 03/22/2021

**Steadfast 6th 092877**

**JA2029**

## Sample Packet:
## Category 3 Error - DOL Doubled Hours Paid

**DOL Entry for Sherry Joice on 2/14/2020**

| Packet Page # | Document Description | Bates Stamp |
|---|---|---|
| 2 | **DOL Wage Transcription and Computation Sheet** <br> Excerpt Entry Highlighted | Trial Exhibit PX-21 |
| 3 | **Steadfast Payroll Summary** <br><br> Actual Steadfast Check Date: **2/19/2020** <br> Hours Paid by Steadfast: **43.17** | Steadfast 6th 092872 |

| **Summary:** | **DOL** | **Steadfast** |
|---|---|---|
| **Date** | 2/14/20 | 2/19/20 |
| **Hours Paid** | 86.34 | 43.17 |
| **Back Pay** | $926.80 | $63.40 |
| **DOL Overage** | $863.40 | |

| Date | First Name | Last Name | Gross Pay | Total Hrs | Rate | OT Hrs | Sec 7: RR Due | Sec 7: 1/2T Due | Sec 7: Total Due |
|------|-----------|-----------|-----------|-----------|------|--------|---------------|------------------|------------------|
| 2/14/2021 | Sherry | Joice | $3,453.60 | 86.34 | $40.00 | 46.34 | $0.00 | $926.80 | $926.80 |
| 2/21/2021 | Sherry | Joice | $4,733.60 | 66.32 | $40.00 | 26.32 | $0.00 | $526.40 | $526.40 |
| 2/28/2021 | Sherry | Joice | $2,767.20 | 69.18 | $40.00 | 29.18 | $0.00 | $583.60 | $583.60 |
| 3/14/2021 | Sherry | Joice | $1,517.94 | 56.22 | $27.00 | 16.22 | $0.00 | $218.97 | $218.97 |
| 3/21/2021 | Sherry | Joice | $2,123.30 | 77.9 | $27.26 | 37.9 | $0.00 | $516.52 | $516.52 |
| 4/4/2021 | Sherry | Joice | $1,905.39 | 70.57 | $27.00 | 30.57 | $0.00 | $412.70 | $412.70 |
| 4/11/2021 | Sherry | Joice | $1,144.80 | 42.4 | $27.00 | 2.4 | $0.00 | $32.40 | $32.40 |
| 4/18/2021 | Sherry | Joice | $1,216.89 | 45.07 | $27.00 | 5.07 | $0.00 | $68.45 | $68.45 |
| 4/25/2021 | Sherry | Joice | $1,322.73 | 48.99 | $27.00 | 8.99 | $0.00 | $121.37 | $121.37 |
| 6/20/2021 | Sherry | Joice | $1,976.00 | 49.4 | $40.00 | 9.4 | $0.00 | $188.00 | $188.00 |
| 3/22/2020 | Antashia | Jones | $810.00 | 45 | $18.00 | 5 | $0.00 | $45.00 | $45.00 |
| 3/10/2019 | Cierra | Jones | $827.75 | 47.25 | $17.52 | 7.25 | $0.00 | $63.50 | $63.50 |
| 3/24/2019 | Cierra | Jones | $1,612.50 | 93.5 | $17.25 | 53.5 | $0.00 | $461.33 | $461.33 |
| 4/21/2019 | Cierra | Jones | $767.13 | 41.75 | $18.37 | 1.75 | $0.00 | $16.08 | $16.08 |
| 5/5/2019 | Cierra | Jones | $893.54 | 51.87 | $17.23 | 11.87 | $0.00 | $102.24 | $102.24 |
| 5/10/2020 | Cierra | Jones | $1,855.00 | 53 | $35.00 | 13 | $0.00 | $227.50 | $227.50 |
| 5/17/2020 | Cierra | Jones | $2,187.50 | 62.5 | $35.00 | 22.5 | $0.00 | $393.75 | $393.75 |
| 11/24/2019 | Dejaneke | Jones | $667.65 | 44.51 | $15.00 | 4.51 | $0.00 | $33.83 | $33.83 |
| 2/2/2020 | Dejaneke | Jones | $1,015.35 | 51.79 | $19.00 | 11.79 | $0.00 | $112.01 | $112.01 |
| 2/9/2020 | Dejaneke | Jones | $847.50 | 56.5 | $15.00 | 16.5 | $0.00 | $123.75 | $123.75 |
| 2/16/2020 | Dejaneke | Jones | $1,135.35 | 75.69 | $15.00 | 35.69 | $0.00 | $267.68 | $267.68 |
| 2/23/2020 | Dejaneke | Jones | $1,034.45 | 65.63 | $15.57 | 25.63 | $0.00 | $199.55 | $199.55 |
| 3/1/2020 | Dejaneke | Jones | $717.75 | 47.85 | $15.00 | 7.85 | $0.00 | $58.88 | $58.88 |
| 3/8/2020 | Dejaneke | Jones | $739.35 | 49.29 | $15.00 | 9.29 | $0.00 | $69.68 | $69.68 |
| 3/15/2020 | Dejaneke | Jones | $1,317.60 | 87.84 | $15.00 | 47.84 | $0.00 | $358.80 | $358.80 |
| 3/22/2020 | Dejaneke | Jones | $2,510.10 | 69.59 | $15.00 | 29.59 | $0.00 | $221.93 | $221.93 |
| 3/29/2020 | Dejaneke | Jones | $1,430.55 | 95.37 | $15.00 | 55.37 | $0.00 | $415.28 | $415.28 |
| 4/5/2020 | Dejaneke | Jones | $1,350.00 | 90 | $15.00 | 50 | $0.00 | $375.00 | $375.00 |
| 4/12/2020 | Dejaneke | Jones | $1,204.95 | 80.33 | $15.00 | 40.33 | $0.00 | $302.48 | $302.48 |
| 4/19/2020 | Dejaneke | Jones | $1,246.95 | 83.13 | $15.00 | 43.13 | $0.00 | $323.48 | $323.48 |
| 4/26/2020 | Dejaneke | Jones | $1,117.62 | 70.69 | $20.27 | 30.69 | $0.00 | $311.06 | $311.06 |
| 5/3/2020 | Dejaneke | Jones | $1,010.00 | 63.25 | $15.50 | 23.25 | $0.00 | $180.19 | $180.19 |
| 5/10/2020 | Dejaneke | Jones | $1,010.08 | 63.13 | $16.00 | 23.13 | $0.00 | $185.04 | $185.04 |
| 5/17/2020 | Dejaneke | Jones | $1,233.20 | 77.2 | $15.50 | 37.2 | $0.00 | $288.30 | $288.30 |
| 7/26/2020 | Dejaneke | Jones | $2,000.50 | 80.02 | $20.00 | 40.02 | $0.00 | $500.25 | $500.25 |
| 8/30/2020 | Dejaneke | Jones | $1,660.00 | 74.42 | $20.00 | 34.42 | $0.00 | $344.20 | $344.20 |
| 9/6/2020 | Dejaneke | Jones | $1,886.00 | 93.81 | $21.43 | 53.81 | $0.00 | $576.54 | $576.54 |
| 9/20/2020 | Dejaneke | Jones | $1,188.00 | 62.4 | $17.40 | 22.4 | $0.00 | $194.88 | $194.88 |
| 12/6/2020 | Dejaneke | Jones | $792.75 | 46.47 | $17.40 | 6.47 | $0.00 | $56.29 | $56.29 |
| 12/26/2020 | Dejaneke | Jones | $1,165.00 | 46.6 | $25.00 | 6.6 | $0.00 | $82.50 | $82.50 |
| 1/3/2021 | Dejaneke | Jones | $1,574.00 | 62.96 | $25.00 | 22.96 | $0.00 | $287.00 | $287.00 |
| 1/17/2021 | Dejaneke | Jones | $2,188.50 | 87.54 | $25.00 | 47.54 | $0.00 | $594.25 | $594.25 |
| 1/24/2021 | Dejaneke | Jones | $3,504.50 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 1/31/2021 | Dejaneke | Jones | $2,744.00 | 109.76 | $25.00 | 69.76 | $0.00 | $872.00 | $872.00 |
| 2/7/2021 | Dejaneke | Jones | $2,923.50 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 2/14/2021 | Dejaneke | Jones | $3,143.00 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 2/21/2021 | Dejaneke | Jones | $3,148.00 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 2/28/2021 | Dejaneke | Jones | $2,741.50 | 109.66 | $25.00 | 69.66 | $0.00 | $870.75 | $870.75 |
| 3/7/2021 | Dejaneke | Jones | $1,392.50 | 55.7 | $25.00 | 15.7 | $0.00 | $196.25 | $196.25 |
| 3/21/2021 | Dejaneke | Jones | $5,417.50 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 3/28/2021 | Dejaneke | Jones | $1,328.00 | 53.12 | $25.00 | 13.12 | $0.00 | $164.00 | $164.00 |
| 4/4/2021 | Dejaneke | Jones | $1,367.50 | 54.7 | $25.00 | 14.7 | $0.00 | $183.75 | $183.75 |
| 4/11/2021 | Dejaneke | Jones | $1,075.75 | 43.03 | $25.00 | 3.03 | $0.00 | $37.88 | $37.88 |
| 4/18/2021 | Dejaneke | Jones | $1,365.25 | 54.61 | $25.00 | 14.61 | $0.00 | $182.63 | $182.63 |
| 4/25/2021 | Dejaneke | Jones | $1,561.00 | 62.44 | $25.00 | 22.44 | $0.00 | $280.50 | $280.50 |
| 5/2/2021 | Dejaneke | Jones | $1,180.50 | 47.22 | $25.00 | 7.22 | $0.00 | $90.25 | $90.25 |
| 5/9/2021 | Dejaneke | Jones | $1,603.25 | 64.13 | $25.00 | 24.13 | $0.00 | $301.63 | $301.63 |
| 5/16/2021 | Dejaneke | Jones | $1,171.25 | 46.85 | $25.00 | 6.85 | $0.00 | $85.63 | $85.63 |
| 5/23/2021 | Dejaneke | Jones | $1,945.75 | 77.83 | $25.00 | 37.83 | $0.00 | $472.88 | $472.88 |
| 5/30/2021 | Dejaneke | Jones | $3,532.50 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 6/6/2021 | Dejaneke | Jones | $3,877.00 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 6/13/2021 | Dejaneke | Jones | $3,140.00 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 6/20/2021 | Dejaneke | Jones | $3,117.50 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 5/26/2019 | Jameyle | Jones | $952.50 | 63.5 | $15.00 | 23.5 | $0.00 | $176.25 | $176.25 |

# Payroll Summary

| Check Date | Name | Hours | Total Paid | Tax Withheld | Deductions | Net Pay | Check No | Employer Liability | Total Expense |
|---|---|---|---|---|---|---|---|---|---|
| 02/19/2021 | Hall LPN, Tawanda | 37.17 | 1,115.10 | 0.00 | 0.00 | 1,115.10 | DD | 0.00 | 1,115.10 |
| 02/19/2021 | Hall-Davis LPN, Beverly | 59.75 | 2,987.50 | 0.00 | 0.00 | 2,987.50 | DD | 0.00 | 2,987.50 |
| 02/19/2021 | Hathaway LPN, Latasha | 8.50 | 425.00 | 0.00 | 0.00 | 425.00 | DD | 0.00 | 425.00 |
| 02/19/2021 | Hawkins LPN, Jamie | 15.00 | 600.00 | 0.00 | 0.00 | 600.00 | DD | 0.00 | 600.00 |
| 02/19/2021 | Hervert LPN, Paula | 51.58 | 2,579.00 | 0.00 | 0.00 | 2,579.00 | DD | 0.00 | 2,579.00 |
| 02/19/2021 | Hoggard CNA, Tappata | 15.00 | 450.00 | 0.00 | 0.00 | 450.00 | DD | 0.00 | 450.00 |
| 02/19/2021 | Hooper LPN, Helene | 28.02 | 840.60 | 0.00 | 0.00 | 840.60 | DD | 0.00 | 840.60 |
| 02/19/2021 | Huff LPN, Rickie | 36.50 | 1,278.75 | 0.00 | 0.00 | 1,278.75 | DD | 0.00 | 1,278.75 |
| 02/19/2021 | Ikezue RN, Jonathan | 26.00 | 1,560.00 | 0.00 | 0.00 | 1,560.00 | DD | 0.00 | 1,560.00 |
| 02/19/2021 | James CNA, Gloria | 8.00 | 240.00 | 0.00 | 0.00 | 240.00 | DD | 0.00 | 240.00 |
| 02/19/2021 | Jefferson CNA, Akea | 22.50 | 675.00 | 0.00 | 0.00 | 675.00 | DD | 0.00 | 675.00 |
| 02/19/2021 | Johnson CNA, Charita | 56.75 | 1,460.00 | 0.00 | 0.00 | 1,460.00 | DD | 0.00 | 1,460.00 |
| 02/19/2021 | Johnson CNA, Maurice R | 22.50 | 337.50 | 0.00 | 0.00 | 337.50 | DD | 0.00 | 337.50 |
| 02/19/2021 | Johnson LPN, Cherelle | 25.25 | 883.75 | 0.00 | 0.00 | 883.75 | DD | 0.00 | 883.75 |
| 02/19/2021 | Johnson LPN, Darshana | 47.58 | 1,665.30 | 0.00 | 0.00 | 1,665.30 | DD | 0.00 | 1,665.30 |
| 02/19/2021 | Johnson LPN, Jessica | 7.95 | 238.50 | 0.00 | 0.00 | 238.50 | DD | 0.00 | 238.50 |
| 02/19/2021 | Johnson LPN, Joseph | 40.42 | 1,212.60 | 0.00 | 0.00 | 1,212.60 | DD | 0.00 | 1,212.60 |
| 02/19/2021 | Johnson LPN, Sherita D | 26.28 | 1,182.60 | 0.00 | 0.00 | 1,182.60 | DD | 0.00 | 1,182.60 |
| 02/19/2021 | Joice LPN, Sherry | 43.17 | 1,726.80 | 0.00 | 0.00 | 1,726.80 | 40736456 | 0.00 | 1,726.80 |
| 02/19/2021 | Jones CNA, Dejaneke | 62.86 | 1,571.50 | 0.00 | 0.00 | 1,571.50 | DD | 0.00 | 1,571.50 |
| 02/19/2021 | Jones LPN, Jessica | 16.30 | 489.00 | 0.00 | 0.00 | 489.00 | 40736457 | 0.00 | 489.00 |
| 02/19/2021 | Kanla CNA, Bonmeyoung Eric | 57.03 | 1,140.60 | 0.00 | 0.00 | 1,140.60 | DD | 0.00 | 1,140.60 |
| 02/19/2021 | Key CNA, Shirley | 7.83 | 148.77 | 0.00 | 0.00 | 148.77 | DD | 0.00 | 148.77 |
| 02/19/2021 | Lee CNA, Nyashia | 34.50 | 724.50 | 0.00 | 0.00 | 724.50 | DD | 0.00 | 724.50 |
| 02/19/2021 | Little LPN, Costella | 15.42 | 771.00 | 0.00 | 0.00 | 771.00 | DD | 0.00 | 771.00 |
| 02/19/2021 | Lyerly CNA, Destiny | 46.60 | 885.40 | 0.00 | 0.00 | 885.40 | DD | 0.00 | 885.40 |
| 02/19/2021 | Madkins CNA, Reashelle | 11.78 | 223.82 | 0.00 | 0.00 | 223.82 | DD | 0.00 | 223.82 |
| 02/19/2021 | Marzette LPN, Rhosonda | 12.00 | 600.00 | 0.00 | 0.00 | 600.00 | DD | 0.00 | 600.00 |
| 02/19/2021 | Matin LPN, Rugayyah | 48.50 | 1,552.00 | 0.00 | 0.00 | 1,552.00 | DD | 0.00 | 1,552.00 |
| 02/19/2021 | McCann LPN, Nicole | 28.03 | 1,401.50 | 0.00 | 0.00 | 1,401.50 | DD | 0.00 | 1,401.50 |
| 02/19/2021 | McClease CNA, Zemikia | 47.24 | 1,260.60 | 0.00 | 0.00 | 1,260.60 | DD | 0.00 | 1,260.60 |
| 02/19/2021 | McDonald CNA, Sherry | 7.50 | 225.00 | 0.00 | 0.00 | 225.00 | DD | 0.00 | 225.00 |
| 02/19/2021 | Meier LPN, Shawnda | 33.00 | 1,650.00 | 0.00 | 0.00 | 1,650.00 | DD | 0.00 | 1,650.00 |
| 02/19/2021 | Middlebrooks LPN, Eashia | 24.50 | 735.00 | 0.00 | 0.00 | 735.00 | DD | 0.00 | 735.00 |
| 02/19/2021 | Miltier RN, Piers | 18.50 | 1,110.00 | 0.00 | 0.00 | 1,110.00 | DD | 0.00 | 1,110.00 |
| 02/19/2021 | Mitchell LPN, Monica | 23.50 | 705.00 | 0.00 | 0.00 | 705.00 | DD | 0.00 | 705.00 |
| 02/19/2021 | Montero LPN, Johnelle | 16.00 | 800.00 | 0.00 | 0.00 | 800.00 | DD | 0.00 | 800.00 |
| 02/19/2021 | Mooney LPN, Tatiana | 11.50 | 345.00 | 0.00 | 0.00 | 345.00 | 40736458 | 0.00 | 345.00 |
| 02/19/2021 | Moore CNA, Charloyna | 52.25 | 1,306.25 | 0.00 | 0.00 | 1,306.25 | DD | 0.00 | 1,306.25 |
| 02/19/2021 | Moore CNA, Dara | 83.58 | 2,507.40 | 0.00 | 0.00 | 2,507.40 | DD | 0.00 | 2,507.40 |
| 02/19/2021 | Moore LPN, Selma | 25.08 | 752.40 | 0.00 | 0.00 | 752.40 | 40736459 | 0.00 | 752.40 |
| 02/19/2021 | Moreland-Clark CNA, Sequita | 7.50 | 135.00 | 0.00 | 0.00 | 135.00 | DD | 0.00 | 135.00 |
| 02/19/2021 | Nesbitt LPN, Charese | 45.67 | 2,028.50 | 0.00 | 0.00 | 2,028.50 | DD | 0.00 | 2,028.50 |
| 02/19/2021 | New RN, Mary | 25.00 | 1,375.00 | 0.00 | 0.00 | 1,375.00 | DD | 0.00 | 1,375.00 |
| 02/19/2021 | Obiechina LPN, LeShawn | 32.58 | 1,303.20 | 0.00 | 0.00 | 1,303.20 | DD | 0.00 | 1,303.20 |
| 02/19/2021 | Olibrus LPN, Dionne | 40.25 | 1,537.50 | 0.00 | 0.00 | 1,537.50 | DD | 0.00 | 1,537.50 |
| 02/19/2021 | Osborne CNA, Carlotta | 35.00 | 875.00 | 0.00 | 0.00 | 875.00 | DD | 0.00 | 875.00 |

Company: Medical Staffing of America                    15  of  33                    Date Printed: 05/07/2021 08:49
Check dates from: 1/8/2021 - Payroll 1 to: 3/26/2021 - Payroll 1                      25087115 - RB/959
Pay Period from: 12/29/2020 to: 03/22/2021

**Steadfast 6th 092872**

**JA2032**

## Sample Packet:
## Category 3 Error - DOL Doubled Hours Paid

**DOL Entry for Jolonda Able on 7/26/2020**

| Packet Page # | Document Description | Bates Stamp |
|---|---|---|
| 2 | **DOL Wage Transcription and Computation Sheet** <br> Excerpt Entry Highlighted | Trial Exhibit PX-21 |
| 3 | **Steadfast Payroll Summary** <br><br> Actual Steadfast Check Date: **7/31/2020** <br> Hours Paid by Steadfast: **46.88** | Steadfast 6th 074837 |

| Summary: | DOL | Steadfast |
|---|---|---|
| Date | 7/26/2020 | 7/31/2020 |
| Hours Paid | 93.76 | 46.88 |
| Back Pay | $456.96 | $58.48 |
| DOL Overage | $398.48 | |

| Date | First Name | Last Name | Gross Pay | Total Hrs | Rate | OT Hrs | Sec 7: RR Due | Sec 7: 1/2T Due | Sec 7: Total Due |
|---|---|---|---|---|---|---|---|---|---|
| 12/30/2018 | Karimah | Abdussalaam | $1,658.80 | 40.03 | $41.44 | 0.03 | $0.00 | $0.62 | $0.62 |
| 6/23/2019 | Karimah | Abdussalaam | $2,136.80 | 53.42 | $40.00 | 13.42 | $0.00 | $268.40 | $268.40 |
| 7/21/2019 | Karimah | Abdussalaam | $1,652.00 | 41.3 | $40.00 | 1.3 | $0.00 | $26.00 | $26.00 |
| 9/15/2019 | Karimah | Abdussalaam | $3,101.60 | 77.54 | $40.00 | 37.54 | $0.00 | $750.80 | $750.80 |
| 9/22/2019 | Karimah | Abdussalaam | $1,890.00 | 47.25 | $40.00 | 7.25 | $0.00 | $145.00 | $145.00 |
| 10/6/2019 | Jolonda E | Able | $1,108.57 | 65.21 | $17.00 | 25.21 | $0.00 | $214.29 | $214.29 |
| 6/21/2020 | Jolonda E | Able | $1,460.50 | 58.42 | $25.00 | 18.42 | $0.00 | $230.25 | $230.25 |
| 6/28/2020 | Jolonda E | Able | $3,012.50 | 74.51 | $25.00 | 34.51 | $0.00 | $431.38 | $431.38 |
| 7/5/2020 | Jolonda E | Able | $1,408.28 | 71.34 | $19.74 | 31.34 | $0.00 | $309.33 | $309.33 |
| 7/26/2020 | Jolonda E | Able | $1,593.92 | 93.76 | $17.00 | 53.76 | $0.00 | $456.96 | $456.96 |
| 6/13/2021 | Jolonda E | Able | $3,850.00 | 112 | $25.00 | 72 | $0.00 | $900.00 | $900.00 |
| 6/27/2021 | Jolonda E | Able | $1,008.50 | 40.34 | $25.00 | 0.34 | $0.00 | $4.25 | $4.25 |
| 4/4/2021 | Morgan | Accura | $2,182.73 | 40.92 | $53.34 | 0.92 | $0.00 | $24.54 | $24.54 |
| 5/30/2021 | Morgan | Accura | $2,673.00 | 50.9 | $52.51 | 10.9 | $0.00 | $286.21 | $286.21 |
| 6/20/2021 | Morgan | Accura | $2,891.70 | 64.26 | $45.00 | 24.26 | $0.00 | $545.85 | $545.85 |
| 1/3/2021 | Jaime | Adames | $1,458.18 | 63.34 | $23.02 | 23.34 | $0.00 | $268.66 | $268.66 |
| 1/17/2021 | Jaime | Adames | $1,368.00 | 76 | $18.00 | 36 | $0.00 | $324.00 | $324.00 |
| 2/7/2021 | Jaime | Adames | $1,062.00 | 59 | $18.00 | 19 | $0.00 | $171.00 | $171.00 |
| 2/14/2021 | Jaime | Adames | $774.00 | 43 | $18.00 | 3 | $0.00 | $27.00 | $27.00 |
| 2/21/2021 | Jaime | Adames | $1,890.00 | 105 | $18.00 | 65 | $0.00 | $585.00 | $585.00 |
| 3/7/2021 | Jaime | Adames | $810.00 | 45 | $18.00 | 5 | $0.00 | $45.00 | $45.00 |
| 3/21/2021 | Jaime | Adames | $2,052.00 | 66.99 | $18.00 | 26.99 | $0.00 | $242.91 | $242.91 |
| 4/11/2021 | Jaime | Adames | $837.00 | 46.5 | $18.00 | 6.5 | $0.00 | $58.50 | $58.50 |
| 4/25/2021 | Jaime | Adames | $819.00 | 45.5 | $18.00 | 5.5 | $0.00 | $49.50 | $49.50 |
| 5/2/2021 | Jaime | Adames | $1,319.50 | 69 | $19.12 | 29 | $0.00 | $277.29 | $277.29 |
| 5/9/2021 | Jaime | Adames | $1,822.50 | 69 | $26.41 | 29 | $0.00 | $382.99 | $382.99 |
| 5/30/2021 | Jaime | Adames | $2,150.00 | 82 | $26.22 | 42 | $0.00 | $550.61 | $550.61 |
| 6/6/2021 | Jaime | Adames | $2,025.00 | 81 | $25.00 | 41 | $0.00 | $512.50 | $512.50 |
| 6/13/2021 | Jaime | Adames | $1,850.00 | 74 | $25.00 | 34 | $0.00 | $425.00 | $425.00 |
| 6/20/2021 | Jaime | Adames | $1,925.00 | 77 | $25.00 | 37 | $0.00 | $462.50 | $462.50 |
| 6/27/2021 | Jaime | Adames | $1,737.50 | 69.5 | $25.00 | 29.5 | $0.00 | $368.75 | $368.75 |
| 12/30/2018 | Jamie | Adames | $699.38 | 42.75 | $16.36 | 2.75 | $0.00 | $22.49 | $22.49 |
| 7/7/2019 | Jamie | Adames | $930.00 | 54.5 | $17.06 | 14.5 | $0.00 | $123.72 | $123.72 |
| 7/14/2019 | Jamie | Adames | $900.00 | 60 | $15.00 | 20 | $0.00 | $150.00 | $150.00 |
| 7/21/2019 | Jamie | Adames | $885.00 | 59 | $15.00 | 19 | $0.00 | $142.50 | $142.50 |
| 7/28/2019 | Jamie | Adames | $900.00 | 60 | $15.00 | 20 | $0.00 | $150.00 | $150.00 |
| 8/4/2019 | Jamie | Adames | $787.50 | 52.5 | $15.00 | 12.5 | $0.00 | $93.75 | $93.75 |
| 11/3/2019 | Jamie | Adames | $675.00 | 45 | $15.00 | 5 | $0.00 | $37.50 | $37.50 |
| 12/1/2019 | Jamie | Adames | $1,462.50 | 90 | $15.75 | 50 | $0.00 | $393.75 | $393.75 |
| 12/15/2019 | Jamie | Adames | $787.50 | 52.5 | $15.00 | 12.5 | $0.00 | $93.75 | $93.75 |
| 1/5/2020 | Jamie | Adames | $1,642.50 | 98 | $16.76 | 58 | $0.00 | $486.05 | $486.05 |
| 1/12/2020 | Jamie | Adames | $1,125.00 | 75 | $15.00 | 35 | $0.00 | $262.50 | $262.50 |
| 1/19/2020 | Jamie | Adames | $1,125.00 | 75 | $15.00 | 35 | $0.00 | $262.50 | $262.50 |
| 1/26/2020 | Jamie | Adames | $675.00 | 45 | $15.00 | 5 | $0.00 | $37.50 | $37.50 |
| 2/9/2020 | Jamie | Adames | $900.00 | 60 | $15.00 | 20 | $0.00 | $150.00 | $150.00 |
| 2/16/2020 | Jamie | Adames | $630.00 | 42 | $15.00 | 2 | $0.00 | $15.00 | $15.00 |
| 3/1/2020 | Jamie | Adames | $787.50 | 52.5 | $15.00 | 12.5 | $0.00 | $93.75 | $93.75 |
| 3/29/2020 | Jamie | Adames | $1,462.50 | 97.5 | $15.00 | 57.5 | $0.00 | $431.25 | $431.25 |
| 4/19/2020 | Jamie | Adames | $1,462.50 | 90 | $16.25 | 50 | $0.00 | $406.25 | $406.25 |
| 4/26/2020 | Jamie | Adames | $720.00 | 45 | $16.00 | 5 | $0.00 | $40.00 | $40.00 |
| 5/3/2020 | Jamie | Adames | $960.00 | 60 | $16.00 | 20 | $0.00 | $160.00 | $160.00 |
| 5/17/2020 | Jamie | Adames | $720.00 | 45 | $16.00 | 5 | $0.00 | $40.00 | $40.00 |
| 5/31/2020 | Jamie | Adames | $960.00 | 60 | $16.00 | 20 | $0.00 | $160.00 | $160.00 |
| 6/7/2020 | Jamie | Adames | $752.00 | 47 | $16.00 | 7 | $0.00 | $56.00 | $56.00 |
| 6/14/2020 | Jamie | Adames | $840.00 | 52.5 | $16.00 | 12.5 | $0.00 | $100.00 | $100.00 |
| 6/21/2020 | Jamie | Adames | $840.00 | 52.5 | $16.00 | 12.5 | $0.00 | $100.00 | $100.00 |
| 7/5/2020 | Jamie | Adames | $2,056.00 | 64.83 | $17.13 | 24.83 | $0.00 | $212.71 | $212.71 |
| 7/12/2020 | Jamie | Adames | $1,472.00 | 92 | $16.00 | 52 | $0.00 | $416.00 | $416.00 |
| 7/26/2020 | Jamie | Adames | $1,411.00 | 83 | $17.00 | 43 | $0.00 | $365.50 | $365.50 |
| 8/9/2020 | Jamie | Adames | $909.50 | 53.5 | $17.00 | 13.5 | $0.00 | $114.75 | $114.75 |
| 8/30/2020 | Jamie | Adames | $1,706.25 | 82.67 | $20.64 | 42.67 | $0.00 | $440.34 | $440.34 |
| 9/6/2020 | Jamie | Adames | $1,522.38 | 53.27 | $28.58 | 13.27 | $0.00 | $189.62 | $189.62 |
| 1/27/2019 | Brandie | Adams | $1,052.47 | 61.91 | $17.00 | 21.91 | $0.00 | $186.24 | $186.24 |
| 2/3/2019 | Brandie | Adams | $919.36 | 54.08 | $17.00 | 14.08 | $0.00 | $119.68 | $119.68 |

# Payroll Summary

| Check Date | Name | Hours | Total Paid | Tax Withheld | Deductions | Net Pay | Check No | Employer Liability | Total Expense |
|---|---|---|---|---|---|---|---|---|---|
| 08/07/2020 | Nesbitt LPN, Charese | 33.17 | 1,189.44 | 0.00 | 0.00 | 1,189.44 | DD | 0.00 | 1,189.44 |
| 08/07/2020 | New RN, Mary | 24.00 | 1,382.30 | 0.00 | 0.00 | 1,382.30 | DD | 0.00 | 1,382.30 |
| 08/07/2020 | Newton CNA, Shanece | 38.75 | 968.75 | 0.00 | 0.00 | 968.75 | DD | 0.00 | 968.75 |
| 08/07/2020 | Okocha CNA, Chukwvemeka | 18.08 | 542.40 | 0.00 | 0.00 | 542.40 | DD | 0.00 | 542.40 |
| 08/07/2020 | Outlaw CNA, Jeanette | 35.67 | 606.39 | 0.00 | 0.00 | 606.39 | DD | 0.00 | 606.39 |
| 08/07/2020 | Overton CNA, Johnny | 26.00 | 650.00 | 0.00 | 0.00 | 650.00 | DD | 0.00 | 650.00 |
| 08/07/2020 | Owens RN, Natasha | 20.05 | 798.26 | 0.00 | 0.00 | 798.26 | DD | 0.00 | 798.26 |
| 08/07/2020 | Parks LPN, Alexis | 12.25 | 367.50 | 0.00 | 0.00 | 367.50 | DD | 0.00 | 367.50 |
| 08/07/2020 | Parks LPN, Anorria | 12.25 | 367.50 | 0.00 | 0.00 | 367.50 | DD | 0.00 | 367.50 |
| 08/07/2020 | Parks RN, Denita | 12.00 | 560.00 | 0.00 | 0.00 | 560.00 | DD | 0.00 | 560.00 |
| 08/07/2020 | Plummer LPN, Brandy | 58.83 | 2,353.20 | 0.00 | 0.00 | 2,353.20 | DD | 0.00 | 2,353.20 |
| 08/07/2020 | Poke LPN, Darnesha | 23.65 | 709.50 | 0.00 | 0.00 | 709.50 | DD | 0.00 | 709.50 |
| 08/07/2020 | Purvis LPN, Takera | 21.54 | 603.12 | 0.00 | 0.00 | 603.12 | DD | 0.00 | 603.12 |
| 08/07/2020 | Rawls LPN, Patricia | 48.83 | 1,953.20 | 0.00 | 0.00 | 1,953.20 | DD | 0.00 | 1,953.20 |
| 08/07/2020 | Reynolds LPN, Kimberly | 27.50 | 1,570.92 | 0.00 | 0.00 | 1,570.92 | DD | 0.00 | 1,570.92 |
| 08/07/2020 | Sanders LPN, Kihana | 25.25 | 757.50 | 0.00 | 0.00 | 757.50 | DD | 0.00 | 757.50 |
| 08/07/2020 | Saunders CNA, Marlene | 30.39 | 547.02 | 0.00 | 0.00 | 547.02 | DD | 0.00 | 547.02 |
| 08/07/2020 | Simmons LPN, Juan | 15.00 | 675.00 | 0.00 | 0.00 | 675.00 | DD | 0.00 | 675.00 |
| 08/07/2020 | Sims LPN, Laniece | 16.59 | 829.50 | 0.00 | 0.00 | 829.50 | DD | 0.00 | 829.50 |
| 08/07/2020 | Smith CNA, April | 45.93 | 1,148.25 | 0.00 | 0.00 | 1,148.25 | DD | 0.00 | 1,148.25 |
| 08/07/2020 | Smith LPN, Christy | 24.50 | 980.00 | 0.00 | 0.00 | 980.00 | DD | 0.00 | 980.00 |
| 08/07/2020 | Smith LPN, Jasmine | 34.16 | 1,540.06 | 0.00 | 0.00 | 1,540.06 | DD | 0.00 | 1,540.06 |
| 08/07/2020 | Steward RN, Christie | 32.50 | 1,625.00 | 0.00 | 0.00 | 1,625.00 | DD | 0.00 | 1,625.00 |
| 08/07/2020 | Stewart CNA, Tawqua | 23.00 | 391.00 | 0.00 | 0.00 | 391.00 | DD | 0.00 | 391.00 |
| 08/07/2020 | Stringfield CNA, Trenika | 9.50 | 161.50 | 0.00 | 0.00 | 161.50 | DD | 0.00 | 161.50 |
| 08/07/2020 | Sutton RN, Tiffany | 46.00 | 1,840.00 | 0.00 | 0.00 | 1,840.00 | DD | 0.00 | 1,840.00 |
| 08/07/2020 | Swecker LPN, Brooke | 30.50 | 1,372.50 | 0.00 | 0.00 | 1,372.50 | DD | 0.00 | 1,372.50 |
| 08/07/2020 | Tallent LPN, Heather | 15.75 | 787.50 | 0.00 | 0.00 | 787.50 | DD | 0.00 | 787.50 |
| 08/07/2020 | Tennessee CNA, Lakisha | 15.00 | 306.00 | 0.00 | 0.00 | 306.00 | DD | 0.00 | 306.00 |
| 08/07/2020 | Tirado LPN, Andrea | 51.35 | 2,767.50 | 0.00 | 0.00 | 2,767.50 | DD | 0.00 | 2,767.50 |
| 08/07/2020 | Trogdon CNA, Tiffany | 12.00 | 360.00 | 0.00 | 0.00 | 360.00 | DD | 0.00 | 360.00 |
| 08/07/2020 | Wade LPN, Lakrisha | 15.50 | 465.00 | 0.00 | 0.00 | 465.00 | DD | 0.00 | 465.00 |
| 08/07/2020 | Walker CNA, Yolanda | 31.52 | 535.84 | 0.00 | 0.00 | 535.84 | DD | 0.00 | 535.84 |
| 08/07/2020 | Williams CNA, Amy | 40.16 | 1,004.00 | 0.00 | 0.00 | 1,004.00 | DD | 0.00 | 1,004.00 |
| 08/07/2020 | Williams CNA, Jeneka | 22.50 | 382.50 | 0.00 | 0.00 | 382.50 | DD | 0.00 | 382.50 |
| 08/07/2020 | Williams LPN, Jakiea | 27.08 | 1,354.00 | 0.00 | 0.00 | 1,354.00 | DD | 0.00 | 1,354.00 |
| 08/07/2020 | Winborne RN, Sonia | 8.30 | 332.00 | 0.00 | 0.00 | 332.00 | DD | 0.00 | 332.00 |
| 08/07/2020 | Younger LPN, Meagan | 47.92 | 1,437.60 | 0.00 | 0.00 | 1,437.60 | DD | 0.00 | 1,437.60 |
| 07/31/2020 | Able CNA, Jolonda | 46.88 | 796.96 | 0.00 | 0.00 | 796.96 | DD | 0.00 | 796.96 |
| 07/31/2020 | Adames CNA, Jamie | 41.50 | 705.50 | 0.00 | 0.00 | 705.50 | DD | 0.00 | 705.50 |
| 07/31/2020 | Adkins CNA, Desiree | 60.05 | 1,201.00 | 0.00 | 0.00 | 1,201.00 | DD | 0.00 | 1,201.00 |
| 07/31/2020 | Anthony CNA, Trevon | 30.00 | 570.00 | 0.00 | 0.00 | 570.00 | DD | 0.00 | 570.00 |
| 07/31/2020 | Bandy CNA, Elizabeth | 30.00 | 750.00 | 0.00 | 0.00 | 750.00 | DD | 0.00 | 750.00 |
| 07/31/2020 | Barrow LPN, Rayshara | 47.12 | 1,473.60 | 0.00 | 0.00 | 1,473.60 | DD | 0.00 | 1,473.60 |
| 07/31/2020 | Beavers LPN, KeiMia | 58.25 | 2,912.50 | 0.00 | 0.00 | 2,912.50 | DD | 0.00 | 2,912.50 |
| 07/31/2020 | Bethea CNA, Levance | 67.50 | 1,215.00 | 0.00 | 0.00 | 1,215.00 | DD | 0.00 | 1,215.00 |
| 07/31/2020 | Bowen CNA, Shawanda | 52.22 | 887.74 | 0.00 | 0.00 | 887.74 | DD | 0.00 | 887.74 |
| 07/31/2020 | Boykins CNA, Saudia | 30.42 | 912.60 | 0.00 | 0.00 | 912.60 | DD | 0.00 | 912.60 |

Company: Medical Staffing of America                 19  of  28                 Date Printed: 11/09/2020 15:14
Check dates from: 7/3/2020 - Payroll 1 to: 9/25/2020 - Payroll 1                 25087115 - RB/959
Pay Period from: 06/23/2020 to: 09/21/2020

Steadfast 6th 074837

**JA2035**

## Sample Packet:
## Category 3 Error - DOL Doubled Hours Paid

**DOL Entry for Kimberly Bellamy on 12/29/2019**

| Packet Page # | Document Description | Bates Stamp |
|---|---|---|
| 2 | **DOL Wage Transcription and Computation Sheet**<br>Excerpt Entry Highlighted | Trial Exhibit PX-21 |
| 3 | **Steadfast Payroll Summary**<br><br>Actual Steadfast Check Date: **1/3/2020**<br>Hours Paid by Steadfast: **42.73** | Steadfast 6th 070499 |

| Summary: | DOL | Steadfast |
|---|---|---|
| **Date** | 12/29/19 | 1/3/20 |
| **Hours Paid** | 85.46 | 42.73 |
| **Back Pay** | $775.66 | $46.57 |
| **DOL Overage** | $729.09 | |

| Date | First Name | Last Name | Gross Pay | Total Hrs | Rate | OT Hrs | Sec 7: RR Due | Sec 7: 1/2T Due | Sec 7: Total Due |
|---|---|---|---|---|---|---|---|---|---|
| 5/12/2019 | Kimberly | Bellamy | $1,837.50 | 61.25 | $30.00 | 21.25 | $0.00 | $318.75 | $318.75 |
| 5/19/2019 | Kimberly | Bellamy | $1,409.84 | 49.25 | $28.67 | 9.25 | $0.00 | $132.58 | $132.58 |
| 5/26/2019 | Kimberly | Bellamy | $1,309.23 | 48.49 | $27.00 | 8.49 | $0.00 | $114.62 | $114.62 |
| 6/2/2019 | Kimberly | Bellamy | $1,819.36 | 60.96 | $32.40 | 20.96 | $0.00 | $339.55 | $339.55 |
| 6/9/2019 | Kimberly | Bellamy | $1,249.65 | 42.83 | $29.18 | 2.83 | $0.00 | $41.29 | $41.29 |
| 7/14/2019 | Kimberly | Bellamy | $1,485.82 | 53.33 | $27.86 | 13.33 | $0.00 | $185.69 | $185.69 |
| 8/11/2019 | Kimberly | Bellamy | $1,623.89 | 58.16 | $28.00 | 18.16 | $0.00 | $254.24 | $254.24 |
| 8/18/2019 | Kimberly | Bellamy | $1,129.52 | 40.34 | $28.00 | 0.34 | $0.00 | $4.76 | $4.76 |
| 8/25/2019 | Kimberly | Bellamy | $1,163.36 | 40.47 | $28.75 | 0.47 | $0.00 | $6.76 | $6.76 |
| 11/10/2019 | Kimberly | Bellamy | $2,028.94 | 69.17 | $29.20 | 29.17 | $0.00 | $425.88 | $425.88 |
| 12/29/2019 | Kimberly | Bellamy | $2,916.30 | 85.46 | $34.12 | 45.46 | $0.00 | $775.66 | $775.66 |
| 1/5/2020 | Kimberly | Bellamy | $2,057.40 | 68.58 | $30.00 | 28.58 | $0.00 | $428.70 | $428.70 |
| 1/26/2020 | Kimberly | Bellamy | $4,768.62 | 59.99 | $29.69 | 19.99 | $0.00 | $296.73 | $296.73 |
| 2/2/2020 | Kimberly | Bellamy | $1,356.70 | 45.74 | $29.50 | 5.74 | $0.00 | $84.67 | $84.67 |
| 2/16/2020 | Kimberly | Bellamy | $1,172.80 | 40.16 | $29.00 | 0.16 | $0.00 | $2.32 | $2.32 |
| 2/7/2021 | Mccoy | Benisea | $2,462.37 | 46.68 | $52.75 | 6.68 | $0.00 | $176.19 | $176.19 |
| 1/10/2021 | Tanya | Bentick | $3,037.50 | 67.5 | $45.00 | 27.5 | $0.00 | $618.75 | $618.75 |
| 1/24/2021 | Tanya | Bentick | $3,080.00 | 88 | $35.00 | 48 | $0.00 | $840.00 | $840.00 |
| 1/31/2021 | Tanya | Bentick | $2,265.30 | 50.34 | $45.00 | 10.34 | $0.00 | $232.65 | $232.65 |
| 5/23/2021 | Yazmin | Beretervide | $1,950.00 | 78 | $25.00 | 38 | $0.00 | $475.00 | $475.00 |
| 5/30/2021 | Yazmin | Beretervide | $4,475.00 | 69 | $27.12 | 29 | $0.00 | $393.26 | $393.26 |
| 6/13/2021 | Yazmin | Beretervide | $1,500.00 | 60 | $25.00 | 20 | $0.00 | $250.00 | $250.00 |
| 6/20/2021 | Yazmin | Beretervide | $2,998.00 | 69 | $25.00 | 29 | $0.00 | $362.50 | $362.50 |
| 5/26/2019 | Kiana | Best | $1,878.50 | 110.5 | $17.00 | 70.5 | $0.00 | $599.25 | $599.25 |
| 7/21/2019 | Kiana | Best | $907.29 | 53.37 | $17.00 | 13.37 | $0.00 | $113.65 | $113.65 |
| 5/3/2020 | Levance | Bethea | $1,575.00 | 45 | $35.00 | 5 | $0.00 | $87.50 | $87.50 |
| 5/10/2020 | Levance | Bethea | $3,683.75 | 105.25 | $35.00 | 65.25 | $0.00 | $1,141.88 | $1,141.88 |
| 5/17/2020 | Levance | Bethea | $3,736.25 | 106.75 | $35.00 | 66.75 | $0.00 | $1,168.13 | $1,168.13 |
| 5/24/2020 | Levance | Bethea | $4,099.38 | 109.25 | $37.52 | 69.25 | $0.00 | $1,299.23 | $1,299.23 |
| 5/31/2020 | Levance | Bethea | $3,255.00 | 93 | $35.00 | 53 | $0.00 | $927.50 | $927.50 |
| 6/7/2020 | Levance | Bethea | $3,224.00 | 89.92 | $26.00 | 49.92 | $0.00 | $648.96 | $648.96 |
| 6/14/2020 | Levance | Bethea | $2,100.00 | 60 | $35.00 | 20 | $0.00 | $350.00 | $350.00 |
| 6/21/2020 | Levance | Bethea | $3,797.50 | 108.5 | $35.00 | 68.5 | $0.00 | $1,198.75 | $1,198.75 |
| 6/28/2020 | Levance | Bethea | $6,300.00 | 89.92 | $35.00 | 49.92 | $0.00 | $873.60 | $873.60 |
| 7/5/2020 | Levance | Bethea | $2,032.50 | 91.5 | $22.21 | 51.5 | $0.00 | $571.99 | $571.99 |
| 7/12/2020 | Levance | Bethea | $1,620.00 | 90 | $18.00 | 50 | $0.00 | $450.00 | $450.00 |
| 7/26/2020 | Levance | Bethea | $2,430.00 | 89.92 | $18.00 | 49.92 | $0.00 | $449.28 | $449.28 |
| 1/27/2019 | Chelsea | Bingham | $816.00 | 48 | $17.00 | 8 | $0.00 | $68.00 | $68.00 |
| 2/10/2019 | Chelsea | Bingham | $932.79 | 54.87 | $17.00 | 14.87 | $0.00 | $126.40 | $126.40 |
| 6/20/2021 | Khiyla | Blackman | $1,125.00 | 45 | $25.00 | 5 | $0.00 | $62.50 | $62.50 |
| 3/31/2019 | Courtney | Blakey | $1,217.40 | 40.58 | $30.00 | 0.58 | $0.00 | $8.70 | $8.70 |
| 5/19/2019 | Courtney | Blakey | $1,484.10 | 49.47 | $30.00 | 9.47 | $0.00 | $142.05 | $142.05 |
| 4/25/2021 | Alexandria | Blanding | $1,160.50 | 46.42 | $25.00 | 6.42 | $0.00 | $80.25 | $80.25 |
| 5/16/2021 | Alexandria | Blanding | $1,904.25 | 76.17 | $25.00 | 36.17 | $0.00 | $452.13 | $452.13 |
| 5/23/2021 | Alexandria | Blanding | $1,617.50 | 64.7 | $25.00 | 24.7 | $0.00 | $308.75 | $308.75 |
| 6/13/2021 | Roberta | Blue | $1,991.60 | 49.79 | $40.00 | 9.79 | $0.00 | $195.80 | $195.80 |
| 1/13/2019 | Nicole L | Bolden | $637.67 | 51.98 | $12.27 | 11.98 | $142.03 | $89.85 | $231.88 |
| 1/20/2019 | Nicole L | Bolden | $582.40 | 48.63 | $11.98 | 8.63 | $147.05 | $64.73 | $211.78 |
| 1/27/2019 | Nicole L | Bolden | $460.96 | 41.27 | $11.17 | 1.27 | $158.09 | $9.53 | $167.62 |
| 2/3/2019 | Nicole L | Bolden | $705.65 | 56.1 | $12.58 | 16.1 | $135.85 | $120.75 | $256.60 |
| 2/10/2019 | Nicole L | Bolden | $643.78 | 52.35 | $12.30 | 12.35 | $141.47 | $92.63 | $234.10 |
| 2/17/2019 | Nicole L | Bolden | $640.48 | 52.15 | $12.28 | 12.15 | $141.77 | $91.13 | $232.90 |
| 3/3/2019 | Nicole L | Bolden | $602.03 | 49.82 | $12.08 | 9.82 | $145.27 | $73.65 | $218.92 |
| 3/10/2019 | Nicole L | Bolden | $628.10 | 51.4 | $12.22 | 11.4 | $142.90 | $85.50 | $228.40 |
| 3/17/2019 | Nicole L | Bolden | $504.02 | 43.88 | $11.49 | 3.88 | $154.18 | $29.10 | $183.28 |
| 3/24/2019 | Nicole L | Bolden | $602.20 | 49.83 | $12.09 | 9.83 | $145.25 | $73.73 | $218.98 |
| 3/31/2019 | Nicole L | Bolden | $502.37 | 43.78 | $11.47 | 3.78 | $154.33 | $28.35 | $182.68 |
| 4/7/2019 | Nicole L | Bolden | $589.82 | 49.08 | $12.02 | 9.08 | $146.38 | $68.10 | $214.48 |
| 4/14/2019 | Nicole L | Bolden | $478.28 | 42.32 | $11.30 | 2.32 | $156.52 | $17.40 | $173.92 |
| 4/21/2019 | Nicole L | Bolden | $889.25 | 47.53 | $18.71 | 7.53 | $0.00 | $70.44 | $70.44 |
| 4/28/2019 | Nicole L | Bolden | $683.65 | 41.13 | $16.62 | 1.13 | $0.00 | $9.39 | $9.39 |
| 5/19/2019 | Nicole L | Bolden | $616.65 | 40.1 | $15.38 | 0.1 | $0.00 | $0.77 | $0.77 |
| 6/13/2021 | Ebony | Bonaparte | $1,125.00 | 45 | $25.00 | 5 | $0.00 | $62.50 | $62.50 |
| 6/20/2021 | Ebony | Bonaparte | $1,500.00 | 60 | $25.00 | 20 | $0.00 | $250.00 | $250.00 |

# Payroll Summary

| Check Date | Name | Hours | Total Paid | Tax Withheld | Deductions | Net Pay | Check No | Employer Liability | Total Expense |
|---|---|---|---|---|---|---|---|---|---|
| 01/10/2020 | Owens LPN, Gwendolyn | 20.27 | 591.56 | 0.00 | 0.00 | 591.56 | DD | 0.00 | 591.56 |
| 01/10/2020 | Owens LPN, Natasha | 33.40 | 901.80 | 0.00 | 0.00 | 901.80 | DD | 0.00 | 901.80 |
| 01/10/2020 | Padgett RN, Lolita | 30.22 | 1,208.80 | 0.00 | 0.00 | 1,208.80 | DD | 0.00 | 1,208.80 |
| 01/10/2020 | Parks RN, Denita | 23.50 | 940.00 | 0.00 | 0.00 | 940.00 | DD | 0.00 | 940.00 |
| 01/10/2020 | Perry LPN, Alvonya S | 23.58 | 1,061.10 | 0.00 | 0.00 | 1,061.10 | DD | 0.00 | 1,061.10 |
| 01/10/2020 | Pierce LPN, Sandra | 27.45 | 847.53 | 0.00 | 0.00 | 847.53 | DD | 0.00 | 847.53 |
| 01/10/2020 | Pritchett LPN, Karen | 16.50 | 462.00 | 0.00 | 0.00 | 462.00 | 40578251 | 0.00 | 462.00 |
| 01/10/2020 | Robinson LPN, Jerolyn | 67.12 | 2,294.40 | 0.00 | 0.00 | 2,294.40 | DD | 0.00 | 2,294.40 |
| 01/10/2020 | Rose CNA, Kesha | 47.28 | 769.73 | 0.00 | 0.00 | 769.73 | DD | 0.00 | 769.73 |
| 01/10/2020 | Scott LPN, Karentina | 76.00 | 2,610.00 | 0.00 | 0.00 | 2,610.00 | DD | 0.00 | 2,610.00 |
| 01/10/2020 | Silver LPN, Sheila | 34.00 | 1,417.50 | 0.00 | 0.00 | 1,417.50 | 40578252 | 0.00 | 1,417.50 |
| 01/10/2020 | Simmons LPN, Juan | 47.33 | 1,546.20 | 0.00 | 0.00 | 1,546.20 | DD | 0.00 | 1,546.20 |
| 01/10/2020 | Spencer LPN, Carol | 46.50 | 1,255.50 | 0.00 | 0.00 | 1,255.50 | DD | 0.00 | 1,255.50 |
| 01/10/2020 | Spivey CNA, Daisy | 49.01 | 735.15 | 0.00 | 0.00 | 735.15 | DD | 0.00 | 735.15 |
| 01/10/2020 | Stanley LPN, Chelsea | 7.58 | 318.36 | 0.00 | 0.00 | 318.36 | DD | 0.00 | 318.36 |
| 01/10/2020 | Steward RN, Christie | 2.00 | 100.00 | 0.00 | 0.00 | 100.00 | DD | 0.00 | 100.00 |
| 01/10/2020 | Sutphin CNA, Reshonn | 18.67 | 280.05 | 0.00 | 0.00 | 280.05 | DD | 0.00 | 280.05 |
| 01/10/2020 | Sutton LPN, Tiffany | 31.32 | 954.59 | 0.00 | 0.00 | 954.59 | DD | 0.00 | 954.59 |
| 01/10/2020 | Swecker LPN, Brooke | 63.50 | 2,017.50 | 0.00 | 0.00 | 2,017.50 | DD | 0.00 | 2,017.50 |
| 01/10/2020 | Whitehead-Artemus LPN, Rachel | 12.33 | 431.87 | 0.00 | 0.00 | 431.87 | DD | 0.00 | 431.87 |
| 01/10/2020 | Wilkerson LPN, Lauren | 33.67 | 1,010.10 | 0.00 | 0.00 | 1,010.10 | DD | 0.00 | 1,010.10 |
| 01/10/2020 | Williams CNA, Alberta | 37.25 | 737.38 | 0.00 | 0.00 | 737.38 | 40578253 | 0.00 | 737.38 |
| 01/10/2020 | Wilson LPN, Virginia | 28.00 | 975.00 | 0.00 | 0.00 | 975.00 | DD | 0.00 | 975.00 |
| 01/10/2020 | Womack LPN, Rhonda | 41.50 | 1,447.50 | 0.00 | 0.00 | 1,447.50 | DD | 0.00 | 1,447.50 |
| 01/10/2020 | Wright LPN, Irene | 50.17 | 1,782.60 | 0.00 | 0.00 | 1,782.60 | DD | 0.00 | 1,782.60 |
| 01/10/2020 | Wright RN, LaShawn | 32.50 | 1,300.00 | 0.00 | 0.00 | 1,300.00 | DD | 0.00 | 1,300.00 |
| 01/10/2020 | Young LPN, Indya | 12.63 | 378.90 | 0.00 | 0.00 | 378.90 | DD | 0.00 | 378.90 |
| 01/03/2020 | Adkins CNA, Desiree | 91.30 | 1,533.25 | 0.00 | 0.00 | 1,533.25 | DD | 0.00 | 1,533.25 |
| 01/03/2020 | Adkins LPN, Hubert | 12.00 | 461.25 | 0.00 | 0.00 | 461.25 | DD | 0.00 | 461.25 |
| 01/03/2020 | Allen CNA, Sadiqua | 36.50 | 620.50 | 0.00 | 0.00 | 620.50 | DD | 0.00 | 620.50 |
| 01/03/2020 | Allen LPN, Tarnicia | 18.17 | 597.51 | 0.00 | 0.00 | 597.51 | DD | 0.00 | 597.51 |
| 01/03/2020 | Alston LPN, Napolean | 8.00 | 224.00 | 0.00 | 0.00 | 224.00 | DD | 0.00 | 224.00 |
| 01/03/2020 | Bailey RN, Whitney | 38.00 | 1,520.00 | 0.00 | 0.00 | 1,520.00 | DD | 0.00 | 1,520.00 |
| 01/03/2020 | Bandy CNA, Elizabeth | 7.51 | 112.65 | 0.00 | 0.00 | 112.65 | 40575472 | 0.00 | 112.65 |
| 01/03/2020 | Barnes-Jenkins LPN, Latasha | 22.58 | 632.24 | 0.00 | 0.00 | 632.24 | DD | 0.00 | 632.24 |
| 01/03/2020 | Bellamy LPN, Kimberly | 42.73 | 1,458.15 | 0.00 | 0.00 | 1,458.15 | DD | 0.00 | 1,458.15 |
| 01/03/2020 | Bowen CNA, Shawanda | 11.33 | 246.42 | 0.00 | 0.00 | 246.42 | DD | 0.00 | 246.42 |
| 01/03/2020 | Boykins CNA, Saudia | 48.83 | 1,025.61 | 0.00 | 0.00 | 1,025.61 | DD | 0.00 | 1,025.61 |
| 01/03/2020 | Bracero LPN, Tatiana | 8.50 | 238.00 | 0.00 | 0.00 | 238.00 | DD | 0.00 | 238.00 |
| 01/03/2020 | Bragg LPN, Deyonna | 35.67 | 1,070.10 | 0.00 | 0.00 | 1,070.10 | DD | 0.00 | 1,070.10 |
| 01/03/2020 | Brockman LPN, Shawvone | 63.46 | 2,272.80 | 0.00 | 0.00 | 2,272.80 | DD | 0.00 | 2,272.80 |
| 01/03/2020 | Brown LPN, Kashawnda | 54.50 | 2,092.50 | 0.00 | 0.00 | 2,092.50 | DD | 0.00 | 2,092.50 |
| 01/03/2020 | Bryant LPN, Richard | 12.00 | 461.25 | 0.00 | 0.00 | 461.25 | DD | 0.00 | 461.25 |
| 01/03/2020 | Buffa CNA, Todd | 78.25 | 1,595.88 | 0.00 | 0.00 | 1,595.88 | DD | 0.00 | 1,595.88 |
| 01/03/2020 | Burns CNA, Anastasia | 91.71 | 2,128.40 | 0.00 | 0.00 | 2,128.40 | DD | 0.00 | 2,128.40 |
| 01/03/2020 | Burton RN, Lisa | 34.00 | 1,360.00 | 0.00 | 0.00 | 1,360.00 | DD | 0.00 | 1,360.00 |
| 01/03/2020 | Canady LPN, Tatianna | 11.95 | 322.65 | 0.00 | 0.00 | 322.65 | DD | 0.00 | 322.65 |

Company: Medical Staffing of America     20  of  22

Check dates from: 1/3/2020 - Payroll 1 to: 3/27/2020 - Payroll 1

Pay Period from: 12/24/2019 to: 03/23/2020

Date Printed: 05/17/2020 22:02

25087115 - RB/959

Steadfast 6th 070499

**JA2038**

## Sample Packet:
## Category 4 Error – DOL Listed Incorrect Hours Paid

**DOL Entry for Todd Buffa on 1/26/2020**

| Packet Page # | Document Description | Bates Stamp |
|:---:|:---|:---|
| 2 | **DOL Wage Transcription and Computation Sheet** <br> Excerpt Entry Highlighted | Trial Exhibit PX-21 |
| 3 | **Steadfast Payroll Summary** <br><br> Actual Steadfast Check Date: **1/31/2020** <br> Hours Paid by Steadfast: **61.25** | Steadfast 6th 070492 |

| **Summary:** | **DOL** | **Steadfast** |
|:---:|:---:|:---:|
| **Date** | 1/26/20 | 1/31/20 |
| **Hours Paid** | 79.5 | 61.25 |
| **Back Pay** | $335.75 | $180.63 |
| **DOL Overage** | $155.12 | - |

| Date | First Name | Last Name | Gross Pay | Total Hrs | Rate | OT Hrs | Sec 7: RR Due | Sec 7: 1/2T Due | Sec 7: Total Due |
|---|---|---|---|---|---|---|---|---|---|
| 9/20/2020 | Serenity | Brown | $738.00 | 41 | $18.00 | 1 | $0.00 | $9.00 | $9.00 |
| 2/2/2020 | Sha'Quara | Brown | $1,200.00 | 48 | $25.00 | 8 | $0.00 | $100.00 | $100.00 |
| 1/5/2020 | Tashara | Brown | $2,045.25 | 59.31 | $18.00 | 19.31 | $0.00 | $144.83 | $144.83 |
| 1/19/2020 | Tashara | Brown | $707.40 | 47.16 | $15.00 | 7.16 | $0.00 | $53.70 | $53.70 |
| 1/26/2020 | Tashara | Brown | $1,065.75 | 71.05 | $15.00 | 31.05 | $0.00 | $232.88 | $232.88 |
| 2/23/2020 | Tashara | Brown | $895.80 | 59.72 | $15.00 | 19.72 | $0.00 | $147.90 | $147.90 |
| 2/7/2021 | Colette | Brown | $1,226.25 | 45 | $27.25 | 5 | $0.00 | $68.13 | $68.13 |
| 5/23/2021 | Colette | Brown | $1,449.25 | 57.97 | $25.00 | 17.97 | $0.00 | $224.63 | $224.63 |
| 5/30/2021 | Colette | Brown | $2,337.50 | 93.5 | $25.00 | 53.5 | $0.00 | $668.75 | $668.75 |
| 6/6/2021 | Colette | Brown | $1,545.00 | 61.8 | $25.00 | 21.8 | $0.00 | $272.50 | $272.50 |
| 6/13/2021 | Colette | Brown | $1,545.00 | 61.8 | $25.00 | 21.8 | $0.00 | $272.50 | $272.50 |
| 6/20/2021 | Colette | Brown | $1,544.00 | 61.76 | $25.00 | 21.76 | $0.00 | $272.00 | $272.00 |
| 1/31/2021 | Patricia | Browne | $1,142.46 | 46.16 | $24.75 | 6.16 | $0.00 | $76.23 | $76.23 |
| 4/18/2021 | Patricia | Browne | $798.00 | 42 | $19.00 | 2 | $0.00 | $19.00 | $19.00 |
| 5/2/2021 | Patricia | Browne | $1,024.00 | 53.5 | $19.14 | 13.5 | $0.00 | $129.20 | $129.20 |
| 5/9/2021 | Patricia | Browne | $1,225.50 | 53.5 | $22.91 | 13.5 | $0.00 | $154.62 | $154.62 |
| 5/23/2021 | Patricia | Browne | $1,025.00 | 41 | $25.00 | 1 | $0.00 | $12.50 | $12.50 |
| 5/30/2021 | Patricia | Browne | $1,437.50 | 46 | $31.25 | 6 | $0.00 | $93.75 | $93.75 |
| 6/13/2021 | Patricia | Browne | $1,550.00 | 62 | $25.00 | 22 | $0.00 | $275.00 | $275.00 |
| 6/20/2021 | Patricia | Browne | $2,700.00 | 108 | $25.00 | 68 | $0.00 | $850.00 | $850.00 |
| 5/12/2019 | Cherelle | Bryant | $675.00 | 45 | $15.00 | 5 | $0.00 | $37.50 | $37.50 |
| 5/26/2019 | Cherelle | Bryant | $1,271.58 | 75.74 | $16.80 | 35.74 | $0.00 | $300.22 | $300.22 |
| 6/2/2019 | Cherelle | Bryant | $986.30 | 52.42 | $20.00 | 12.42 | $0.00 | $124.20 | $124.20 |
| 1/12/2020 | Richard | Bryant | $2,175.00 | 72.5 | $30.00 | 32.5 | $0.00 | $487.50 | $487.50 |
| 1/19/2020 | Richard | Bryant | $2,175.00 | 72.5 | $30.00 | 32.5 | $0.00 | $487.50 | $487.50 |
| 1/26/2020 | Richard | Bryant | $2,925.00 | 97.5 | $30.00 | 57.5 | $0.00 | $862.50 | $862.50 |
| 2/2/2020 | Richard | Bryant | $2,925.00 | 97.5 | $30.00 | 57.5 | $0.00 | $862.50 | $862.50 |
| 2/9/2020 | Richard | Bryant | $2,175.00 | 72.5 | $30.00 | 32.5 | $0.00 | $487.50 | $487.50 |
| 2/16/2020 | Richard | Bryant | $2,925.00 | 97.5 | $30.00 | 57.5 | $0.00 | $862.50 | $862.50 |
| 3/1/2020 | Richard | Bryant | $1,237.50 | 41.25 | $30.00 | 1.25 | $0.00 | $18.75 | $18.75 |
| 6/30/2019 | Todd | Buffa | $1,071.00 | 63 | $17.00 | 23 | $0.00 | $195.50 | $195.50 |
| 7/7/2019 | Todd | Buffa | $1,141.13 | 63.25 | $18.04 | 23.25 | $0.00 | $209.73 | $209.73 |
| 7/14/2019 | Todd | Buffa | $939.25 | 55.25 | $17.00 | 15.25 | $0.00 | $129.63 | $129.63 |
| 7/21/2019 | Todd | Buffa | $1,045.50 | 61.5 | $17.00 | 21.5 | $0.00 | $182.75 | $182.75 |
| 7/28/2019 | Todd | Buffa | $824.50 | 48.5 | $17.00 | 8.5 | $0.00 | $72.25 | $72.25 |
| 8/4/2019 | Todd | Buffa | $1,071.00 | 63 | $17.00 | 23 | $0.00 | $195.50 | $195.50 |
| 8/11/2019 | Todd | Buffa | $1,199.86 | 70.58 | $17.00 | 30.58 | $0.00 | $259.93 | $259.93 |
| 8/25/2019 | Todd | Buffa | $1,311.00 | 69 | $19.00 | 29 | $0.00 | $275.50 | $275.50 |
| 9/15/2019 | Todd | Buffa | $1,678.75 | 98.75 | $17.00 | 58.75 | $0.00 | $499.38 | $499.38 |
| 9/22/2019 | Todd | Buffa | $1,457.75 | 85.75 | $17.00 | 45.75 | $0.00 | $388.88 | $388.88 |
| 9/29/2019 | Todd | Buffa | $1,304.75 | 76.75 | $17.00 | 36.75 | $0.00 | $312.38 | $312.38 |
| 10/6/2019 | Todd | Buffa | $1,168.75 | 68.75 | $17.00 | 28.75 | $0.00 | $244.38 | $244.38 |
| 10/13/2019 | Todd | Buffa | $1,432.25 | 84.25 | $17.00 | 44.25 | $0.00 | $376.13 | $376.13 |
| 10/20/2019 | Todd | Buffa | $1,309.00 | 77 | $17.00 | 37 | $0.00 | $314.50 | $314.50 |
| 10/27/2019 | Todd | Buffa | $786.25 | 46.25 | $17.00 | 6.25 | $0.00 | $53.13 | $53.13 |
| 11/3/2019 | Todd | Buffa | $1,071.00 | 63 | $17.00 | 23 | $0.00 | $195.50 | $195.50 |
| 11/10/2019 | Todd | Buffa | $1,007.25 | 59.25 | $17.00 | 19.25 | $0.00 | $163.63 | $163.63 |
| 11/17/2019 | Todd | Buffa | $1,177.25 | 69.25 | $17.00 | 29.25 | $0.00 | $248.63 | $248.63 |
| 11/24/2019 | Todd | Buffa | $1,049.75 | 61.75 | $17.00 | 21.75 | $0.00 | $184.88 | $184.88 |
| 12/1/2019 | Todd | Buffa | $1,666.00 | 93.75 | $17.77 | 53.75 | $0.00 | $477.59 | $477.59 |
| 12/8/2019 | Todd | Buffa | $1,045.50 | 61.5 | $17.00 | 21.5 | $0.00 | $182.75 | $182.75 |
| 12/15/2019 | Todd | Buffa | $930.75 | 54.75 | $17.00 | 14.75 | $0.00 | $125.38 | $125.38 |
| 12/22/2019 | Todd | Buffa | $943.50 | 55.5 | $17.00 | 15.5 | $0.00 | $131.75 | $131.75 |
| 12/29/2019 | Todd | Buffa | $3,191.76 | 79.5 | $20.39 | 39.5 | $0.00 | $402.79 | $402.79 |
| 1/5/2020 | Todd | Buffa | $1,819.00 | 92 | $19.77 | 52 | $0.00 | $514.07 | $514.07 |
| 1/12/2020 | Todd | Buffa | $909.50 | 53.5 | $17.00 | 13.5 | $0.00 | $114.75 | $114.75 |
| 1/19/2020 | Todd | Buffa | $1,581.00 | 93 | $17.00 | 53 | $0.00 | $450.50 | $450.50 |
| 1/26/2020 | Todd | Buffa | $2,082.50 | 79.5 | $17.00 | 39.5 | $0.00 | $335.75 | $335.75 |
| 2/2/2020 | Todd | Buffa | $2,099.50 | 79.5 | $17.00 | 39.5 | $0.00 | $335.75 | $335.75 |
| 2/9/2020 | Todd | Buffa | $2,099.50 | 79.5 | $17.00 | 39.5 | $0.00 | $335.75 | $335.75 |
| 2/16/2020 | Todd | Buffa | $2,099.50 | 79.5 | $17.00 | 39.5 | $0.00 | $335.75 | $335.75 |
| 2/23/2020 | Todd | Buffa | $2,133.50 | 79.5 | $17.00 | 39.5 | $0.00 | $335.75 | $335.75 |
| 2/17/2019 | David | Bullock | $926.50 | 54.5 | $17.00 | 14.5 | $0.00 | $123.25 | $123.25 |
| 3/3/2019 | David | Bullock | $1,439.39 | 84.67 | $17.00 | 44.67 | $0.00 | $379.70 | $379.70 |

# Payroll Summary

| Check Date | Name | Hours | Total Paid | Tax Withheld | Deductions | Net Pay | Check No | Employer Liability | Total Expense |
|---|---|---|---|---|---|---|---|---|---|
| 01/31/2020 | Brockman LPN, Shawvone | 35.12 | 1,033.86 | 0.00 | 0.00 | 1,033.86 | DD | 0.00 | 1,033.86 |
| 01/31/2020 | Brown LPN, Kashawnda | 44.00 | 1,440.00 | 0.00 | 0.00 | 1,440.00 | DD | 0.00 | 1,440.00 |
| 01/31/2020 | Bryant LPN, Richard | 48.75 | 1,462.50 | 0.00 | 0.00 | 1,462.50 | DD | 0.00 | 1,462.50 |
| 01/31/2020 | Buffa CNA, Todd | 61.25 | 1,041.25 | 0.00 | 0.00 | 1,041.25 | DD | 0.00 | 1,041.25 |
| 01/31/2020 | Burton RN, Lisa | 45.08 | 1,803.20 | 0.00 | 0.00 | 1,803.20 | DD | 0.00 | 1,803.20 |
| 01/31/2020 | Canady LPN, Tatianna | 42.83 | 1,282.24 | 0.00 | 0.00 | 1,282.24 | DD | 0.00 | 1,282.24 |
| 01/31/2020 | Clark RN, Tomeka | 23.75 | 950.00 | 0.00 | 0.00 | 950.00 | DD | 0.00 | 950.00 |
| 01/31/2020 | Cobb LPN, Priscilla | 11.92 | 357.60 | 0.00 | 0.00 | 357.60 | DD | 0.00 | 357.60 |
| 01/31/2020 | Cohen CNA, Lashunda | 32.50 | 552.50 | 0.00 | 0.00 | 552.50 | DD | 0.00 | 552.50 |
| 01/31/2020 | Collins LPN, Shanmeka | 52.75 | 1,582.50 | 0.00 | 0.00 | 1,582.50 | DD | 0.00 | 1,582.50 |
| 01/31/2020 | Colquitt-Robinson LPN, Brittany | 37.58 | 1,014.66 | 0.00 | 0.00 | 1,014.66 | DD | 0.00 | 1,014.66 |
| 01/31/2020 | Confron LPN, Bandetra | 31.14 | 840.78 | 0.00 | 0.00 | 840.78 | DD | 0.00 | 840.78 |
| 01/31/2020 | Cooper LPN, Brenda | 36.17 | 1,085.10 | 0.00 | 0.00 | 1,085.10 | DD | 0.00 | 1,085.10 |
| 01/31/2020 | Corona CNA, Gloria | 30.50 | 457.50 | 0.00 | 0.00 | 457.50 | DD | 0.00 | 457.50 |
| 01/31/2020 | Crew RN, Cynthia | 61.00 | 2,440.00 | 0.00 | 0.00 | 2,440.00 | DD | 0.00 | 2,440.00 |
| 01/31/2020 | Edwards CNA, Geneva | 15.00 | 300.00 | 0.00 | 0.00 | 300.00 | DD | 0.00 | 300.00 |
| 01/31/2020 | Felton LPN, Karonna | 31.60 | 853.20 | 0.00 | 0.00 | 853.20 | DD | 0.00 | 853.20 |
| 01/31/2020 | Ferguson LPN, D'Adrea | 33.00 | 891.00 | 0.00 | 0.00 | 891.00 | DD | 0.00 | 891.00 |
| 01/31/2020 | Franks LPN, Ashelley | 54.88 | 1,481.76 | 0.00 | 0.00 | 1,481.76 | DD | 0.00 | 1,481.76 |
| 01/31/2020 | Freeman-Hicks RN, Shawlawn | 59.83 | 2,393.20 | 0.00 | 0.00 | 2,393.20 | DD | 0.00 | 2,393.20 |
| 01/31/2020 | Garrett CNA, Noel | 30.62 | 459.30 | 0.00 | 0.00 | 459.30 | DD | 0.00 | 459.30 |
| 01/31/2020 | Gatewood LPN, Anthony | 9.00 | 270.00 | 0.00 | 0.00 | 270.00 | DD | 0.00 | 270.00 |
| 01/31/2020 | Griffin CNA, Teresa | 37.00 | 629.00 | 0.00 | 0.00 | 629.00 | DD | 0.00 | 629.00 |
| 01/31/2020 | Hall LPN, Tawanda | 56.00 | 1,664.00 | 0.00 | 0.00 | 1,664.00 | DD | 0.00 | 1,664.00 |
| 01/31/2020 | Harrell LPN, LaVonna | 13.25 | 397.50 | 0.00 | 0.00 | 397.50 | DD | 0.00 | 397.50 |
| 01/31/2020 | Hayes LPN, Charlette | 50.00 | 1,500.00 | 0.00 | 0.00 | 1,500.00 | DD | 0.00 | 1,500.00 |
| 01/31/2020 | Henderson CNA, Galen | 39.00 | 663.00 | 0.00 | 0.00 | 663.00 | DD | 0.00 | 663.00 |
| 01/31/2020 | Holmes CNA, Shaquasia | 6.25 | 106.25 | 0.00 | 0.00 | 106.25 | DD | 0.00 | 106.25 |
| 01/31/2020 | Huff LPN, Rickie | 59.25 | 1,709.00 | 0.00 | 0.00 | 1,709.00 | DD | 0.00 | 1,709.00 |
| 01/31/2020 | Jackson CNA, Brittney | 8.00 | 120.00 | 0.00 | 0.00 | 120.00 | 40587585 | 0.00 | 120.00 |
| 01/31/2020 | Jean-Pierre RN, Arnel | 34.00 | 1,360.00 | 0.00 | 0.00 | 1,360.00 | DD | 0.00 | 1,360.00 |
| 01/31/2020 | Johnson LPN, Cherelle | 36.00 | 1,056.25 | 0.00 | 0.00 | 1,056.25 | DD | 0.00 | 1,056.25 |
| 01/31/2020 | Johnson LPN, Sherita D | 24.25 | 727.50 | 0.00 | 0.00 | 727.50 | DD | 0.00 | 727.50 |
| 01/31/2020 | Jones LPN, Jessica | 23.92 | 645.84 | 0.00 | 0.00 | 645.84 | 40587586 | 0.00 | 645.84 |
| 01/31/2020 | Jones LPN, Shanteequa | 20.07 | 541.89 | 0.00 | 0.00 | 541.89 | DD | 0.00 | 541.89 |
| 01/31/2020 | Jones-Thomas LPN, Quentina | 40.05 | 1,081.35 | 0.00 | 0.00 | 1,081.35 | DD | 0.00 | 1,081.35 |
| 01/31/2020 | Lemon RN, Quintarah | 24.58 | 983.20 | 0.00 | 0.00 | 983.20 | DD | 0.00 | 983.20 |
| 01/31/2020 | Little LPN, Costella | 55.67 | 1,620.94 | 0.00 | 0.00 | 1,620.94 | DD | 0.00 | 1,620.94 |
| 01/31/2020 | Long LPN, Dianne | 38.60 | 1,158.00 | 0.00 | 0.00 | 1,158.00 | DD | 0.00 | 1,158.00 |
| 01/31/2020 | Marshall RN, Stephanie | 12.25 | 490.00 | 0.00 | 0.00 | 490.00 | 40587587 | 0.00 | 490.00 |
| 01/31/2020 | Matin LPN, Rugayyah | 38.16 | 1,144.80 | 0.00 | 0.00 | 1,144.80 | DD | 0.00 | 1,144.80 |
| 01/31/2020 | Mayaka LPN, Jamie | 10.25 | 287.00 | 0.00 | 0.00 | 287.00 | DD | 0.00 | 287.00 |
| 01/31/2020 | McCloud LPN, John | 40.00 | 1,080.00 | 0.00 | 0.00 | 1,080.00 | DD | 0.00 | 1,080.00 |
| 01/31/2020 | Mokoena LPN, Victor | 6.00 | 180.00 | 0.00 | 0.00 | 180.00 | 40587588 | 0.00 | 180.00 |
| 01/31/2020 | Moreland-Clark CNA, Sequita | 7.87 | 118.05 | 0.00 | 0.00 | 118.05 | DD | 0.00 | 118.05 |

Company: Medical Staffing of America
Check dates from: 1/3/2020 - Payroll 1 to: 3/27/2020 - Payroll 1
Pay Period from: 12/24/2019 to: 03/23/2020

13 of 22

Date Printed: 05/17/2020 22:02
25087115 - RB/959

Steadfast 6th 070492

**JA2041**

<u>**Sample Packet:**</u>
**Category 4 Error – DOL Listed Incorrect Hours Paid**

**DOL Entry for Hubert Adkins on 1/26/2020**

| Packet Page # | Document Description | Bates Stamp |
|---|---|---|
| 2 | **DOL Wage Transcription and Computation Sheet**<br>Excerpt Entry Highlighted | Trial Exhibit PX-21 |
| 3 | **Steadfast Payroll Summary**<br><br>Actual Steadfast Check Date: **1/31/2020**<br>Hours Paid by Steadfast: **48.75** | Steadfast 6th 070491 |

| <u>**Summary:**</u> | <u>**DOL**</u> | <u>**Steadfast**</u> |
|---|---|---|
| **Date** | 1/26/20 | 1/31/20 |
| **Hours Paid** | 71.25 | 48.75 |
| **Back Pay** | $468.75 | $131.25 |
| **DOL Overage** | $337.50 | - |

| Date | First Name | Last Name | Gross Pay | Total Hrs | Rate | OT Hrs | Sec 7: RR Due | Sec 7: 1/2T Due | Sec 7: Total Due |
|---|---|---|---|---|---|---|---|---|---|
| 1/26/2020 | Hubert | Adkins | $5,085.00 | 71.25 | $30.00 | 31.25 | $0.00 | $468.75 | $468.75 |
| 2/2/2020 | Hubert | Adkins | $3,660.00 | 71.25 | $30.00 | 31.25 | $0.00 | $468.75 | $468.75 |
| 2/9/2020 | Hubert | Adkins | $2,175.00 | 72.5 | $30.00 | 32.5 | $0.00 | $487.50 | $487.50 |
| 2/16/2020 | Hubert | Adkins | $2,925.00 | 97.5 | $30.00 | 57.5 | $0.00 | $862.50 | $862.50 |
| 3/1/2020 | Hubert | Adkins | $1,237.50 | 41.25 | $30.00 | 1.25 | $0.00 | $18.75 | $18.75 |
| 12/26/2020 | Christine | Agnew | $2,222.10 | 74.07 | $30.00 | 34.07 | $0.00 | $511.05 | $511.05 |
| 1/3/2021 | Christine | Agnew | $2,977.50 | 85.42 | $34.86 | 45.42 | $0.00 | $791.61 | $791.61 |
| 1/10/2021 | Christine | Agnew | $2,256.00 | 75.2 | $30.00 | 35.2 | $0.00 | $528.00 | $528.00 |
| 1/17/2021 | Christine | Agnew | $2,980.12 | 83.36 | $35.75 | 43.36 | $0.00 | $775.06 | $775.06 |
| 1/24/2021 | Christine | Agnew | $1,235.70 | 41.19 | $30.00 | 1.19 | $0.00 | $17.85 | $17.85 |
| 1/31/2021 | Christine | Agnew | $2,101.80 | 70.06 | $30.00 | 30.06 | $0.00 | $450.90 | $450.90 |
| 2/7/2021 | Christine | Agnew | $2,278.20 | 75.94 | $30.00 | 35.94 | $0.00 | $539.10 | $539.10 |
| 2/21/2021 | Christine | Agnew | $2,843.70 | 92.14 | $30.86 | 52.14 | $0.00 | $804.59 | $804.59 |
| 2/28/2021 | Christine | Agnew | $2,097.00 | 69.9 | $30.00 | 29.9 | $0.00 | $448.50 | $448.50 |
| 8/23/2020 | Jazhonna | Alexander | $1,220.10 | 40.67 | $30.00 | 0.67 | $0.00 | $10.05 | $10.05 |
| 12/29/2019 | Shada | Alexander | $960.00 | 56 | $17.50 | 16 | $0.00 | $140.00 | $140.00 |
| 1/5/2020 | Shada | Alexander | $847.50 | 56.5 | $15.00 | 16.5 | $0.00 | $123.75 | $123.75 |
| 2/23/2020 | Shada | Alexander | $975.00 | 65 | $15.00 | 25 | $0.00 | $187.50 | $187.50 |
| 2/23/2020 | Tania | Alexander | $1,654.80 | 55.16 | $30.00 | 15.16 | $0.00 | $227.40 | $227.40 |
| 6/6/2021 | Dashannay | Allen | $2,300.00 | 92 | $25.00 | 52 | $0.00 | $650.00 | $650.00 |
| 6/13/2021 | Dashannay | Allen | $1,883.50 | 75.34 | $25.00 | 35.34 | $0.00 | $441.75 | $441.75 |
| 6/20/2021 | Dashannay | Allen | $1,475.00 | 59 | $25.00 | 19 | $0.00 | $237.50 | $237.50 |
| 1/24/2021 | Quiana | Allen | $4,800.00 | 96 | $50.00 | 56 | $0.00 | $1,400.00 | $1,400.00 |
| 1/17/2021 | Randy | Allen | $1,440.00 | 44 | $9.00 | 4 | $264.00 | $30.00 | $294.00 |
| 2/14/2021 | Randy | Allen | $1,760.00 | 44 | $40.00 | 4 | $0.00 | $80.00 | $80.00 |
| 1/20/2019 | Sadiqua | Allen | $1,020.00 | 60 | $17.00 | 20 | $0.00 | $170.00 | $170.00 |
| 2/17/2019 | Sadiqua | Allen | $1,147.50 | 67.5 | $17.00 | 27.5 | $0.00 | $233.75 | $233.75 |
| 2/24/2019 | Sadiqua | Allen | $765.00 | 45 | $17.00 | 5 | $0.00 | $42.50 | $42.50 |
| 4/7/2019 | Sadiqua | Allen | $892.50 | 52.5 | $17.00 | 12.5 | $0.00 | $106.25 | $106.25 |
| 4/21/2019 | Sadiqua | Allen | $892.50 | 45 | $19.83 | 5 | $0.00 | $49.58 | $49.58 |
| 5/12/2019 | Sadiqua | Allen | $1,147.50 | 67.5 | $17.00 | 27.5 | $0.00 | $233.75 | $233.75 |
| 6/2/2019 | Sadiqua | Allen | $756.50 | 44.5 | $17.00 | 4.5 | $0.00 | $38.25 | $38.25 |
| 6/9/2019 | Sadiqua | Allen | $892.50 | 52.5 | $17.00 | 12.5 | $0.00 | $106.25 | $106.25 |
| 6/30/2019 | Sadiqua | Allen | $892.50 | 52.5 | $17.00 | 12.5 | $0.00 | $106.25 | $106.25 |
| 8/4/2019 | Sadiqua | Allen | $767.21 | 45.13 | $17.00 | 5.13 | $0.00 | $43.61 | $43.61 |
| 8/11/2019 | Sadiqua | Allen | $765.00 | 45 | $17.00 | 5 | $0.00 | $42.50 | $42.50 |
| 9/8/2019 | Sadiqua | Allen | $765.00 | 45 | $17.00 | 5 | $0.00 | $42.50 | $42.50 |
| 9/29/2019 | Sadiqua | Allen | $1,275.00 | 75 | $17.00 | 35 | $0.00 | $297.50 | $297.50 |
| 10/20/2019 | Sadiqua | Allen | $892.50 | 52.5 | $17.00 | 12.5 | $0.00 | $106.25 | $106.25 |
| 10/27/2019 | Sadiqua | Allen | $1,020.00 | 60 | $17.00 | 20 | $0.00 | $170.00 | $170.00 |
| 12/29/2019 | Sadiqua | Allen | $1,241.00 | 73 | $17.00 | 33 | $0.00 | $280.50 | $280.50 |
| 1/5/2020 | Sadiqua | Allen | $1,045.50 | 49 | $21.34 | 9 | $0.00 | $96.02 | $96.02 |
| 1/12/2020 | Sadiqua | Allen | $1,632.00 | 96 | $17.00 | 56 | $0.00 | $476.00 | $476.00 |
| 1/19/2020 | Sadiqua | Allen | $816.00 | 48 | $17.00 | 8 | $0.00 | $68.00 | $68.00 |
| 1/26/2020 | Sadiqua | Allen | $986.00 | 58 | $17.00 | 18 | $0.00 | $153.00 | $153.00 |
| 2/9/2020 | Sadiqua | Allen | $765.00 | 45 | $17.00 | 5 | $0.00 | $42.50 | $42.50 |
| 2/16/2020 | Sadiqua | Allen | $1,746.58 | 102.74 | $17.00 | 62.74 | $0.00 | $533.29 | $533.29 |
| 2/23/2020 | Sadiqua | Allen | $1,588.00 | 104 | $15.27 | 64 | $0.00 | $488.62 | $488.62 |
| 3/8/2020 | Sadiqua | Allen | $900.00 | 60 | $15.00 | 20 | $0.00 | $150.00 | $150.00 |
| 3/22/2020 | Sadiqua | Allen | $682.50 | 45.5 | $15.00 | 5.5 | $0.00 | $41.25 | $41.25 |
| 4/5/2020 | Sadiqua | Allen | $937.50 | 62.5 | $15.00 | 22.5 | $0.00 | $168.75 | $168.75 |
| 4/12/2020 | Sadiqua | Allen | $915.00 | 61 | $15.00 | 21 | $0.00 | $157.50 | $157.50 |
| 6/14/2020 | Sadiqua | Allen | $1,200.00 | 48 | $25.00 | 8 | $0.00 | $100.00 | $100.00 |
| 6/28/2020 | Sadiqua | Allen | $1,200.00 | 48 | $25.00 | 8 | $0.00 | $100.00 | $100.00 |
| 1/13/2019 | Tarnicia | Allen | $1,368.09 | 50.67 | $27.00 | 10.67 | $0.00 | $144.05 | $144.05 |
| 2/17/2019 | Tarnicia | Allen | $1,338.66 | 49.58 | $27.00 | 9.58 | $0.00 | $129.33 | $129.33 |
| 3/10/2019 | Tarnicia | Allen | $1,253.34 | 46.42 | $27.00 | 6.42 | $0.00 | $86.67 | $86.67 |
| 4/7/2019 | Tarnicia | Allen | $1,165.32 | 43.16 | $27.00 | 3.16 | $0.00 | $42.66 | $42.66 |
| 5/12/2019 | Tarnicia | Allen | $1,356.75 | 50.25 | $27.00 | 10.25 | $0.00 | $138.38 | $138.38 |
| 5/26/2019 | Tarnicia | Allen | $1,491.89 | 52.67 | $28.33 | 12.67 | $0.00 | $179.44 | $179.44 |
| 6/23/2019 | Tarnicia | Allen | $1,437.89 | 52.74 | $27.26 | 12.74 | $0.00 | $173.67 | $173.67 |
| 8/18/2019 | Tarnicia | Allen | $1,082.16 | 40.08 | $27.00 | 0.08 | $0.00 | $1.08 | $1.08 |
| 1/19/2020 | Tarnicia | Allen | $1,169.64 | 43.32 | $27.00 | 3.32 | $0.00 | $44.82 | $44.82 |
| 6/2/2019 | Moore | Allison | $749.25 | 53.7 | $13.75 | 13.7 | $67.13 | $102.75 | $169.88 |

Form WH-55
A -

**JA2043**

# Payroll Summary

| Check Date | Name | Hours | Total Paid | Tax Withheld | Deductions | Net Pay | Check No | Employer Liability | Total Expense |
|---|---|---|---|---|---|---|---|---|---|
| 02/07/2020 | Kanla CNA, Bonmeyoung Eric | 58.53 | 902.95 | 0.00 | 0.00 | 902.95 | 40590716 | 0.00 | 902.95 |
| 02/07/2020 | Lemon RN, Quintarah | 26.25 | 1,050.00 | 0.00 | 0.00 | 1,050.00 | DD | 0.00 | 1,050.00 |
| 02/07/2020 | Little LPN, Costella | 8.08 | 226.24 | 0.00 | 0.00 | 226.24 | DD | 0.00 | 226.24 |
| 02/07/2020 | Long LPN, Dianne | 34.00 | 1,020.00 | 0.00 | 0.00 | 1,020.00 | DD | 0.00 | 1,020.00 |
| 02/07/2020 | Matin LPN, Rugayyah | 20.00 | 540.00 | 0.00 | 0.00 | 540.00 | DD | 0.00 | 540.00 |
| 02/07/2020 | Mayaka LPN, Jamie | 34.67 | 970.76 | 0.00 | 0.00 | 970.76 | DD | 0.00 | 970.76 |
| 02/07/2020 | McCloud LPN, John | 47.83 | 1,291.41 | 0.00 | 0.00 | 1,291.41 | DD | 0.00 | 1,291.41 |
| 02/07/2020 | Morris CNA, Natasha | 29.45 | 441.75 | 0.00 | 0.00 | 441.75 | 40590717 | 0.00 | 441.75 |
| 02/07/2020 | Mosley CNA, Tia | 19.08 | 286.20 | 0.00 | 0.00 | 286.20 | DD | 0.00 | 286.20 |
| 02/07/2020 | Outlaw CNA, Jeanette | 53.50 | 802.50 | 0.00 | 0.00 | 802.50 | DD | 0.00 | 802.50 |
| 02/07/2020 | Owen LPN, Rachel | 26.28 | 788.40 | 0.00 | 0.00 | 788.40 | DD | 0.00 | 788.40 |
| 02/07/2020 | Owens LPN, Gwendolyn | 8.10 | 226.80 | 0.00 | 0.00 | 226.80 | DD | 0.00 | 226.80 |
| 02/07/2020 | Padgett RN, Lolita | 12.00 | 480.00 | 0.00 | 0.00 | 480.00 | DD | 0.00 | 480.00 |
| 02/07/2020 | Parks RN, Denita | 12.00 | 480.00 | 0.00 | 0.00 | 480.00 | DD | 0.00 | 480.00 |
| 02/07/2020 | Perkins LPN, Lawayne | 15.50 | 465.00 | 0.00 | 0.00 | 465.00 | DD | 0.00 | 465.00 |
| 02/07/2020 | Pierce LPN, Sandra | 51.19 | 1,382.13 | 0.00 | 0.00 | 1,382.13 | DD | 0.00 | 1,382.13 |
| 02/07/2020 | Pigford LPN, Marvina | 15.75 | 441.00 | 0.00 | 0.00 | 441.00 | DD | 0.00 | 441.00 |
| 02/07/2020 | Plummer LPN, Brandy | 52.00 | 1,404.00 | 0.00 | 0.00 | 1,404.00 | DD | 0.00 | 1,404.00 |
| 02/07/2020 | Robinson LPN, Jerolyn | 78.92 | 2,367.60 | 0.00 | 0.00 | 2,367.60 | DD | 0.00 | 2,367.60 |
| 02/07/2020 | Simmons LPN, Juan | 16.75 | 502.50 | 0.00 | 0.00 | 502.50 | DD | 0.00 | 502.50 |
| 02/07/2020 | Spencer LPN, Carol | 31.71 | 888.42 | 0.00 | 0.00 | 888.42 | DD | 0.00 | 888.42 |
| 02/07/2020 | Spivey CNA, Daisy | 15.00 | 225.00 | 0.00 | 0.00 | 225.00 | DD | 0.00 | 225.00 |
| 02/07/2020 | Springs LPN, Angela | 12.17 | 365.10 | 0.00 | 0.00 | 365.10 | DD | 0.00 | 365.10 |
| 02/07/2020 | Stanley LPN, Chelsea | 16.40 | 483.54 | 0.00 | 0.00 | 483.54 | DD | 0.00 | 483.54 |
| 02/07/2020 | Sutphin CNA, Reshonn | 61.50 | 922.50 | 0.00 | 0.00 | 922.50 | DD | 0.00 | 922.50 |
| 02/07/2020 | Sutton LPN, Tiffany | 8.03 | 216.81 | 0.00 | 0.00 | 216.81 | DD | 0.00 | 216.81 |
| 02/07/2020 | Swecker LPN, Brooke | 43.25 | 1,297.50 | 0.00 | 0.00 | 1,297.50 | DD | 0.00 | 1,297.50 |
| 02/07/2020 | Torress-Diaz LPN, Iraida | 7.50 | 225.00 | 0.00 | 0.00 | 225.00 | DD | 0.00 | 225.00 |
| 02/07/2020 | Tyes CNA, Nicole | 12.50 | 187.50 | 0.00 | 0.00 | 187.50 | DD | 0.00 | 187.50 |
| 02/07/2020 | Vera LPN, Xavier | 8.50 | 238.00 | 0.00 | 0.00 | 238.00 | DD | 0.00 | 238.00 |
| 02/07/2020 | Washington LPN, Makayla | 11.50 | 345.00 | 0.00 | 0.00 | 345.00 | DD | 0.00 | 345.00 |
| 02/07/2020 | Wilkerson LPN, Lauren | 23.25 | 697.50 | 0.00 | 0.00 | 697.50 | DD | 0.00 | 697.50 |
| 02/07/2020 | Womack LPN, Rhonda | 43.00 | 1,290.00 | 0.00 | 0.00 | 1,290.00 | DD | 0.00 | 1,290.00 |
| 02/07/2020 | Young LPN, Indya | 28.65 | 826.96 | 0.00 | 0.00 | 826.96 | DD | 0.00 | 826.96 |
| 01/31/2020 | Adames CNA, Jamie | 22.50 | 337.50 | 0.00 | 0.00 | 337.50 | DD | 0.00 | 337.50 |
| 01/31/2020 | Adams RN, Roxanne | 106.83 | 5,036.20 | 0.00 | 0.00 | 5,036.20 | DD | 0.00 | 5,036.20 |
| 01/31/2020 | Adkins CNA, Desiree | 44.41 | 685.99 | 0.00 | 0.00 | 685.99 | DD | 0.00 | 685.99 |
| 01/31/2020 | Adkins LPN, Hubert | 48.75 | 1,462.50 | 0.00 | 0.00 | 1,462.50 | DD | 0.00 | 1,462.50 |
| 01/31/2020 | Allen CNA, Sadiqua | 29.00 | 493.00 | 0.00 | 0.00 | 493.00 | DD | 0.00 | 493.00 |
| 01/31/2020 | Alston LPN, Napolean | 12.50 | 375.00 | 0.00 | 0.00 | 375.00 | DD | 0.00 | 375.00 |
| 01/31/2020 | Bailey RN, Whitney | 39.33 | 1,573.20 | 0.00 | 0.00 | 1,573.20 | DD | 0.00 | 1,573.20 |
| 01/31/2020 | Bandy CNA, Elizabeth | 68.33 | 1,115.61 | 0.00 | 0.00 | 1,115.61 | 40587584 | 0.00 | 1,115.61 |
| 01/31/2020 | Bellamy LPN, Kimberly | 68.91 | 2,024.31 | 0.00 | 0.00 | 2,024.31 | DD | 0.00 | 2,024.31 |
| 01/31/2020 | Bowen CNA, Shawanda | 45.89 | 688.35 | 0.00 | 0.00 | 688.35 | DD | 0.00 | 688.35 |
| 01/31/2020 | Bowen RN, Lori | 67.00 | 2,680.00 | 0.00 | 0.00 | 2,680.00 | DD | 0.00 | 2,680.00 |
| 01/31/2020 | Boykins CNA, Saudia | 40.92 | 695.64 | 0.00 | 0.00 | 695.64 | DD | 0.00 | 695.64 |
| 01/31/2020 | Bradshaw RN, Latosha | 21.75 | 870.00 | 0.00 | 0.00 | 870.00 | DD | 0.00 | 870.00 |
| 01/31/2020 | Bragg LPN, Deyonna | 25.25 | 757.50 | 0.00 | 0.00 | 757.50 | DD | 0.00 | 757.50 |

Company: Medical Staffing of America

Check dates from: 1/3/2020 - Payroll 1 to: 3/27/2020 - Payroll 1

Pay Period from: 12/24/2019 to: 03/23/2020

12 of 22

Date Printed: 05/17/2020 22:02

25087115 - RB/959

Steadfast 6th 070491

**JA2044**

## Sample Packet:
## Category 4 Error – DOL Listed Incorrect Hours Paid

**DOL Entry for Denise Flowers on 2/7/2021**

| Packet Page # | Document Description | Bates Stamp |
|---|---|---|
| 2 | **DOL Wage Transcription and Computation Sheet** <br> Excerpt Entry Highlighted | Trial Exhibit PX-21 |
| 3 | **Steadfast Payroll Summary** <br><br> Actual Steadfast Check Date: **2/12/2020** <br> Hours Paid by Steadfast: **58.25** | Steadfast 6th 092874 |

| Summary: | DOL | Steadfast |
|---|---|---|
| Date | 2/7/20 | 2/12//20 |
| Hours Paid | 83.39 | 58.25 |
| Back Pay | $650.85 | $273.75 |
| DOL Overage | $377.10 | - |

**JA2045**

| Date | First Name | Last Name | Gross Pay | Total Hrs | Rate | OT Hrs | Sec 7: RR Due | Sec 7: 1/2T Due | Sec 7: Total Due |
|---|---|---|---|---|---|---|---|---|---|
| 3/15/2020 | Sherry | Flournoy | $4,610.00 | 73.13 | $40.00 | 33.13 | $0.00 | $662.60 | $662.60 |
| 3/22/2020 | Sherry | Flournoy | $3,010.00 | 75.25 | $40.00 | 35.25 | $0.00 | $705.00 | $705.00 |
| 5/24/2020 | Sherry | Flournoy | $2,302.50 | 68.5 | $33.61 | 28.5 | $0.00 | $478.99 | $478.99 |
| 6/28/2020 | Sherry | Flournoy | $4,800.00 | 73.13 | $40.00 | 33.13 | $0.00 | $662.60 | $662.60 |
| 7/19/2020 | Sherry | Flournoy | $2,740.00 | 52 | $52.69 | 12 | $0.00 | $316.15 | $316.15 |
| 7/26/2020 | Sherry | Flournoy | $7,293.14 | 73.13 | $44.07 | 33.13 | $0.00 | $729.98 | $729.98 |
| 8/2/2020 | Sherry | Flournoy | $3,950.00 | 98.75 | $40.00 | 58.75 | $0.00 | $1,175.00 | $1,175.00 |
| 8/9/2020 | Sherry | Flournoy | $4,120.00 | 103 | $40.00 | 63 | $0.00 | $1,260.00 | $1,260.00 |
| 8/23/2020 | Sherry | Flournoy | $2,080.00 | 52 | $40.00 | 12 | $0.00 | $240.00 | $240.00 |
| 8/30/2020 | Sherry | Flournoy | $3,850.00 | 96.25 | $40.00 | 56.25 | $0.00 | $1,125.00 | $1,125.00 |
| 9/6/2020 | Sherry | Flournoy | $5,772.00 | 73.13 | $40.82 | 33.13 | $0.00 | $676.14 | $676.14 |
| 9/13/2020 | Sherry | Flournoy | $4,040.00 | 101 | $40.00 | 61 | $0.00 | $1,220.00 | $1,220.00 |
| 9/20/2020 | Sherry | Flournoy | $4,470.00 | 111.75 | $40.00 | 71.75 | $0.00 | $1,435.00 | $1,435.00 |
| 9/27/2020 | Sherry | Flournoy | $2,540.00 | 63.5 | $40.00 | 23.5 | $0.00 | $470.00 | $470.00 |
| 10/4/2020 | Sherry | Flournoy | $3,510.00 | 87.75 | $40.00 | 47.75 | $0.00 | $955.00 | $955.00 |
| 10/11/2020 | Sherry | Flournoy | $1,780.00 | 44.5 | $40.00 | 4.5 | $0.00 | $90.00 | $90.00 |
| 11/8/2020 | Sherry | Flournoy | $3,386.85 | 84 | $43.84 | 44 | $0.00 | $964.39 | $964.39 |
| 11/15/2020 | Sherry | Flournoy | $1,800.00 | 45 | $40.00 | 5 | $0.00 | $100.00 | $100.00 |
| 11/29/2020 | Sherry | Flournoy | $1,610.00 | 40.25 | $40.00 | 0.25 | $0.00 | $5.00 | $5.00 |
| 12/26/2020 | Sherry | Flournoy | $8,146.88 | 73.13 | $61.49 | 33.13 | $0.00 | $1,018.51 | $1,018.51 |
| 1/17/2021 | Sherry | Flournoy | $8,387.50 | 81.64 | $55.00 | 41.64 | $0.00 | $1,145.10 | $1,145.10 |
| 1/31/2021 | Sherry | Flournoy | $5,017.50 | 111.5 | $45.00 | 71.5 | $0.00 | $1,608.75 | $1,608.75 |
| 4/11/2021 | Sherry | Flournoy | $2,137.50 | 47.5 | $45.00 | 7.5 | $0.00 | $168.75 | $168.75 |
| 5/2/2021 | Sherry | Flournoy | $2,764.80 | 85.91 | $32.18 | 45.91 | $0.00 | $738.75 | $738.75 |
| 12/30/2018 | Denise | Flowers | $2,452.50 | 72.25 | $33.94 | 32.25 | $0.00 | $547.36 | $547.36 |
| 1/13/2019 | Denise | Flowers | $1,365.00 | 45.5 | $30.00 | 5.5 | $0.00 | $82.50 | $82.50 |
| 1/27/2019 | Denise | Flowers | $1,627.50 | 54.25 | $30.00 | 14.25 | $0.00 | $213.75 | $213.75 |
| 2/3/2019 | Denise | Flowers | $1,870.50 | 63.25 | $29.57 | 23.25 | $0.00 | $343.79 | $343.79 |
| 2/10/2019 | Denise | Flowers | $1,500.00 | 50 | $30.00 | 10 | $0.00 | $150.00 | $150.00 |
| 2/24/2019 | Denise | Flowers | $1,597.50 | 53.25 | $30.00 | 13.25 | $0.00 | $198.75 | $198.75 |
| 6/16/2019 | Denise | Flowers | $1,498.00 | 53.5 | $28.00 | 13.5 | $0.00 | $189.00 | $189.00 |
| 6/23/2019 | Denise | Flowers | $1,897.00 | 67.75 | $28.00 | 27.75 | $0.00 | $388.50 | $388.50 |
| 6/30/2019 | Denise | Flowers | $1,267.00 | 45.25 | $28.00 | 5.25 | $0.00 | $73.50 | $73.50 |
| 7/7/2019 | Denise | Flowers | $2,093.00 | 70.5 | $29.69 | 30.5 | $0.00 | $452.74 | $452.74 |
| 1/17/2021 | Denise | Flowers | $5,220.00 | 83.39 | $33.04 | 43.39 | $0.00 | $716.76 | $716.76 |
| 1/24/2021 | Denise | Flowers | $2,565.00 | 85.5 | $30.00 | 45.5 | $0.00 | $682.50 | $682.50 |
| 1/31/2021 | Denise | Flowers | $3,000.00 | 100 | $30.00 | 60 | $0.00 | $900.00 | $900.00 |
| 2/7/2021 | Denise | Flowers | $3,495.00 | 83.39 | $30.00 | 43.39 | $0.00 | $650.85 | $650.85 |
| 2/14/2021 | Denise | Flowers | $3,975.00 | 83.39 | $30.00 | 43.39 | $0.00 | $650.85 | $650.85 |
| 2/28/2021 | Denise | Flowers | $4,620.00 | 83.39 | $30.00 | 43.39 | $0.00 | $650.85 | $650.85 |
| 3/21/2021 | Denise | Flowers | $4,545.00 | 83.39 | $30.00 | 43.39 | $0.00 | $650.85 | $650.85 |
| 4/18/2021 | Denise | Flowers | $3,887.40 | 83.39 | $30.00 | 43.39 | $0.00 | $650.85 | $650.85 |
| 5/9/2021 | Denise | Flowers | $4,780.00 | 83.39 | $33.72 | 43.39 | $0.00 | $731.58 | $731.58 |
| 5/23/2021 | Denise | Flowers | $4,538.00 | 83.39 | $39.31 | 43.39 | $0.00 | $852.77 | $852.77 |
| 6/6/2021 | Denise | Flowers | $7,120.00 | 83.39 | $43.82 | 43.39 | $0.00 | $950.57 | $950.57 |
| 6/13/2021 | Denise | Flowers | $5,847.20 | 83.39 | $40.00 | 43.39 | $0.00 | $867.80 | $867.80 |
| 6/27/2021 | Denise | Flowers | $2,586.80 | 64.67 | $40.00 | 24.67 | $0.00 | $493.40 | $493.40 |
| 2/21/2021 | Tamakia | Flowers | $2,390.00 | 97 | $24.64 | 57 | $0.00 | $702.22 | $702.22 |
| 5/2/2021 | Tamakia | Flowers | $3,112.50 | 68.75 | $25.00 | 28.75 | $0.00 | $359.38 | $359.38 |
| 5/9/2021 | Tamakia | Flowers | $1,012.50 | 40.5 | $25.00 | 0.5 | $0.00 | $6.25 | $6.25 |
| 3/10/2019 | Seth | Floyd | $892.50 | 52.5 | $17.00 | 12.5 | $0.00 | $106.25 | $106.25 |
| 3/24/2019 | Seth | Floyd | $1,389.75 | 81.75 | $17.00 | 41.75 | $0.00 | $354.88 | $354.88 |
| 5/31/2020 | Rachel | Fogleboch | $2,130.52 | 76.09 | $28.00 | 36.09 | $0.00 | $505.26 | $505.26 |
| 6/14/2020 | Rachel | Fogleboch | $2,692.76 | 85.67 | $34.00 | 45.67 | $0.00 | $776.39 | $776.39 |
| 6/21/2020 | Rachel | Fogleboch | $1,926.96 | 68.82 | $28.00 | 28.82 | $0.00 | $403.48 | $403.48 |
| 6/28/2020 | Rachel | Fogleboch | $2,306.08 | 82.36 | $28.00 | 42.36 | $0.00 | $593.04 | $593.04 |
| 7/5/2020 | Rachel | Fogleboch | $2,098.88 | 74.96 | $28.00 | 34.96 | $0.00 | $489.44 | $489.44 |
| 7/12/2020 | Rachel | Fogleboch | $3,339.28 | 68.38 | $33.72 | 28.38 | $0.00 | $397.32 | $397.32 |
| 7/19/2020 | Rachel | Fogleboch | $2,626.96 | 93.82 | $28.00 | 53.82 | $0.00 | $753.48 | $753.48 |
| 7/26/2020 | Rachel | Fogleboch | $1,250.48 | 44.66 | $28.00 | 4.66 | $0.00 | $65.24 | $65.24 |
| 8/9/2020 | Rachel | Fogleboch | $2,369.76 | 63.42 | $37.37 | 23.42 | $0.00 | $437.56 | $437.56 |
| 8/23/2020 | Rachel | Fogleboch | $1,620.00 | 40.5 | $40.00 | 0.5 | $0.00 | $10.00 | $10.00 |
| 12/26/2020 | Rachel | Fogleboch | $2,028.40 | 53.52 | $37.90 | 13.52 | $0.00 | $256.20 | $256.20 |
| 1/3/2021 | Rachel | Fogleboch | $1,605.10 | 45.86 | $35.00 | 5.86 | $0.00 | $102.55 | $102.55 |

Form WH-55
A -

**JA2046**

# Payroll Summary

| Check Date | Name | Hours | Total Paid | Tax Withheld | Deductions | Net Pay | Check No | Employer Liability | Total Expense |
|---|---|---|---|---|---|---|---|---|---|
| 02/12/2021 | Alston LPN, Napolean | 34.00 | 1,580.00 | 0.00 | 0.00 | 1,580.00 | DD | 0.00 | 1,580.00 |
| 02/12/2021 | Asika RN, Zahra | 32.50 | 1,317.00 | 0.00 | 0.00 | 1,317.00 | DD | 0.00 | 1,317.00 |
| 02/12/2021 | Barnes LPN, Shanmeka | 40.25 | 1,811.25 | 0.00 | 0.00 | 1,811.25 | DD | 0.00 | 1,811.25 |
| 02/12/2021 | Barnes-Jenkins LPN, Latasha | 69.67 | 2,240.95 | 0.00 | 0.00 | 2,240.95 | DD | 0.00 | 2,240.95 |
| 02/12/2021 | Barrow LPN, Rayshara | 43.86 | 1,973.70 | 0.00 | 0.00 | 1,973.70 | DD | 0.00 | 1,973.70 |
| 02/12/2021 | Beavers LPN, KeiMia | 75.25 | 3,762.50 | 0.00 | 0.00 | 3,762.50 | DD | 0.00 | 3,762.50 |
| 02/12/2021 | Bentick LPN, Tanya | 17.00 | 765.00 | 0.00 | 0.00 | 765.00 | DD | 0.00 | 765.00 |
| 02/12/2021 | Bond CNA, Nicole | 20.00 | 380.00 | 0.00 | 0.00 | 380.00 | DD | 0.00 | 380.00 |
| 02/12/2021 | Bowen CNA, Shawanda | 50.50 | 1,515.00 | 0.00 | 0.00 | 1,515.00 | DD | 0.00 | 1,515.00 |
| 02/12/2021 | Boyce LPN, Angela | 49.33 | 1,726.55 | 0.00 | 0.00 | 1,726.55 | DD | 0.00 | 1,726.55 |
| 02/12/2021 | Branch CNA, Kyara | 31.75 | 793.75 | 0.00 | 0.00 | 793.75 | DD | 0.00 | 793.75 |
| 02/12/2021 | Brown CNA, Deshae | 26.33 | 789.90 | 0.00 | 0.00 | 789.90 | DD | 0.00 | 789.90 |
| 02/12/2021 | Bunch CNA, Kimmy | 5.00 | 150.00 | 0.00 | 0.00 | 150.00 | DD | 0.00 | 150.00 |
| 02/12/2021 | Cameron CNA, Anaja | 69.25 | 1,361.50 | 0.00 | 0.00 | 1,361.50 | DD | 0.00 | 1,361.50 |
| 02/12/2021 | Carter LPN, Lauren | 39.00 | 1,755.00 | 0.00 | 0.00 | 1,755.00 | DD | 0.00 | 1,755.00 |
| 02/12/2021 | Cherry LPN, Rhonda | 21.00 | 945.00 | 0.00 | 0.00 | 945.00 | DD | 0.00 | 945.00 |
| 02/12/2021 | Coates LPN, Racharlotte | 48.75 | 2,437.50 | 0.00 | 0.00 | 2,437.50 | DD | 0.00 | 2,437.50 |
| 02/12/2021 | Confron LPN, Bandetra | 8.75 | 280.00 | 0.00 | 0.00 | 280.00 | DD | 0.00 | 280.00 |
| 02/12/2021 | Conner LPN, Abigail | 9.00 | 270.00 | 0.00 | 0.00 | 270.00 | DD | 0.00 | 270.00 |
| 02/12/2021 | Corona CNA, Gloria | 11.50 | 230.00 | 0.00 | 0.00 | 230.00 | DD | 0.00 | 230.00 |
| 02/12/2021 | Couser LPN, Jonecca | 94.03 | 4,701.50 | 0.00 | 0.00 | 4,701.50 | DD | 0.00 | 4,701.50 |
| 02/12/2021 | Cox LPN, Madinah | 15.58 | 420.66 | 0.00 | 0.00 | 420.66 | DD | 0.00 | 420.66 |
| 02/12/2021 | Crocker CNA, Ancetra | 15.00 | 225.00 | 0.00 | 0.00 | 225.00 | DD | 0.00 | 225.00 |
| 02/12/2021 | Cunningham CNA, Alisha | 38.00 | 722.00 | 0.00 | 0.00 | 722.00 | DD | 0.00 | 722.00 |
| 02/12/2021 | Davis RN, Jacqueline | 43.50 | 2,610.00 | 0.00 | 0.00 | 2,610.00 | DD | 0.00 | 2,610.00 |
| 02/12/2021 | Deloatch LPN, India | 32.37 | 971.10 | 0.00 | 0.00 | 971.10 | DD | 0.00 | 971.10 |
| 02/12/2021 | Demelo CNA, Kanikka | 45.00 | 810.00 | 0.00 | 0.00 | 810.00 | DD | 0.00 | 810.00 |
| 02/12/2021 | Dickens LPN, Chavelle | 39.90 | 1,303.05 | 0.00 | 0.00 | 1,303.05 | DD | 0.00 | 1,303.05 |
| 02/12/2021 | Dieng CNA, Sokhna | 8.00 | 144.00 | 0.00 | 0.00 | 144.00 | DD | 0.00 | 144.00 |
| 02/12/2021 | Dillard CNA, Lynneshia | 84.50 | 1,880.00 | 0.00 | 0.00 | 1,880.00 | DD | 0.00 | 1,880.00 |
| 02/12/2021 | Drake LPN, Judith | 36.00 | 1,080.00 | 0.00 | 0.00 | 1,080.00 | DD | 0.00 | 1,080.00 |
| 02/12/2021 | Dyson-Taylor CNA, Cherice | 54.16 | 1,298.90 | 0.00 | 0.00 | 1,298.90 | DD | 0.00 | 1,298.90 |
| 02/12/2021 | Edwards CNA, Geneva | 30.00 | 900.00 | 0.00 | 0.00 | 900.00 | DD | 0.00 | 900.00 |
| 02/12/2021 | Fallin RN, Shameka | 16.00 | 960.00 | 0.00 | 0.00 | 960.00 | DD | 0.00 | 960.00 |
| 02/12/2021 | Fitzgerald LPN, Andrea | 32.50 | 2,089.32 | 0.00 | 0.00 | 2,089.32 | DD | 0.00 | 2,089.32 |
| 02/12/2021 | Flowers LPN, Denise | 58.25 | 1,747.50 | 0.00 | 0.00 | 1,747.50 | 40733983 | 0.00 | 1,747.50 |
| 02/12/2021 | Fogleboch LPN, Rachel | 43.92 | 1,537.20 | 0.00 | 0.00 | 1,537.20 | DD | 0.00 | 1,537.20 |
| 02/12/2021 | Gantt LPN, Kareen | 8.75 | 437.50 | 0.00 | 0.00 | 437.50 | DD | 0.00 | 437.50 |
| 02/12/2021 | Goynes LPN, Takiyah | 34.83 | 1,741.50 | 0.00 | 0.00 | 1,741.50 | DD | 0.00 | 1,741.50 |
| 02/12/2021 | Graves CNA, Leslie | 37.50 | 712.50 | 0.00 | 0.00 | 712.50 | DD | 0.00 | 712.50 |
| 02/12/2021 | Gray CNA, Karessa | 12.67 | 240.73 | 0.00 | 0.00 | 240.73 | DD | 0.00 | 240.73 |
| 02/12/2021 | Green CNA, Sokorra | 11.58 | 231.60 | 0.00 | 0.00 | 231.60 | DD | 0.00 | 231.60 |
| 02/12/2021 | Hairston LPN, Lakeisha | 31.09 | 1,554.50 | 0.00 | 0.00 | 1,554.50 | DD | 0.00 | 1,554.50 |
| 02/12/2021 | Hall LPN, Tawanda | 41.00 | 1,351.20 | 0.00 | 0.00 | 1,351.20 | DD | 0.00 | 1,351.20 |
| 02/12/2021 | Hall-Davis LPN, Beverly | 64.00 | 3,200.00 | 0.00 | 0.00 | 3,200.00 | DD | 0.00 | 3,200.00 |
| 02/12/2021 | Harvey CNA, Cynthia | 11.50 | 287.50 | 0.00 | 0.00 | 287.50 | DD | 0.00 | 287.50 |
| 02/12/2021 | Hathaway LPN, Latasha | 0.00 | 181.06 | 0.00 | 0.00 | 181.06 | DD | 0.00 | 181.06 |
| 02/12/2021 | Hawkins LPN, Jamie | 43.25 | 1,612.50 | 0.00 | 0.00 | 1,612.50 | DD | 0.00 | 1,612.50 |

Steadfast 6th 092874

**JA2047**

<u>**Sample Packet:**</u>
**Category 4 Error – DOL Listed Incorrect Hours Paid**

**DOL Entry for Denise Flowers on 2/14/2021**

| Packet Page # | Document Description | Bates Stamp |
|---|---|---|
| 2 | **DOL Wage Transcription and Computation Sheet**<br>Excerpt Entry Highlighted | Trial Exhibit PX-21 |
| 3 | **Steadfast Payroll Summary**<br><br>Actual Steadfast Check Date: **2/19/2021**<br>Hours Paid by Steadfast: **66.25** | Steadfast 6th 092871 |

| <u>**Summary:**</u> | <u>**DOL**</u> | <u>**Steadfast**</u> |
|---|---|---|
| **Date** | 2/14/21 | 2/19//21 |
| **Hours Paid** | 83.39 | 66.25 |
| **Back Pay** | $650.85 | $333.75 |
| **DOL Overage** | $317.10 | - |

**JA2048**

| Date | First Name | Last Name | Gross Pay | Total Hrs | Rate | OT Hrs | Sec 7: RR Due | Sec 7: 1/2T Due | Sec 7: Total Due |
|------|-----------|-----------|-----------|-----------|------|--------|---------------|-----------------|------------------|
| 3/15/2020 | Sherry | Flournoy | $4,610.00 | 73.13 | $40.00 | 33.13 | $0.00 | $662.60 | $662.60 |
| 3/22/2020 | Sherry | Flournoy | $3,010.00 | 75.25 | $40.00 | 35.25 | $0.00 | $705.00 | $705.00 |
| 5/24/2020 | Sherry | Flournoy | $2,302.50 | 68.5 | $33.61 | 28.5 | $0.00 | $478.99 | $478.99 |
| 6/28/2020 | Sherry | Flournoy | $4,800.00 | 73.13 | $40.00 | 33.13 | $0.00 | $662.60 | $662.60 |
| 7/19/2020 | Sherry | Flournoy | $2,740.00 | 52 | $52.69 | 12 | $0.00 | $316.15 | $316.15 |
| 7/26/2020 | Sherry | Flournoy | $7,293.14 | 73.13 | $44.07 | 33.13 | $0.00 | $729.98 | $729.98 |
| 8/2/2020 | Sherry | Flournoy | $3,950.00 | 98.75 | $40.00 | 58.75 | $0.00 | $1,175.00 | $1,175.00 |
| 8/9/2020 | Sherry | Flournoy | $4,120.00 | 103 | $40.00 | 63 | $0.00 | $1,260.00 | $1,260.00 |
| 8/23/2020 | Sherry | Flournoy | $2,080.00 | 52 | $40.00 | 12 | $0.00 | $240.00 | $240.00 |
| 8/30/2020 | Sherry | Flournoy | $3,850.00 | 96.25 | $40.00 | 56.25 | $0.00 | $1,125.00 | $1,125.00 |
| 9/6/2020 | Sherry | Flournoy | $5,772.00 | 73.13 | $40.82 | 33.13 | $0.00 | $676.14 | $676.14 |
| 9/13/2020 | Sherry | Flournoy | $4,040.00 | 101 | $40.00 | 61 | $0.00 | $1,220.00 | $1,220.00 |
| 9/20/2020 | Sherry | Flournoy | $4,470.00 | 111.75 | $40.00 | 71.75 | $0.00 | $1,435.00 | $1,435.00 |
| 9/27/2020 | Sherry | Flournoy | $2,540.00 | 63.5 | $40.00 | 23.5 | $0.00 | $470.00 | $470.00 |
| 10/4/2020 | Sherry | Flournoy | $3,510.00 | 87.75 | $40.00 | 47.75 | $0.00 | $955.00 | $955.00 |
| 10/11/2020 | Sherry | Flournoy | $1,780.00 | 44.5 | $40.00 | 4.5 | $0.00 | $90.00 | $90.00 |
| 11/8/2020 | Sherry | Flournoy | $3,386.85 | 84 | $43.84 | 44 | $0.00 | $964.39 | $964.39 |
| 11/15/2020 | Sherry | Flournoy | $1,800.00 | 45 | $40.00 | 5 | $0.00 | $100.00 | $100.00 |
| 11/29/2020 | Sherry | Flournoy | $1,610.00 | 40.25 | $40.00 | 0.25 | $0.00 | $5.00 | $5.00 |
| 12/26/2020 | Sherry | Flournoy | $8,146.88 | 73.13 | $61.49 | 33.13 | $0.00 | $1,018.51 | $1,018.51 |
| 1/17/2021 | Sherry | Flournoy | $8,387.50 | 81.64 | $55.00 | 41.64 | $0.00 | $1,145.10 | $1,145.10 |
| 1/31/2021 | Sherry | Flournoy | $5,017.50 | 111.5 | $45.00 | 71.5 | $0.00 | $1,608.75 | $1,608.75 |
| 4/11/2021 | Sherry | Flournoy | $2,137.50 | 47.5 | $45.00 | 7.5 | $0.00 | $168.75 | $168.75 |
| 5/2/2021 | Sherry | Flournoy | $2,764.80 | 85.91 | $32.18 | 45.91 | $0.00 | $738.75 | $738.75 |
| 12/30/2018 | Denise | Flowers | $2,452.50 | 72.25 | $33.94 | 32.25 | $0.00 | $547.36 | $547.36 |
| 1/13/2019 | Denise | Flowers | $1,365.00 | 45.5 | $30.00 | 5.5 | $0.00 | $82.50 | $82.50 |
| 1/27/2019 | Denise | Flowers | $1,627.50 | 54.25 | $30.00 | 14.25 | $0.00 | $213.75 | $213.75 |
| 2/3/2019 | Denise | Flowers | $1,870.50 | 63.25 | $29.57 | 23.25 | $0.00 | $343.79 | $343.79 |
| 2/10/2019 | Denise | Flowers | $1,500.00 | 50 | $30.00 | 10 | $0.00 | $150.00 | $150.00 |
| 2/24/2019 | Denise | Flowers | $1,597.50 | 53.25 | $30.00 | 13.25 | $0.00 | $198.75 | $198.75 |
| 6/16/2019 | Denise | Flowers | $1,498.00 | 53.5 | $28.00 | 13.5 | $0.00 | $189.00 | $189.00 |
| 6/23/2019 | Denise | Flowers | $1,897.00 | 67.75 | $28.00 | 27.75 | $0.00 | $388.50 | $388.50 |
| 6/30/2019 | Denise | Flowers | $1,267.00 | 45.25 | $28.00 | 5.25 | $0.00 | $73.50 | $73.50 |
| 7/7/2019 | Denise | Flowers | $2,093.00 | 70.5 | $29.69 | 30.5 | $0.00 | $452.74 | $452.74 |
| 1/17/2021 | Denise | Flowers | $5,220.00 | 83.39 | $33.04 | 43.39 | $0.00 | $716.76 | $716.76 |
| 1/24/2021 | Denise | Flowers | $2,565.00 | 85.5 | $30.00 | 45.5 | $0.00 | $682.50 | $682.50 |
| 1/31/2021 | Denise | Flowers | $3,000.00 | 100 | $30.00 | 60 | $0.00 | $900.00 | $900.00 |
| 2/7/2021 | Denise | Flowers | $3,495.00 | 83.39 | $30.00 | 43.39 | $0.00 | $650.85 | $650.85 |
| 2/14/2021 | Denise | Flowers | $3,975.00 | 83.39 | $30.00 | 43.39 | $0.00 | $650.85 | $650.85 |
| 2/28/2021 | Denise | Flowers | $4,620.00 | 83.39 | $30.00 | 43.39 | $0.00 | $650.85 | $650.85 |
| 3/21/2021 | Denise | Flowers | $4,545.00 | 83.39 | $30.00 | 43.39 | $0.00 | $650.85 | $650.85 |
| 4/18/2021 | Denise | Flowers | $3,887.40 | 83.39 | $30.00 | 43.39 | $0.00 | $650.85 | $650.85 |
| 5/9/2021 | Denise | Flowers | $4,780.00 | 83.39 | $33.72 | 43.39 | $0.00 | $731.58 | $731.58 |
| 5/23/2021 | Denise | Flowers | $4,538.00 | 83.39 | $39.31 | 43.39 | $0.00 | $852.77 | $852.77 |
| 6/6/2021 | Denise | Flowers | $7,120.00 | 83.39 | $43.82 | 43.39 | $0.00 | $950.57 | $950.57 |
| 6/13/2021 | Denise | Flowers | $5,847.20 | 83.39 | $40.00 | 43.39 | $0.00 | $867.80 | $867.80 |
| 6/27/2021 | Denise | Flowers | $2,586.80 | 64.67 | $40.00 | 24.67 | $0.00 | $493.40 | $493.40 |
| 2/21/2021 | Tamakia | Flowers | $2,390.00 | 97 | $24.64 | 57 | $0.00 | $702.22 | $702.22 |
| 5/2/2021 | Tamakia | Flowers | $3,112.50 | 68.75 | $25.00 | 28.75 | $0.00 | $359.38 | $359.38 |
| 5/9/2021 | Tamakia | Flowers | $1,012.50 | 40.5 | $25.00 | 0.5 | $0.00 | $6.25 | $6.25 |
| 3/10/2019 | Seth | Floyd | $892.50 | 52.5 | $17.00 | 12.5 | $0.00 | $106.25 | $106.25 |
| 3/24/2019 | Seth | Floyd | $1,389.73 | 81.75 | $17.00 | 41.75 | $0.00 | $354.88 | $354.88 |
| 5/31/2020 | Rachel | Fogleboch | $2,130.52 | 76.09 | $28.00 | 36.09 | $0.00 | $505.26 | $505.26 |
| 6/14/2020 | Rachel | Fogleboch | $2,692.76 | 85.67 | $34.00 | 45.67 | $0.00 | $776.39 | $776.39 |
| 6/21/2020 | Rachel | Fogleboch | $1,926.96 | 68.82 | $28.00 | 28.82 | $0.00 | $403.48 | $403.48 |
| 6/28/2020 | Rachel | Fogleboch | $2,306.08 | 82.36 | $28.00 | 42.36 | $0.00 | $593.04 | $593.04 |
| 7/5/2020 | Rachel | Fogleboch | $2,098.88 | 74.96 | $28.00 | 34.96 | $0.00 | $489.44 | $489.44 |
| 7/12/2020 | Rachel | Fogleboch | $3,339.28 | 68.38 | $28.00 | 28.38 | $0.00 | $397.32 | $397.32 |
| 7/19/2020 | Rachel | Fogleboch | $2,626.96 | 93.82 | $28.00 | 53.82 | $0.00 | $753.48 | $753.48 |
| 7/26/2020 | Rachel | Fogleboch | $1,250.48 | 44.66 | $28.00 | 4.66 | $0.00 | $65.24 | $65.24 |
| 8/9/2020 | Rachel | Fogleboch | $2,369.76 | 63.42 | $37.37 | 23.42 | $0.00 | $437.56 | $437.56 |
| 8/23/2020 | Rachel | Fogleboch | $1,620.00 | 40.5 | $40.00 | 0.5 | $0.00 | $10.00 | $10.00 |
| 12/26/2020 | Rachel | Fogleboch | $2,028.40 | 53.52 | $37.90 | 13.52 | $0.00 | $256.20 | $256.20 |
| 1/3/2021 | Rachel | Fogleboch | $1,605.10 | 45.86 | $35.00 | 5.86 | $0.00 | $102.55 | $102.55 |

Form WH-55
A -

**JA2049**

# Payroll Summary

| Check Date | Name | Hours | Total Paid | Tax Withheld | Deductions | Net Pay | Check No | Employer Liability | Total Expense |
|---|---|---|---|---|---|---|---|---|---|
| 02/26/2021 | Younger LPN, Meagan | 7.83 | 352.35 | 0.00 | 0.00 | 352.35 | DD | 0.00 | 352.35 |
| 02/19/2021 | Adames CNA, Jamie | 21.50 | 387.00 | 0.00 | 0.00 | 387.00 | DD | 0.00 | 387.00 |
| 02/19/2021 | Adkins CNA, Desiree | 22.50 | 450.00 | 0.00 | 0.00 | 450.00 | DD | 0.00 | 450.00 |
| 02/19/2021 | Allen LPN, Quiana | 12.50 | 437.50 | 0.00 | 0.00 | 437.50 | DD | 0.00 | 437.50 |
| 02/19/2021 | Allen RN, Randy | 22.00 | 880.00 | 0.00 | 0.00 | 880.00 | DD | 0.00 | 880.00 |
| 02/19/2021 | Alston LPN, Napolean | 48.50 | 2,182.50 | 0.00 | 0.00 | 2,182.50 | DD | 0.00 | 2,182.50 |
| 02/19/2021 | Angle CNA, Tyravia | 15.00 | 285.00 | 0.00 | 0.00 | 285.00 | DD | 0.00 | 285.00 |
| 02/19/2021 | Barnes LPN, Erin | 27.80 | 1,112.00 | 0.00 | 0.00 | 1,112.00 | DD | 0.00 | 1,112.00 |
| 02/19/2021 | Barnes LPN, Shanmeka | 31.00 | 1,395.00 | 0.00 | 0.00 | 1,395.00 | DD | 0.00 | 1,395.00 |
| 02/19/2021 | Barnes-Jenkins LPN, Latasha | 83.30 | 4,165.00 | 0.00 | 0.00 | 4,165.00 | DD | 0.00 | 4,165.00 |
| 02/19/2021 | Barrow LPN, Rayshara | 26.31 | 1,183.95 | 0.00 | 0.00 | 1,183.95 | DD | 0.00 | 1,183.95 |
| 02/19/2021 | Beavers LPN, KeiMia | 61.50 | 3,075.00 | 0.00 | 0.00 | 3,075.00 | DD | 0.00 | 3,075.00 |
| 02/19/2021 | Bentick LPN, Tanya | 16.00 | 560.00 | 0.00 | 0.00 | 560.00 | DD | 0.00 | 560.00 |
| 02/19/2021 | Bowen CNA, Shawanda | 31.17 | 935.10 | 0.00 | 0.00 | 935.10 | DD | 0.00 | 935.10 |
| 02/19/2021 | Boyce LPN, Angela | 40.42 | 1,330.55 | 0.00 | 0.00 | 1,330.55 | DD | 0.00 | 1,330.55 |
| 02/19/2021 | Branch CNA, Kyara | 15.00 | 375.00 | 0.00 | 0.00 | 375.00 | DD | 0.00 | 375.00 |
| 02/19/2021 | Brown CNA, Nicole | 24.00 | 600.00 | 0.00 | 0.00 | 600.00 | DD | 0.00 | 600.00 |
| 02/19/2021 | Cameron CNA, Anaja | 23.50 | 470.00 | 0.00 | 0.00 | 470.00 | DD | 0.00 | 470.00 |
| 02/19/2021 | Carter LPN, Lauren | 15.75 | 708.75 | 0.00 | 0.00 | 708.75 | DD | 0.00 | 708.75 |
| 02/19/2021 | Charles CNA, Tenisha | 7.50 | 112.50 | 0.00 | 0.00 | 112.50 | DD | 0.00 | 112.50 |
| 02/19/2021 | Cherry LPN, Rhonda | 2.00 | 90.00 | 0.00 | 0.00 | 90.00 | DD | 0.00 | 90.00 |
| 02/19/2021 | Coates LPN, Racharlotte | 71.75 | 2,475.25 | 0.00 | 0.00 | 2,475.25 | DD | 0.00 | 2,475.25 |
| 02/19/2021 | Confron LPN, Bandetra | 29.25 | 936.00 | 0.00 | 0.00 | 936.00 | DD | 0.00 | 936.00 |
| 02/19/2021 | Corona CNA, Gloria | 27.00 | 540.00 | 0.00 | 0.00 | 540.00 | DD | 0.00 | 540.00 |
| 02/19/2021 | Couser LPN, Jonecca | 55.00 | 2,750.00 | 0.00 | 0.00 | 2,750.00 | DD | 0.00 | 2,750.00 |
| 02/19/2021 | Cox LPN, Madinah | 15.50 | 418.50 | 0.00 | 0.00 | 418.50 | DD | 0.00 | 418.50 |
| 02/19/2021 | Crocker CNA, Ancetra | 15.00 | 225.00 | 0.00 | 0.00 | 225.00 | DD | 0.00 | 225.00 |
| 02/19/2021 | Cunningham CNA, Alisha | 46.50 | 883.50 | 0.00 | 0.00 | 883.50 | DD | 0.00 | 883.50 |
| 02/19/2021 | Demelo CNA, Kanikka | 37.00 | 666.00 | 0.00 | 0.00 | 666.00 | DD | 0.00 | 666.00 |
| 02/19/2021 | Dickens LPN, Chavelle | 38.03 | 1,290.90 | 0.00 | 0.00 | 1,290.90 | DD | 0.00 | 1,290.90 |
| 02/19/2021 | Dieng CNA, Sokhna | 15.50 | 279.00 | 0.00 | 0.00 | 279.00 | DD | 0.00 | 279.00 |
| 02/19/2021 | Dillard CNA, Lynneshia | 38.50 | 770.00 | 0.00 | 0.00 | 770.00 | DD | 0.00 | 770.00 |
| 02/19/2021 | Drake LPN, Judith | 10.75 | 483.75 | 0.00 | 0.00 | 483.75 | DD | 0.00 | 483.75 |
| 02/19/2021 | Ekechukwu CNA, Gold | 12.58 | 314.50 | 0.00 | 0.00 | 314.50 | DD | 0.00 | 314.50 |
| 02/19/2021 | Fitzgerald LPN, Andrea | 16.50 | 825.00 | 0.00 | 0.00 | 825.00 | DD | 0.00 | 825.00 |
| 02/19/2021 | Flowers LPN, Denise | 66.25 | 1,987.50 | 0.00 | 0.00 | 1,987.50 | 40736455 | 0.00 | 1,987.50 |
| 02/19/2021 | Fogleboch LPN, Rachel | 37.75 | 1,321.25 | 0.00 | 0.00 | 1,321.25 | DD | 0.00 | 1,321.25 |
| 02/19/2021 | Freeman-Hicks RN, Shawlawn | 32.68 | 1,634.00 | 0.00 | 0.00 | 1,634.00 | DD | 0.00 | 1,634.00 |
| 02/19/2021 | Fulton LPN, Sedyta | 23.30 | 932.00 | 0.00 | 0.00 | 932.00 | DD | 0.00 | 932.00 |
| 02/19/2021 | Gantt LPN, Kareen | 22.00 | 1,100.00 | 0.00 | 0.00 | 1,100.00 | DD | 0.00 | 1,100.00 |
| 02/19/2021 | Gatling LPN, Tisha | 8.00 | 240.00 | 0.00 | 0.00 | 240.00 | DD | 0.00 | 240.00 |
| 02/19/2021 | Gichaba RN, Jackline | 8.50 | 357.00 | 0.00 | 0.00 | 357.00 | DD | 0.00 | 357.00 |
| 02/19/2021 | Goynes LPN, Takiyah | 45.34 | 1,450.88 | 0.00 | 0.00 | 1,450.88 | DD | 0.00 | 1,450.88 |
| 02/19/2021 | Graves CNA, Leslie | 30.23 | 574.37 | 0.00 | 0.00 | 574.37 | DD | 0.00 | 574.37 |
| 02/19/2021 | Gray CNA, Karessa | 24.47 | 464.93 | 0.00 | 0.00 | 464.93 | DD | 0.00 | 464.93 |
| 02/19/2021 | Green LPN, Cynthia | 11.50 | 575.00 | 0.00 | 0.00 | 575.00 | DD | 0.00 | 575.00 |
| 02/19/2021 | Hairston LPN, Lakeisha | 24.33 | 778.56 | 0.00 | 0.00 | 778.56 | DD | 0.00 | 778.56 |

Company: Medical Staffing of America
Check dates from: 1/8/2021 - Payroll 1 to: 3/26/2021 - Payroll 1
Pay Period from: 12/29/2020 to: 03/22/2021

14 of 33

Date Printed: 05/07/2021 08:49
25087115 - RB/959

Steadfast 6th 092871

**JA2050**

# Sample Packet:
## Category 4 Error – DOL Listed Incorrect Hours Paid

**DOL Entry for Sherry Joice on 2/21/2021**

| Packet Page # | Document Description | Bates Stamp |
|---|---|---|
| 2 | **DOL Wage Transcription and Computation Sheet** <br> Excerpt Entry Highlighted | Trial Exhibit PX-21 |
| 3 | **Steadfast Payroll Summary** <br><br> Actual Steadfast Check Date: **2/26/2021** <br> Hours Paid by Steadfast: **59.17** | Steadfast 6th 092869 |

| **Summary:** | **DOL** | **Steadfast** |
|---|---|---|
| **Date** | 2/21/21 | 2/26//21 |
| **Hours Paid** | 66.32 | 59.17 |
| **Back Pay** | $526.40 | $383.40 |
| **DOL Overage** | $143.00 | - |

| Date | First Name | Last Name | Gross Pay | Total Hrs | Rate | OT Hrs | Sec 7: RR Due | Sec 7: 1/2T Due | Sec 7: Total Due |
|---|---|---|---|---|---|---|---|---|---|
| 2/14/2021 | Sherry | Joice | $3,453.60 | 86.34 | $40.00 | 46.34 | $0.00 | $926.80 | $926.80 |
| 2/21/2021 | Sherry | Joice | $4,733.60 | 66.32 | $40.00 | 26.32 | $0.00 | $526.40 | $526.40 |
| 2/28/2021 | Sherry | Joice | $2,767.20 | 69.18 | $40.00 | 29.18 | $0.00 | $583.60 | $583.60 |
| 3/14/2021 | Sherry | Joice | $1,517.94 | 56.22 | $27.00 | 16.22 | $0.00 | $218.97 | $218.97 |
| 3/21/2021 | Sherry | Joice | $2,123.30 | 77.9 | $27.26 | 37.9 | $0.00 | $516.52 | $516.52 |
| 4/4/2021 | Sherry | Joice | $1,905.39 | 70.57 | $27.00 | 30.57 | $0.00 | $412.70 | $412.70 |
| 4/11/2021 | Sherry | Joice | $1,144.80 | 42.4 | $27.00 | 2.4 | $0.00 | $32.40 | $32.40 |
| 4/18/2021 | Sherry | Joice | $1,216.89 | 45.07 | $27.00 | 5.07 | $0.00 | $68.45 | $68.45 |
| 4/25/2021 | Sherry | Joice | $1,322.73 | 48.99 | $27.00 | 8.99 | $0.00 | $121.37 | $121.37 |
| 6/20/2021 | Sherry | Joice | $1,976.00 | 49.4 | $40.00 | 9.4 | $0.00 | $188.00 | $188.00 |
| 3/22/2020 | Antashia | Jones | $810.00 | 45 | $18.00 | 5 | $0.00 | $45.00 | $45.00 |
| 3/10/2019 | Cierra | Jones | $827.75 | 47.25 | $17.52 | 7.25 | $0.00 | $63.50 | $63.50 |
| 3/24/2019 | Cierra | Jones | $1,612.50 | 93.5 | $17.25 | 53.5 | $0.00 | $461.33 | $461.33 |
| 4/21/2019 | Cierra | Jones | $767.13 | 41.75 | $18.37 | 1.75 | $0.00 | $16.08 | $16.08 |
| 5/5/2019 | Cierra | Jones | $893.54 | 51.87 | $17.23 | 11.87 | $0.00 | $102.24 | $102.24 |
| 5/10/2020 | Cierra | Jones | $1,855.00 | 53 | $35.00 | 13 | $0.00 | $227.50 | $227.50 |
| 5/17/2020 | Cierra | Jones | $2,187.50 | 62.5 | $35.00 | 22.5 | $0.00 | $393.75 | $393.75 |
| 11/24/2019 | Dejaneke | Jones | $667.65 | 44.51 | $15.00 | 4.51 | $0.00 | $33.83 | $33.83 |
| 2/2/2020 | Dejaneke | Jones | $1,015.35 | 51.79 | $19.00 | 11.79 | $0.00 | $112.01 | $112.01 |
| 2/9/2020 | Dejaneke | Jones | $847.50 | 56.5 | $15.00 | 16.5 | $0.00 | $123.75 | $123.75 |
| 2/16/2020 | Dejaneke | Jones | $1,135.35 | 75.69 | $15.00 | 35.69 | $0.00 | $267.68 | $267.68 |
| 2/23/2020 | Dejaneke | Jones | $1,034.45 | 65.63 | $15.57 | 25.63 | $0.00 | $199.55 | $199.55 |
| 3/1/2020 | Dejaneke | Jones | $717.75 | 47.85 | $15.00 | 7.85 | $0.00 | $58.88 | $58.88 |
| 3/8/2020 | Dejaneke | Jones | $739.35 | 49.29 | $15.00 | 9.29 | $0.00 | $69.68 | $69.68 |
| 3/15/2020 | Dejaneke | Jones | $1,317.60 | 87.84 | $15.00 | 47.84 | $0.00 | $358.80 | $358.80 |
| 3/22/2020 | Dejaneke | Jones | $2,510.10 | 69.59 | $15.00 | 29.59 | $0.00 | $221.93 | $221.93 |
| 3/29/2020 | Dejaneke | Jones | $1,430.55 | 95.37 | $15.00 | 55.37 | $0.00 | $415.28 | $415.28 |
| 4/5/2020 | Dejaneke | Jones | $1,350.00 | 90 | $15.00 | 50 | $0.00 | $375.00 | $375.00 |
| 4/12/2020 | Dejaneke | Jones | $1,204.95 | 80.33 | $15.00 | 40.33 | $0.00 | $302.48 | $302.48 |
| 4/19/2020 | Dejaneke | Jones | $1,246.95 | 83.13 | $15.00 | 43.13 | $0.00 | $323.48 | $323.48 |
| 4/26/2020 | Dejaneke | Jones | $1,117.62 | 70.69 | $20.27 | 30.69 | $0.00 | $311.06 | $311.06 |
| 5/3/2020 | Dejaneke | Jones | $1,010.00 | 63.25 | $15.50 | 23.25 | $0.00 | $180.19 | $180.19 |
| 5/10/2020 | Dejaneke | Jones | $1,010.08 | 63.13 | $16.00 | 23.13 | $0.00 | $185.04 | $185.04 |
| 5/17/2020 | Dejaneke | Jones | $1,233.20 | 77.2 | $15.50 | 37.2 | $0.00 | $288.30 | $288.30 |
| 7/26/2020 | Dejaneke | Jones | $2,000.50 | 80.02 | $20.00 | 40.02 | $0.00 | $500.25 | $500.25 |
| 8/30/2020 | Dejaneke | Jones | $1,660.00 | 74.42 | $20.00 | 34.42 | $0.00 | $344.20 | $344.20 |
| 9/6/2020 | Dejaneke | Jones | $1,886.00 | 93.81 | $21.43 | 53.81 | $0.00 | $576.54 | $576.54 |
| 9/20/2020 | Dejaneke | Jones | $1,188.00 | 62.4 | $17.40 | 22.4 | $0.00 | $194.88 | $194.88 |
| 12/6/2020 | Dejaneke | Jones | $792.75 | 46.47 | $17.40 | 6.47 | $0.00 | $56.29 | $56.29 |
| 12/26/2020 | Dejaneke | Jones | $1,165.00 | 46.6 | $25.00 | 6.6 | $0.00 | $82.50 | $82.50 |
| 1/3/2021 | Dejaneke | Jones | $1,574.00 | 62.96 | $25.00 | 22.96 | $0.00 | $287.00 | $287.00 |
| 1/17/2021 | Dejaneke | Jones | $2,188.50 | 87.54 | $25.00 | 47.54 | $0.00 | $594.25 | $594.25 |
| 1/24/2021 | Dejaneke | Jones | $3,504.50 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 1/31/2021 | Dejaneke | Jones | $2,744.00 | 109.76 | $25.00 | 69.76 | $0.00 | $872.00 | $872.00 |
| 2/7/2021 | Dejaneke | Jones | $2,923.50 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 2/14/2021 | Dejaneke | Jones | $3,143.00 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 2/21/2021 | Dejaneke | Jones | $3,148.00 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 2/28/2021 | Dejaneke | Jones | $2,741.50 | 109.66 | $25.00 | 69.66 | $0.00 | $870.75 | $870.75 |
| 3/7/2021 | Dejaneke | Jones | $1,392.50 | 55.7 | $25.00 | 15.7 | $0.00 | $196.25 | $196.25 |
| 3/21/2021 | Dejaneke | Jones | $5,417.50 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 3/28/2021 | Dejaneke | Jones | $1,328.00 | 53.12 | $25.00 | 13.12 | $0.00 | $164.00 | $164.00 |
| 4/4/2021 | Dejaneke | Jones | $1,367.50 | 54.7 | $25.00 | 14.7 | $0.00 | $183.75 | $183.75 |
| 4/11/2021 | Dejaneke | Jones | $1,075.75 | 43.03 | $25.00 | 3.03 | $0.00 | $37.88 | $37.88 |
| 4/18/2021 | Dejaneke | Jones | $1,365.25 | 54.61 | $25.00 | 14.61 | $0.00 | $182.63 | $182.63 |
| 4/25/2021 | Dejaneke | Jones | $1,561.00 | 62.44 | $25.00 | 22.44 | $0.00 | $280.50 | $280.50 |
| 5/2/2021 | Dejaneke | Jones | $1,180.50 | 47.22 | $25.00 | 7.22 | $0.00 | $90.25 | $90.25 |
| 5/9/2021 | Dejaneke | Jones | $1,603.25 | 64.13 | $25.00 | 24.13 | $0.00 | $301.63 | $301.63 |
| 5/16/2021 | Dejaneke | Jones | $1,171.25 | 46.85 | $25.00 | 6.85 | $0.00 | $85.63 | $85.63 |
| 5/23/2021 | Dejaneke | Jones | $1,945.75 | 77.83 | $25.00 | 37.83 | $0.00 | $472.88 | $472.88 |
| 5/30/2021 | Dejaneke | Jones | $3,532.50 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 6/6/2021 | Dejaneke | Jones | $3,877.00 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 6/13/2021 | Dejaneke | Jones | $3,140.00 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 6/20/2021 | Dejaneke | Jones | $3,117.50 | 66.4 | $25.00 | 26.4 | $0.00 | $330.00 | $330.00 |
| 5/26/2019 | Jameyle | Jones | $952.50 | 63.5 | $15.00 | 23.5 | $0.00 | $176.25 | $176.25 |

Form WH-55
A -

**JA2052**

# Payroll Summary

| Check Date | Name | Hours | Total Paid | Tax Withheld | Deductions | Net Pay | Check No | Employer Liability | Total Expense |
|---|---|---|---|---|---|---|---|---|---|
| 02/26/2021 | Deloatch LPN, India | 56.41 | 1,692.30 | 0.00 | 0.00 | 1,692.30 | DD | 0.00 | 1,692.30 |
| 02/26/2021 | Demelo CNA, Kanikka | 37.50 | 675.00 | 0.00 | 0.00 | 675.00 | DD | 0.00 | 675.00 |
| 02/26/2021 | Dillard CNA, Lynneshia | 38.00 | 760.00 | 0.00 | 0.00 | 760.00 | DD | 0.00 | 760.00 |
| 02/26/2021 | Fitzgerald LPN, Andrea | 37.00 | 1,295.00 | 0.00 | 0.00 | 1,295.00 | DD | 0.00 | 1,295.00 |
| 02/26/2021 | Flowers CNA, Tamakia | 48.50 | 1,195.00 | 0.00 | 0.00 | 1,195.00 | 40738862 | 0.00 | 1,195.00 |
| 02/26/2021 | Fogleboch LPN, Rachel | 32.75 | 1,146.25 | 0.00 | 0.00 | 1,146.25 | DD | 0.00 | 1,146.25 |
| 02/26/2021 | Fulton LPN, Sedyta | 35.58 | 1,423.20 | 0.00 | 0.00 | 1,423.20 | DD | 0.00 | 1,423.20 |
| 02/26/2021 | Gantt LPN, Kareen | 32.00 | 1,600.00 | 0.00 | 0.00 | 1,600.00 | DD | 0.00 | 1,600.00 |
| 02/26/2021 | Gichaba RN, Jackline | 11.67 | 490.14 | 0.00 | 0.00 | 490.14 | DD | 0.00 | 490.14 |
| 02/26/2021 | Goynes LPN, Takiyah | 46.13 | 1,476.16 | 0.00 | 0.00 | 1,476.16 | DD | 0.00 | 1,476.16 |
| 02/26/2021 | Graves CNA, Leslie | 37.50 | 712.50 | 0.00 | 0.00 | 712.50 | DD | 0.00 | 712.50 |
| 02/26/2021 | Gray CNA, Keria | 15.31 | 290.89 | 0.00 | 0.00 | 290.89 | DD | 0.00 | 290.89 |
| 02/26/2021 | Hall LPN, Tawanda | 62.72 | 2,116.30 | 0.00 | 0.00 | 2,116.30 | DD | 0.00 | 2,116.30 |
| 02/26/2021 | Harris CNA, Nicole | 11.50 | 287.50 | 0.00 | 0.00 | 287.50 | DD | 0.00 | 287.50 |
| 02/26/2021 | Hathaway LPN, Latasha | 49.50 | 2,475.00 | 0.00 | 0.00 | 2,475.00 | DD | 0.00 | 2,475.00 |
| 02/26/2021 | Hathorn LPN, Darron | 24.02 | 1,201.00 | 0.00 | 0.00 | 1,201.00 | DD | 0.00 | 1,201.00 |
| 02/26/2021 | Hawkins LPN, Jamie | 51.75 | 1,827.50 | 0.00 | 0.00 | 1,827.50 | DD | 0.00 | 1,827.50 |
| 02/26/2021 | Hoggard CNA, Tappata | 68.00 | 2,040.00 | 0.00 | 0.00 | 2,040.00 | DD | 0.00 | 2,040.00 |
| 02/26/2021 | Hooper LPN, Helene | 26.11 | 783.30 | 0.00 | 0.00 | 783.30 | DD | 0.00 | 783.30 |
| 02/26/2021 | Hudson CNA, Deja | 62.50 | 1,562.50 | 0.00 | 0.00 | 1,562.50 | DD | 0.00 | 1,562.50 |
| 02/26/2021 | Huff LPN, Rickie | 12.25 | 367.50 | 0.00 | 0.00 | 367.50 | DD | 0.00 | 367.50 |
| 02/26/2021 | Irby CNA, Amaya | 25.17 | 545.10 | 0.00 | 0.00 | 545.10 | DD | 0.00 | 545.10 |
| 02/26/2021 | Jefferson CNA, Akea | 29.00 | 580.00 | 0.00 | 0.00 | 580.00 | DD | 0.00 | 580.00 |
| 02/26/2021 | Johnson CNA, Charita | 51.15 | 1,144.25 | 0.00 | 0.00 | 1,144.25 | DD | 0.00 | 1,144.25 |
| 02/26/2021 | Johnson CNA, Dajah | 36.00 | 900.00 | 0.00 | 0.00 | 900.00 | DD | 0.00 | 900.00 |
| 02/26/2021 | Johnson CNA, Maurice R | 15.00 | 225.00 | 0.00 | 0.00 | 225.00 | DD | 0.00 | 225.00 |
| 02/26/2021 | Johnson LPN, Cherelle | 32.75 | 1,146.25 | 0.00 | 0.00 | 1,146.25 | DD | 0.00 | 1,146.25 |
| 02/26/2021 | Johnson LPN, Joseph | 15.50 | 465.00 | 0.00 | 0.00 | 465.00 | DD | 0.00 | 465.00 |
| 02/26/2021 | Joice LPN, Sherry | 59.17 | 2,366.80 | 0.00 | 0.00 | 2,366.80 | 40738863 | 0.00 | 2,366.80 |
| 02/26/2021 | Jones CNA, Dejaneke | 62.96 | 1,574.00 | 0.00 | 0.00 | 1,574.00 | DD | 0.00 | 1,574.00 |
| 02/26/2021 | Jones LPN, Jessica | 6.75 | 202.50 | 0.00 | 0.00 | 202.50 | 40738864 | 0.00 | 202.50 |
| 02/26/2021 | Kanla CNA, Bonmeyoung Eric | 25.42 | 508.40 | 0.00 | 0.00 | 508.40 | DD | 0.00 | 508.40 |
| 02/26/2021 | Lamont RN, Wanda | 47.00 | 1,880.00 | 0.00 | 0.00 | 1,880.00 | DD | 0.00 | 1,880.00 |
| 02/26/2021 | Lassiter CNA, Tasheba | 24.08 | 481.60 | 0.00 | 0.00 | 481.60 | DD | 0.00 | 481.60 |
| 02/26/2021 | Lee CNA, Nyashia | 21.50 | 408.50 | 0.00 | 0.00 | 408.50 | DD | 0.00 | 408.50 |
| 02/26/2021 | Little LPN, Costella | 8.00 | 320.00 | 0.00 | 0.00 | 320.00 | DD | 0.00 | 320.00 |
| 02/26/2021 | Lyerly CNA, Destiny | 59.30 | 1,126.70 | 0.00 | 0.00 | 1,126.70 | DD | 0.00 | 1,126.70 |
| 02/26/2021 | Lyles LPN, Cherelle | 9.75 | 292.50 | 0.00 | 0.00 | 292.50 | DD | 0.00 | 292.50 |
| 02/26/2021 | Madkins CNA, Reashelle | 23.40 | 444.60 | 0.00 | 0.00 | 444.60 | DD | 0.00 | 444.60 |
| 02/26/2021 | Marzette LPN, Rhosonda | 12.50 | 625.00 | 0.00 | 0.00 | 625.00 | DD | 0.00 | 625.00 |
| 02/26/2021 | McCary LPN, Christine | 21.08 | 738.16 | 0.00 | 0.00 | 738.16 | DD | 0.00 | 738.16 |
| 02/26/2021 | McClease CNA, Zemikia | 61.58 | 1,455.80 | 0.00 | 0.00 | 1,455.80 | DD | 0.00 | 1,455.80 |
| 02/26/2021 | McCoy LPN, Benisea | 60.31 | 1,809.30 | 0.00 | 0.00 | 1,809.30 | DD | 0.00 | 1,809.30 |
| 02/26/2021 | McMullen CNA, Candis | 31.00 | 589.00 | 0.00 | 0.00 | 589.00 | DD | 0.00 | 589.00 |
| 02/26/2021 | Meier LPN, Shawnda | 57.50 | 3,096.60 | 0.00 | 0.00 | 3,096.60 | DD | 0.00 | 3,096.60 |
| 02/26/2021 | Middlebrooks LPN, Eashia | 7.50 | 225.00 | 0.00 | 0.00 | 225.00 | DD | 0.00 | 225.00 |
| 02/26/2021 | Minter RN, Veronica | 15.50 | 465.00 | 0.00 | 0.00 | 465.00 | DD | 0.00 | 465.00 |
| 02/26/2021 | Mitchell LPN, Monica | 46.00 | 1,380.00 | 0.00 | 0.00 | 1,380.00 | DD | 0.00 | 1,380.00 |

Check dates from: 1/8/2021 - Payroll 1 to: 3/26/2021 - Payroll 1    25087115 - RB/959
Pay Period from: 12/29/2020 to: 03/22/2021

**Steadfast 6th 092869**

## JA2053

## Sample Packet:
## Category 2 Error – DOL Included 2+ Workweeks

**DOL Entry for Samantha Cobb on 2/3/19**

| Packet Page # | Document Description | Bates Stamp |
|---|---|---|
| 2 | **DOL Wage Transcription and Computation Sheet** Excerpt Entry Highlighted | Trial Exhibit PX-21 |
| 3 | **Steadfast Payroll Summary** Actual Steadfast Check Date: **2/8/19** Hours Paid by Steadfast: **52.86** | Steadfast 6th 02300 |
| 4-5 | **Steadfast Facility Invoices** dated 2/6/19 reflecting the allocation of hours paid to the workweek | Steadfast 6th 037111 Steadfast 6th 037172 |

| Summary: | DOL | Steadfast |
|---|---|---|
| **Date** | 2/3/19 | 4/26/19 |
| **Hours Paid** | 52.86 | 90.88 |
| **Back Pay** | $192.90 | $0.00 |
| **DOL Overage** | $192.90 | - |

| Steadfast's Workweek Breakdown for Samantha Cobb | | | | | |
|---|---|---|---|---|---|
| Workweek Dates | Date of Shift | Hours Worked | Workweek Total Hours | Workweek OT Hours | Workweek Back Pay |
| **Jan 22-28** | Jan 28 | 8.0 | | | |
| | Jan 28 | 10.0 | **18.00** | **0.00** | **$0.00** |
| **Jan 29-Feb 4** | Jan 29 | 8.72 | | | |
| | Jan 30 | 8.25 | | | |
| | Jan 31 | 10.32 | | | |
| | Feb 4 | 7.57 | **34.86** | **0.00** | **$0.00** |

| Date | First Name | Last Name | Gross Pay | Total Hrs | Rate | OT Hrs | Sec 7: RR Due | Sec 7: 1/2T Due | Sec 7: Total Due |
|---|---|---|---|---|---|---|---|---|---|
| 6/20/2021 | Tomeka | Clark | $2,575.00 | 51.5 | $50.00 | 11.5 | $0.00 | $287.50 | $287.50 |
| 6/27/2021 | Tomeka | Clark | $3,508.50 | 70.17 | $50.00 | 30.17 | $0.00 | $754.25 | $754.25 |
| 2/10/2019 | Yolanda | Clayton | $1,477.50 | 49.25 | $30.00 | 9.25 | $0.00 | $138.75 | $138.75 |
| 9/1/2019 | Yolanda | Clayton | $1,652.00 | 50.5 | $32.71 | 10.5 | $0.00 | $171.74 | $171.74 |
| 3/1/2020 | Aliyah | Clements | $890.00 | 46 | $19.00 | 6 | $0.00 | $57.00 | $57.00 |
| 5/24/2020 | Aliyah | Clements | $992.00 | 55.5 | $17.87 | 15.5 | $0.00 | $138.52 | $138.52 |
| 9/20/2020 | Aliyah | Clements | $882.00 | 49 | $18.00 | 9 | $0.00 | $81.00 | $81.00 |
| 2/7/2021 | Aliyah | Clements | $2,340.50 | 62 | $37.75 | 22 | $0.00 | $415.25 | $415.25 |
| 2/14/2021 | Aliyah | Clements | $1,887.50 | 50 | $37.75 | 10 | $0.00 | $188.75 | $188.75 |
| 3/14/2021 | Aliyah | Clements | $2,001.75 | 72.67 | $27.14 | 32.67 | $0.00 | $443.38 | $443.38 |
| 12/29/2019 | Na'lyma | Clifton-Barnes | $592.90 | 53.9 | $11.00 | 13.9 | $215.60 | $104.25 | $319.85 |
| 1/5/2020 | Alexis | Coates | $1,104.00 | 46 | $24.00 | 6 | $0.00 | $72.00 | $72.00 |
| 1/19/2020 | Alexis | Coates | $1,380.00 | 46 | $30.00 | 6 | $0.00 | $90.00 | $90.00 |
| 2/2/2020 | Alexis | Coates | $1,113.00 | 61 | $18.33 | 21 | $0.00 | $192.50 | $192.50 |
| 1/3/2021 | Racharlotte | Coates | $8,037.50 | 98.75 | $56.01 | 58.75 | $0.00 | $1,645.31 | $1,645.31 |
| 1/17/2021 | Racharlotte | Coates | $5,000.00 | 100 | $50.00 | 60 | $0.00 | $1,500.00 | $1,500.00 |
| 2/7/2021 | Racharlotte | Coates | $4,875.00 | 97.5 | $50.00 | 57.5 | $0.00 | $1,437.50 | $1,437.50 |
| 2/14/2021 | Racharlotte | Coates | $4,950.50 | 98.75 | $34.50 | 58.75 | $0.00 | $1,013.39 | $1,013.39 |
| 2/21/2021 | Racharlotte | Coates | $4,975.60 | 98.75 | $35.00 | 58.75 | $0.00 | $1,028.13 | $1,028.13 |
| 3/31/2019 | Racharlotte | Coates | $3,360.00 | 112 | $30.00 | 72 | $0.00 | $1,080.00 | $1,080.00 |
| 9/8/2019 | Racharlotte | Coates | $1,335.00 | 44.5 | $30.00 | 4.5 | $0.00 | $67.50 | $67.50 |
| 9/29/2019 | Racharlotte | Coates | $1,899.00 | 62.5 | $30.40 | 22.5 | $0.00 | $342.00 | $342.00 |
| 10/27/2019 | Racharlotte | Coates | $1,515.00 | 50.5 | $30.00 | 10.5 | $0.00 | $157.50 | $157.50 |
| 11/10/2019 | Racharlotte | Coates | $1,395.00 | 46.5 | $30.00 | 6.5 | $0.00 | $97.50 | $97.50 |
| 12/26/2020 | Racharlotte | Coates | $5,050.00 | 87.5 | $54.47 | 47.5 | $0.00 | $1,293.67 | $1,293.67 |
| 3/3/2019 | Priscilla | Cobb | $2,445.90 | 81.53 | $30.00 | 41.53 | $0.00 | $622.95 | $622.95 |
| 3/10/2019 | Priscilla | Cobb | $2,100.00 | 70 | $30.00 | 30 | $0.00 | $450.00 | $450.00 |
| 10/27/2019 | Priscilla | Cobb | $2,077.50 | 69.25 | $30.00 | 29.25 | $0.00 | $438.75 | $438.75 |
| 11/17/2019 | Priscilla | Cobb | $1,947.75 | 67.25 | $28.96 | 27.25 | $0.00 | $394.62 | $394.62 |
| 11/24/2019 | Priscilla | Cobb | $1,463.91 | 49.58 | $29.53 | 9.58 | $0.00 | $141.43 | $141.43 |
| 12/29/2019 | Priscilla | Cobb | $3,676.68 | 54.69 | $30.49 | 14.69 | $0.00 | $223.96 | $223.96 |
| 1/5/2020 | Priscilla | Cobb | $1,877.86 | 61.88 | $30.35 | 21.88 | $0.00 | $331.99 | $331.99 |
| 1/12/2020 | Priscilla | Cobb | $1,330.98 | 47.5 | $28.02 | 7.5 | $0.00 | $105.08 | $105.08 |
| 1/6/2019 | Samantha | Cobb | $1,807.50 | 56 | $32.28 | 16 | $0.00 | $258.21 | $258.21 |
| 1/13/2019 | Samantha | Cobb | $1,719.00 | 57.3 | $30.00 | 17.3 | $0.00 | $259.50 | $259.50 |
| 1/27/2019 | Samantha | Cobb | $1,367.10 | 45.57 | $30.00 | 5.57 | $0.00 | $83.55 | $83.55 |
| 2/3/2019 | Samantha | Cobb | $1,585.80 | 52.86 | $30.00 | 12.86 | $0.00 | $192.90 | $192.90 |
| 2/10/2019 | Samantha | Cobb | $2,029.20 | 67.64 | $30.00 | 27.64 | $0.00 | $414.60 | $414.60 |
| 2/17/2019 | Samantha | Cobb | $1,423.50 | 47.45 | $30.00 | 7.45 | $0.00 | $111.75 | $111.75 |
| 2/24/2019 | Samantha | Cobb | $1,818.60 | 69.82 | $26.05 | 29.82 | $0.00 | $388.36 | $388.36 |
| 3/10/2019 | Samantha | Cobb | $2,757.30 | 91.91 | $30.00 | 51.91 | $0.00 | $778.65 | $778.65 |
| 3/24/2019 | Samantha | Cobb | $2,197.50 | 73.25 | $30.00 | 33.25 | $0.00 | $498.75 | $498.75 |
| 4/7/2019 | Samantha | Cobb | $2,794.50 | 93.15 | $30.00 | 53.15 | $0.00 | $797.25 | $797.25 |
| 4/21/2019 | Samantha | Cobb | $2,861.40 | 90.88 | $31.49 | 50.88 | $0.00 | $800.99 | $800.99 |
| 6/16/2019 | Samantha | Cobb | $1,587.00 | 52.9 | $30.00 | 12.9 | $0.00 | $193.50 | $193.50 |
| 6/23/2019 | Samantha | Cobb | $1,452.90 | 48.43 | $30.00 | 8.43 | $0.00 | $126.45 | $126.45 |
| 7/7/2019 | Samantha | Cobb | $1,787.70 | 54.88 | $34.29 | 14.88 | $0.00 | $255.09 | $255.09 |
| 7/14/2019 | Samantha | Cobb | $1,675.50 | 55.85 | $30.00 | 15.85 | $0.00 | $237.75 | $237.75 |
| 7/21/2019 | Samantha | Cobb | $2,327.40 | 77.58 | $30.00 | 37.58 | $0.00 | $563.70 | $563.70 |
| 8/4/2019 | Samantha | Cobb | $1,359.90 | 45.33 | $30.00 | 5.33 | $0.00 | $79.95 | $79.95 |
| 8/11/2019 | Samantha | Cobb | $1,337.10 | 44.57 | $30.00 | 4.57 | $0.00 | $68.55 | $68.55 |
| 12/22/2019 | Lashunda | Cohen | $697.00 | 41 | $17.00 | 1 | $0.00 | $8.50 | $8.50 |
| 12/29/2019 | Lashunda | Cohen | $1,581.00 | 85 | $18.60 | 45 | $0.00 | $418.50 | $418.50 |
| 1/5/2020 | Lashunda | Cohen | $1,190.00 | 58 | $20.52 | 18 | $0.00 | $184.66 | $184.66 |
| 1/12/2020 | Lashunda | Cohen | $2,108.00 | 68.29 | $17.00 | 28.29 | $0.00 | $240.47 | $240.47 |
| 1/19/2020 | Lashunda | Cohen | $1,700.00 | 100 | $17.00 | 60 | $0.00 | $510.00 | $510.00 |
| 1/26/2020 | Lashunda | Cohen | $1,105.00 | 65 | $17.00 | 25 | $0.00 | $212.50 | $212.50 |
| 2/2/2020 | Lashunda | Cohen | $1,976.42 | 68.29 | $17.00 | 28.29 | $0.00 | $240.47 | $240.47 |
| 2/9/2020 | Lashunda | Cohen | $2,295.00 | 68.29 | $17.00 | 28.29 | $0.00 | $240.47 | $240.47 |
| 2/16/2020 | Lashunda | Cohen | $2,346.00 | 68.29 | $17.00 | 28.29 | $0.00 | $240.47 | $240.47 |
| 2/23/2020 | Lashunda | Cohen | $1,155.00 | 77 | $15.00 | 37 | $0.00 | $277.50 | $277.50 |
| 3/1/2020 | Lashunda | Cohen | $720.00 | 48 | $15.00 | 8 | $0.00 | $60.00 | $60.00 |
| 6/6/2021 | Lashunda | Cohen | $1,670.00 | 66.8 | $25.00 | 26.8 | $0.00 | $335.00 | $335.00 |
| 6/13/2021 | Lashunda | Cohen | $2,012.50 | 80.5 | $25.00 | 40.5 | $0.00 | $506.25 | $506.25 |

Form WH-55
A -

**JA2055**

**Payroll Summary**

| Check Date | Name | Hours | Total Paid | Tax Withheld | Deductions | Net Pay | Check No | Employer Liability | Total Expense |
|---|---|---|---|---|---|---|---|---|---|
| 02/08/2019 | Birch LPN, Christerine | 16.25 | 487.50 | 0.00 | 0.00 | 487.50 | DD | 0.00 | 487.50 |
| 02/08/2019 | Blakey LPN, Courtney | 17.00 | 510.00 | 0.00 | 0.00 | 510.00 | DD | 0.00 | 510.00 |
| 02/08/2019 | Bolden, Nicole L | 56.10 | 705.65 | 116.61 | 0.00 | 589.04 | DD | 68.44 | 774.09 |
| 02/08/2019 | Boone CNA, Nekisha | 50.33 | 784.95 | 0.00 | 0.00 | 784.95 | DD | 0.00 | 784.95 |
| 02/08/2019 | Bowen CNA, Shawanda DO NOT USE | 30.50 | 518.50 | 0.00 | 0.00 | 518.50 | DD | 0.00 | 518.50 |
| 02/08/2019 | Boykins CNA, Saudia DO NOT USE | 8.75 | 148.75 | 0.00 | 0.00 | 148.75 | DD | 0.00 | 148.75 |
| 02/08/2019 | Bragg LPN, Deyonna DO NOT USE | 39.25 | 1,059.75 | 0.00 | 0.00 | 1,059.75 | DD | 0.00 | 1,059.75 |
| 02/08/2019 | Branch CNA, Lakeisha | 7.50 | 127.50 | 0.00 | 0.00 | 127.50 | 40414412 | 0.00 | 127.50 |
| 02/08/2019 | Brandon LPN, Carilla DNU | 32.21 | 966.30 | 0.00 | 0.00 | 966.30 | DD | 0.00 | 966.30 |
| 02/08/2019 | Brooks LPN, Brandy | 9.83 | 294.90 | 0.00 | 0.00 | 294.90 | DD | 0.00 | 294.90 |
| 02/08/2019 | Brooks LPN, Kimberly S | 7.00 | 210.00 | 0.00 | 0.00 | 210.00 | DD | 0.00 | 210.00 |
| 02/08/2019 | Brooks RN, Tonya DO NOT USE | 11.92 | 476.80 | 0.00 | 0.00 | 476.80 | DD | 0.00 | 476.80 |
| 02/08/2019 | Brown CNA, Serenity | 8.00 | 120.00 | 0.00 | 0.00 | 120.00 | DD | 0.00 | 120.00 |
| 02/08/2019 | Brown RN, Roxanne DO NOT USE | 21.50 | 860.00 | 0.00 | 0.00 | 860.00 | DD | 0.00 | 860.00 |
| 02/08/2019 | Bun-Kamara LPN, Debra DO NOT USE | 62.52 | 1,875.60 | 0.00 | 0.00 | 1,875.60 | DD | 0.00 | 1,875.60 |
| 02/08/2019 | Burt CNA, Olga | 11.87 | 201.79 | 0.00 | 0.00 | 201.79 | DD | 0.00 | 201.79 |
| 02/08/2019 | Butler RN, Cherylaine | 8.00 | 320.00 | 0.00 | 0.00 | 320.00 | DD | 0.00 | 320.00 |
| 02/08/2019 | Callands CNA, Tashena | 40.00 | 680.00 | 0.00 | 0.00 | 680.00 | DD | 0.00 | 680.00 |
| 02/08/2019 | Campbell CNA, Jazmyn | 23.00 | 391.00 | 0.00 | 0.00 | 391.00 | DD | 0.00 | 391.00 |
| 02/08/2019 | Campbell LPN, Crystal | 9.00 | 243.00 | 0.00 | 0.00 | 243.00 | DD | 0.00 | 243.00 |
| 02/08/2019 | Canady LPN, Tatianna DO NOT USE | 8.00 | 216.00 | 0.00 | 0.00 | 216.00 | DD | 0.00 | 216.00 |
| 02/08/2019 | Carter CNA, DeQuarius | 22.00 | 374.00 | 0.00 | 0.00 | 374.00 | DD | 0.00 | 374.00 |
| 02/08/2019 | Clark RN, Tomeka DO NOT USE | 12.50 | 500.00 | 0.00 | 0.00 | 500.00 | DD | 0.00 | 500.00 |
| 02/08/2019 | Clayton CNA, Chanelle | 9.50 | 161.50 | 0.00 | 0.00 | 161.50 | DD | 0.00 | 161.50 |
| 02/08/2019 | Clayton LPN, Yolanda | 8.00 | 240.00 | 0.00 | 0.00 | 240.00 | DD | 0.00 | 240.00 |
| 02/08/2019 | Cobb LPN, Samantha | 52.86 | 1,585.80 | 0.00 | 0.00 | 1,585.80 | DD | 0.00 | 1,585.80 |
| 02/08/2019 | Collier-Taiwo RN, Morenike DO NOT USE | 10.50 | 420.00 | 0.00 | 0.00 | 420.00 | DD | 0.00 | 420.00 |
| 02/08/2019 | Collins LPN, Shanmeka DO NOT USE | 35.00 | 1,050.00 | 0.00 | 0.00 | 1,050.00 | DD | 0.00 | 1,050.00 |
| 02/08/2019 | Colquitt-Robinson LPN, Brittany -- | 32.50 | 877.50 | 0.00 | 0.00 | 877.50 | DD | 0.00 | 877.50 |
| 02/08/2019 | Conner LPN, Abigail | 44.00 | 1,320.00 | 0.00 | 0.00 | 1,320.00 | DD | 0.00 | 1,320.00 |
| 02/08/2019 | Cooke CNA, Rashawn | 30.50 | 487.50 | 0.00 | 0.00 | 487.50 | 40414413 | 0.00 | 487.50 |
| 02/08/2019 | Cooper LPN, Brenda DO NOT USE | 22.00 | 660.00 | 0.00 | 0.00 | 660.00 | DD | 0.00 | 660.00 |
| 02/08/2019 | Cranston, Elizabeth | 9.95 | 109.45 | 9.41 | 0.00 | 100.04 | DD | 10.63 | 120.08 |
| 02/08/2019 | Craw LPN, Lindsay | 29.75 | 825.00 | 0.00 | 0.00 | 825.00 | DD | 0.00 | 825.00 |
| 02/08/2019 | Crew RN, Cynthia DO NOT USE | 42.00 | 1,680.00 | 0.00 | 0.00 | 1,680.00 | DD | 0.00 | 1,680.00 |
| 02/08/2019 | Crowder LPN, Martina | 40.00 | 1,200.00 | 0.00 | 0.00 | 1,200.00 | DD | 0.00 | 1,200.00 |

Company: Medical Staffing Of America
Check dates from: 1/1/2019 - Payroll 1 to: 3/29/2019 - Payroll 1
Pay Period from: 12/25/2018 to: 03/25/2019

39  of  71

Date Printed: 02/26/2020 14:17
22891429 - RJ/5US

Steadfast 6th - 02300

**JA2056**

# Medical Staffing of America
## T/A SteadFast Medical Staffing
5750 Chesapeake Blvd Suite 301
Norfolk, Virginia   23513
office(757)321-0777  fax (757) 857-6003

**Invoice No.**          **4041**

## ═ INVOICE ═

**Customer**

| | |
|---|---|
| Name | Harrisonburg Health and Rehab |
| Address | 1225 South Resvoir Street |
| City | Harrisonburg          State VA      ZIP 22801 |
| Phone | 540-433-2623 |

| Date | 2/6/2019 |
|---|---|
| Date Due | 3/8/2019 |

| Date | Description | | | | Hourly Rate | TOTAL |
|---|---|---|---|---|---|---|
| 2/4/2019 | Kaleigh Pittman | CNA | 7.67h | 3p-1110p-30m | $26.50 | $203.26 |
| 2/1/2019 | Mea Harris | CNA | 7.5h | 3p-11p-30m | $26.50 | $198.75 |
| 2/2/2019 | Mea Harris | CNA | 8.h | 3p-1130p-30m | $26.50 | $212.00 |
| 2/2/2019 | Cynthia Malaki | LPN | 15.75h | 3p-715a-30m | $45.50 | $716.63 |
| 2/3/2019 | Cynthia Malaki | LPN | 15.67h | 3p-710a-30m | $45.50 | $712.99 |
| 1/30/2019 | Jem Gulev | LPN | 14.h | 6p-830a-30m | $45.50 | $637.00 |
| 2/2/2019 | Johnelle Montero | LPN | 15.5h | 7a-11p-30m | $45.50 | $705.25 |
| 2/3/2019 | Johnelle Montero | LPN | 16.h | 7a-1130p-30m | $45.50 | $728.00 |
| 2/4/2019 | Johnelle Montero | LPN | 8.h | 3p-1130p-30m | $45.50 | $364.00 |
| 2/1/2019 | Lolitha Barksdale | LPN | 8.5h | 245p-1145p-30m | $45.50 | $386.75 |
| 2/3/2019 | Lolitha Barksdale | LPN | 11.h | 815p-745a-30m | $45.50 | $500.50 |
| 1/28/2019 | Samantha Cobb | LPN | 8.h | 3p-11p-0m | $45.50 | $364.00 |
| 1/28/2019 | Samantha Cobb | LPN | 10.h | 11p-930a-30m | $45.50 | $455.00 |
| 1/31/2019 | Samantha Cobb | LPN | 10.32h | 3p-149a-30m | $45.50 | $469.56 |
| 2/2/2019 | Shawnda Meier | LPN | 8.h | 245p-1115p-30m | $45.50 | $364.00 |
| 2/2/2019 | Shawnda Meier | LPN | 8.5h | 1115p-815a-30m | $45.50 | $386.75 |
| 2/3/2019 | Shawnda Meier | LPN | 16.5h | 3p-8a-30m | $45.50 | $750.75 |
| 2/4/2019 | Shawnda Meier | LPN | 16.5h | 3p-8a-30m | $45.50 | $750.75 |
| 2/4/2019 | Sherry Owens | LPN | 9.5h | 230p-1230a-30m | $45.50 | $432.25 |
| 2/1/2019 | Teresa Galloway | LPN | 8.08h | 245p-1120p-30m | $45.50 | $367.64 |
| 2/2/2019 | Lolita Padgett | RN | 18.5h | 630a-130a-30m | $56.50 | $1,045.25 |
| 2/3/2019 | Lolita Padgett | RN | 8.75h | 630a-345p-30m | $56.50 | $494.38 |

**Billing Address:**
c/o Medical Staffing of America
T/A Steadfast Medical Staffing
P.O. Box 781580
Philadelphia, PA 19178-1580

*Lisa Pitts, Administrator*

| TOTAL | $11,245.44 |
|---|---|

Office Use Only

*Thank you for using SteadFast Medical Staffing!*

**Steadfast 6th 037111**

## JA2057



# Medical Staffing America
## T/A SteadFast Medical Staffing
5750 Chesapeake Blvd Suite 301
Norfolk, Virginia  23513
(757)321-0777 fax (757) 857-6003

Invoice No.          4043

$$= INVOICE =$$

**Customer**

| Name | Louisa Health and Rehab (MFA) |
| Address | 210 Elm Ave. |
| City | Louisa                    VA        23093 |
| Phone | 540-967-2250 |

| Date | 2/6/2019 |
| Date Due | 3/8/2019 |

| Date | Independant Contractor | | | | Bill Rate | TOTAL |
|---|---|---|---|---|---|---|
| 1/29/2019 | Desiree Nichols | LPN | 8.08h | 245p-1120p-30m | $45.50 | $367.64 |
| 1/30/2019 | Desiree Nichols | LPN | 8.h | 245p-1115p-30m | $45.50 | $364.00 |
| 2/2/2019 | Desiree Nichols | LPN | 8.h | 245p-1130p-30m | $45.50 | $364.00 |
| 2/4/2019 | Desiree Nichols | LPN | 8.h | 245p-1115p-30m | $45.50 | $364.00 |
| 1/29/2019 | Samantha Cobb | LPN | 8.72h | 3p-1213a-30m | $45.50 | $396.76 |
| 1/30/2019 | Samantha Cobb | LPN | 8.25h | 3p-1145p-30m | $45.50 | $375.38 |
| 2/4/2019 | Samantha Cobb | LPN | 7.57h | 3p-1104p-30m | $45.50 | $344.44 |
| 1/31/2019 | Samara Nurse | LPN | 8.25h | 245p-1130p-30m | $45.50 | $375.38 |
| 2/2/2019 | Sherry Owens | LPN | 3.h | 12p-3p-0m | $45.50 | $136.50 |
| 2/2/2019 | Sherry Owens | LPN | 8.25h | 3p-1145p-30m | $45.50 | $375.38 |
| 2/3/2019 | Sherry Owens | LPN | 7.5h | 7a-3p-30m | $45.50 | $341.25 |
| 2/3/2019 | Sherry Owens | LPN | 8.h | 3p-1130p-30m | $45.50 | $364.00 |
| 2/1/2019 | LaShawn Wright | RN | 8.h | 3p-1130p-30m | $56.50 | $452.00 |
| 2/4/2019 | LaShawn Wright | RN | 8.h | 3p-1130p-30m | $56.50 | $452.00 |

Billing Address:
BlueVine Capital Inc.
c/o Medical Staffing of America
T/A Steadfast Medical Staffing
P.O. Box 781580
Philadelphia, PA 19178-1580

Lisa A Pitts Admin

**TOTAL**     $5,072.71

Office Use Only

**JA2058**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

|  |  |  |
|---|---|---|
| MARTIN J. WALSH, | ) | |
| SECRETARY OF LABOR, | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| LABOR, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No. 2:18-cv-226** |
| MEDICAL STAFFING OF AMERICA, LLC, | ) | |
| D/B/A STEADFAST MEDICAL STAFFING, | ) | **Case No. 2:19-cv-475** |
| | ) | |
| & | ) | |
| | ) | |
| LISA PITTS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR RELIEF IN
CONNECTION WITH PLAINTIFF'S TRIAL EXHIBIT PX-21, AND OPPOSITION TO
PLAINTIFF'S MARCH 11 "UPDATED BACK WAGE COMPUTATIONS"**

The Department of Labor ("DOL" or "the Department") introduced at trial materially inaccurate evidence to support its backpay computation. DOL's response to the motion by Steadfast Medical Staffing ("Steadfast") and Ms. Lisa Pitts to correct plain errors in trial exhibit PX-21 (ECF 335) is striking for what it does *not* address. DOL does not deny that when creating PX-21, its backpay computation table, it consulted Steadfast's payroll records, and then repeatedly doubled or otherwise increased the hours shown on those payroll records when entering data in the "Total Hours" column of PX-21. Nor does DOL deny that even though Steadfast's payroll records for its 80 W-2 employees show the regular hours, regular rate, overtime hours, and 1.5x overtime rate for each worker, it nonetheless intermixed these workers with approximately 900

1

**JA2059**

1099 workers on PX-21, and sought to recover overtime "backpay" that Steadfast has already paid. Simply put, the Department has refused – as it did when Steadfast attempted to resolve these concerns without the Court's involvement – to meaningfully engage on these points.

It may be that these mistakes were just that – mistakes of the sort that sometimes happen in complex litigation. But it is not appropriate is for DOL to double down, and seek to profit from these mistakes at Steadfast's expense, while accepting no responsibility for the content of the evidence created by DOL's team members, authenticated by DOL's witnesses, and introduced by DOL's attorneys at trial. Nor is it appropriate for DOL to suggest that Steadfast be sanctioned for filing a motion which points out that the Court has ample discretion under the Federal Rules of Civil Procedure to order review and correction of these errors. To the contrary, Steadfast is arguing for the just result, at a time when the Court has not yet entered *any* order specifying or adopting a final backpay dollar figure, or a corresponding liquidated damages award.

The Court's final order directing Steadfast to pay backpay and liquidated damages in a sum certain should be accurate. The DOL's disagreement with this simple principle is troubling. The Department's main argument in favor of the opposite result boils down to the assertion that it is too late to correct the hundreds (and potentially thousands) of mistakes identified by Steadfast. This argument misconstrues the applicable rules and controlling law, misstates the record concerning the sequence of pertinent pretrial and trial events, and incorrectly frames DOL's written discovery responses and testimony of Department witnesses during deposition and at trial – certain of which contributed to the delay in unearthing material data entry errors buried within the 10,000 individual line-item entries in PX-21.

**JA2060**

**ARGUMENT**

There appears to be no dispute that the DOL's backpay computation table is infected with serious material errors, in particular the doubling or arbitrary increasing of "Total Hours" when compared to the corresponding hours shown in the Steadfast payroll records on which PX-21 was supposedly based, and the improper inclusion of dozens of W-2 employees who Steadfast's payroll records confirm have already received their proper overtime pay. The question before the Court is what, if anything, should be done about it.

Because there is not yet a final order directing Steadfast to pay a specific dollar figure in backpay and liquidated damages, the Court has the power under Rules 54(b), 52(b), and 60(a)-(b) to order DOL to review its backpay computation table, correct the categories of error identified by Steadfast, and explain how those errors were made in the first place. Correcting PX-21 would result in a computation table that conforms to the sworn testimony of DOL's witnesses concerning how PX-21 was supposedly created, and would ensure that backpay computations derived from PX-21 are consistent with the methodology adopted by the Court in its January 14 memorandum opinion. *See* ECF 324 at 15-16, ¶¶ 82-85. In addition, fixing the overcalculations *and* undercalculations described in Steadfast's motion is the only way to arrive at a backpay award that does not understate or overstate the amount each Steadfast team member is owed under the Court's opinion, which is precisely the result the Department should be seeking to achieve.

DOL's position appears to be that the Court should do nothing. The "do nothing" approach has little to recommend it. It would force the Court to enter an order directing "backpay" under the Fair Labor Standards Act ("FLSA") to dozens of W-2 employees who were properly paid at the statutory 1.5x overtime rate. Further, it would result in a substantial payment of "backpay" for thousands of hours that *were never worked at all*. *See* ECF 331-1 at 13 (describing more than 300

3

**JA2061**

PX-21 entries out of the 573 sampled). It would also leave intact the *undercalculations* identified in Steadfast's motion, knowingly depriving certain Steadfast team members of backpay they are lawfully entitled to under the Court's opinion. *See* ECF 331-1 at 11, n.3. In contrast, reviewing PX-21 and correcting the categories of error identified by Steadfast would avoid these problems, and would allow the Court to enter an accurate final backpay award and liquidated damages order free of clear, easily addressed errors.

I.      **DOL has not disputed that PX-21 contains significant material errors.**

Defendants have identified four categories of systematic data entry error embedded in PX-21, and revealed through Steadfast's review and sampling effort: (1) improper inclusion of entries for W-2 workers who were already paid the proper statutory overtime rate, (2) [and (3)] doubling or otherwise markedly increasing the actual total hours worked by workers, as captured in Steadfast's payroll records, when entering the "Total Hours" figure in PX-21; and (4) collapsing hours worked across multiple workweeks into a single workweek. ECF 331-1 at 3, 12-14.

The first three categories are a result of inaccurate entry of information from the Steadfast payroll records – which the Department used in creating its exhibit – into PX-21. *See id.* at 5, 13 (discussing DOL trial witness testimony describing reliance on Steadfast payroll records when creating PX-21 backpay computation table). No other documents were needed to avoid the data entry errors embedded within PX-21.[1] For the W-2 employees, DOL should have either noted the

---

[1] The "multiple workweek" error discussed in Steadfast's motion, arising from occasional delayed submission of timesheets by nurses working for Steadfast's healthcare facility clients, was discussed in deposition testimony, and was also the subject of trial testimony by Steadfast witnesses. ECF 331-1 at 5, 14. Steadfast believes the trial evidence on this issue preserves for potential appeal arguments relating to DOL's failure to account for and correct the "multiple workweek" error when computing alleged backpay. However, unlike the other categories of PX-21 data entry error identified by Steadfast, this category arguably relates in part to the DOL's methodology (as opposed to simply the data entry process), and avoiding this error requires cross-reference comparisons between Steadfast's payroll records and the invoices it sends its healthcare

proper overtime pay they had already received, or simply omitted these W-2 employees from PX-21 entirely. Instead, these W-2 workers were included, but without indication that they had received their statutory overtime pay. *See id.* at 13 and Exhibit 3 (ECF 331-7) (table listing each of the 80 W-2 employees improperly included in PX-21, and showing the specific Bates ranges of the Steadfast payroll detail records documenting the pay information required by the FLSA for each workweek, including regular hours, regular rate of pay, overtime hours, and 1.5x overtime rate of pay for each such employee).[2]

In inserting data into the "Total Hours" column in PX-21, DOL also doubled, or otherwise increased, the number of hours Steadfast workers actually worked. ECF 331-1 at 13. The scope of this error is concerning: of the 573 randomly sampled PX-21 entries, *353* were inaccurate, in that they reflected in the PX-21 "Total Hours" column a number of hours doubled or otherwise larger than the hours shown in the corresponding Steadfast payroll records. Had the correct number of hours been entered, the rest of the computation was straightforward. For this reason, Steadfast did not object to DOL's backpay computation formula, which is sound *if correct data is entered*. Because it appears that PX-21 instead uses incorrect numbers – larger than the figures in Steadfast's payroll records – those computations have instead led to an improperly inflated backpay figure.

---

facility clients. *See id.* at 5, 14. For purposes of Steadfast's present motion, it may therefore be appropriate to distinguish between this issue and the other categories of clear PX-21 error identified by Steadfast (improper inclusion of W-2 employees, and doubling or arbitrarily increasing the hours shown on Steadfast's payroll records when entering data into the corresponding "Total Hours" column on PX-21).

[2] The improper inclusion of W-2 employees has continued (to a lesser degree and with smaller economic impact) in DOL's "Exhibit A" computation attached to its March 11 filing (ECF 329-1). A summary chart listing these employees and the improper alleged "backpay" for each is attached as **Reply Exhibit 1**.

**JA2063**

Exhibit 4 to Steadfast's Motion illustrate the financial impact of such data entry errors. *See* ECF 331-8. For example, Steadfast's Payroll Summary reflects that worker D.F. was paid $1,500.00 for 50 hours on February 5, 2021. ECF 331-8 at 7. However, in PX-21, the DOL's corresponding entry states that D.F. was paid $3,000 for 100 hours in the "Gross Pay" and "Total Hours" columns. *Id.* at 6. By doubling the "Gross Pay" and "Total Hours", the backpay calculation jumps exponentially from $150.00 for the ten overtime hours reflected in Steadfast's Payroll Summary, to $900.00 in alleged "back pay" for the 60 hours of purported "overtime" entered in PX-21. *Id.* at 6. When repeated across hundreds of line entries, this error results in a substantial overage.

DOL's opposition brief does not directly address any of this. Nor does DOL dispute the potential impact of these errors on the Court's forthcoming final backpay and damages calculation. Even Steadfast's limited review effort identified $193,071.35 in improper alleged backpay resulting from the W-2 error, and an additional $122,380.43 in improper alleged backpay resulting from data entry errors in which hours were doubled or improperly increased. *See* ECF-331-1 at 14. When factoring in the potential award of liquidated damages, the dollar impact of these documented data entry errors exceeds $600,000.

Of course, with respect to the doubling and arbitrary increasing of the hours shown on Steadfast's payroll records, the sampling totals above may only scratch the surface of the total financial impact of these errors within the context of the DOL's $3.6 million PX-21 backpay computation. As explained by Steadfast, the total alleged dollar value of the 573 sampled entries was $318,771.40, and $188,037.05 of this figure was tied to PX-21 entries in which the "Total Hours" column was either doubled or otherwise improperly increased. *See* ECF 331-5 (Exhibit 1C, Category 3 and Category 4 summary calculations at bottom of chart). When the data entry

6

errors were corrected and the proper hours used instead, this $188,037.05 in alleged backpay shrunk by 65%, to $65,656.62. *See id.* An error rate of this magnitude raises serious concerns about the reliability of DOL's PX-21 data entry process, and suggests that the financial impact of these errors may amount to hundreds of thousands or even millions of dollars of exposure for Steadfast, particularly when factoring in the doubling of any backpay owed in connection with a potential liquidated damages award.[3]

## II. The timing of Defendants' motion is not a basis for denying the requested relief, or ratifying material data entry errors in DOL's backpay computation table.

DOL would likely respond to everything in Section I above by saying "Too late. Steadfast should have made these arguments at trial." This position depends upon a misapprehension of the framework for post-trial relief established by the Federal Rules of Civil Procedure, including specifically Rules 54(b), 52(b), and 60(a)-(b). *See* Section III *infra*. And in terms of the facts, DOL's position should be evaluated in relation to the full sequence of pertinent pretrial events and trial testimony concerning DOL's creation of its backpay computation table. Specifically, it is important to distinguish between what DOL (through witnesses and discovery responses) said about its backpay computation table *prior* to trial, versus the specific information provided in testimony *at trial*, as it is primarily the latter (when adopted by the Court) that highlighted the

---

[3] Steadfast has continued to devote resources to this sampling effort during the second half of March, with a specific focus on identifying PX-21 entries in which the "Total Hours" column was doubled or otherwise increased when compared to the hours shown in Steadfast's corresponding Bate-stamped payroll summaries used by the DOL. The cumulative number of PX-21 entries now reviewed through this sampling effort is 1152, representing $546.296.01 of the $3.6 million in alleged backpay under PX-21. When the data entry errors are corrected, this figure is reduced to $212,932.35 (i.e., the cumulative errors within these entries suggest an overage of $333,363.66, an error rate of approximately 61.02%). An updated spreadsheet presenting these cumulative sampling results is attached as **Reply Exhibit 2**.

possibility of material data entry errors scattered throughout the 10,000 individual backpay computation line-item entries in PX-21.

Before trial, DOL offered testimony about its backpay computation process through the deposition of Alvaro Mazuera, the DOL Wage and Hour Investigator responsible for conducting interviews with Steadfast personnel and team members, and developing a backpay computation as part of DOL's investigation. Mazuera was unable to testify at trial in September 2021 due to medical illness, but his February 2019 deposition transcript was admitted into evidence as DX-2. *See* Tr. 1119:17-20, 1123. In a nutshell, Mazuera testified that he reviewed weekly payroll records to verify the hours worked (Depo. Tr. 24-25), that he transcribed the hours shown on the payroll records into the official DOL form for computing backpay (Depo. Tr. 35), that he was the only DOL team member involved in looking at payroll records relating to his investigation (Depo. Tr. 39), and that he personally was responsible for inputting the data from Steadfast's payroll records when using DOL's template form for backpay computations (Depo. Tr. 232-33).

Mazuera did not address the issue of doubling or otherwise inflating the number of hours worked when creating the "Total Hours" column in PX-21. Nor did Mazuera's testimony address what was later revealed at trial – namely, that DOL somehow interpreted Steadfast's payroll records as repeatedly showing nurses working in excess of 168 hours per week, and then adjusted those entries down to an "average" of 112 hours when transposing data from Steadfast's payroll records into DOL's backpay computation table. *See* ECF 331-1 at 6 (discussing "red flag" concerns arising DOL trial testimony relating to "168 hours" issue).

Mazuera's deposition testimony was augmented by DOL's written discovery responses regarding the Department's approach to backpay computations. DOL's response to Steadfast's interrogatory No. 15 identified Mazuera (and no one else) as the person who "performed the back

8

**JA2066**

wage computations and relied upon Defendants' payroll records and employee statements when assessing back wages." *See* DOL February 11, 2019 Interrogatory Responses at 11-12 (attached as **Reply Exhibit 3**). DOL supplemented its February 2019 interrogatory responses in September 2020, again specifically identifying Mazuera (*and no one else*) as having "review[ed] payroll records provided by Defendants and completed back wage computations for employees falling within the scope of the *Steadfast II* litigation, i.e., employees hired by Defendants at some point after June 10, 2017[.]" *See* DOL September 3, 2020 supplemental interrogatory responses at 4 (attached as **Reply Exhibit 4**). DOL's supplemental September 2020 responses also summarized Mazuera's backpay computation method:

> Investigator Alvaro Mazuera performed the back wage computations and relied upon Defendant's payroll records when computing back wages. Investigator Mazuera identified each employee's regular rate by dividing the gross compensation the employee received during each workweek covered in *Steadfast II* by the number of hours the employee worked that week. Once Investigator Mazuera calculated the regular rate, he multiplied that number by one-half to determine each employee's half time rate. Investigator Mazuera then multiplied the half-time rate by the number of hours the employee worked over 40 during the applicable workweek to determine the amount of compensation due.

*See* **Reply Exhibit 4** at 8.

Nowhere in this summary did DOL mention the "168 hours" issue that was disclosed at trial. Nor did DOL indicate that Mazuera's backpay computations multiplied the half-time rate by the number of hours worked over 40 *even for those W-2 employees who Steadfast's payroll records already clearly showed as having been paid at 1.5x their regular rate for such hours*. DOL did not state that hundreds or thousands of entries in its backpay computation table began by doubling or otherwise increasing "the number of hours the employee worked" in a specific workweek when compared to the numbers actually shown in "Defendant's payroll records" on which Mazuera purportedly relied. And DOL did not identify either Roberto Melendez or Yaozu Xiong (its

**JA2067**

backpay trial witnesses) as persons with knowledge who played a significant role in calculating the alleged backpay and creating DOL's backpay computation table. In fact, neither Melendez nor Xiong were identified by DOL as persons with knowledge until eight days before trial, roughly 17 months after discovery had closed.

These details and this sequence of events (which go unmentioned in the DOL's opposition brief) provide context for why Steadfast did not perform aggressive sampling in search of data entry errors in PX-21 prior to trial. DOL's computation methodology, as described by its witnesses and in its interrogatory responses, was sound. When the Court specifically ordered Steadfast to perform a "math check" on DOL's computations (in May 2019), Steadfast promptly did so, and identified a small number of corrections to be made. DOL periodically added workers to its backpay computation as the litigation moved forward after May 2019 (in part because Steadfast's business grew rapidly during the pandemic).

As noted above, the data entry problems now revealed through extensive sampling were identified in part as result of DOL's trial disclosure of the "168 hours" issue. And DOL's own trial witness testified that DOL itself would not deem it "efficient" to review each of the thousands of individual entries in PX-21, choosing instead to rely on sampling. 9/2/21 Tr. at 466 (R. Melendez, DOL District Director, Wage & Hour Division). But whatever pretrial sampling DOL may have performed, those results were not disclosed to Steadfast, and DOL does not appear to have made corrections to PX-21 as a result. The DOL deposition testimony and discovery responses summarized above suggested that DOL's PX-21 computation process began by simply entering the hours shown on Steadfast's payroll records into the "Total Hours" column of PX-21. DOL certainly did not reveal that its PX-21 computations were tainted by the W-2 and "increased hour" errors described at length above. In addition, Steadfast's sampling suggests the "doubling" and

"arbitrary increase" errors in PX-21 are heavily concentrated in late 2019, 2020, and early 2021, *after* Mr. Mazuera had been deposed, and *after* Steadfast had submitted its May 2019 "math check" as per the directed the Court.

In this situation, Steadfast respectfully submits that the primary concern of all involved – Steadfast, the DOL, and the Court – should be ensuring that any backpay and liquidated damages award accurately reflects the data in the Steadfast payroll records upon which DOL has said its PX-21 computations were based. Where PX-21 understates the backpay owed, such errors should be fixed, and a final backpay order should give all eligible workers the appropriate measure of financial relief they are entitled to under the Court's opinion. By the same token, where PX-21 overstates the backpay allegedly owed, these errors should also be corrected, because Steadfast should not be compelled to pay overtime wages for overtime hours already properly compensated, or for alleged "overtime hours" that in reality were never worked at all.

## III.   The Court is empowered to grant relief under Rules 54(b), 52(b), and 60(a)-(b).

Steadfast seeks an order directing DOL to review its backpay computation, correct the data entry errors identified by Steadfast, identify and correct other PX-21 entries that reflect these same errors, and provide an explanation as to how data entry errors of this frequency and magnitude came to exist in the first place. Sections I and II above outline the factual predicate for Steadfast's request. There is also strong legal support for Steadfast's motion, under Rules 54(b), 52(b), and 60(a)-(b), which collectively provide a framework under which District Courts are empowered to grant post-trial relief in order to resolve disputes, correct errors, fix mistakes, and prevent manifest injustice.

11

**JA2069**

**A.      Steadfast is entitled to relief under Rule 54(b).**

Rule 54(b) permits the Court broad flexibility to revise interlocutory orders prior to final

judgment, for a range of purposes including preventing a "clear error causing manifest injustice."

*See* ECF 331-1 at 9 (citing *Carlson v. Boston Scientific Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).

The DOL's main objection to invoking Rule 54(b) is the assertion that the Court's January 14

order was a "final judgment" rather than an interlocutory order, and thus Rule 54(b) is supposedly

inapplicable. *See* ECF 335 at 3-4.

This assertion is incorrect. Any "order or other decision, however designated, that

adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does

not end the action" and "may be revised at any time before the entry of a judgment adjudicating

all the claims and all the parties' rights and liabilities." *See* Fed. R. Civ. P. 54(b). Both the Fourth

Circuit and this Court have consistently held that where an order on liability leaves unresolved the

final computation on pecuniary issues such as damages, prejudgment interest, and attorney fees,

such an order is interlocutory rather than final under Rule 54(b). *See, e.g., Krus v. Krus*, 2021 WL

5275546, at *1 (4th Cir. Nov. 12, 2021) (District Court order not final for purposes of Rule 54(b)

where it did not fix the amount of damages owed); *Driskell v. Summit Contracting Corp.*, 2018

WL 6978478 at *1 (4th Cir. Nov. 6, 2018) (where the District Court had to make "additional

damages determinations," the order the parties sought to appeal was not a final order under Rule

54(b)); *Calderon v. GEICO Gen. Ins. Co.*, 754 F.3d 201, 204, 207 (4th Cir. 2014) (a judgment on

liability that does not fix damages is not a final judgment because the assessment of damages is

part of the merits of the claim that must be determined); *Hannah P. v. Haines*, 2022 WL 824829

(E.D. Va. March 18, 2022) (where District Court found in favor of plaintiff on claim under the

Family and Medical Leave Act via memorandum opinion that covered liability and damages, but

**JA2070**

left unresolved the computation of prejudgment interest and the issue of attorney fees, the order was not "final", and plaintiff's post-trial motion to revise memorandum opinion was governed by Rule 54(b), rather than Rule 59).

Here, the Court's January 14 order enjoins Defendants from further violations of the FLSA, but does not direct Steadfast to pay backpay damages in a specified amount, does not impose a specific figure for a liquidated damages award, and directs both parties to take additional action (including producing additional payroll records and performing additional computations) in connection with any proposed final backpay calculation from the DOL. *See* ECF 324 at 30-31; ECF 325. Accordingly, per the Fourth Circuit cases cited above, the Court's January 14 order is interlocutory rather than final, and the Court remains empowered at this stage to grant relief under Rule 54(b).

The DOL's other argument under Rule 54(b) involves generalized assertions concerning "waiver," but the cases it cites are appellate decisions involving issues that were never raised at all in the trial court. *See* ECF 335 at 7. This is the exact opposite of the situation here, where Steadfast is raising its concerns in the District Court, via District Court rules that exist for the specific purpose of providing a framework enabling post-trial, pre-appeal relief. Steadfast has identified "clear errors" in DOL's PX-21 backpay computation table, which generated a $3.6 million figure for alleged backpay that was incorporated into the Court's findings of fact. Given the circumstances described above, and given that DOL has not offered any explanation for the hundreds of material data entry errors that are scattered throughout thousands of multi-column line-item entries in PX-21, it would be a manifest injustice to knowingly enter a backpay judgement and liquidated damages award that incorporates rather than corrects these errors. *See Williams v. Shelby Cty. Bd. of Education*, 2021 WL 698861 at *3 (W.D. Tenn. Feb. 23, 2021).

**B.**     **Steadfast is entitled to relief under Rule 52(b).**

Steadfast's motion also argued in favor of relief under Rule 52(b). ECF 331-1 at 10. The DOL argues that Rule 52(b) does not apply, because under the rule motions must be brought within 28 days after the entry of judgment. *See* ECF 335 at 8. However, the Court has not yet entered a judgment directing Steadfast to pay a set figure in backpay, and has not announced or imposed a set dollar figure in connection with a potential liquidated damages award. In this circumstance, the Court's January 14 order (both its memorandum and the accompanying stand-alone "Judgment in a Civil Case") are interlocutory as to the issue of damages, and thus the Court remains empowered to grant post-trial relief with respect to the issues raised by Steadfast. *See High Country Arts & Craft Guild v. Hartford Fire Ins. Co.*, 126 F.3d 629, 635 (4th Cir. 1997) (emphasizing that District Courts have "general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment") (citing and quoting *Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991)). And because Rule 52(b) does not affirmatively prohibit a *pre-judgment* motion in relation to an issue or claim that has not yet been finally adjudicated, Steadfast is permitted to seek relief (to prevent manifest injustice) under Rule 52(b). *See, e.g., Greenwood v. Greenwood*, 234 F.2d 276, 278-79 (3rd Cir. 1956); *Lyondell Chem. Co. v. Albemarle Corp.*, No. 1:01-CV-890, 2006 WL 8441091, at *1 (E.D. Tex. Sept. 20, 2006) (granting post-trial motion under Rule 52(b), prior to entry of judgment).

The DOL argues that because Steadfast did not identify and litigate the prejudicial data entry errors embedded in PX-21 prior to or during trial, it cannot invoke Rule 52 now. ECF No. 335 at 9-10. However, District Courts have considerable discretion in deciding whether to grant Rule 52(b) motions. *See Frappier v. Countrywide Home Loans, Inc.*, 750 F.3d 91, 99 (1st Cir. 2014). DOL invokes a scattered series of cases from various jurisdictions, but none of these cases

**JA2072**

involve a situation in which a plaintiff (let alone a federal agency) (a) prepared a damages computation containing thousands of multi-column entries spread across hundreds of pages; (b) offered witness testimony and discovery responses consistently stating that the damages computation had been created using specific data points easily drawn from the defendant's business records; (c) erred hundreds or thousands of times when entering those data points into its damages computation spreadsheet, resulting in a substantial overstatement of the damages owed; (d) refused to address or even acknowledge those errors when the defendant sought to resolve the issues in a cooperative manner; and (e) submitted a post-trial damages computation that incorporated the full dollar amount of the flawed damages computation, without informing the Court of the existence and impact of the errors the defendant had brought to the plaintiff's attention prior to the plaintiff's post-trial submission. Against this unique backdrop, it is well within this Court's discretion to grant Steadfast the limited relief it requests, so that an eventual final order on backpay and liquidated damages will be free of clear and prejudicial errors, and consistent with the underlying record evidence.

The DOL also uses the Rule 52(b) section of its opposition brief to make arguments that have no obvious connection to Rule 52. Specifically, the DOL devotes several pages to suggesting that Steadfast somehow wishes to force DOL to consult records other than the Steadfast payroll records DOL has already said it used when creating PX-21. *See* ECF 335 at 10-12. As explained above, this is simply not the case. Footnote 3 on page 7 *supra* notes that Steadfast is not pressing the "overlapping workweeks" issue in connection with the instant motion, in part because it believes that issue was addressed through trial testimony of multiple defense witnesses, but also because resolving it would require a cross-reference to invoices sent by Steadfast to its healthcare facility clients. However, the W-2 error could have been avoided simply by looking at Steadfast's

15

**JA2073**

payroll detail records, which set forth for each workweek the regular hours, regular rate, overtime hours, and 1.5x overtime rate for each W-2 employee. *See supra* at 4-5. These payroll detail records for W-2 employees are the exact records Steadfast was required to maintain under the FLSA. It makes little sense for DOL to blame Steadfast for the fact that DOL did not incorporate the pertinent information from these records into PX-21, especially when DOL's witnesses and discovery responses have consistently stated that PX-21 was created using the information drawn from Steadfast's payroll records. *See supra* at 8-9.

Similarly, the overcounting of hours in PX-21 cannot be blamed on Steadfast's payroll records. These records state the total hours worked by each Steadfast team member in each workweek, and DOL has said that it entered these hours into the "Total Hours" column on PX-21. DOL has not yet explained how or why this data entry process resulted in such a high percentage of PX-21 entries in which the hours were improperly doubled or otherwise increased. But no matter the explanation, both sides presumably agree that the solution to this particular problem lies in entering the correct hours shown on Steadfast's payroll records – no other records are needed.

## C.   Steadfast is entitled to relief under Rule 60(a)-(b).

Steadfast's motion also sought relief under Rule 60(a) and 60(b). Despite devoting a lengthy section of its opposition brief to Rule 60, the DOL's arguments under 60(a) boil down to the assertion that DOL is attempting to revisit the substance of the Court's liability ruling, rather than simply resolve what appear to be data entry errors in a backpay computation table prior to the Court's entry of a final backpay award. ECF 335 at 12-14. Under Rule 60(b), the DOL appears to suggest that Steadfast somehow made a "strategic choice" not to tackle the PX-21 data entry errors prior to trial, and that therefore no matter how many errors DOL introduced into PX-21, and no matter how significantly these errors inflated DOL's computation of alleged backpay, DOL should

**JA2074**

be entitled to benefit financially from these errors because they were not identified and challenged prior to or during trial. ECF 335 at 14-19.

DOL's arguments lack merit. Steadfast's motion cited a number of Fourth Circuit cases emphasizing that mathematical, computation, and clerical errors are appropriate bases for granting relief under Rule 60(a). *See* ECF 331-1 at 15. The DOL does not meaningfully address or distinguish these cases. This situation is a classic example of the type of clerical or computational errors suitable for correction under Rule 60(a). Each line-item entry in PX-21 purports accurately to state the backpay owed for a specific worker during a specific workweek, but the entries that relate to Steadfast's 80 W-2 workers failed to specify the overtime pay they had already received. Similarly, each entry in the "Total Hours" column of PX-21 purports accurately to state the hours for the corresponding workweek as shown on Steadfast's payroll records, but in many instances, the number entered in PX-21 was incorrectly doubled or otherwise increased.

If these data entry errors are corrected, the rest of the computation under the PX-21 formula (as described by DOL and adopted by the Court in its findings) is straightforward. Seeking corrected data and a corrected computation along these lines is a means of implementing the Court's findings, not challenging them, and as such, is perfectly appropriate under Rule 60(a). This is also why, contrary to DOL's repeated assertions, it makes little sense to suggest that Steadfast had an obligation to create its own backpay computation from scratch. *See* ECF 335 at 16-17. Any competing computation created by Steadfast would not have facilitated the process of identifying or resolving the data entry errors buried within the DOL's own computation, and Steadfast obviously did not make a "strategic choice" to accept materially harmful data entry errors of which it was unaware. If PX-21 simply did what DOL's deposition witnesses, discovery responses, and trial witnesses said it did, there would not be a problem here. And to the extent the gap between

**JA2075**

DOL's representations and PX-21's actual content is traceable to data entry errors (of commission or omission), the Court has ample discretion to order correction of those errors pursuant to Rule 60(a).

Steadfast is also entitled to relief under Rule 60(b). The Fourth Circuit has said that Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case." *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 266 (4th Cir. 1993). Relief may be granted under Rule 60(b)(6) in extraordinary circumstances where failure to grant relief would "create a substantial danger that the underlying judgment was unjust." *See Murchison v. Astrue*, 466 Fed. Appx. 225, 229 (4th Cir. 2012) (granting relief under Rule 60(b)(6) where Social Security Administration's provision of inaccurate information to EEOC led to dismissal of plaintiff's claims, giving rise to unjust result subject to correction under Rule 60(b)). Relief may be granted under Rule 60(b)(1) based on "mistake, inadvertence, or excusable neglect," provided the moving party can also demonstrate exceptional circumstances. *See, e.g., Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.,* 843 F.2d 808, 811 (4th Cir.1988); *In re A.H. Robins Co., Inc.*, 197 B.R. 613, 615 (E.D. Va. 1996).

Steadfast has explained throughout this reply the basis for finding that this situation involves an extraordinary or exceptional circumstance in which failure to grant relief would lead to a substantially unjust judgment, forcing Steadfast to pay backpay and liquidated damages for W-2 employees whose compensation was properly handled by Steadfast all along, and in relation to thousands of phantom "overtime hours" present in PX-21, but never actually worked by Steadfast's team members. The foregoing discussion also illustrates why, to the extent DOL insists Steadfast bears responsibility for not engaging in extensive sampling and cross-referencing of PX-21 to Steadfast's payroll records prior to trial, that responsibility should at most be considered

18

**JA2076**

excusable neglect, against a backdrop of exceptional circumstances. *See supra* at 15 (listing as (a)-(e) factual and procedural elements that make this situation exceptional rather than typical).

The bottom line is that the Court has the power, under the various post-trial rules cited and discussed above, to grant Steadfast the limited relief it seeks. *See Compton v. Alton S.S. Co.*, 608 F.2d 96, 100 (4th Cir. 1979) (reversing District Court's denial of Rule 60 motion, and granting relief under 60(b)(6) where shipping company first failed to appear and defend against merchant seaman's wage claim, but then belatedly challenged the District Court's excessive penalty award using affirmative defense it had arguably waived by failing to answer initial complaint). Granting Steadfast's motion will not unfairly prejudice anyone, and will protect the integrity of the litigation process, the accuracy of any final backpay figure ordered by the Court, the interests of the Department of Labor in seeing that justice is done, the interests of Steadfast's workers in ensuring that the existing PX-21 underpayments are corrected, and the interests of Steadfast in ensuring that it is not unfairly burdened with a backpay and liquidated damages award exponentially higher than what it should be under the computation formula proffered at trial by DOL, and adopted by the Court in its January 14 findings.

## IV.   The DOL is not entitled to attorney fees.

DOL concludes its opposition brief by asking that it be awarded attorney fees. This request begs the question of the merits of Steadfast's motion, which Steadfast of course believes should be granted. But even if its motion is denied, Steadfast believes its good faith in bringing the motion is readily apparent, and imposition of sanctions would be extraordinarily inappropriate. Rules 52(b), 54(b), and 60(a)-(b) are by definition designed to create space for seeking post-trial relief. Steadfast's arguments herein are well within the scope of permissible zealous advocacy under those rules. In addition, proper litigation conduct is not a one-way street, and proponents of

**JA2077**

documentary and testimonial evidence have an affirmative duty to correct material inaccuracies in that evidence to the extent they become aware of such problems. For all of these reasons, DOL's request for attorney fees should be summarily denied.

## CONCLUSION

Based upon the foregoing, Steadfast respectfully requests that its motion be granted, that the Court enter an order directing DOL to review its PX-21 backpay computation, correct the data entry errors identified by Steadfast, identify and correct other PX-21 entries that reflect these same errors, and provide an explanation as to how data entry errors of this frequency and magnitude came to exist in PX-21.

Dated: April 4, 2022

Respectfully submitted,

**MEDICAL STAFFING OF AMERICA, LLC,
LISA ANN PITTS**

By: */s/ Abram J. Pafford*
Abram J. Pafford (VSB #79999)
MCGUIREWOODS LLP
888 16th Street, NW
Suite 500
Black Lives Matter Plaza
Washington, DC 20006
Phone:  (202) 857-1725
Fax:  (202) 828-3350
apafford@mcguirewoods.com

V. Kathleen Dougherty (VSB # 77294)
MCGUIREWOODS LLP
101 West Main Street
Suite 9000
Norfolk, VA 23510
Phone:  (757) 640-3700
Fax:  (757) 640-3940
vkdougherty@mcguirewoods.com

Joshua L. Jewett (VSB #76884)
Julia A. Rust (VSB #87270)

20

**JA2078**

PIERCE / McCOY, PLLC
101 West Main Street, Suite 101
Norfolk, VA  23510
Phone: (757) 216-0226
Fax: (757) 257-0387
jjewett@piercemccoy.com
julia@piercemccoy.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2022, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

Dated: April 4, 2022                    Respectfully submitted,

                                        **MEDICAL STAFFING OF AMERICA, LLC**

                                        By: */s/ Abram J. Pafford*
                                        Abram J. Pafford (VSB #79999)
                                        McGUIREWOODS LLP
                                        888 16th Street, NW
                                        Suite 500
                                        Black Lives Matter Plaza
                                        Washington, DC 20006
                                        Phone:  (202) 857-1725
                                        Fax:  (202) 828-3350
                                        apafford@mcguirewoods.com

**JA2079**

| First Name | Last Name | BW Start Date | BW End Date | Sec 7: Total Due | Total BWs | Liquidated Damages | Grand Total | Classification |
|---|---|---|---|---|---|---|---|---|
| Abigail | Ashby | 9/19/21 | 1/23/22 | $432.07 | $432.07 | $432.07 | $864.14 | Employee |
| Meadow | Borecky | 6/20/21 | 7/18/22 | $131.17 | $131.17 | $131.17 | $262.34 | Employee |
| Keani | Cadore | 8/8/21 | 1/2/22 | $144.26 | $144.26 | $144.26 | $288.52 | Employee |
| Leigh | Edwards | 6/20/21 | 12/18/21 | $933.41 | $933.41 | $933.41 | $1,866.82 | Employee |
| LaTonya | Page | 9/12/21 | 9/19/21 | $13.82 | $13.82 | $13.82 | $27.64 | Employee |
| Shakyra | Page | 9/19/21 | 9/19/21 | $1.93 | $1.93 | $1.93 | $3.86 | Employee |
| Anna | Perez | 10/17/21 | 1/2/22 | $17.06 | $17.06 | $17.06 | $34.12 | Employee |
| Tiffany | Pierre | 8/22/21 | 8/22/21 | $18.24 | $18.24 | $18.24 | $36.48 | Employee |
| Richard | Salter | 7/4/21 | 1/2/22 | $458.57 | $458.57 | $458.57 | $917.14 | Employee |
| Stephanie | Symuleski | 8/1/21 | 8/1/21 | $7.49 | $7.49 | $7.49 | $14.98 | Employee |
| Buddy | Thibeault | 6/27/21 | 8/29/21 | $140.48 | $140.48 | $140.48 | $280.96 | Employee |
| | | | Totals: | $2,298.50 | $2,298.50 | $2,298.50 | $4,597.00 | |

**JA2080**

| Part | Total # of Entries | DOL's "Total Due" | # of Entries Reviewed | Back Wages Calculated by DOL | Correct Entries | Need Further Review | Incorrect Entries | Category 2: Included 2+ Workweeks | Category 3: Doubled Hours Paid | Category 4: Incorrect Hours Paid | DOL's Back Wages that Need Further Review | CORRECTED Back Wage Total | DOL $$ Overage |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Sampling Breakdown** | | | | | | | | |
| | Starting Totals | | Sampling Totals | | Sampling Breakdown Totals # of Entries | | | DOL's Calculation Errors # of Entries | | | Results | | |
| 1 | 315 | $92,907.33 | 106 | $62,489.18 | 41 | 10 | 55 | 3 | 22 | 30 | $3,328.77 | $46,417.70 | $16,071.48 |
| 2 | 347 | $91,770.76 | 7 | $2,622.46 | 0 | 0 | 7 | 1 | 1 | 5 | $0.00 | $280.40 | $2,342.06 |
| 3 | 287 | $127,354.46 | 39 | $40,996.75 | 0 | 5 | 35 | 7 | 7 | 21 | $6,993.87 | $18,049.24 | $22,947.51 |
| 4 | 387 | $106,175.22 | 76 | $35,607.64 | 7 | 6 | 63 | 1 | 29 | 33 | $3,349.57 | $9,399.70 | $26,207.94 |
| 5 | 490 | $173,942.84 | 173 | $78,807.80 | 41 | 13 | 119 | 17 | 16 | 86 | $9,856.36 | $29,725.46 | $49,082.34 |
| 6 | 375 | $122,366.37 | | | | | | | | | | | |
| 7 | 220 | $66,222.13 | 16 | $3,772.67 | 2 | 3 | 12 | 3 | 0 | 9 | $1,128.75 | $655.91 | $3,116.76 |
| 8 | 386 | $151,943.11 | 69 | $37,844.11 | 12 | 4 | 53 | 3 | 25 | 23 | $2,207.91 | $11,408.11 | $26,436.00 |
| 9 | 287 | $97,659.91 | 202 | $81,949.87 | 82 | 1 | 120 | 1 | 66 | 53 | $394.57 | $43,138.26 | $38,811.61 |
| 10 | 368 | $121,592.26 | 1 | $601.33 | 0 | 0 | 1 | 0 | 0 | 1 | $0.00 | $0.00 | $601.33 |
| 11 | 723 | $237,482.01 | | | | | | | | | | | |
| 12 | 415 | $131,397.60 | 57 | $33,809.62 | 0 | 15 | 42 | 1 | 12 | 24 | $9,110.28 | $8,123.72 | $25,685.90 |
| 13 | 255 | $67,613.88 | 117 | $28,891.36 | 59 | 5 | 53 | 3 | 30 | 18 | $1,789.49 | $12,311.01 | $16,580.35 |
| 14 | 346 | $96,167.62 | 83 | 21300.9 | 22 | 0 | 22 | 0 | 41 | 61 | $0.00 | $2,764.56 | $18,536.34 |
| 15 | 313 | $115,237.71 | | | | | | | | | | | |
| 16 | 229 | $78,796.67 | 7 | $6,433.16 | 0 | 2 | 5 | 0 | 0 | 5 | $1,603.00 | $28.31 | $6,404.85 |
| 17 | 351 | $98,512.16 | 59 | $28,860.04 | 10 | | 49 | 2 | 42 | 6 | $0.00 | $6,193.82 | $22,666.22 |
| 18 | 352 | $133,213.58 | 103 | 70201.91 | 16 | 6 | 81 | 0 | 63 | 18 | $3,578.43 | $22,310.69 | $47,891.22 |
| 19 | 351 | $133,213.58 | 14 | 5701.33 | 3 | 0 | 11 | 0 | 6 | 5 | $0.00 | $1,420.51 | $4,280.82 |
| 20 | 481 | $135,128.17 | 23 | 6405.88 | 1 | 0 | 22 | 0 | 13 | 9 | $0.00 | $704.95 | $5,700.93 |
| 21 | 595 | $154,316.40 | | | | | | | | | | | |
| 22 | 471 | $120,260.44 | | | | | | | | | | | |
| 23 | 244 | $74,393.22 | | | | | | | | | | | |
| 24* | | $698,977.71 | | | | | | | | | | | $0.00 |
| **TOTALS:** | 8588 | $3,426,645.14 | 1152 | $546,296.01 | 296 | 70 | 750 | 42 | 373 | 407 | $43,341.00 | $212,932.35 | $333,363.66 |

**DOL Overage Percentage:    61.02%**

| | Category 2 |
|---|---|
| TOTAL DOL DOLLAR VALUE ON CATEGORY 2 ERRORS | $23,660.88 |
| TOTAL CORRECT DOLLAR VALUE ON CATEGORY 2 ERRORS | $11,641.20 |
| DIFFERENCE BETWEEN VALUES | $12,019.68 |

| | Category 3 |
|---|---|
| TOTAL DOL DOLLAR VALUE ON CATEGORY 3 ERRORS | $176,342.48 |
| TOTAL CORRECT DOLLAR VALUE ON CATEGORY 3 ERRORS | $18,323.36 |
| DIFFERENCE BETWEEN VALUES | $158,019.12 |

| | Category 4 |
|---|---|
| TOTAL DOL DOLLAR VALUE ON CATEGORY 4 ERRORS | $135,367.09 |
| TOTAL CORRECT DOLLAR VALUE ON CATEGORY 4 ERRORS | $79,639.31 |
| DIFFERENCE BETWEEN VALUES | $55,727.78 |

**JA2081**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| R. ALEXANDER ACOSTA, <br> SECRETARY OF LABOR, <br> UNITED STATES DEPARTMENT OF LABOR, <br><br> Plaintiff, <br><br> v. <br><br> MEDICAL STAFFING OF AMERICA, LLC, a limited liability company,  d/b/a STEADFAST MEDICAL STAFFING, and LISA ANN PITTS, individually and as owner and officer of the aforementioned company, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   Case No. 2:18cv226 (RBS-RJK) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S ANSWERS AND OBJECTIONS TO DEFENDANTS' FIRST SET OF**
**REQUEST INTERROGATORIES**

Plaintiff R. Alexander Acosta, Secretary of Labor, United States Department of Labor, by

the undersigned counsel, pursuant to Rule 33 of the Federal Rules of Civil Procedure, hereby

answers and objects to Defendants Medical Staffing of America, LLC d/b/a Steadfast Medical

Staffing and Lisa Ann Pitts' ("Steadfast" or "Defendants") First Set of Interrogatories as follows:

**GENERAL OBJECTIONS**

Plaintiff objects to Defendants' First Set of Interrogatories to the extent that:

1. They seek to impose any obligations upon Plaintiff inconsistent with the Federal

Rules of Civil Procedure and/or the Local Rules of the Eastern District of Virginia.

2. Defendants' Interrogatories seek information protected from disclosure by the

informant's privilege, deliberative process privilege, attorney-client privilege, and work product

doctrine. All responses are subject to said objections. Inadvertent disclosure of any privileged

**JA2082**

information shall not constitute a waiver of any privilege, any other bases for objecting to disclosure, or the right of Plaintiff to object to the use of any information inadvertently disclosed.

3.     Defendants' Interrogatories are overbroad in terms of time, to the extent that they seek information that is not relevant to any party's claim or defense and they are not proportional to the needs of the case to the extent that they seek information that is not important in resolving the issues in the above-captioned action;

4.     Defendants' Interrogatories are overbroad in terms of scope, to the extent that they seek information that is not relevant to any party's claim or defense and they are not proportional to the needs of the case to the extent that they seek information that is not important in resolving the issues in the above-captioned action;

5.     Defendants' Interrogatories are vague, ambiguous, burdensome, and/or overbroad;

6.     Defendants' Interrogatories seek information that is not relevant to any party's claim or defense and they are not proportional to the needs of the case to the extent that they seek information that is not important in resolving the issues in the above-captioned action;

7.     Defendants' Interrogatories seek information outside the possession, custody and control of Plaintiff;

8.     Defendants' Interrogatories assume the existence of facts that are not true;

9.     Defendants' Interrogatories call for narrative, essay-type responses and not a brief categorical statement as contemplated by Fed. R. Civ. P. 33;

10.     Defendants' Interrogatories seek an opinion or contention that relates to fact or the application of law to fact;

2

**JA2083**

11.     To the extent Defendants' Interrogatories seek "all" information of a specific nature or type when a limited amount of such information would supply the requested information, on the grounds that such a requirement makes the request overbroad, unduly burdensome and oppressive; and

12.     In addition, Plaintiff objects to Defendants' instructions to the extent that they exceed the requirements of the Federal Rules of Civil Procedure.

Without waiving any of the foregoing general objections, Plaintiff hereby objects to Defendants' First Set of Interrogatories as follows:

## ANSWERS AND OBJECTIONS TO INTERROGATORIES

1.     Identify by full name, title or position, address, and telephone number each person who provided information or assisted in the development of answers to these interrogatories.

**RESPONSE TO INTERROGATORY NO. 1:** Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the informant's privilege. Plaintiff also objects to this Interrogatory on the grounds that it is overboard in substantive scope and temporal scope, seeks information that is not relevant to any party's claim or defense, and it is not proportional to the needs of the case to the extent that it seeks information that is not important in resolving the issues in the above-captioned action. Without waiving and subject to the foregoing objections, Plaintiff states the following individual(s) provided information or assisted in the development of answers to these interrogatories: Alvaro Mazuera, Wage and Hour Investigator, U.S. Department of Labor, Wage and Hour Division, 11870 Merchant's Walk, Suite 104, Newport News, VA 23606. Investigator Mazuera may be contacted through the undersigned counsel.

3

**JA2084**

2.      Identify by full name, title or position, address, and telephone number each person who has knowledge of the facts relating to the DOL's investigation of Defendants regarding their compliance with or alleged violations of the Fair Labor Standards Act, and with regard to each such person with knowledge, describe the facts of which he or she has knowledge.

**RESPONSE TO INTERROGATORY NO. 2:** Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the informant's privilege, deliberative process privilege, and attorney-client privilege. Plaintiff also objects to this Interrogatory on the grounds that it is overbroad in substantive and temporal scope and, in part, seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case to the extent that it seeks information that is not important in resolving the issues in the above-captioned action. Without waiving and subject to the foregoing objections, see Plaintiff's 26(a)(1) Initial Disclosures.

3.      Identify all documents and/or tangible things that you have in your possession or control that concern or relate to your allegations that Defendants violated the Fair Labor Standards Act as set forth in your Complaint.

**RESPONSE TO INTERROGATORY NO. 3:** Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the informant's privilege, deliberative process privilege, attorney-client privilege and work product doctrine. Plaintiff also objects to this Interrogatory on the grounds that it is overbroad in substantive and temporal scope and, in part, seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case to the extent that it seeks information that is not important in resolving the issues in the above-captioned action. Plaintiff further objects to the extent this Interrogatory seeks information already in Defendants and/or Defendants' attorney's possession, custody and control.

4

Without waiving and subject to the foregoing objections, and pursuant to Fed. R. Civ. P. 33(d), see Plaintiff's Response to Defendants' First Set of Request for Production of Documents.

4.      Identify all documents and/or tangible things that you have in your possession or control that concern or relate to your investigation of Defendants for alleged violations of the Fair Labor Standards Act.

**RESPONSE TO INTERROGATORY NO. 4:** Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the informant's privilege, deliberative process privilege, attorney-client privilege and work product doctrine. Plaintiff also objects to this Interrogatory on the grounds that it is overbroad in substantive and temporal scope and, in part, seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case to the extent that it seeks information that is not important in resolving the issues in the above-captioned action. Without waiving and subject to the foregoing objections, and pursuant to Fed. R. Civ. P. 33(d), see Plaintiff's Response to Defendants' First Set of Request for Production of Documents.

5.      Identify any and all meetings or communications that any representative of the DOL had with Defendants concerning Defendants' compliance with or alleged violations of the Fair Labor Standards Act and/or the DOL's investigation of Defendants for alleged violations of the Fair Labor Standards Act.

**RESPONSE TO INTERROGATORY NO. 5:** Plaintiff objects to this Interrogatory on the ground that the phrases "any and all meetings or communications that any representative of the DOL had with Defendants" and "Defendants' compliance with…the Fair Labor Standards Act" are vague and ambiguous. Plaintiff also objects to this Interrogatory on the grounds it assumes facts not in evidence and seeks information protected by the informant's privilege.

5

**JA2086**

Plaintiff further objects on the grounds that this Interrogatory is overbroad in temporal scope and, in part, seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case to the extent that it seeks information that is not important in resolving the issues in the above-captioned action. Plaintiff also objects to this Interrogatory on the ground that it calls for narrative, essay-type responses and not a brief categorical statement as contemplated by Fed. R. Civ. P. 33. Plaintiff further objects to the extent this Interrogatory seeks information already in Defendants and/or Defendants' attorney's possession, custody and control. Without waiving and subject to the foregoing objections, and pursuant to Fed. R. Civ. P. 33(d), see Plaintiff's Response to Defendants' First Set of Request for Production of Documents.

6.     Omitting only attorney-client privileged communications, identify any and all meetings, correspondence and/or communications that any representatives of the DOL have had concerning Defendants' compliance with or alleged violations of the Fair Labor Standards Act and/or the DOL's investigation of Defendants for alleged violations of the Fair Labor Standards Act, and all documents concerning or relating to the same.

**RESPONSE TO INTERROGATORY NO. 6:** Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the informant's privilege, deliberative process privilege, attorney-client privilege and work product doctrine. Plaintiff objects to this Interrogatory on the ground that the phrase "Defendants' compliance with…the Fair Labor Standards Act" is vague and ambiguous. Plaintiff also objects to this Interrogatory on the grounds that it is overbroad in substantive and temporal scope and, in part, seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case to the extent that it seeks information that is not important in resolving the issues in the above-captioned action. Plaintiff also objects to this Interrogatory on the grounds that it assumes facts

6

**JA2087**

not in evidence that it calls for narrative, essay-type responses and not a brief categorical statement as contemplated by Fed. R. Civ. P. 33. Without waiving and subject to the foregoing objections, and pursuant to Fed. R. Civ. P. 33(d), see Plaintiff's Response to Defendants' First Set of Request for Production of Documents. In particular, see DOL7-17 and DOL145-46.

7.      Identify all rules, regulations, or guidance documents relied upon or used by the DOL in concluding that Defendants violated the Fair Labor Standards Act, including how such rules, regulations, or guidance documents were applied during the investigation.

**RESPONSE TO INTERROGATORY NO. 7:** Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the deliberative process privilege and attorney-client privilege. Plaintiff further objects to this Interrogatory on the grounds that it is overbroad in substantive and temporal scope and, in part, seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case to the extent that it seeks information that is not important in resolving the issues in the above-captioned action. Without waiving and subject to the foregoing objections, Plaintiff states the rules, regulations, or guidance documents it relied upon are publicly available on the Department of Labor's website: www.dol.gov.

8.      Identify the entirety of the DOL's investigatory process and information relied upon by the DOL in concluding that Defendants' classification of certain workers as independent contractors violated the Fair Labor Standards Act.

**RESPONSE TO INTERROGATORY NO. 8:** Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the informant's privilege, deliberative process privilege, attorney-client privilege and the work product doctrine. Plaintiff objects to this Interrogatory on the ground that the phrase "DOL's investigatory process" is

7

**JA2088**

vague and ambiguous. Plaintiff further objects to this Interrogatory on the grounds that it is overbroad in substantive and temporal scope and, in part, seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case to the extent that it seeks information that is not important in resolving the issues in the above-captioned action. Plaintiff further objects to this Interrogatory on the grounds that it calls for a narrative, essay-type response and not a brief categorical statement as contemplated by Fed. R. Civ. P. 33. Plaintiff also objects to this Interrogatory to the extent it seeks an opinion or contention that relates to fact or the application of law to fact. Without waiving and subject to the foregoing objections, and pursuant to Fed. R. Civ. P. 33(d), see Plaintiff's Response to Defendants' First Set of Request for Production of Documents.

9.      Identify the entirety of the DOL's investigatory process and information relied upon by the DOL in concluding that Defendants' failure to maintain certain records violated the Fair Labor Standards Act.

**RESPONSE TO INTERROGATORY NO. 9:** Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the informant's privilege, deliberative process privilege, attorney-client privilege and the work product doctrine. Plaintiff objects to this Interrogatory on the ground that the phrase "DOL's investigatory process" is vague and ambiguous. Plaintiff further objects to this Interrogatory on the grounds that it is overbroad in substantive and temporal scope and, in part, seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case to the extent that it seeks information that is not important in resolving the issues in the above-captioned action. Plaintiff further objects to this Interrogatory on the grounds that it calls for a narrative, essay-type response and not a brief categorical statement as contemplated by Fed. R. Civ. P. 33.

8

**JA2089**

Plaintiff also objects to this Interrogatory to the extent it seeks an opinion or contention that relates to fact or the application of law to fact. Without waiving and subject to the foregoing objections, and pursuant to Fed. R. Civ. P. 33(d), see Plaintiff's Response to Defendants' First Set of Request for Production of Documents.

10.    Identify the factual basis for your allegation in Paragraph 6 of the Complaint that Defendants "willfully violated" the Fair Labor Standards Act, and all documents concerning or relating to the same.

**RESPONSE TO INTERROGATORY NO. 10:** Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the informant's privilege, deliberative process privilege, attorney-client privilege and the work product doctrine. Plaintiff also objects to the extent it seeks an opinion or contention that relates to fact or the application of law to fact. Plaintiff further objects to this Interrogatory on the grounds that it calls for a narrative, essay-type response and not a brief categorical statement as contemplated by Fed. R. Civ. P. 33. Without waiving and subject to the foregoing objections, Plaintiff states he does not contend Defendants willfully violated the Fair Labor Standards Act.

11.    Identify the factual basis for your allegation in Paragraph 6 of the Complaint that "Defendants improperly classified individuals, including CNAs, LPNs, and RNs, as independent contractors," and all documents concerning or relating to the same.

**RESPONSE TO INTERROGATORY NO. 11:** Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the informant's privilege and deliberative process privilege, and attorney-client privilege. Plaintiff also objects to the extent it seeks an opinion or contention that relates to fact or the application of law to fact. Plaintiff further objects to this Interrogatory on the grounds that it calls for a narrative, essay-type

9

**JA2090**

response and not a brief categorical statement as contemplated by Fed. R. Civ. P. 33. Without

waiving and subject to the foregoing objections, and pursuant to Fed. R. Civ. P. 33(d), see

Plaintiff's Response to Defendants' First Set of Request for Production of Documents.

12.     Identify the factual basis for your allegation in Paragraph 7 of the Complaint that

"Defendants failed to make, keep, and preserve adequate and accurate records of their employees,"

and all documents concerning or relating to the same.

**RESPONSE TO INTERROGATORY NO. 12:** Plaintiff objects to this Interrogatory to

the extent that it calls for information which is protected by the informant's privilege,

deliberative process privilege, attorney-client privilege and the work product doctrine. Plaintiff

also objects to the extent it seeks an opinion or contention that relates to fact or the application of

law to fact. Plaintiff further objects to this Interrogatory on the grounds that it calls for a

narrative, essay-type response and not a brief categorical statement as contemplated by Fed. R.

Civ. P. 33. Without waiving and subject to the foregoing objections, and pursuant to Fed. R. Civ.

P. 33(d), see Plaintiff's Response to Defendants' First Set of Request for Production of

Documents.

13.     Identify the factual basis for your allegation that Lisa Ann Pitts is personally liable

for any violations of the Fair Labor Standards Act as alleged in your Complaint, and all documents

concerning or relating to the same.

**RESPONSE TO INTERROGATORY NO. 13:** Plaintiff objects to this Interrogatory to

the extent that it calls for information which is protected by the informant's privilege,

deliberative process privilege, attorney-client privilege and the work product doctrine. Plaintiff

objects to this Interrogatory on the ground that the phrase "personally liable" is vague and

ambiguous. Plaintiff also objects to the extent it seeks an opinion or contention that relates to fact

10

or the application of law to fact. Plaintiff further objects to this Interrogatory on the grounds that it calls for a narrative, essay-type response and not a brief categorical statement as contemplated by Fed. R. Civ. P. 33. Without waiving and subject to the foregoing objections, and pursuant to Fed. R. Civ. P. 33(d), see Plaintiff's Response to Defendants' First Set of Request for Production of Documents.

14.     Identify the factual basis for your allegation in Paragraph 7 of the Complaint that Defendants failed to accurately record "compensation," and all documents concerning or relating to the same.

**RESPONSE TO INTERROGATORY NO. 14:** Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the informant's privilege, deliberative process privilege, attorney-client privilege and the work product doctrine. Plaintiff also objects to the extent it seeks an opinion or contention that relates to fact or the application of law to fact. Plaintiff further objects to this Interrogatory on the grounds that it calls for a narrative, essay-type response and not a brief categorical statement as contemplated by Fed. R. Civ. P. 33. Without waiving and subject to the foregoing objections, and pursuant to Fed. R. Civ. P. 33(d), see Plaintiff's Response to Defendants' First Set of Request for Production of Documents.

15.     For each item of damages that you contend you are entitled to recover in this suit on behalf of any individual or entity as a result of the alleged conduct of Defendants, please state: the total dollar amount of each such item; how each item was calculated; the identity of each person having knowledge or information regarding such item; and the identity of all documents relied upon to arrive at such amounts.

**RESPONSE TO INTERROGATORY NO. 15:** Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the informant's privilege, work product doctrine and deliberative process privilege. Plaintiff also objects to this Interrogatory on the ground that the phrase "item of damages" is vague and ambiguous. Plaintiff also objects to the extent it seeks an opinion or contention that relates to fact or the application of law to fact. Plaintiff further objects to this Interrogatory on the grounds that it calls for a narrative, essay-type response and not a brief categorical statement as contemplated by Fed. R. Civ. P. 33. Without waiving and subject to the foregoing objections, Plaintiff states Investigator Alvaro Mazuera performed the back wage computations and reviewed Defendants' payroll records when assessing back wages. Further, pursuant to Fed. R. Civ. P. 33(d), see also Plaintiff's Response to Defendants' First Set of Request for Production of Documents. In particular, see DOL23-122, 125-42, and 211-38.

16.     If any statement, as defined by Federal Rule of Civil Procedure 26(b)(3)(C), in any form, including, but not limited to, audio or video tape recordings, has been made be you or any person having knowledge of the facts relevant to the subject matter of this action, including but not limited to any individual identified on Schedule A to the Complaint, describe each statement by providing: the name and address of the individual who made the statement; the date on which the statement was made; persons present when the statement was made; whether the statement is written or recorded; the substance of the statement; and the name and address of the person from whom a copy of the statement can be obtained.

**RESPONSE TO INTERROGATORY NO. 16:** Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the informant's privilege, work product doctrine, deliberative process privilege, and attorney-client privilege. Plaintiff further

objects to this Interrogatory on the grounds that it is overbroad in substantive and temporal scope and, in part, seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case to the extent that it seeks information that is not important in resolving the issues in the above-captioned action.  Plaintiff further objects to this Interrogatory on the grounds that it calls for a narrative, essay-type response and not a brief categorical statement as contemplated by Fed. R. Civ. P. 33. Without waiving and subject to the foregoing objections, and pursuant to Fed. R. Civ. P. 33(d), see Plaintiff's Response to Defendants' First Set of Request for Production of Documents. In particular, see DOL125-42.

17.    Identify all persons whom you intend to call as witnesses in support of your claims in the trial on these matters.  For each person so identified, please provide his or her address, phone number, and a brief description of his or her anticipated testimony.

**RESPONSE TO INTERROGATORY NO. 17:** Plaintiff objects to this Interrogatory on the ground that it is premature and seeks information protected by informant's privilege and work product doctrine. Plaintiff further objects to this Interrogatory on the grounds that it calls for a narrative, essay-type response and not a brief categorical statement as contemplated by Fed. R. Civ. P. 33. Without waiving and subject to the foregoing objections, Plaintiff has not yet identified the witnesses he intends to call at trial. Plaintiff will identify the witnesses he intends to call at trial in accordance with the Court's Scheduling Order, the Federal Rules of Civil Procedure, and the Local Rules.

18.    Identify any expert witnesses that you expect to call at the trial on these matters, the substance of the facts and opinions to which each expert witness is expected to testify, and for each such witness provide a summary of the grounds for each expert opinion, and the qualifications of each expert so identified.

13

**JA2094**

**RESPONSE TO INTERROGATORY NO. 18:** Plaintiff objects to this Interrogatory to the extent that it is premature and calls for information which is protected by the informant's privilege, deliberative process privilege, attorney-client privilege and work product doctrine. Plaintiff further objects to this Interrogatory on the grounds that it calls for a narrative, essay-type response and not a brief categorical statement as contemplated by Fed. R. Civ. P. 33. Without waiving and subject to the foregoing objections, Plaintiff does not intend to call any experts at trial.

Respectfully submitted,

Kate S. O'Scannlain
Solicitor of Labor

Oscar L. Hampton III
Regional Solicitor

Samantha N. Thomas
Associate Regional Solicitor

/s/ Avni J. Amin
Avni J. Amin
Trial Attorney
*appearing pro hac vice*
Office of the Regional Solicitor
201 12th Street South
Arlington, VA 22202-5450
Phone (202) 693-9393
Fax (202) 693-9392
amin.avni.j@dol.gov

Karen Barefield (Bar No. 42572)
Office of the Regional Solicitor
201 12th Street South
Arlington, VA 22202-5450
Phone (202) 693-9351
Fax (202) 693-9392
Barefield.karen@dol.gov
Harris.LaShanta@dol.gov

14

**JA2095**

U.S. DEPARTMENT OF LABOR
Attorneys for Plaintiff

Date:   February 11, 2019

**JA2096**

## CERTIFICATION

I, Alvaro Mazuera, declare as follows:

1.　　I am employed as an Investigator in the Newport News Area Office, Newport News, Virginia office, of the U.S. Department of Labor, Wage and Hour Division.

2.　　I have read the attached Administrator's Answers and Objections to Respondent's Interrogatories and state that the answers are true to the best of my knowledge, information and belief.

3.　　I declare under penalty of perjury that the foregoing is true and correct.

Executed February 11, 2019

Alvaro Mazuera
Wage and Hour Investigator
Wage and Hour Division
U.S. Department of Labor

16

## **CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of the foregoing Plaintiff's Answers and

Objections to Defendants' First Set of Interrogatories were sent by electronic mail this 11th day

of February, 2019 to the following:

> Joshua J. Jewett
> Pierce/McCoy PPLC
> 101 W. Main St., Suite 101
> Norfolk, VA 23510
> jjewett@peircemccoy.com

> /s/ Avni J. Amin
> Avni J. Amin

**JA2098**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| EUGENE SCALIA,<br>SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF LABOR,<br><br>    Plaintiff,<br><br>    v.<br>MEDICAL STAFFING OF AMERICA, LLC, a limited<br>liability company,  d/b/a STEADFAST MEDICAL<br>STAFFING, and LISA ANN PITTS, individually and as<br>owner and officer of the aforementioned company,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 2:18-cv-226 (LEAD)<br>)<br>) Case No. 2:19-CV-475<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S SECOND SUPPLEMENTAL ANSWERS AND OBJECTIONS TO**
**DEFENDANTS' FIRST SET OF INTERROGATORIES**

Plaintiff Eugene Scalia, Secretary of Labor, United States Department of Labor, by the

undersigned counsel, pursuant to Rule 33 of the Federal Rules of Civil Procedure, hereby

provides his second supplemental answers and objects to Defendants Medical Staffing of

America, LLC d/b/a Steadfast Medical Staffing and Lisa Ann Pitts' ("Steadfast" or

"Defendants") First Set of Interrogatories as follows:

## <u>GENERAL OBJECTIONS</u>

Plaintiff objects to Defendants' First Set of Interrogatories to the extent that:

1.  They seek to impose any obligations upon Plaintiff inconsistent with the Federal

Rules of Civil Procedure and/or the Local Rules of the Eastern District of Virginia.

2.  Defendants' Interrogatories seek information protected from disclosure by the

informant's privilege, deliberative process privilege, attorney-client privilege, and work product

doctrine. All responses are subject to said objections. Inadvertent disclosure of any privileged

information shall not constitute a waiver of any privilege, any other bases for objecting to

disclosure, or the right of Plaintiff to object to the use of any information inadvertently disclosed;

3. Defendants' Interrogatories are overbroad in temporal scope, to the extent that

they seek information that is not relevant to any party's claim or defense and they are not

proportional to the needs of the case to the extent that they seek information that is not important

in resolving the issues in the above-captioned action;

4. Defendants' Interrogatories are overbroad in substantive scope, to the extent that

they seek information that is not relevant to any party's claim or defense and they are not

proportional to the needs of the case to the extent that they seek information that is not important

in resolving the issues in the above-captioned action;

5. Defendants' Interrogatories are vague, ambiguous, burdensome, and/or

overbroad;

6. Defendants' Interrogatories seek information that is not relevant to any party's

claim or defense and they are not proportional to the needs of the case to the extent that they seek

information that is not important in resolving the issues in the above-captioned action;

7. Defendants' Interrogatories seek information outside the possession, custody and

control of Plaintiff;

8. Defendants' Interrogatories seek information already in the possession of

Defendants and/or Defendants' attorneys;

9. Defendants' Interrogatories assume the existence of facts that are not true;

10. Defendants' Interrogatories call for narrative, essay-type responses and not a brief

categorical statement as contemplated by Fed. R. Civ. P. 33;

**JA2100**

11.     Defendants' Interrogatories seek an opinion or contention that relates to fact or the application of law to fact;

12.     To the extent Defendants' Interrogatories seek "all" information of a specific nature or type when a limited amount of such information would supply the requested information, on the grounds that such a requirement makes the request overbroad, unduly burdensome and oppressive; and

13.     In addition, Plaintiff objects to Defendants' Interrogatories to the extent that they exceed the requirements of the Federal Rules of Civil Procedure.

Plaintiff will respond to Defendants' Interrogatories as required by the Federal Rules of Civil Procedure. Without waiving any of the foregoing general objections, Plaintiff hereby objects to Defendants' First Set of Interrogatories as follows:

## ANSWERS AND OBJECTIONS TO INTERROGATORIES

2.     Identify by full name, title or position, address, and telephone number each person who has knowledge of the facts relating to the DOL's investigation of Defendants regarding their compliance with or alleged violations of the Fair Labor Standards Act, and with regard to each such person with knowledge, describe the facts of which he or she has knowledge.

**RESPONSE TO INTERROGATORY NO. 2:** Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the informant's privilege, deliberative process privilege, and attorney-client privilege. Plaintiff also objects to this Interrogatory on the grounds that it is overbroad in substantive and temporal scope and, in part, seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case to

**JA2101**

the extent that it seeks information that is not important in resolving the issues in the above-captioned action. Without waiving and subject to the foregoing objections:

1. Alvaro Mazuera
   Wage and Hour Investigator
   United States Department of Labor
   Wage and Hour Division
   World Trade Center
   101 W. Main Street Suite 701
   Norfolk, VA  23510

Investigator Mazuera reviewing payroll records provided by Defendants and completed back wage computations for employees falling within the scope of the *Steadfast II* litigation, i.e., employees hired by Defendants at some point after June 10, 2017 and whom Defendants failed to pay the overtime premium rate for hours worked over 40 in a workweek. All contact between Mr. Mazuera and Defendants, its counsel and representatives must be made through DOL attorney Ryma Lewis.

2. Individuals listed in the back wage computations bates-labelled DOL (Steadfast II) 0000160-0000761, who are currently, or were formerly, employed by Defendants, would have information regarding their employment relationship with Defendants, their job duties, their actual daily and weekly hours worked, Defendants' operations, their business relationship with the healthcare facilities to which Steadfast assigned them, and Defendants' failure to pay the required overtime compensation as alleged in Plaintiff's Complaint.

3. Defendant Lisa Ann Pitts
   President and Owner
   Medical Staffing of America, LLC

Upon information and belief, Defendant Pitts has knowledge regarding Defendants' operations, the employment relationship between Defendants and the individuals listed in the back wage computations bates-labelled DOL (Steadfast II) 0000160-0000761, Defendants'

4

**JA2102**

compensation, timekeeping and recordkeeping practices, and Defendants' failure to pay the required overtime compensation as alleged in the *Steadfast II* Complaint.

4.      There may be other employees who worked for Defendants during the relevant time period whose identities are not known to Plaintiff at this time and who may have relevant information regarding the employment relationship between Defendants and the individuals listed in the back wage computations bates-labelled DOL (Steadfast II) 0000160-0000761 and the violations asserted in the *Steadfast II* Complaint.

5.      Employees of healthcare facilities with which Defendants contracted to provide nursing services, including but not limited to Celia Soper (CMC II, LLC / through Corporate Legal Counsel, Laura Datz, (813)769-6280, Erica Johnson (Princess Anne H&R Ops Limited Partnership t/a Princess Anne Health & Rehabilitation Center LLC / 1948 Landstown Centre Way, Virginia Beach, VA 23456  and Korie Flanagan (Medical Facilities of America LXXVI (76) Limited Partnership t/a Charlottesville Medical Health & Rehabilitation Center/ through Associate Legal Counsel, Ramsay McCullough, (540)776-7553. These individuals have knowledge regarding Steadfast's business operations, the business relationship between Steadfast and those healthcare facilities, the business relationship between the healthcare facilities and Steadfast nurses, and the terms and conditions of the services Steadfast nurses provide to the healthcare facilities,

6.      Plaintiff reserves the right to call any witness identified by Defendants in their Fed. R. Civ. P. 26(a)(1) Initial Disclosures, Amended Fed. R. Civ. P. 26(a)(1) Initial Disclosures, and discovery responses in *Steadfast I and II*.

**FIRST SUPPLEMENTAL RESPONSE:**

Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the informant's privilege, deliberative process privilege, and attorney-client privilege. Plaintiff also objects to this Interrogatory on the grounds that it is overbroad in substantive and temporal scope and, in part, seeks information that is not relevant to any party's claim or defense and is not proportional to the needs of the case to the extent that it seeks information that is not important in resolving the issues in the above-captioned action. Without waiving and subject to the foregoing objections:

    7.    Tyrone White
          Wage and Hour Investigator
          United States Department of Labor
          Wage and Hour Division
          733 Federal Bldg.
          Norfolk, VA  23510

Investigator White assisted in the trial preparation and continuing investigation of Defendants by interviewing and transcribing informant declarations and statements. All contact between Mr. White and Defendants, its counsel and representatives must be made through DOL attorney Ryma Lewis.

    8.    John Santiago
          Wage and Hour Investigator
          United States Department of Labor
          Wage and Hour Division
          400 N. 8th Street
          Richmond, VA 23219

Investigator Santiago assisted in the trial preparation and continuing investigation of Defendants by interviewing and transcribing informant declarations and statements. All contact between Mr. White and Defendants, its counsel and representatives must be made through DOL attorney Ryma Lewis.

**JA2104**

9.      Jonathan Borsellino
        Wage and Hour Technician
        United States Department of Labor
        Wage and Hour Division
        200 Granby Mall, Mall Draw 491
        Norfolk, VA 23510

Technician Borsellino assisted in the trial preparation and continuing investigation of

Defendants by interviewing and transcribing informant declarations and statements. All contact

between Mr. Borsellino and Defendants, its counsel and representatives must be made through

DOL attorney Ryma Lewis.

**SECOND SUPPLEMENTAL RESPONSE:**

Plaintiff objects to this Interrogatory to the extent that it calls for information which is

protected by the informant's privilege, deliberative process privilege, and attorney-client privilege.

Plaintiff also objects to this Interrogatory on the grounds that it is overbroad in substantive and

temporal scope and, in part, seeks information that is not relevant to any party's claim or defense

and is not proportional to the needs of the case to the extent that it seeks information that is not

important in resolving the issues in the above-captioned action. Without waiving and subject to

the foregoing objections: *see* Plaintiff's Sixth Amended Initial Disclosures dated September 3,

2020.

15.     For each category of damages that you contend you are entitled to recover in this

suit on behalf of any individual or entity as a result of the alleged conduct of Defendants, please

state: the total dollar amount of each such item; how each item was calculated; the identity of each

person having knowledge or information regarding such item; and the identity of all documents

relied upon to arrive at such amounts.

**JA2105**

**RESPONSE TO INTERROGATORY NO. 14:** Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the informant's privilege, work product doctrine and deliberative process privilege. Plaintiff also objects to this Interrogatory on the ground that the phrase "item of damages" is vague and ambiguous. Without waiving and subject to the foregoing objections, and pursuant to Fed. R. Civ. P. 33(d), see Plaintiff's Response to Defendants' First Request for Production of Documents (*Steadfast II*), specifically documents bates-labeled DOL (Steadfast II) 0000160-0000761. Investigator Alvaro Mazuera performed the back wage computations and relied upon Defendants' payroll records when computing back wages. Investigator Mazuera identified each employee's regular rate by dividing the gross compensation the employee received during each workweek covered in *Steadfast II* by the number of hours the employee worked that week. Once Investigator Mazuera calculated the regular rate, he multiplied that number by one-half to determine each employee's half time rate. Investigator Mazuera then multiplied the half-time rate by the number of hours the employee worked over 40 during the applicable workweek to determine the amount of compensation due. In addition to back wages, Plaintiff is entitled to an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(c). As to individuals with knowledge regarding the back wages and liquidated damages owed by Defendants for their violations of the FLSA, see Plaintiff's answer to Interrogatory No. 2.

**FIRST SUPPLEMENTAL RESPONSE:**

Plaintiff objects to this Interrogatory to the extent that it calls for information which is protected by the informant's privilege, work product doctrine and deliberative process privilege. Plaintiff also objects to this Interrogatory on the ground that the phrase "item of damages" is vague and ambiguous. Without waiving and subject to the foregoing objections, and pursuant to

8

**JA2106**

Fed. R. Civ. P. 33(d), see Plaintiff's Sixth Supplemental Response to Defendants' First Request for Production of Documents (*Steadfast II*), Response to Request No. 6. Investigator Alvaro Mazuera performed back wage computations and relied upon Defendants' payroll records when computing back wages. Defendants' payroll records from September 21, 2015 to December 30, 2016, failed to include all of the information required under the FLSA. When Defendants' payroll records included hours worked and gross pay, Investigator Mazuera identified each employee's regular rate by dividing the gross compensation the employee received during each workweek by the number of hours the employee worked. When Defendants' records failed to include the required information, Investigator Mazuera calculated the regular rate by dividing the employee's gross wages during each workweek by an average of the employee's weekly work hours from other pay periods (which were documented in payroll records that included the required information) to determine the employee's regular rate. Once Investigator Mazuera calculated the regular rate, he multiplied that number by one-half to determine each employee's half time rate. Investigator Mazuera then multiplied the half-time rate by the number of hours the employee worked over 40 during the applicable workweek to determine the amount of compensation due. In addition to back wages, Plaintiff is entitled to an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(c). As to individuals with knowledge regarding the back wages and liquidated damages owed by Defendants for their violations of the FLSA, *see* Plaintiff's answer to Interrogatory No. 2.

**JA2107**

Respectfully submitted,

Mailing Address:                    **UNITED STATES DEPARTMENT OF LABOR**

U.S. Department of Labor            Kate S. O'Scannlain
Office of the Regional Solicitor    Solicitor of Labor
201 12th Street South
Suite 401                           Oscar L. Hampton III
Arlington, VA 22202-5450            Regional Solicitor
(202) 693-9393(voice)
(202) 693-9392 (fax)                Samantha N. Thomas
lewis.ryma@dol.gov                  Associate Regional Solicitor
jones.chervonti.j@dol.gov
Seifeldein.mohamed.e@dol.gov        Leah A. Williams
                                    Regional Wage and Hour Counsel

                                    */s/* Ryma Lewis
September 3, 2020                   Ryma Lewis (Bar No. 83322)

                                    /s/ Mohamed Seifeldein
                                    Mohamed Seifeldein (Bar No. 84424)

                                    /s/ Chervonti Jones
                                    Chervonti Jones
                                    *appearing pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of the foregoing Second Supplemental

Plaintiff's Answers and Objections to Defendants' First Request Set of Interrogatories were sent

by electronic mail this 3rd day of September, 2020 to the following:

Joshua L. Jewett (VSB No. 76884)
Christopher Davis (VSB No. 74809)
Julia A. Rust (VSB No. 87270)
Pierce / McCoy, PLLC
101 West Main Street, Suite 101
Norfolk, VA 23510

**JA2108**

Phone: (757) 216-0226
Fax: (757) 257-0387
jjewett@piercemccoy.com
chris@piercemccoy.com
julia@piercemccoy.com
*Counsel for Defendants*

/s/ Ryma Lewis
Ryma Lewis

11

**JA2109**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| MARTIN J. WALSH, | ) |
| SECRETARY OF LABOR, | ) |
| UNITED STATES DEPARTMENT OF | ) |
| LABOR, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **Case No. 2:18-cv-226** |
| MEDICAL STAFFING OF AMERICA, LLC, | ) |
| D/B/A STEADFAST MEDICAL STAFFING, | ) **Case No. 2:19-cv-475** |
| | ) |
| & | ) |
| | ) |
| LISA PITTS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S "MOTION FOR ENTRY OF UPDATED ORDER"

NOW COME Defendants Medical Staffing of America, d/b/a Steadfast Medical Staffing ("Steadfast") and Lisa Pitts (together, "Defendants"), by counsel, and submit this opposition to the Department of Labor's July 14, 2022 "Motion for Entry of Updated Order."

This latest motion from the Department of Labor ("DOL") should be denied, for at least three reasons. First, the Fourth Circuit has, for the time being, taken primary jurisdiction over this case by issuing a briefing schedule for Defendants' appeal of this Court's liability findings under the Fair Labor Standards Act ("FLSA"). Under the briefing schedule negotiated by DOL's appellate counsel and Defendants, the joint appendix and Defendants' opening brief are due on August 17, with DOL's response brief anticipated to follow in mid-October. As this Court has already noted, considerations of judicial economy in this context suggest it is best to avoid

1

**JA2110**

substantive engagement by two different courts in relation to the same case at the same time.

Second, DOL ignores the fact that the Court already has on its docket a March 2022 motion, fully-briefed by both Defendants *and DOL*, showing that DOL's backpay computation table, entered at trial as Plaintiff's Exhibit 21 ("PX-21"), is full of unexplained and prejudicial data entry errors. These documented errors include but are not limited to dozens of instances in which DOL sought "backpay" for Steadfast's W-2 employees who (per Steadfast's payroll records) were already paid statutory overtime at 1.5x their regular rate, and thousands of instances in which DOL doubled or otherwise apparently arbitrarily increased the number of hours shown on Steadfast's payroll records for individual nurses in individual pay periods.  These errors have resulted in an inaccurate, substantially inflated overstatement of the backpay Steadfast allegedly owes. Steadfast brought these issues to DOL's attention on March 6 – almost five months ago – and suggested that the parties cooperate on reviewing PX-21, identifying and correcting the data entry errors, and arriving at an accurate backpay number. DOL refused to engage with Defendants, and instead forced Steadfast to file a prophylactic notice of appeal.  Itmakes little sense for DOL to now complain about supposed delay in arriving at an accurate, final backpay computation.

Third, DOL has not cited any authority to support its unusual request to have the Court "update" what DOL has been insisting for months is a final order that cannot be changed or modified under any of the normal post-trial rules that govern such relief. In response to Defendants' motion to correct PX-21, DOLinsisted that none of the typical post-trial rules – Rule 52, Rule 54, and Rule 60 – were appropriate mechanisms for allowing correction of the thousands of demonstrated data entry errors in DOL's PX-21 backpay computation table. Steadfast maintains that DOL's position with respect to these rules is likely incorrect, but either way, DOL's latest motion offers no basis for believing that this Court's "inherent authority" is an appropriate

**JA2111**

mechanism for sidestepping the framework created by these rules. For these reasons, DOL's motion should be either stricken, or denied.

## PROCEDURAL BACKGROUND

The Court issued a memorandum opinion on January 14, 2022, setting forth findings of fact and conclusions of law, and concluding that Steadfast had misclassified certain of its team members in violation of the FLSA. ECF 324. The Court's opinion ordered the parties to cooperate in exchanging additional information, so that DOL could present an updated, final computation of the backpay allegedly owed. *Id.* As Steadfast has already explained, during the 60-day period in which this process was to take place, certain DOL testimony presented for the first time at trial, and adopted in the Court's January 14 memorandum opinion, led Steadfast to engage in further sampling review of PX-21. ECF 331-1 at 6-7; ECF 337 at 9-11. This sampling review revealed a disturbingly high percentage of data entry errors that had the net effect of exposing Steadfast to an alleged backpay obligation in relation to dozens of W-2 employees who had already been paid statutory overtime, and thousands of phantom "overtime" hours that were never worked at all. ECF 331-1 at 12-14; ECF 337 at 4-7.

Upon understanding the scope of these errors, Steadfast sent DOL a letter on March 6, alerting it to the existence, extent, and financial impact of the PX-21 data entry hours.  Steadfast suggested that the parties cooperate to obtain a modest extension in order to sort out and correct any errors present in PX-21, and arrive at an accurate final computation of the backpay allegedly owed. ECF 331-2. DOL declined this request, and refused to respond to multiple follow-up inquiries from Steadfast. ECF 331-6. Then, on March 11, without alerting the Court to any of these issues, DOL submitted a "Notice of Filing Updated Back Wage Computations" that adopted in full the alleged "backpay" figures reflected in PX-21, despite DOL's knowledge that the accuracy

3

**JA2112**

of those figures may be substantially compromised due to the errors identified and documented by Steadfast. ECF 329 & 329-1.

Disappointed about DOL's lack of willingness to engage on these crucial issues,Steadfast filed a motion on March 13, seeking relief in connection with PX-21, and outlining Steadfast's opposition to DOL's March 11 "Updated Back Wage Computations." ECF 331-1. DOL filed an opposition brief on March 28, in which it neither acknowledged nor denied the extensive PX-21 errors identified via Steadfast's sampling, and instead suggested that no matter how many errors there were, and no matter how great their financial impact, the Court had no power under Rules 52, 54, or 60 to order correction of PX-21. ECF 335 at 5-19. Steadfast filed a reply in support of its motion on April 4, ECF 337, and on April 8, the Court via docket entry issued an order deferring action on Steadfast's March 13 motion (noting that Steadfast had sought to protect its appellate rights in relation to the Court's January 14 memorandum opinion by filing a Notice of Appeal on March 14, and finding it would be in the interest of judicial economy to defer addressing Steadfast's motion under the Fourth Circuit responded to the Notice of Appeal). ECF 340.

On April 12, pursuant to Local Civil Rule 7(E), Steadfast acknowledged the Court's April 8 order deferring action, but to avoid any potential waiver, formally asked for a hearing on its fully-briefed March 13 motion. ECF 342. On April 20, DOL filed an objection to Steadfast's request for a hearing, and essentially repeated the same position it had taken in its March 28 opposition brief. ECF 343.

While these events were taking place in this Court, there has also been parallel activity in the Court of Appeals. Steadfast filed an appellate docketing statement on March 30, and it included a brief explanation to the Fourth Circuit of the pending backpay motion below, while noting that it had been obliged to file a prophylactic notice of appeal (as permitted under Appellate Rule

4(a)(2)). 4th Cir. ECF Doc. 9-1. Since that time, DOL has never suggested (to this Court or the Court of Appeals) that the appeal should not move forward.

The Fourth Circuit issued an initial briefing order on June 7, CA4 Dkt. No. 22-1290, ECF 14, but DOL (through its appellate counsel) reached out later in the month, suggesting that the parties consider a coordinated request to revise the briefing schedule in light of anticipated attorney leave and similar issues. Steadfast concurred, and with both parties in agreement, the Fourth Circuit issued a revised briefing order on July 7, setting a deadline of August 17 for the appendix and Steadfast's opening brief, and a deadline of October 17 for the DOL's response brief. CA4 Dkt. No. 22-1290, ECF 15.

## ARGUMENT

DOL's motion is perplexing. It offers no new information beyond what is already before the Court, thus serves as little more than an unauthorized attempt at a sur-reply that seeks the last word on the backpay computation issue, while ignoring entirely Steadfast's March 13 motion that has been fully briefed by both parties. DOL makes no effort to harmonize its motion with its earlier procedural arguments opposing Steadfast's motion.DOL additionally fails to make a convincing case for its unusual request to have this Court substantively "update" an existing order at a time when a notice of appeal has been filed, and active briefing is underway in the Court of Appeals. DOL's motion should be denied.

**I.    This Court has already noted that judicial economy counsels against simultaneous activity by the District Court and the Court of Appeals.**

"The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Price v. Dunn*, 139 S. Ct. 1533, 1537 (2019). This Court presumably had this principle in mind when it deferred, action on Steadfast's March 13 backpay

## JA2114

computation motion "until the Fourth Circuit responds to [Steadfast's March 14] Notice of Appeal." ECF 340. Since that time, the Fourth Circuit has acted, ordering an initial appellate mediation, 4th Cir. ECF Doc. 12, and then establishing and (at the parties' joint request) revising a briefing schedule. 4th Cir. ECF Doc. 14 & Doc. 15.

Against this backdrop, DOL appears to be trying to ask this Court (under the guise of requesting an "updated" order) to correct what DOL perceives to be an omission or oversight in the Court's January 14 order. Under Rule 60(a), a correction of this sort would require leave of the appellate court, because (at present) an appeal "has been docketed" and "is pending" in the Fourth Circuit. And apart from Rule 60(a)'s "appellate leave" requirement, the jurisdictional rule noted in *Price* and quoted above would create its own concern, depending upon whether addressing the backpay computation is considered "an aspect of the case involved in the appeal."

Of course, this was not the case when Steadfast initially suggested to DOL on March 6 that the parties work cooperatively to identify and correct material data entry errors in PX-21, or when Steadfast filed its March 13 motion. Whether it remains the case will presumably depend in part on the Fourth Circuit's ultimate assessment of appellate jurisdiction. But at present, this Court's April 8 docket entry has even greater force, where several months have passed, the appendix and opening Fourth Circuit brief are due in less than three weeks, and any substantive action by this Court in relation to its January 14 order would likely raise ambiguous and perhaps complex jurisdictional and procedural questions, potentially requiring supplemental briefing and expenditure of judicial resources (by both this Court and the Fourth Circuit).

**II.    It would be improper and unfair to "update" the Court's January 14 order without first holding a hearing on and resolving Steadfast's fully-briefed March 13 motion.**

There is no need to repeat the substance of the parties' exhaustive briefing on Steadfast's March 13 motionhere, but several points bear emphasis.

6

**JA2115**

First, although DOL's July 14 motion does not mention or acknowledge Steadfast's March 13 motion, ignoring it does not make it go away. That motion, with its 65 pages of briefing backed by substantial exhibits, would have to be resolved as part of any action by this Court to arrive at an accurate final backpay figure. Resolving this motion requires far more substantive engagement by this Court than merely "updating" an earlier order, at a time when the Fourth Circuit has already taken primary jurisdiction over the case.

In addition, DOL's continued refusal to acknowledge the financial impact of the data entry errors in PX-21 is troubling. At this point, DOL has had more than four months to review the evidence supporting Steadfast's determination that PX-21 is grievously flawed. The sampling that had been done as of March and April suggested the possibility that these errors alone might have improperly inflated the PX-21 backpay computation by more than 50%.

As Steadfast has pointed out today in a letter to DOL's trial counsel (attached hereto as **Exhibit 1**), DOL's refusal to take any action or to constructively engage back in March forced Steadfast to spend substantial time and money in reviewing the bulk of the remaining entries in PX-21. As things now stand, that review has revealed literally *thousands* of PX-21 entries in which DOL took the hours worked as shown in Steadfast's payroll records for specific team members in specific pay periods, and inexplicably doubled or otherwise increased those hours when entering data in the corresponding row under the "Total Hours" column of PX-21. These errors alone appear to account for well over $1 million in alleged "backpay" DOL is seeking to collect from Steadfast, *for phantom hours that were never worked at all*. As noted in Exhibit 1, this same pattern of repeated and unexplained data entry errors is also present in DOL's March 11 "Updated Back Wage Computations", ECF 329-1, which were filed by DOL *after* the March 6 letter in which Steadfast alerted DOL to the troubling pattern of doubled or inflated hours in PX-21.

7

**JA2116**

DOL knows or should know all of this, and yet it persists in asking this Court to rubber stamp its error-filled backpay computation tables, and impose an unjust and inflated "backpay" award. It is wrong for DOL knowingly to invoke this Court's "inherent power" to achieve "fair administration of justice" (ECF 347 at 3) as a means of imposing millions of dollars in backpay and potential liquidated damages that do not correlate to hours actually worked by Steadfast's nursing team members. And as noted in Steadfast's April 8 reply brief, although the net effect of DOL's unexplained pattern of errors is a substantial overstatement of the backpay allegedly owed, Steadfast has also candidly highlighted those instances in which DOL's data entry errors resulted in an *understatement* of the backpay that would be owed to a Steadfast team member for a particular pay period. Steadfast, in short, has sought since March to have DOL constructively engage on these issues, and arrive at an accurate computation of the backpay allegedly owed. DOL has chosen not to do so, and it is not appropriate for DOL to now ignore the importance of accuracy, in favor of urging the Court invoke its "inherent power" and enter a backpay award in an amount that DOL knows or should know is substantially inflated and materially incorrect.

## III.    The Court's inherent power is not a proper basis for giving DOL the relief it seeks.

DOL's July 14 motion never explains why a new motion is even necessary, given that there is already a fully-briefed motion from March and April relating to the same general subject matter (DOL's backpay computation). One reason for DOL's silence may be that it has created a bind for itself by taking positions that – if not directly contradictory – are at least in tension. DOL's March 28 opposition brief insisted that the Court's January 14 order was a final order of the sort that could not properly be revisited or revised under Rule 54(b), Rule 52(b), or Rule 60(a)-(b). ECF 335 at 8-19. This position forced Steadfast to protect its appellate rights by continuing to move forward with the appeal process. DOL never suggested to the Fourth Circuit that the appeal should not

move forward, and beginning with Steadfast's March 6 letter, DOL declined multiple invitations from Steadfast to cooperate on a timetable that would allow proper review of DOL's backpay computation tables, correction of any data entry errors, and accurate calculation of the backpay allegedly owed to each individual Steadfast team member for each affected pay period.

Fast-forward to DOL's July 14 motion, and DOL's position is now that the Court's January 14 order is somehow final, yet also in need of "updating" in the form of incorporating backpay figures drawn from multiple DOL backpay computation tables (PX-21 for the period up to June 20, 2021, and DOL's March 11 247-page "Exhibit A" table for the period from June 20, 2021 through January 28, 2022). "Updating" of this sort, in relation to what is supposedly a final order, is not a specific form of relief recognized under any of the pertinent post-trial rules. This "updating" sought by DOL would of necessity involve not only assessment of the issues raised by Steadfast's March 13 motion, but also evaluation of any issue arising from DOL's March 11 "Exhibit A" computation table (where 10% sampling has revealed a pattern of unexplained data entry errors in which the hours worked by specific nurses for specific pay periods, as show in Steadfast's payroll records, materially differ from the corresponding hours entered by DOL in its March 11 Exhibit A). *See* **Exhibit 1**.

This course of action is not appropriate here, for two reasons. First, DOL's motion has not invoked any of these rules – and they are bound by their omission. "[C]ourts typically will not consider an argument omitted from the moving litigant's brief as the 'opposing party is prejudiced in its ability to respond.'" *Castillo-Gomez v. Convenience Car Care Ctr., Inc.*, No. 1:14CV651 JCC/TCB, 2014 WL 3544839, at *2 (E.D. Va. July 17, 2014) (quoting *Touchcom, Inc. v. Bereskin & Parr*, 790 F.Supp.2d 435, 446 (E.D. Va. 2011) (citation omitted)). "[I]t is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned." *Zinner v.*

9

**JA2118**

*Olenych*, 108 F. Supp. 3d 369, 398 (E.D. Va. 2015) (quoting *Suarez-Valenzuela v. Holder*, 714 F.3d 241, 249 (4th Cir. 2013)).

Second, the backdrop against which these rules operate is not typically one in which the Court of Appeals has taken jurisdiction over the case, ordered a mediation, established and then revised a briefing schedule, and ultimately set an appendix and opening brief filing deadline that is merely weeks away. Rule 60(a), in particular, specifically requires leave of the appellate court to revisit a trial court order in these circumstances, and the other rules similarly cannot be presumed at this juncture to authorize substantive District Court action in a matter being actively briefed in Court of Appeals.

As to "inherent power," it is meant to be used sparingly, primarily in connection with issues that are administrative in nature, not substantive. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 45 (1991) ("Because of their very potency, inherent powers must be exercised with restraint and discretion."); *Ballard v. Combis*, 759 Fed.Appx. 152, 159-60 (4th Cir. Jan. 8, 2019) (quoting *Chambers*, and emphasizing need for restraint and discretion in exercise of inherent powers). In addition, as DOL acknowledges, the exercise of inherent power must be "reasonable," and "cannot be contrary to any express grant of, or limitation on, the district court's power contained in a rule or statute." ECF 347 at 3 (citing *Degen v. United States*, 517 U.S. 820, 824 (1996)). Given these principles, it is not appropriate for DOL to invoke some generalized assertion of "inherent power" as a means of asking this Court to ignore the framework that governs requests for post-trial relief under the pertinent rules of civil procedure (e.g. Rule 52, Rule 54, and Rule 60). *Cf. Carlisle v. United States*, 517 U.S. 416, 426 (1996) ("Whatever the scope of this 'inherent power,' however, it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure").

10

**JA2119**

The handful of Supreme Court cases cited by DOL do not involve circumstances or relief even remotely comparable to what DOL is requesting here. They instead relate primarily to issues such as removing dormant cases from a court's docket, or the power "to impose silence, respect, and decorum" in connection with court proceedings. *See, e.g., Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962) (removal of dormant cases); *Chambers v. NASCO*, 501 U.S. 32, 55 (1991) (imposing silence, respect, and decorum). Indeed, amongst the cases cited by DOL, the most significant potential exercise "inherent power" was in *Degen*, but in that case, the Supreme Court emphasized the "danger of overreaching" when invoking inherent powers, and actually *rejected* the government's assertion that a district court had inherent power to strike the filings of a claimant in a forfeiture suit as a sanction for failing to appear in a related criminal prosecution. *See Degen*, 517 U.S. at 823-25.

DOL's remaining arguments likewise lack merit. Notwithstanding the ongoing litigation, and as noted in Steadfast's Exhibit 1 letter to DOL, Steadfast has been paying all of its nursing team members their statutory overtime since February 8, in compliance with the Court's January 14 memorandum opinion and order. As to potential calculation of post-judgment interest, nothing DOL says on this issue engages with or rebuts the arguments outlined in Sections I-III herein, and calculation of interest in relation to any final backpay award is likely to be a straightforward process in any event. As to the issue of bond, DOL's cursory references to the bond procedure do not acknowledge or engage with the actual procedural or jurisdictional posture of this case, and DOL does not present meaningful procedural or substantive argument in relation to the framework under which appellate bond requests are analyzed. And finally, nothing DOL says changes the fact that any final backpay computation must of necessity involve resolution of Steadfast's March 13 motion calling for correction of demonstrated errors in DOL's backpay computation tables, and

11

**JA2120**

should be driven primarily by an overriding concern with arriving at a fair and accurate calculation of alleged backpay in relation to each affected Steadfast team member.

Today, DOL) filed yet another District Court motion, this time asking (for the first time) that Steadfast be required to post a bond. Steadfast will review and respond to this latest motion in due course (while also complying with the Fourth Circuit's briefing order under which the appendix and opening brief are due to be filed on August 17). But for present purposes, the bottom line is that DOL's "Motion for Entry of Updated Order" is fundamentally flawed – jurisdictionally, substantively, procedurally, and from a standpoint of basic fairness and common sense.

## CONCLUSION

Based upon the foregoing, Defendants respectfully request that DOL's July 14 motion be denied.

Dated: July 28, 2022     Respectfully submitted,

          **MEDICAL STAFFING OF AMERICA, LLC,**
          **LISA ANN PITTS**

          By: */s/ Abram J. Pafford*
          Abram J. Pafford (VSB #79999)
          MCGUIREWOODS LLP
          888 16th Street, NW, Suite 500
          Black Lives Matter Plaza
          Washington, DC 20006
          Phone: (202) 857-1725
          Fax: (202) 828-3350
          apafford@mcguirewoods.com

          V. Kathleen Dougherty (VSB # 77294)
          MCGUIREWOODS LLP
          World Trade Center
          101 West Main Street, Suite 9000
          Norfolk, Virginia 23510-1655
          Phone: (757) 640-3840
          Fax: (757) 640-3940
          vkdougherty@mcguirewoods.com

          *Counsel for Defendants*

**JA2121**

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2022, I filed the foregoing document with the Clerk of the

Court using the CM/ECF system, which will send a notification of such filing to all counsel of

record.

Dated: July 28, 2022                          Respectfully submitted,

                                              **MEDICAL STAFFING OF AMERICA, LLC**

                                              By: */s/ Abram J. Pafford*
                                              Abram J. Pafford (VSB #79999)
                                              MCGUIREWOODS LLP
                                              888 16th Street, NW
                                              Suite 500
                                              Black Lives Matter Plaza
                                              Washington, DC 20006
                                              Phone: (202) 857-1725
                                              Fax: (202) 828-3350
                                              apafford@mcguirewoods.com

13

**JA2122**

**McGuireWoods LLP**
888 16th Street NW
Suite 500
Black Lives Matter Plaza
Washington, DC  20006
Tel: 202.857.1700
Fax: 202.857.1737
www.mcguirewoods.com

**Abram J. Pafford**
Direct: 202.857.1725

# McGuireWoods

apafford@mcguirewoods.com
Direct Fax: 202.828.3350

July 28, 2022

**VIA ELECTRONIC MAIL**
Ryma Lewis
Office of the Regional Solicitor
U.S. Department of Labor
201 12th Street South
Arlington, Virginia 22202
lewis.ryma@dol.gov

Re:     <u>**Walsh v. Medical Staffing of America, LLC**</u>, Nos. 18-cv-226 & 19-cv-475

Dear Ms. Lewis:

I am writing on behalf of my clients, defendants in the above-referenced action, to acknowledge receipt of your letter dated July 14, 2022.  We have been occupied responding to your motion that was also filed on July 14, as well as devoting effort to appellate briefing in light of the August 17 filing deadline negotiated with your appellate counterpart at the Department of Labor, and adopted by the Fourth Circuit in its July 7 briefing order. Nonetheless, I felt it important to respond separately to your letter, for the reasons explained below.

To begin, your letter states that on February 9, 2022, Steadfast produced payroll records from January 31 through February 25, 2022.  I can only assume that you are referring to documents produced on March 3, 2022, not February 9, 2022, because documents produced on February 9, 2022 could not include data through February 25, 2022.

Next, it is important to state at the outset that Steadfast is complying with the FLSA's overtime provisions, and paying its workers overtime at the rate of 1.5x their regular rate for any hours over 40 hours worked in a workweek. **Steadfast through counsel informed you by email on February 8 that it would be paying proper statutory overtime beginning with the Steadfast workweek that started on February 8, and it has been paying all eligible team members on that basis since that time.** Your July 14 calculations of what is supposedly owed for the period between January 31 and February 21 appear incorrect for a number of reasons (as discussed more fully below). But we want to emphasize that to the extent additional overtime is owed since January 31, Steadfast firmly believes a proper calculation will show that it is only owed for the period through February 7. **From February 8 on, the amount of overtime backpay Steadfast owes should be $0, and an accurate computation based on a proper review of the records Steadfast has produced should reflect that fact.**

Your letter offers one example of Steadfast purportedly failing to pay overtime wages to Brandy Hicks from January 31, 2022 through February 21, 2022.  The Department's calculations

Atlanta | Austin | Baltimore | Brussels | Charlotte | Charlottesville | Chicago | Dallas | Houston | Jacksonville | London | Los Angeles - Century City
Los Angeles - Downtown | New York | Norfolk | Pittsburgh | Raleigh | Richmond | San Francisco | Tysons | Washington, D.C.

**JA2123**

with respect to Ms. Hicks are not accurate. As we explained to you by email dated February 8, 2022, Steadfast changed its pay practices, effective February 8, 2022, to ensure each of its team members were paid overtime at 1.5x their regular rate (while reserving all Steadfast's arguments regarding liability that remain at issue).

Before turning to Ms. Hicks's compensation, we want to note a problem in the Department's methodology that seems to be causing confusion. Your letter claims you are calculating damages from January 31, 2022 through February 21, 2022, but the documents you use to support these figures appear to be pay periods ending on those dates. In other words, you are not calculating overtime beginning on January 31, 2022, you are trying to calculate overtime for the pay period ending on January 31, 2022. The internal inconsistency between your letter and its supporting documentation makes it difficult to try to recreate the Department's incorrect calculations. The following calculations are based on the pay period ending January 31, 2022, not a partial workweek solely consisting of January 31, 2022. However, I note that damages through January 31, 2022 are affected in part by the exhibit the Department filed on March 11, 2022, which was supposedly current through January 28, 2022. *See* ECF 329 at 1 (filing the Department of Labor's computation of backpay through "January 28, 2022"). I mention this only to ensure that the Department is not attempting to recoup backpay twice for the same work.

With respect to Ms. Hicks, attached is a chart showing precisely how Ms. Hicks was compensated for the time period you selected (the workweeks ending January 31, 2022 through February 21, 2022). In narrative form, and bearing in mind that the Steadfast workweek runs from Tuesday through Monday, the record reflects the following:

- For the workweek of Tuesday, January 25, 2022 through Monday, January 31, 2022, Ms. Hicks worked 65 hours. She was paid at a rate of $55.00 for each hour worked in that workweek. Given that this was before the change in pay practice effective February 8, 2022, and assuming liability, at most Steadfast owes Ms. Hicks additional half-time of $27.50 per hour for 25 hours, for a total payment of **$687.50**.

- For the workweek of Tuesday, February 1, 2022 through Monday, February 7, 2022, Ms. Hicks worked 103.75 hours. She was paid at a rate of $55.00 for each hour worked in that workweek. Given that this was before the change in pay practice effective February 8, 2022, and assuming liability, at most Steadfast owes Ms. Hicks additional half-time of $27.50 per hour for 63.75 hours, for a total payment of **$1,753.13**.

- For the workweek of Tuesday, February 8, 2022 through Monday, February 14, 2022, Ms. Hicks did not perform any services under her contract. She is not owed anything from this workweek.

- For the workweek of Tuesday, February 15, 2022 through Monday, February 21, 2022, Ms. Hicks worked 73.42 hours. She was paid at a rate of $55.00 for each hour worked, and she was paid an additional half-time amount of $27.50 per hour for each hour over 40 in that workweek (i.e., a total of $82.50 for 33.42 hours). This resulted in a total

payment for this workweek of $4,957.15. Accordingly, Steadfast does not owe anything for this workweek. ***See*** **Bates No. Steadfast 101626**.

In sum, at most, Steadfast owes Ms. Hicks $2,440.63 for the pay periods ending January 31, 2022 through February 21, 2022. The Department's letter, however, claims Steadfast owes Ms. Hicks $4,558.59, i.e., more than double the statutory overtime Ms. Hicks actually earned. This is problematic enough, but it is even more troubling that we cannot recreate how the Department arrived at a figure that is more than double the proper backpay amount for Ms. Hicks during the period consisting of workweeks ending January 31 through February 21, 2022.

Recognizing that perhaps the errors in the Department's calculations with respect to Ms. Hicks were an anomaly, we performed a random sample of six additional workers for these same workweeks. We have attached additional spreadsheets reflecting the work performed by Cierra Jones, Megan Younger, Denise Flowers, Lakenya Williams, Denise Arbuckle, and Mary Day. Every sample we performed showed the Department of Labor's incorrect calculations and overstatement of the backpay amounts actually owed. For those six workers, over those four workweeks, the Department claims Steadfast owes $5,645.62 in alleged backpay. The correct cumulative computation for these six workers, as reflected in the sample spreadsheets we have attached, reveals backpay owed in the amount of $1,137. **In other words, the Department's computation overstates the amount of backpay owed by $4,508 – an amount nearly 400% higher than the correct figure.**

For some of these inaccuracies, it is easy to spot the Department's mistakes. One of the easier errors to spot was the method by which the Department attempted to calculate the regular rate for periods after February 8, 2022. Take Denise Arbuckle, for example. Ms. Arbuckle was paid at a regular rate of $30.00 per hour, and an overtime rate of $45.00 per hour. ***See*** **Bates No. Steadfast 101613**. The Department of Labor, however, tried to reverse-engineer a regular rate by dividing her total pay by the total hours worked, resulting in a rate of $30.90. However, the Department failed to account for the fact that Steadfast had already paid overtime to Ms. Arbuckle, and is now trying to claim overtime on the inflated, improperly calculated "regular rate" that simply does not reflect how Ms. Arbuckle was actually paid.

For others, we cannot recreate how the Department arrived at its numbers. The Department's July 14 computation appears to have other problems as well. For example, the Department appears to be seeking backpay for Richard Salter. Mr. Salter was a W2 employee and has never been classified as an independent contractor and who always received overtime when owed. It is difficult to understand why the Department of Labor continues to insist on seeking overtime for W2 employees who have already received overtime payments.

Moving beyond the issues noted above, there are additional concerns we feel it is incumbent on the Department to address. **First**, in the absence of any substantive response from the Department to the significant data entry errors found in the Department's PX-21 backpay computation table back in March, Steadfast has been forced (at considerable expense) to press on and perform a comprehensive review of nearly all PX-21 entries. Focusing only on errors in which the Department either doubled or otherwise arbitrarily increased the hours shown in Steadfast's

Page 4

payroll records when entering data in the corresponding "Total Hours" column on PX-21, we have found *thousands* of such errors, amounting to more than $1 million in alleged "backpay" for hours that *were never worked at all*. When possible liquidated damages are taken into account, the effect is to increase Steadfast's potential exposure by millions of dollars, based on a troubling pattern of data entry errors the Department has still refused to acknowledge or explain. We all know these numbers are wrong – you know it, I know it, and anyone who puts the payroll records side-by-side with PX-21 can see it. We do not understand the Department's refusal to engage in constructive discussions on this issue, in order to arrive at an accurate computation for each Steadfast worker of the backpay allegedly owed.

      **Second**, we have conducted a 10% sampling review of the thousands of entries in the 247-page Exhibit A computation table filed by the Department in the District Court on March 11. This review reveals the same pattern of unexplained data entry errors, again resulting in a material overstatement of the backpay Steadfast allegedly owes. By separate email, I will be sending you a one-page summary table that outlines the results of the review process undertaken to date in relation to the vast majority of the entries in PX-21, and a 10% sampling of the entries in the Department's March 11 "Exhibit A."

      **Third**, while we acknowledge your request for additional Steadfast payroll records, we ask that you clarify the basis for and authority supporting this request. Thus far, a distressing pattern has emerged – (a) Steadfast produces voluminous payroll records; (b) the Department uses these records to create backpay computation exhibits with thousands of entries, and based on these exhibits seeks to have Steadfast pay millions of dollars in alleged backpay and liquidated damages; (c) Steadfast through counsel discovers and documents significant data entry and computation errors in the Department's backpay computation exhibits, and brings these matters to the Department's attention; and (d) the Department doubles down, refuses to engage, and moves forward in trying to collect the overstated amounts shown in its error-filled exhibits. Steadfast has no desire to continue repeating this troubling and unproductive sequence.

      The bottom line is that while Steadfast is not waiving any of its arguments or legal rights, Steadfast is also committed to continuing its practice, adopted February 8, of making proper statutory overtime payments to all Steadfast team members, as contemplated by the District Court's January 14 memorandum opinion and order. To the extent you believe Steadfast's points in its backpay correspondence (including this letter and its March 6 letter) are incorrect, or if you have other information you believe would shed light on the Department's backpay computation tables and the calculations reflected therein, we remain open to dialogue, and we are willing to revisit our views if we have made mistakes. We would hope that the Department would approach these matters in a similar spirit.

      Sincerely,

Abram J. Pafford
**McGuireWoods LLP**

Page 5

Cc: Chervonti Jones, Esq.  John E. Thomas, Jr., Esq.  Joshua Jewett, Esq.
   Mohamed Seifeldein, Esq. Matthew A. Fitzgerald, Esq. Julia Rust, Esq.
   (*U.S. Department of Labor*) Evan X. Tucker, Esq.  (*Pierce McCoy, LLC*)
            (*McGuireWoods LLP*)

| | Pay Date | Date of Work Performed | Number of Hours Worked | Workweek Total Hours | Regular Rate | Overtime Rate (Regular Rate x 0.5) | Overtime Hours (Workweek Total Hours -40) | Total Amount Earned | | Total Amount Paid | | Total Amount Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Straight Time | Overtime | Straight Time | Overtime | |
| Workweek 4 | 2/4/2022 | 1/25/2022 | 0.00 | 65.00 | $ 55.00 | $ 27.50 | 25.00 | $ 3,575.00 | $ 687.50 | $3,575.00 | $0.00 | $687.50 |
| | | 1/26/2022 | 0.00 | | | | | | | | | |
| | | 1/27/2022 | 0.00 | | | | | | | | | |
| | | 1/28/2022 | 16.25 | | | | | | | | | |
| | | 1/29/2022 | 16.25 | | | | | | | | | |
| | | 1/30/2022 | 16.25 | | | | | | | | | |
| | | 1/31/2022 | 16.25 | | | | | | | | | |
| Workweek 5 | 2/11/2022 | 2/1/2022 | 12.50 | 103.75 | $ 55.00 | $ 27.50 | 63.75 | $ 5,706.25 | $ 1,753.13 | $5,706.25 | $0.00 | $1,753.13 |
| | | 2/2/2022 | 12.50 | | | | | | | | | |
| | | 2/3/2022 | 12.50 | | | | | | | | | |
| | | 2/4/2022 | 16.50 | | | | | | | | | |
| | | 2/5/2022 | 16.50 | | | | | | | | | |
| | | 2/6/2022 | 16.75 | | | | | | | | | |
| | | 2/7/2022 | 16.50 | | | | | | | | | |
| Workweek 6 | 2/18/2022 | 2/8/2022 | 0.00 | 0.00 | $ 55.00 | $ 27.50 | 0.00 | $ - | $ - | $0.00 | $0.00 | $0.00 |
| | | 2/9/2022 | 0.00 | | | | | | | | | |
| | | 2/10/2022 | 0.00 | | | | | | | | | |
| | | 2/11/2022 | 0.00 | | | | | | | | | |
| | | 2/12/2022 | 0.00 | | | | | | | | | |
| | | 2/13/2022 | 0.00 | | | | | | | | | |
| | | 2/14/2022 | 0.00 | | | | | | | | | |
| Workweek 7 | 2/25/2022 | 2/15/2022 | 12.42 | 73.42 | $ 55.00 | $ 27.50 | 33.42 | $ 4,038.10 | $ 919.05 | $4,038.10 | $919.05 | $0.00 |
| | | 2/16/2022 | 12.25 | | | | | | | | | |
| | | 2/17/2022 | 0.00 | | | | | | | | | |
| | | 2/18/2022 | 8.75 | | | | | | | | | |
| | | 2/19/2022 | 12.25 | | | | | | | | | |
| | | 2/20/2022 | 15.25 | | | | | | | | | |
| | | 2/21/2022 | 12.50 | | | | | | | | | |

Total Amount Due **$2,440.63**

DOL's July 14, 2022 Claim Owed $4,558.59

7/28/2022 Brandy Hicks

# JA2128

| | Pay Date | Date of Work Performed | Number of Hours Worked | Workweek Total Hours | Regular Rate | Overtime Rate (Regular Rate x 0.5) | Overtime Hours (Workweek Total Hours -40) | Total Amount Earned | | Total Amount Paid | | Total Amount Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Straight Time | Overtime | Straight Time | Overtime | |
| Workweek 4 | 2/4/2022 | 1/25/2022 | 0.00 | 0.00 | $ 50.00 | $ 25.00 | 0 | $ - | $ - | $0.00 | $0.00 | $0.00 |
| | | 1/26/2022 | 0.00 | | | | | | | | | |
| | | 1/27/2022 | 0.00 | | | | | | | | | |
| | | 1/28/2022 | 0.00 | | | | | | | | | |
| | | 1/29/2022 | 0.00 | | | | | | | | | |
| | | 1/30/2022 | 0.00 | | | | | | | | | |
| | | 1/31/2022 | 0.00 | | | | | | | | | |
| Workweek 5 | 2/11/2022 | 2/1/2022 | 0.00 | 0.00 | $ 50.00 | $ 25.00 | 0 | $ - | $ - | $0.00 | $0.00 | $0.00 |
| | | 2/2/2022 | 0.00 | | | | | | | | | |
| | | 2/3/2022 | 0.00 | | | | | | | | | |
| | | 2/4/2022 | 0.00 | | | | | | | | | |
| | | 2/5/2022 | 0.00 | | | | | | | | | |
| | | 2/6/2022 | 0.00 | | | | | | | | | |
| | | 2/7/2022 | 0.00 | | | | | | | | | |
| Workweek 6 | 2/18/2022 | 2/8/2022 | 0.00 | 54.42 | $ 50.00 | $ 25.00 | 14.42 | $ 2,721.00 | $ 360.50 | $2,721.00 | $360.50 | $0.00 |
| | | 2/9/2022 | 0.00 | | | | | | | | | |
| | | 2/10/2022 | 14.17 | | | | | | | | | |
| | | 2/11/2022 | 16.00 | | | | | | | | | |
| | | 2/12/2022 | 5.75 | | | | | | | | | |
| | | 2/13/2022 | 5.00 | | | | | | | | | |
| | | 2/14/2022 | 13.50 | | | | | | | | | |
| Workweek 7 | 2/25/2022 | 2/15/2022 | 9.75 | 60.41 | $ 50.00 | $ 25.00 | 20.41 | $ 3,020.50 | $ 510.25 | $3,020.50 | $510.25 | $0.00 |
| | | 2/16/2022 | 9.00 | | | | | | | | | |
| | | 2/17/2022 | 0.00 | | | | | | | | | |
| | | 2/18/2022 | 13.33 | | | | | | | | | |
| | | 2/19/2022 | 9.58 | | | | | | | | | |
| | | 2/20/2022 | 0.00 | | | | | | | | | |
| | | 2/21/2022 | 18.75 | | | | | | | | | |

| | | |
|---|---|---|
| | Total Amount Due | DOL's July 14, 2022 Claim Owed |
| | $0.00 | $1,004.71 |

**JA2129**

| | Pay Date | Date of Work Performed | Number of Hours Worked | Workweek Total Hours | Regular Rate | Overtime Rate (Regular Rate x 0.5) | Overtime Hours (Workweek Total Hours -40) | Total Amount Earned | | Total Amount Paid | | Total Amount Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Straight Time | Overtime | Straight Time | Overtime | |
| Workweek 4 | 2/4/2022 | 1/25/2022 | 0.00 | 32.51 | $ 50.00 | $ 25.00 | 0 | $ 1,625.50 | $ - | $1,625.50 | $0.00 | $0.00 |
| | | 1/26/2022 | 8.17 | | | | | | | | | |
| | | 1/27/2022 | 8.67 | | | | | | | | | |
| | | 1/28/2022 | 0.00 | | | | | | | | | |
| | | 1/29/2022 | 0.00 | | | | | | | | | |
| | | 1/30/2022 | 15.67 | | | | | | | | | |
| | | 1/31/2022 | 0.00 | | | | | | | | | |
| Workweek 5 | 2/11/2022 | 2/1/2022 | 8.67 | 50.81 | $ 50.00 | $ 25.00 | 10.81 | $ 2,540.50 | $ 270.25 | $2,540.50 | $0.00 | $270.25 |
| | | 2/2/2022 | 8.17 | | | | | | | | | |
| | | 2/3/2022 | 7.97 | | | | | | | | | |
| | | 2/4/2022 | 16.00 | | | | | | | | | |
| | | 2/5/2022 | 0.00 | | | | | | | | | |
| | | 2/6/2022 | 0.00 | | | | | | | | | |
| | | 2/7/2022 | 10.00 | | | | | | | | | |
| Workweek 6 | 2/18/2022 | 2/8/2022 | 5.83 | 54.50 | $ 50.00 | $ 25.00 | 14.50 | $ 2,725.00 | $ 362.50 | $2,725.00 | $362.50 | $0.00 |
| | | 2/9/2022 | 8.00 | | | | | | | | | |
| | | 2/10/2022 | 0.00 | | | | | | | | | |
| | | 2/11/2022 | 16.67 | | | | | | | | | |
| | | 2/12/2022 | 0.00 | | | | | | | | | |
| | | 2/13/2022 | 16.00 | | | | | | | | | |
| | | 2/14/2022 | 8.00 | | | | | | | | | |
| Workweek 7 | 2/25/2022 | 2/15/2022 | 15.75 | 23.75 | $ 45.00 | $ 22.50 | 0 | $ 1,068.75 | $ - | $1,068.75 | $0.00 | $0.00 |
| | | 2/16/2022 | 8.00 | | | | | | | | | |
| | | 2/17/2022 | 0.00 | | | | | | | | | |
| | | 2/18/2022 | 0.00 | | | | | | | | | |
| | | 2/19/2022 | 0.00 | | | | | | | | | |
| | | 2/20/2022 | 0.00 | | | | | | | | | |
| | | 2/21/2022 | 0.00 | | | | | | | | | |

Total Amount Due
**$270.25**

DOL's July 14, 2022 Claim Owed
$680.96

**JA2130**

| | Pay Date | Date of Work Performed | Number of Hours Worked | Workweek Total Hours | Regular Rate | Overtime Rate (Regular Rate x 0.5) | Overtime Hours (Workweek Total Hours -40) | Total Amount Earned | | Total Amount Paid | | Total Amount Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Straight Time | Overtime | Straight Time | Overtime | |
| Workweek 4 | 2/4/2022 | 1/25/2022 | 0.00 | 0.00 | $ 40.00 | $ 20.00 | 0 | $ - | $ - | $0.00 | $0.00 | $0.00 |
| | | 1/26/2022 | 0.00 | | | | | | | | | |
| | | 1/27/2022 | 0.00 | | | | | | | | | |
| | | 1/28/2022 | 0.00 | | | | | | | | | |
| | | 1/29/2022 | 0.00 | | | | | | | | | |
| | | 1/30/2022 | 0.00 | | | | | | | | | |
| | | 1/31/2022 | 0.00 | | | | | | | | | |
| Workweek 5 | 2/11/2022 | 2/1/2022 | 0.00 | 16.00 | $ 40.00 | $ 20.00 | 0 | $ 640.00 | $ - | $640.00 | $0.00 | $0.00 |
| | | 2/2/2022 | 0.00 | | | | | | | | | |
| | | 2/3/2022 | 8.00 | | | | | | | | | |
| | | 2/4/2022 | 8.00 | | | | | | | | | |
| | | 2/5/2022 | 0.00 | | | | | | | | | |
| | | 2/6/2022 | 0.00 | | | | | | | | | |
| | | 2/7/2022 | 0.00 | | | | | | | | | |
| Workweek 6 | 2/18/2022 | 2/8/2022 | 0.00 | 24.92 | $ 40.00 | $ 20.00 | 0 | $ 996.80 | $ - | $996.80 | $0.00 | $0.00 |
| | | 2/9/2022 | 0.00 | | | | | | | | | |
| | | 2/10/2022 | 0.00 | | | | | | | | | |
| | | 2/11/2022 | 17.00 | | | | | | | | | |
| | | 2/12/2022 | 7.92 | | | | | | | | | |
| | | 2/13/2022 | 0.00 | | | | | | | | | |
| | | 2/14/2022 | 0.00 | | | | | | | | | |
| Workweek 7 | 2/25/2022 | 2/15/2022 | 7.25 | 38.40 | $ 40.00 | $ 20.00 | 0 | $ 1,847.50 | $ - | $ 1,847.50 | $0.00 | $0.00 |
| | | 2/16/2022 | 0.00 | | | | | | | | | |
| | | 2/17/2022 | 0.00 | | | | | | | | | |
| | | 2/18/2022 | 0.00 | | | | | | | | | |
| | | 2/19/2022 | 15.40 | | $ 50.00 | $ 25.00 | | | | | | |
| | | 2/20/2022 | 15.75 | | $ 50.00 | $ 25.00 | | | | | | |
| | | 2/21/2022 | 0.00 | | | | | | | | | |

**Total Amount Due** **$0.00**

<span style="color:red">**DOL's July 14, 2022 Claim Owed** $893.85</span>

**JA2131**

| | Pay Date | Date of Work Performed | Number of Hours Worked | Workweek Total Hours | Regular Rate | Overtime Rate (Regular Rate x 0.5) | Overtime Hours (Workweek Total Hours -40) | Total Amount Earned | | Total Amount Paid | | Total Amount Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Straight Time | Overtime | Straight Time | Overtime | |
| Workweek 4 | 2/4/2022 | 1/25/2022 | 16.00 | 37.75 | $ 50.00 | $ 25.00 | 0 | $ 1,887.50 | $ - | $1,887.50 | $0.00 | $0.00 |
| | | 1/26/2022 | 8.00 | | | | | | | | | |
| | | 1/27/2022 | 5.75 | | | | | | | | | |
| | | 1/28/2022 | 0.00 | | | | | | | | | |
| | | 1/29/2022 | 0.00 | | | | | | | | | |
| | | 1/30/2022 | 0.00 | | | | | | | | | |
| | | 1/31/2022 | 8.00 | | | | | | | | | |
| Workweek 5 | 2/11/2022 | 2/1/2022 | 14.00 | 74.67 | $ 50.00 | $ 25.00 | 34.67 | $ 3,733.50 | $ 866.75 | $3,733.50 | $0.00 | $866.75 |
| | | 2/2/2022 | 15.00 | | | | | | | | | |
| | | 2/3/2022 | 15.50 | | | | | | | | | |
| | | 2/4/2022 | 7.50 | | | | | | | | | |
| | | 2/5/2022 | 7.17 | | | | | | | | | |
| | | 2/6/2022 | 0.00 | | | | | | | | | |
| | | 2/7/2022 | 15.50 | | | | | | | | | |
| Workweek 6 | 2/18/2022 | 2/8/2022 | 15.50 | 61.50 | $ 50.00 | $ 25.00 | 21.50 | $ 3,075.00 | $ 537.50 | $3,075.00 | $537.50 | $0.00 |
| | | 2/9/2022 | 15.50 | | | | | | | | | |
| | | 2/10/2022 | 15.50 | | | | | | | | | |
| | | 2/11/2022 | 7.50 | | | | | | | | | |
| | | 2/12/2022 | 0.00 | | | | | | | | | |
| | | 2/13/2022 | 7.50 | | | | | | | | | |
| | | 2/14/2022 | 0.00 | | | | | | | | | |
| Workweek 7 | 2/25/2022 | 2/15/2022 | 15.50 | 77.50 | $ 50.00 | $ 25.00 | 37.50 | $ 3,875.00 | $ 937.50 | $3,875.00 | $937.50 | $0.00 |
| | | 2/16/2022 | 15.50 | | | | | | | | | |
| | | 2/17/2022 | 15.50 | | | | | | | | | |
| | | 2/18/2022 | 15.50 | | | | | | | | | |
| | | 2/19/2022 | 0.00 | | | | | | | | | |
| | | 2/20/2022 | 0.00 | | | | | | | | | |
| | | 2/21/2022 | 15.50 | | | | | | | | | |

| Total Amount Due | DOL's July 14, 2022 Claim Owed |
|---|---|
| $866.75 | $2,662.58 |

**JA2132**

| | Pay Date | Date of Work Performed | Number of Hours Worked | Workweek Total Hours | Regular Rate | Overtime Rate (Regular Rate x 0.5) | Overtime Hours (Workweek Total Hours -40) | Total Amount Earned | | Total Amount Paid | | Total Amount Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Straight Time | Overtime | Straight Time | Overtime | |
| Workweek 4 | 2/4/2022 | 1/25/2022 | 0.00 | 0.00 | $ 30.00 | $ 15.00 | 0 | $ - | $ - | $0.00 | $0.00 | $0.00 |
| | | 1/26/2022 | 0.00 | | | | | | | | | |
| | | 1/27/2022 | 0.00 | | | | | | | | | |
| | | 1/28/2022 | 0.00 | | | | | | | | | |
| | | 1/29/2022 | 0.00 | | | | | | | | | |
| | | 1/30/2022 | 0.00 | | | | | | | | | |
| | | 1/31/2022 | 0.00 | | | | | | | | | |
| Workweek 5 | 2/11/2022 | 2/1/2022 | 0.00 | 0.00 | $ 30.00 | $ 15.00 | 0 | $ - | $ - | $0.00 | $0.00 | $0.00 |
| | | 2/2/2022 | 0.00 | | | | | | | | | |
| | | 2/3/2022 | 0.00 | | | | | | | | | |
| | | 2/4/2022 | 0.00 | | | | | | | | | |
| | | 2/5/2022 | 0.00 | | | | | | | | | |
| | | 2/6/2022 | 0.00 | | | | | | | | | |
| | | 2/7/2022 | 0.00 | | | | | | | | | |
| Workweek 6 | 2/18/2022 | 2/8/2022 | 0.00 | 0.00 | $ 30.00 | $ 15.00 | 0 | $ - | $ - | $0.00 | $0.00 | $0.00 |
| | | 2/9/2022 | 0.00 | | | | | | | | | |
| | | 2/10/2022 | 0.00 | | | | | | | | | |
| | | 2/11/2022 | 0.00 | | | | | | | | | |
| | | 2/12/2022 | 0.00 | | | | | | | | | |
| | | 2/13/2022 | 0.00 | | | | | | | | | |
| | | 2/14/2022 | 0.00 | | | | | | | | | |
| Workweek 7 | 2/25/2022 | 2/15/2022 | 0.00 | 42.55 | $ 30.00 | $ 15.00 | 2.55 | $ 1,276.50 | $ 38.25 | $1,276.50 | $38.25 | $0.00 |
| | | 2/16/2022 | 0.00 | | | | | | | | | |
| | | 2/17/2022 | 11.53 | | | | | | | | | |
| | | 2/18/2022 | 0.00 | | | | | | | | | |
| | | 2/19/2022 | 11.77 | | | | | | | | | |
| | | 2/20/2022 | 7.55 | | | | | | | | | |
| | | 2/21/2022 | 11.70 | | | | | | | | | |

**Total Amount Due**
**$0.00**

**DOL's July 14, 2022 Claim Owed**
**$39.40**

# JA2133

| | Pay Date | Date of Work Performed | Number of Hours Worked | Workweek Total Hours | Regular Rate | Overtime Rate (Regular Rate x 0.5) | Overtime Hours (Workweek Total Hours -40) | Total Amount Earned | | Total Amount Paid | | Total Amount Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Straight Time | Overtime | Straight Time | Overtime | |
| Workweek 4 | 2/4/2022 | 1/25/2022 | 0.00 | 30.25 | $ 40.00 | $ 20.00 | 0 | $ 1,210.00 | $ - | $1,210.00 | $0.00 | $0.00 |
| | | 1/26/2022 | 0.00 | | | | | | | | | |
| | | 1/27/2022 | 0.00 | | | | | | | | | |
| | | 1/28/2022 | 12.25 | | | | | | | | | |
| | | 1/29/2022 | 5.75 | | | | | | | | | |
| | | 1/30/2022 | 12.25 | | | | | | | | | |
| | | 1/31/2022 | 0.00 | | | | | | | | | |
| Workweek 5 | 2/11/2022 | 2/1/2022 | 0.00 | 12.25 | $ 40.00 | $ 20.00 | 0 | $ 490.00 | $ - | $490.00 | $0.00 | $0.00 |
| | | 2/2/2022 | 0.00 | | | | | | | | | |
| | | 2/3/2022 | 0.00 | | | | | | | | | |
| | | 2/4/2022 | 0.00 | | | | | | | | | |
| | | 2/5/2022 | 0.00 | | | | | | | | | |
| | | 2/6/2022 | 0.00 | | | | | | | | | |
| | | 2/7/2022 | 12.25 | | | | | | | | | |
| Workweek 6 | 2/18/2022 | 2/8/2022 | 0.00 | 48.38 | $ 40.00 | $ 20.00 | 8.38 | $ 1,935.20 | $ 167.60 | $1,935.20 | $167.60 | $0.00 |
| | | 2/9/2022 | 0.00 | | | | | | | | | |
| | | 2/10/2022 | 11.73 | | | | | | | | | |
| | | 2/11/2022 | 11.65 | | | | | | | | | |
| | | 2/12/2022 | 0.00 | | | | | | | | | |
| | | 2/13/2022 | 12.50 | | | | | | | | | |
| | | 2/14/2022 | 12.50 | | | | | | | | | |
| Workweek 7 | 2/25/2022 | 2/15/2022 | 0.00 | 49.00 | $ 40.00 | $ 20.00 | 9.00 | $ 1,960.00 | $ 180.00 | $1,960.00 | $180.00 | $0.00 |
| | | 2/16/2022 | 0.00 | | | | | | | | | |
| | | 2/17/2022 | 12.25 | | | | | | | | | |
| | | 2/18/2022 | 12.25 | | | | | | | | | |
| | | 2/19/2022 | 0.00 | | | | | | | | | |
| | | 2/20/2022 | 12.25 | | | | | | | | | |
| | | 2/21/2022 | 12.25 | | | | | | | | | |

**Total Amount Due** **$0.00**

**DOL's July 14, 2022 Claim Owed** $364.12

**JA2134**



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

MARTIN J. WALSH,
SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF LABOR,

Plaintiff,

v.

MEDICAL STAFFING OF AMERICA, LLC, d/b/a
STEADFAST MEDICAL STAFFING, and LISA
PITTS,

Defendants.

Case No. 2:18–cv–226

Case No. 2:19–cv–475

*MEMORANDUM OPINION AND ORDER*

This Memorandum Opinion and Order considers the merits of the United States Department of Labor's ("Plaintiff" or "DOL") request for injunctive relief, pursuant to 29 U.S.C. § 217 and Federal Rule of Civil Procedure 65(d) , in compliance with the United States Court of Appeals for the Fourth Circuit's ("Fourth Circuit") ruling in *Su v. Med. Staffing of Am., LLC*, No. 22-1290, 2023 WL 3735221, at \*1 (4th Cir. May 31, 2021).[1] Having carefully reviewed the parties' supplemental memoranda, the Court finds this matter ripe for judicial determination. Upon review, the Court finds that an injunctive relief hearing is not necessary. *See* E.D. Va. Local Civ. R. 7(J). For the reasons set forth below, Plaintiff's Motion is **GRANTED.**

## I.   PROCEDURAL AND FACTUAL HISTORY

On May 2, 2018, Plaintiff initiated an enforcement action against Medical Staffing of America, LLC, d/b/a Steadfast Medical Staffing ("Steadfast"), and Lisa Pitts ("Defendants"),

---

[1] On appeal, the Fourth Circuit vacated this Court's January 14, 2022 injunction, enjoining Defendants from violating the overtime and recordkeeping provisions of the FLSA. *See Med. Staffing of Am.*, 2023 WL 3735221, at \*1 (vacating injunction and remanding for further proceedings in light of the requirements outlined in Federal Rule of Civil Procedure 65(d)).

alleging several violations of the Fair Labor Standards Act ("FLSA" or "the Act"), as amended, 29 U.S.C. § 201, et seq. Complaint ("Compl."), ECF No. 1. As part of the requested relief, Plaintiff sought an injunction, enjoining Defendants from violating the provisions of Sections 7, 11(c), 15(a)(2), and 15(a)(5) of the FLSA, pursuant to Section 17 of the Act. *Id.* at 7(1).

On January 14, 2022, following a seven-day bench trial, the Court entered judgment in favor of Plaintiff, concluding that Defendants liable for failing to pay overtime and maintain pay records in accordance with the FLSA. ECF No. 325. In its Memorandum and Opinion, the Court enjoined Defendants from committing further FLSA violations and accepted Plaintiff's back wage calculations and methodology, finding that Defendants owed $3,619,716.49 for overtime violations from August 18, 2015 to June 27, 2021 and an equal number of liquidated damages, totaling $7,229,432.98. ECF No. 324. In that same order, Plaintiff was directed to provide the Court with an updated calculation of additional back pay and liquidated damages from any continued FLSA violations from June 27, 2021 to January 13, 2022. *Id.*

On March 14, 2022, Defendants filed an interlocutory appeal to contest the final judgment and order entered in favor of Plaintiff. ECF No. 332. On appeal, the Fourth Circuit did not review "the injunction's merits or any other aspects of the [January 14, 2022] Order." *Su v. Med. Staffing of Am., LLC*, No. 22-1290, 2023 WL 3735221, at *2 (4th Cir. May 31, 2023). Instead, the Fourth Circuit held that the injunction issued as a part of the Court's January 14, 2022 Order "erroneously fail[ed] to comply with the mandatory requirements of Rule 65(d) of the Federal Rules of Civil Procedure. That is, the Order [did] not adequately 'state the reasons why [the injunction] issued; fail[ed] to state its terms specifically; and [did] not describe in reasonable detail . . . the act or acts restrained or required.'" *Id.* Accordingly, the Fourth Circuit vacated the injunction and remanded the action for further proceedings. On July 24, 2023, the Fourth Circuit returned its mandate. ECF No. 394.

2

**JA2136**

On June 20, 2023, the Court ordered both parties to file supplemental briefs regarding Plaintiff's entitlement to injunctive relief under the four-factor test outlined in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006). Order, ECF No. 391. On July 23, 2023, the parties filed supplemental briefs with respect to the injunctive relief issue raised by the Fourth Circuit. Defs.' Supp. Mem., ECF No. 392; Pl.'s Supp. Mem., ECF No. 393. The Secretary seeks to enjoin Defendants and their agents from violating Sections 7 (requiring payment of overtime) and 11 (requiring proper record keeping) of the FLSA, pursuant to Section 17 of the Act. ECF No. Pl.'s Supp. Mem. at 1, 24. Defendants oppose the injunction and argue that the DOL cannot met its burden to demonstrate that an injunction is necessary under the *eBay* requirements for injunctive relief. Defs' Supp. Mem. at 1-3. Accordingly, this matter is now ripe for judicial determination.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 65(d), a plaintiff seeking a permanent injunction must demonstrate that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExhange, L.L.C.*, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *Id.*

Under the FLSA, district courts are authorized to issue injunctive relief to "restrain violations" of Sections 206 and 207 of the Act upon a showing of cause. 29 U.S.C. § 217. Whether to issue an injunction under the FLSA is within the discretion of the district court. *See Sec'y of Labor, United States DOL v. Access Home Care, Inc.*, Civil Action No. 1:18–cv–581 (AJT/MSN), 2019 U.S. Dist. LEXIS 231687, at *12–13 (E.D. Va. Mar. 20, 2019) (citing *McComb v.*

**JA2137**

*Homeworkers' Handicraft Coop.*, 176 F.2d 633, 641 (4th Cir. 1949); *see also Tobin v. Flippo*, 91 F. Supp. 302, 304 (E.D. Va. 1950) (holding that whether to issue an injunction is "discretionary with the trial court"). In deciding whether to issue an injunction under the FLSA, courts may consider: (1) the employer's previous conduct; (2) whether it is currently compliant (or non-compliant) with the FLSA; and (3) the dependability of any assurances that it will comply with the Act in the future. *See Access Home Care*, 2019 U.S. Dist. LEXIS 231687, at *12–13 (E.D. Va. Mar. 20, 2019) (citing *Martin v. Funtime, Inc.*, 963 F.2d 110, 114 (6th Cir. 1992)); *see also Acosta v. Emerald Contractors Inc.*, Civil Action No. TDC–18–3762, 2019 U.S. Dist. LEXIS 160500, at *14–15 (D. Md. Sep. 19, 2019).

## III. DISCUSSION

The Court may exercise its discretion and equitable powers to restrain future violations of the recordkeeping and overtime provisions of the FLSA for cause shown. 29 U.S.C. § 217; *Clifton D. Mayhew, Inc. v. Wirtz*, 413 F.2d 658, 663 (4th Cir. 1969) ("A suit for an injunction brought by the [DOL] ... is essentially equitable in nature ... in which the trial court has broad discretion to fashion its decree according to the circumstances of each case."). Although the FLSA allows injunctions, equitable relief is appropriate only when the remedy at law is inadequate. *See Sampson v. Murray*, 415 U.S. 61, 94 (1974); *eBay Inc.*, 547 U.S. at 391. In line with these principles, the Court finds that several factors favor the issuance of the Secretary's requested injunction.

Under the four *eBay* factors, the Court finds that the Secretary will be irreparably harmed without the injunction. First, Defendants' recurring FLSA violations substantially interfere with the Secretary's ability to vindicate public rights and fulfill her congressionally mandated responsibility to protect workers, including Defendants' employees. In the absence of Defendants' immediate compliance with all FLSA requirements, the Secretary is unable to protect Steadfast

4

nurses and ensure that they receive proper, timely, and adequate compensation. In its January 14, 2022 Order, the Court found that since August 18, 2015 Steadfast nurses were routinely undercompensated for overtime, impacting their ability to meet their basic needs and financial obligations. Jan. 14, 2022 Mem. Op. & Or. ("Jan. 14, 2022 Or."), ECF No. 324 at ¶ 38 (citing Trial Transcript ("Tr.") at 75:6–8, 97:25–98:2, 125:15–18, 184:7–10). In addition, the Court found that even when nurses complained to Steadfast about their failure to receive overtime payment, and Defendants knew that their payment practices were unlawful after Plaintiff concluded its initial administrative investigation in 2018, Defendants continued its practice of undercompensating its employees. *Id.* at ¶¶ 46, 70 (citing Tr. at 78:3–13, 127:5–18, 185:24–186–7; 221:21–222:3, 344:10–345:1, 550:25–551:25). Despite Defendants' clear knowledge of the FLSA's requirements, Defendant has a history of willful non-compliance that continues through the present day. *Id.* at ¶¶ 80-81 (citing Tr. at 535:24–536:2, 993:12–16, 1029:13–17, 1092:13–1093:11); Pl.'s Mem. Supp. at 3-5, 18.[2] As a result, the Court finds that prospective injunction is necessary to place the cost of Defendants' noncompliance on Steadfast and Ms. Lisa Pitts as the employer, which in turn "lessens the responsibility of the Wage and Hour Division in investigating instances of noncompliance." *Martin v. Funtime, Inc.*, 963 F.2d 110, 114 (6th Cir. 1992) (internal citation omitted); *see Metzler v. IBP, Inc.*, 127 F.3d 959, 963 (10th Cir. 1997) (internal citation omitted).

Second, the other legal remedies available do not remedy the harm created by Defendants continuing violations. Monetary damages in the form of back wages and liquidated damages are only effective if the Department of Labor is able to accurately review and calculate Steadfast nurses' lost wages. However, since the Court's January 14, 2022, Defendants have failed to timely respond to the Secretary's requests for payroll records and maintain proper payroll records as

---

[2] The Court also notes that the Secretary sued Defendants twice for similar FLSA violations. *See* Compl., ECF No. 1 in *Walsh v. Med. Staffing of Am.*, No. 2:18-cv00226 (E.D. Va. Jan. 14, 2022) ("Steadfast I") *compare* Compl., ECF No. 1 in *Walsh v. Med. Staffing of Am.*, No. 2:19-cv00475 (E.D. Va. Jan. 14, 2022) ("Steadfast II").

required by the FLSA. *See* Decl. of Alvaro Mazuera, ECF No. 382-1. In addition, Defendants conceded that the most recent payroll information provided to the Department of Labor resulted in findings that demonstrated that Steadfast nurses remained undercompensated for overtime hours worked. Defs.' Supp. Mem. at 5 (citing Def.'s Auditor Report, ECF No. 375-1 at 7). Therefore, monetary damages standing alone are inadequate remedies to the harm created by Defendants' continued non-compliance and inability to accurately pay its nurses without oversight.

With respect to the third and fourth factors, the balance of the equities also favors Plaintiff. A prospective injunction will not harm Defendants by requiring them to comply with the law. In contrast, Defendants' continued noncompliance harms both Steadfast workers and competitors and interferes with the mission of the Department of Labor. For example, the Court found that Defendants intentionally "declined the option to include a feature that would have tracked the number of hours the nurses worked in excess of 40 hours each workweek." Jan. 14, 2022 Order at ¶66 (citing 1016:23–1017:23; Plaintiff's Trial Exhibit ("PX") -2 at 74–75, 81–82; PX-3 at 5). Lastly, the public's interest in vindicating labor laws favors the issuance of an injunction protecting both workers and businesses. "By not paying overtime, Steadfast can charge client-facilities lower rates for their services than their competitors who do pay overtime. These lower rates make Steadfast's services more desirable to healthcare facilities than their competitors' services, creating unfair competition in interstate commerce." Jan. 14, 2022 Or. at ¶ 58 (citing Tr. at 623:18–624:6).

In determining whether to issue a prospective injunction under the FLSA, courts also consider the employer's previous conduct, its current compliance or noncompliance, and the dependability of any assurances that it will comply with the FLSA in the future. *Sec'y of Labor, United States DOL v. Access Home Care, Inc.*, 2019 U.S. Dist. LEXIS 231687 at *13, 2019 WL 8887760 (E.D. Va. March 20, 2019) (citing *Martin v. Funtime, Inc.*, 963 F.2d 110, 113 (6th Cir. 1992); *See, e.g., Donovan v. Brown Equip. & Serv. Tools, Inc.*, 666 F.2d 148, 158 (5th Cir.

6

**JA2140**

1982) (quoting *Dunlop v. Davis*, 524 F.2d 1278 (5th Cir. 1975)); *see also Chao v. Va. Dep't of Transp,*, 157 F. Supp. 2d 681, 690 (E.D. Va. 2011) (citing cases reflecting that five different United States Courts of Appeals apply the same or similar tests), *rev'd in part on other grounds*, 291 F.3d 276 (4th Cir. 2002)). An injunction is warranted only "where the court is convinced that such relief is necessary to prevent future violations." *Walling v. Clinchfield Coal Corp.*, 159 F.2d 395, 399 (4th Cir. 1946) (citations omitted).

The Court has considered Defendant's assurances regarding its current compliance and other submitted evidence regarding its willingness to follow the FLSA. Def.'s Supp. Mem. at 3-6, 13-15. In particular, Defendants allege that "[t]he record in this case establishes' Defendants' good faith, diligent efforts to promptly adjust Steadfast's overtime payment practices to comport with the findings and conclusions reflected in the Court's January 2022 opinion." *Id.* at 10. However, contrary to Defendants' contentions, Defendants' pre-trial and post-trial conduct demonstrates a continued stiff-necked approach to their obligations under the FLSA.

In its January 14, 2022 opinion, the Court's found that even after receiving information about its FLSA violations in 2018, Defendants continued to violate the law. Jan. 14, 2022 Or. at 27-30 (discussing how the record reflects that Defendants willfully violated the FLSA in bad faith). Only in February 2022, over three years after the completion of the Department's administrative investigation and during the pendency of this case, did Defendants start to implement policy and payroll changes. Defs.' Supp. Mem. at 4-5. Particularly troubling are the violations between the time that Defendants were informed that Steadfast's business practices were noncompliant in 2018 and its disregard for the advice of the legal counsel to stop effecting the non-compete clause in its employment agreement. Jan. 14, 2022 Or. at ¶¶ 69-81 (noting that Defendants did not adhere to advice to forgo the non-compete clauses in its contractor agreements and continued to both underpay and misclassify its nurses).

7

**JA2141**

While true that Defendants restructured its payroll system in February 2022 and engaged a third-party auditor to examine its payroll records to ensure compliance with applicable regulations, these efforts do not minimize the fact that Defendants continue to violate the FLSA's overtime wage provisions. The audit report revealed that the Steadfast had failed to pay at least $270,820 to its nurses as of January 30, 2023. Defs.' Supp. Mem. at 2. Defendants argue that "[t]his inadvertent shortfall was traceable to policy gaps and administrative errors arising from the somewhat complicated nature of the manner in which the nurses submit timesheets relating to shifts they have worked, coupled with the fact that this was Steadfast's first introduction to overtime payment procedures at this large of a scale." *Id.* at 2-3. Although Defendants classify these violations as "limited process errors" that have been "identified and corrected," the Court has yet to see, and Defendants have yet to demonstrate, how their articulated efforts to prevent such issues from reoccurring will bring them in compliance with the FLSA going forward. In contrast, the Department of Labor has documented the Defendants' repeated and blatant disregard of their requests for payroll records and failure to properly calculate overtime wages. Pl.'s Supp. Mem. at 1-2, 4-6. Therefore, the Court is not convinced that Defendants will make a serious and proactive effort to prevent future violations without oversight.

Ultimately, Defendants' pattern of FLSA violations and bad faith efforts to avoid compliance weigh heavily in favor of granting a prospective injunction. *Dunlop v. Davis*, 524 F.2d 1278, 1281 (5th Cir. 1975). The Court has assessed the appropriateness of an injunction under the four *eBay* factors and reviewed the factual findings made in its January 14, 2022 Order and the parties' supplemental memoranda. In light of the record in this case, the Court cannot say that Defendants are likely to comply with their obligations under the FLSA absent the injunction. *See Solis v. United Buffet, Inc.*, 2012 WL 669867, at *5 (N.D. Cal. Feb. 29, 2012); *See, e.g., Herman v. Brewah Cab, Inc.*, 992 F.Supp. 1054, 1061 (E.D.Wis.1998) (granting injunction to restrain

8

**JA2142**

future FLSA violations even though defendant was currently in compliance with FLSA). Accordingly, Plaintiff has shown good cause for enjoining Defendants from violating the FLSA's overtime and recordkeeping provisions. 29 U.S.C. § 207.

## IV.   CONCLUSION

For these reasons, the Court finds that a permanent injunction is needed to prevent continued violations of the Act. Accordingly, Ms. Lisa Pitts and Steadfast, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with them are restrained and enjoined from future violations of the act such that:

a. Defendants shall not violate Section 7 of the Act, 29 U.S.C. § 207;

b. Defendants shall pay all non-exempt employees at least time and one-half their regular rates for all hours worked in excess of forty per workweek under Section 7;

c. Defendant shall not violate Section 11 of the Act, 29 U.S.C. § 211, and 29 C.F.R. § 516, et seq.;

d. Defendants shall maintain and preserve records pursuant to Section 11 of the Act and 29 C.F.R. § 516, et seq.; and Defendants shall preserve these records for at least three years. See *McComb v. Homeworks' Handicraft Co–op*, 176 F.2d 633 (4th Cir. 1949); see also *Martin v. Funtime*, 963 F.2d 110, 113 (6th Cir. 1992)

The Clerk is **DIRECTED** to provide a copy of this Order to the parties and counsel of record.

**IT IS SO ORDERED**.

Norfolk, Virginia
September 7, 2023

Raymond A. Jackson
United States District Judge

9

**JA2143**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| JULIE A. SU, <br> SECRETARY OF LABOR, <br> UNITED STATES DEPARTMENT OF <br> LABOR, <br>          Plaintiff, <br><br>     v. <br><br> MEDICAL STAFFING OF AMERICA, LLC, <br> D/B/A STEADFAST MEDICAL STAFFING, <br><br> & <br><br> LISA PITTS, <br><br>         Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )    **Case No. 2:18-cv-226** <br> ) <br> )    **Case No. 2:19-cv-475** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## NOTICE OF APPEAL

Notice is hereby given that Defendants Medical Staffing of America, LLC d/b/a Steadfast Medical Staffing and Lisa Pitts (collectively "Defendants") appeal to the United States Court of Appeals for the Fourth Circuit from the Memorandum Opinion and Order entered on September 7, 2023 (Dkt. No. 395) in favor of the U.S. Department of Labor, and all earlier adverse interlocutory orders and rulings subsumed into that opinion and order. Defendants acknowledge that the District Court has not yet ruled on certain motions relating to computation of backpay and liquidated damages, which remain pending. Defendants file this Notice of Appeal now in an abundance of caution, recognizing that prophylactic notices are permissible, and that orders relating to injunctions are appealable on an interlocutory basis under 28 U.S.C. § 1292(a)(1). *See* Fed. R. App. P. 4(a)(2).

Dated: November 3, 2023              Respectfully submitted,

**MEDICAL STAFFING OF AMERICA, LLC,
LISA ANN PITTS**

By: */s/ Abram J. Pafford*
Abram J. Pafford (VSB # 79999)
MCGUIREWOODS LLP
888 16th Street, NW, Suite 500
Washington, DC 20006
Phone: (202) 857-1725
Fax: (202) 828-3350
apafford@mcguirewoods.com

Robert W. McFarland (VSB #24021)
V. Kathleen Dougherty (VSB # 77294)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Phone: (757) 640-3716
Fax: (757) 640-3966
rmcfarland@mcguirewoods.com
vkdougherty@mcguirewoods.com

*Counsel for Defendants*

**JA2145**

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2023, I filed the foregoing document with the Clerk

of the Court using the CM/ECF system, which will send a notification of such filing to all counsel

of record.

*/s/ Abram J. Pafford*
Abram J. Pafford (VSB # 79999)

**JA2146**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**



FILED

NOV 30 2023

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

JULIE A. SU,
ACTING SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF LABOR,

      Plaintiff,

   v.

MEDICAL STAFFING OF AMERICA, LLC, d/b/a
STEADFAST MEDICAL STAFFING, and LISA
PITTS,

      Defendants.

Case No. 2:18–cv–226

Case No. 2:19–cv–475

**ORDER**

On January 14, 2022, the Court found Medical Staffing of America d/b/a as Steadfast

Medical Staffing and business owner Lisa Pitts (collectively, "Defendants") liable for failing to

pay overtime and maintain pay records in accordance with the Fair Labor Standards Act

("FLSA"), as amended, 29 U.S.C. § 201, et seq. ECF No. 324. Accordingly, the Court entered

judgment for the United States Department of Labor ("Plaintiff" or "DOL") and enjoined

Defendants from committing further FLSA violations. ECF Nos. 324, 325. On July 28, 2022, the

DOL filed a Motion for Bond, ECF No. 348, alleging that Defendants continue to violate the

FLSA and the Court's Order. ECF No. 349.

On December 22, 2022, the Court ordered Defendant to Show Cause within thirty days

regarding whether to sanction them for allegedly failing to comply with the Court's Order. ECF

No. 363. On January 23, 2023, Defendants filed their response to the Court's Show Cause Order.

ECF No. 364. On February 6, 2023, Plaintiff filed its reply to Defendants' response to the

Court's Show Cause Order. ECF No. 365. On March 2, 2023, the Court held a hearing on the

**JA2147**

Show Cause Order. ECF No. 370.

On May 12, 2023, Defendants filed a Motion to Strike Plaintiff's Claim for Liquidated Damages on the grounds that given the posture of the Show Cause Order, Plaintiff can only seek liquidated damages in trial or settlement under 29 U.S.C. § 216(c). ECF Nos. 385, 386. However, on November 29, 2023, the Court dismissed the Show Cause order, making Defendants' Motion to Strike Plaintiff's Claim for Liquidated Damages moot. ECF No. 408.

For the reasons stated above, Defendants' Motion to Strike is **DENIED AND DISMISSED FOR MOOTNESS**. ECF Nos. 385, 386. The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
November **30**, 2023

Raymond A. Jackson
**United States District Judge**

**JA2148**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| JULIE A. SU,<br>ACTING SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF LABOR,<br><br>                     Plaintiff,<br><br>       v.<br><br>MEDICAL STAFFING OF AMERICA, LLC, d/b/a<br>STEADFAST MEDICAL STAFFING, and LISA<br>PITTS,<br><br>                   Defendants. | Case No. 2:18–cv–226<br><br>Case No. 2:19–cv–475 |

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Medical Staffing of America d/b/a as Steadfast Medical Staffing and business owner Lisa Pitts (collectively, "Defendants") Motion for Relief in Connection with the United States Department of Labor ("Plaintiff" or "DOL") Trial Exhibit PX-21 and Opposition to Plaintiff's March 11 "Updated Back Wage Computations." ECF No. 331 ("Defs.' Mot."). Plaintiff filed its response in opposition. ECF No. 335 ("Pl.'s Resp."). Defendants filed their reply. ECF No. 337 ("Defs.' Reply"). Having carefully reviewed the parties' briefs, the Court finds this matter ripe for judicial determination. In this Memorandum Opinion and Order, the Court will only address PX-21.[1] For the reasons set forth below, Defendants' Motion for Relief regarding PX-21 is **DENIED.** Furthermore, the Court finds a hearing on Defendants' Motion unnecessary.

### I.   PROCEDURAL AND FACTUAL HISTORY

On May 2, 2018, Plaintiff initiated an enforcement action against Defendants, alleging several Fair Labor Standards Act ("FLSA") violations. ECF No. 1. On January 14, 2022, following

---

[1] The Court will address Plaintiff's updated back wage computations in a separate order.

**JA2149**

a bench trial, the Court entered judgment in favor of Plaintiff, finding Defendants liable for violating the FLSA for failing to pay overtime and maintain records. ECF Nos. 324, 325. In its Memorandum and Opinion, the Court enjoined Defendants from committing further FLSA violations and accepted Plaintiff's back wage calculations and methodology, finding that Defendants owed $3,619,716.49 for overtime violations from August 18, 2015 to June 27, 2021 and an equal number of liquidated damages, totaling $7,229,432.98. ECF No. 324 (the "Court's Order" or "Order"). In that same Order, the Court directed Plaintiff to provide an updated calculation of additional back pay and liquidated damages for any continuing FLSA violations from June 27, 2021, to January 13, 2022. *Id.*

On March 11, 2022, Plaintiff submitted updated back wage calculations for $9,075,285.66, an amount that includes $1,835,852.68 in added back wages and liquidated damages. ECF No. 329. On March 13, 2022, Defendants filed a Motion for Relief in Connection with Plaintiff's Trial Exhibit PX-21,[2] under Federal Rules of Civil Procedure 52(b), 54(b) and 60(a) – (b), and opposition to Plaintiff's March 11 "Updated Back Wage Computations," claiming that Plaintiff's backpay and liquidated damage calculations included several computational errors. On March 14, 2022, Defendants filed a notice of appeal to contest the final judgment. ECF No. 332. On March 28, 2022, Plaintiff responded in opposition stating the Court rendered a final decision and Defendants' Motion is untimely. On April 4, 2022, Defendants replied in support of their Motion stating PX-21 contains multiple errors. On April 8, 2022, the Court deferred ruling on Defendants' Motion for Relief in the interest of judicial economy. ECF No. 340. On May 31, 2023, the Fourth Circuit Court of Appeals vacated the injunction and remanded the case for further proceedings.

---

[2] Trial Exhibit PX-21 is a backpay table that includes approximately 10,000 entries the DOL created using data taken from Defendants' payroll, invoices, and worker timesheets, which were produced in discovery and are part of the trial record.

**JA2150**

## II.   LEGAL STANDARD

### A. Federal Rule of Civil Procedure 52(b)

Under the Federal Rule of Civil Procedure ("FRCP") 52(b), it states "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59." As courts have noted, "[a]mong the purposes of such a motion is to correct manifest errors of law or fact." *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 110 F. Supp. 2d 441, 445 (E.D. Va. 2000). Furthermore, "or in limited circumstances, to present newly discovered evidence, but not to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." *U.S. v. Mathis*, No. 6:06-815, 2008 WL 906554, *1 (D.S.C., 2008).

### B. Federal Rule of Civil Procedure 54(b)

FRCP 54(b) provides:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

"Rule 54(b)'s approach involves broader flexibility to revise *interlocutory* orders before final judgment as the litigation develops and new facts or arguments come to light." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC*, 899 F.3d 236, 256 (4th Cir. 2018) (quoting *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017)). "The Court has distilled the grounds for a Rule 54(b) motion for reconsideration to (1) an intervening change in the law, (2) new evidence that was not previously available, or (3) correction of a clear error of law or to prevent

3

**JA2151**

manifest injustice." *Van Duzer Lang v. Patients Out of Time*, No. 3:20-CV-00055, 2023 WL 7191175, at *1 (W.D. Va. Nov. 1, 2023) (internal citation and quotations omitted). Courts have the responsibility to reach the correct judgment under the law. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003). "[E]very order short of a final decree is subject to reopening at the discretion of the district judge." *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983). A motion for reconsideration is wasteful when it reiterates previous arguments. *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, 755 F.Supp. 2d 738, 744 (W.D. Va. 2011). "Put differently, aggrieved parties may not put a finer point on their old arguments and dicker about matters decided adversely to them." *Van Duzer Lang*, 2023 WL 7191175 at *1 (quoting *Evans v. Trinity Indus., Inc.*, 148 F.Supp. 3d 542, 546 (E.D. Va. 2015)). A party that does not present its strongest case in the first instance generally has no right to raise it in a motion to reconsider. *See United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003); *see also U.S. Tobacco Coop. Inc.*, 899 F.3d at 257 (stating litigants who failed to raise the issue with the court should not be permitted without good reason to raise it later).

### C. Federal Rule of Civil Procedure 60(a) – (b)

FRCP 60(a) provides "[t]he court may correct . . . a mistake . . .whenever one is found in a judgment, order, or other part of the record." The court may correct a mistake, but after filing an appeal a "mistake may be corrected only with the appellate court's leave." *Id.* Rule 60(a) "applies when the court intended one thing but by merely clerical mistake or oversight did another." *Rhodes v. Hartford Fire Ins. Co.*, 548 F. App'x 857, 859 (4th Cir. 2013) (internal citation and quotation marks omitted). "The relevant test . . . is whether the change affects substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or is instead a clerical error, a copying or computational mistake, which is correctable under the Rule." *Rhodes*, 548 F. App'x at 859 (4th

4

**JA2152**

Cir. 2013) (quoting *Pfizer Inc. v. Uprichard,* 422 F.3d 124, 130 (3d Cir. 2005)).

FRCP Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

"[W]hen the party is blameless, his attorney's negligence qualifies as a 'mistake' or as 'excusable neglect' under Rule 60(b)(1). Moreover, both cases require a movant to act in a timely fashion, to avoid unfair prejudice to the non-movant, and to proffer a meritorious defense [][] to obtain relief." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988). Rule 60(b)(6) allows a court to relieve a party from final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Although Rule 60(b)(6) is a catch-all provision, "a motion under 60(b)(6) may not be granted absent extraordinary circumstances." *Murchison v. Astrue*, 466 F. App'x 225, 229 (4th Cir. 2012). "Extraordinary circumstances are those that create a substantial danger that the underlying judgment was unjust." *Id.* (alterations in original) (internal quotations and citations removed). A party must raise a Rule 60(b) motion within a reasonable time and not more than a year after entering the judgment for reasons one through three. Fed. R. Civ. P. 60(c)(1).

## III.   DISCUSSION

### A. Federal Rule of Civil Procedure 52(b)

Defendants argue that they are entitled to relief under FRCP 52(b) to obtain an accurate

5

**JA2153**

calculation of the back pay Defendants owe to their employees because PX-21 calculations are inaccurate. Defs.' Mot. at 10–11. Additionally, Defendants argue that the Court has not entered judgment and has not imposed damages. Defs.' Reply at 14. Further, the Court's order is interlocutory regarding the issue of damages, leaving the Court empowered to grant post-trial relief. *Id*. Plaintiff argues that Defendants' Motion is untimely because Defendants filed the motion 58 days after final judgment, and the Clerk closed the case. Pl.'s Resp. 8.

FRCP 52(b) states that a party must file its motion no later than 28 days after the court enters judgment. Here, Defendants waited 58 days to file this motion. Further, Defendants raised this motion to relitigate issues that were decided at trial. Defendants failed to object or challenge PX-21 before and during trial. The Court repeatedly informed Defendants to review Plaintiff's computations, however, Defendants failed to do so. Pl.'s Resp. at 10; Court's Order. Additionally, the FLSA required Defendants to keep and maintain proper records, which they failed to do. Defendants should have raised this issue at trial instead of waiting 58 days until after the Court entered judgment to argue the issue of the computations. *See Perry v. Clarke*, No. 1:17CV664 (LO/IDD), 2019 WL 13249499, at *1 (E.D. Va. May 2, 2019) (stating petitioner's motion under Rule 52(b) seeks to relitigate issues that were previously rejected). The Court's judgment was final, and the Clerk closed the case. *See* Court's Order; ECF No. 325. *See In re Grand Jury 2021 Subpoenas*, No. 22-1654, 2023 WL 8103935, at *6 (4th Cir. Nov. 22, 2023) (stating final decisions end the litigation and leave nothing for the court to decide). The only thing left for the Court to decide is the amount of back wages owed, which is a ministerial task. *See Rutter v. Oakwood Living Centers of Virginia, Inc.*, 282 Va. 4, 13 (2011). Even if the Court's decision was not final, Defendants' arguments point out no errors of law or fact that would manifest injustice because Defendants decided to sit at trial and not object to PX-21. Thus, Defendants' Motion under Rule

6

**JA2154**

52(b) is untimely and unavailing to Defendants.

## B. Federal Rule of Civil Procedure 54(b)

Defendants argue that they are entitled to relief under Rule 54(b) because the Court has not resolved the final back pay computations and liquidated damages, making the Court's Order interlocutory. Defs.' Mot. at 8. Additionally, Defendants argue that PX-21 computations are wrong and unjust to impose on Defendants. *Id.* at 15. Plaintiff argues that the Court entered final judgment in favor of Plaintiff and directed Plaintiff to provide an update on back wages, which is a ministerial task. Pl.'s Resp. at 4. Therefore, Plaintiff concludes that the Court's Order is final and not interlocutory. *Id.*

FRCP 54(b) governs interlocutory orders and gives the court discretion to revise its order before entry of judgment. In this case, the Court entered final judgment and resolved all issues leaving only the amount of damages owed to Defendants employees. *See Rutter*, 282 Va. at 13. Rule 54(b) is inapplicable in this case. The Court issued its Order, finding Defendants liable for violating the FLSA. In that Order, the Court adopted Plaintiff's calculations and awarded damages to Plaintiff. Further, the Court directed Plaintiff to provide an update regarding back wages. However, even if the Court's Order is interlocutory, Plaintiff cannot get relief under 54(b). Defendants have not shown that there has been a change in law, clear error manifesting injustice, or new evidence that was not previously available. *See Van Duzer Lang*, 2023 WL 7191175 at *1. Rather, Defendants rely on PX-21 containing alleged computation errors as a basis for this Motion. However, Defendants had ample time before and during the trial to challenge Plaintiff's PX-21 computations well before the Court ruled in favor of Plaintiff. Defendants also did not introduce evidence at trial to challenge Plaintiff's computations. This Motion is wasteful as Defendants had ample time to address these issues before the Court entered judgment. *See Duke Energy Corp.*,

**JA2155**

218 F.R.D. at 474. Under Rule 54(b), Defendants cannot relitigate PX-21 and the amount of damages owed since the Court's decision was adverse to them. *See Van Duzer Lang*, 2023 WL 7191175 at *1 ("Put differently, aggrieved parties may not put a finer point on their old arguments and dicker about matters decided adversely to them.") (internal citation and quotations omitted). Thus, Defendants' Motion under Rule 54(b) is improper and denied.

### C. Federal Rule of Civil Procedure 60(a) – (b)

Defendants argue that they are entitled to relief under Rule 60(a) because Plaintiff's PX-21 computations are inaccurate. Defs.' Mot. at 9–10. Further, PX-21 is complete with errors and fails to specify the overtime pay the employees received. Defs.' Reply at 17. Defendants believe that under Rule 60(a), the Court should allow the correction of the alleged clerical errors. *Id.* However, Plaintiff argues that Defendants' requested relief is not clerical. Pl.'s Resp. at 13. Instead, Plaintiff argues that Defendants seek to have the Court relitigate issues that Defendants failed to object to at trial. *Id.*

FRCP 60(a) states, "[t]he court may correct . . . a mistake . . .whenever one is found in a judgment, order, or other part of the record." In this case, there are no clerical mistakes. The Court informed Defendants multiple times before the trial to review PX-21. It is completely absurd to have Plaintiff recompute alleged errors in PX-21 that should have been addressed long before the Court entered judgment and long before the trial. *See e.g., Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687–88 (1946) (stating employer cannot complain about the inaccuracy of damages had the employer maintained the records). The Court warned Defendants about their questionable litigation decisions before and during the trial and their failure to cooperate with Plaintiff. *See* Court's Order. Additionally, the Court warned Defendants at trial that they would not be allowed to present evidence of damages after trial. Defendants now raise these issues regarding PX-21 58

8

**JA2156**

days after entry of judgment, 185 days after trial, and more than 300 days after the close of discovery, and the Court finds this to be grossly unreasonable. Pl.'s Resp. at 11. Defendants waived their right to argue for clerical mistake under 60(a) because they failed to make any arguments about PX-21 at trial. *See United States v. Olano*, 507 U.S. 725, 733 (1993).

Defendants raise similar arguments under Rule 60(b)(1). In this case, as the Court mentioned above, Defendants' litigation errors are not mistakes under Rule 60(b)(1). Defendants failed to raise the issue of damages at trial. The Court determined the amount of damages owed based on evidence Plaintiff presented at trial. *See Mt. Clemens*, 328 U.S. at 687 (stating employee or Secretary can submit sufficient evidence from which violations of the FLSA and the amount of an award may be reasonably inferred if employer fails to maintain records in accordance with FLSA).

Defendants also argue that under Rule 60(b)(6), they will suffer enormous harm paying more than 60% in damages. Defs.' Mot. at 10–11. Furthermore, Defendants argue that correcting PX-21 computations will not impose any unfair prejudice on Plaintiff given the significance of the errors. *Id.* at 11. However, Plaintiff argues that Defendants failed to show that the Court's determination on damages was a mistake. Pl.'s Resp. at 15. Additionally, Defendants had multiple opportunities to introduce their evidence if they chose to do so. *Id.* at 16. Lastly, Plaintiff argues that Defendants cannot demonstrate extraordinary circumstances because they failed to counter Plaintiff's evidence.

Here, Defendants cannot use their failure to present evidence to counter Plaintiff's damages calculations to argue for "extraordinary circumstances" under Rule 60(b)(6). Defendants were afforded a fair trial and had the opportunity to review the pleadings, discovery, and evidence presented at trial. Defendants had every civil procedure and evidentiary tool available to them to

**JA2157**

use during the litigation process. It was Defendants own neglect to review the computations as the Court instructed that allowed the admission of PX-21 without objection. Thus, Defendants' Motion under Rule 60(a) – (b) is meritless and denied.

### D.  Federal Rule of Civil Procedure 59

The Court believes Defendants are raising their issue regarding PX-21 under Rule 59. Rule 59 states that a court may grant a new trial for any reason "for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(b). The party must file a motion for a new trial no later than 28 days after the entry of judgment. Fed. R. Civ. P. 59(b). Also, a party may seek to amend a judgment no later than 28 days after entry of the judgment. Fed. R. Civ. P. 59(e). "Reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Both Defendants and Plaintiff raise the same arguments as above. In this case, a potential motion under Rule 59 is time-barred because Defendants filed the instant Motion 58 days after the Court entered judgment in favor of Plaintiffs. Thus, a potential motion under Rule 59 is time-barred.

### E.  Defendants Waived Right to Attack PX-21

Assuming Defendants stated valid reasons for relief under Rule 52(b), 54(b), 59(a) – (b), and 60(a) – (b), Defendants waived their right to attack PX-21. A waiver is the "intentional relinquishment or abandonment of a known right." *Olano*, 507 U.S. at 733. Further, when a party fails to present an argument, it is deemed waived. *See e.g., Nystrom v. Trex Co.*, No. CIV.A. 2:01CV905, 2006 WL 208591, at *4 (E.D. Va. Jan. 25, 2006), *aff'd*, 200 F. App'x 987 (Fed. Cir. 2006) (finding plaintiff failed to present substantive arguments on the issue deeming it waived).

In this case, Defendants waived any procedural right to attack PX-21 because they failed

10

**JA2158**

to make any arguments regarding the back wage computations before or during the trial. The Court

informed Defendants that back wage computations would be based on the record and not anything

presented after trial. *See* Trial Transcript, Day 3, 469–70, ECF No. 314. Despite the Court's

warning, Defendants did not present evidence to counter PX-21 nor object to PX-21 admission.

Thus, Defendants waived arguments regarding PX-21 in this Motion.

### IV. CONCLUSION

For the reasons stated above, Defendants' Motion is **DENIED**. ECF No. 331. The Court

**DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
December  7 , 2023

_____
/s/
Raymond A. Jackson
United States District Judge

11



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| JULIE A. SU,<br>ACTING SECRETARY OF LABOR,<br>UNITED STATES DEPARTMENT OF LABOR,<br><br>                      Plaintiff,<br><br>       v.<br><br>MEDICAL STAFFING OF AMERICA, LLC, d/b/a<br>STEADFAST MEDICAL STAFFING, and LISA<br>PITTS,<br><br>                     Defendants. | Case No. 2:18–cv–226<br><br>Case No. 2:19–cv–475 |

### *MEMORANDUM OPINION AND ORDER*

Before the Court is the United States Department of Labor's ("Plaintiff" or "DOL")

Motion for an Updated Order and Final Judgment. ECF No. 396 ("Pl.'s Mot.").[1] Plaintiff filed its

Memorandum in Support of its Motion. ECF No. 397 ("Pl.'s Mem."). Defendants filed their

Response in Opposition to Plaintiff's Motion. ECF No. 402 ("Defs.' Resp."). Plaintiff filed its

Reply to Defendants' Response. ECF No. 403 ("Pl.'s Reply"). Having carefully reviewed the

parties' briefs, the Court finds this matter ripe for judicial determination. For the reasons set forth

below, Plaintiff's Motion for an Updated Order and Final Judgment is **GRANTED** in part and

**DISMISSED** in part.

### I.    PROCEDURAL AND FACTUAL HISTORY

On May 2, 2018, Plaintiff initiated an enforcement action against Defendants, alleging

several Fair Labor Standards Act ("FLSA") violations. ECF No. 1. On January 14, 2022,

following a bench trial, the Court entered judgment in favor of Plaintiff, finding Defendants

---

[1] The Court notes that Plaintiff filed four motions requesting an updated order. ECF Nos. 329, 346, 382, and 396. With this ruling on this Motion, ECF No. 396, the previous motions are moot.

1

liable for violating the FLSA for failing to pay overtime and maintain records. ECF Nos. 324, 325. In its Memorandum Opinion and Order, the Court enjoined Defendants from committing further FLSA violations and accepted Plaintiff's back wage calculations and methodology, finding that Defendants owed $3,619,716.49 for overtime violations from August 18, 2015 to June 27, 2021 and an equal number of liquidated damages, totaling $7,229,432.98. ECF No. 324, (the "Court's Order" or "Order"). In that same Order, the Court instructed Plaintiff to provide an updated calculation of additional back pay and liquidated damages for any continuing violations within sixty days of the Order. *Id.*

On March 11, 2022, Plaintiff submitted an updated back wage calculations notice for $9,075,285.66, an amount that includes $1,835,852.68 in added back wages and liquidated damages. ECF No. 329. On March 13, 2022, Defendants filed a Motion for Relief in Connection with Plaintiff's Trial Exhibit PX-21 and opposition to Plaintiff's March 11 "Updated Back Wage Computations," claiming that Plaintiff's backpay and liquidated damage calculations included several computational errors. On December 7, 2023, the Court denied Defendants' Motion for Relief. ECF No. 411. On July 14, 2022, Plaintiff filed a Motion for Entry of an Updated Order, ECF Nos. 346, 347, requesting $9,075,285. 66, which Defendants opposed, ECF No. 350.

On December 22, 2022, the Court ordered Defendant to Show Cause within thirty days regarding whether to sanction them for allegedly failing to comply with the Court's Order. ECF No. 363. On January 23, 2023, Defendants filed their response to the Court's Show Cause Order. ECF No. 364. On February 6, 2023, Plaintiff filed its reply to Defendants' response to the Court's Show Cause Order. ECF No. 365. On March 2, 2023, the Court held a hearing on the Show Cause Order. ECF No. 370. On November 29, 2023, the Court issued its Memorandum Opinion and Order dismissing the Court's Show Cause Order. ECF No. 408.

2

**JA2161**

On April 20, 2023, Plaintiff submitted its second updated back wage computations notice for $9,618,040.08. ECF No. 382. On May 12, 2023, Defendants filed their Motion to Strike Plaintiff's Claim for Liquidated Damages based on the Show Cause Order. ECF No. 385. On November 30, 2023, the Court issued an order denying and dismissing Defendants' Motion to Strike because the Court dismissed the Show Cause Order. ECF No. 410.

On October 1, 2023, Plaintiff filed its current Motion for an Updated Order and Final Judgment. Plaintiff filed its Memorandum in Support requesting $9,618,040.08 in back wages and liquidated damages for the period of August 18, 2015 to January 30, 2023. Defendants filed their Response in Opposition to Plaintiff's Motion, arguing that the Court's Order was not final and PX-21 (an exhibit admitted at trial) is complete with computation errors. Plaintiff filed its Reply to Defendants' Response.

## II.    LEGAL STANDARD

Under Section 7 of the FLSA it states

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C.A. § 207(a)(1). The FLSA also requires employers who are subject to any of its provisions to maintain and keep proper records of the "persons employed" and "the wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211(c). Sections 215(a)(2) and 15(a)(5) prohibit an employer from violating these requirements. The Secretary is authorized to collect from any employer who violates Section 7 of the FLSA and seek back pay and an equal amount of liquidated damages under 29 U.S.C § 216(b). Liquidated damages are

3

**JA2162**

not penal in nature "but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945). "It constitutes a Congressional recognition that failure to pay the statutory minimum . . . may be so detrimental to [the] maintenance of the minimum standard of living . . . that double payment must be made in the event of delay [][] to [ensure] restoration of the worker to that minimum standard of well-being." *Id.*

However, a court may reduce or deny liquidated damages if the defendants show that their act or omission was done in good faith and not in violation of the FLSA. 29 U.S.C. § 260. The Fourth Circuit interpreted § 260 "to place a plain and substantial burden upon the employer to persuade the court that the failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *See Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997) (internal quotations and citations removed).

## III.    DISCUSSION

### A. Back Wages

After a seven-day bench trial, the Court found Defendants in violation of the FLSA. Court's Order. In that Order, the Court determined Defendants owed their employees $3,619,716.49 in back wages for the period of August 18, 2015 through June 27, 2021 ("First Period"). *Id.* at 16. Additionally, the Court directed Plaintiff to provide an update on the back wages and liquidated damages Defendants owe, which Plaintiff did four times. ECF Nos. 329, 346, 382, 396. Section 29 U.S.C. § 216(b) states an employer who violates the FLSA "shall be liable to the . . . employees affected in the amount of . . . their unpaid compensation." 29 U.S.C.

4

**JA2163**

§ 216(b).

Plaintiff calculated the back wages Defendants owe for the First Period using the information in Defendants' payroll records. ECF No. 329. To compute this amount for Defendants' employees who didn't receive overtime pay, Plaintiff divided "each employee's gross weekly wage by the employee's total hours worked for that workweek." *Id.* "Where the total numbers of hours a nurse worked in [] one workweek exceeded 168 . . . Plaintiff then used an average of 112 hours as the maximum hours worked to adjust the back-wage calculation." *Id.* "Plaintiff then multiplied each employee's regular rate of pay by the hours worked over 40 in that workweek and multiplied the resulting number by .5 to account for the fact that [Defendants] paid the employees for every hour worked." *Id.* The number resulted in the total back wages Defendants owe their employees for that workweek. *Id.* Defendants dispute Plaintiff's calculations in their Motion for Relief of PX-21, ECF No. 331; however, the Court denied Defendants' Motion. ECF No. 411.

Secondly, Plaintiff submitted that Defendants owe $917,926.34 in back wages for June 20, 2021 through January 28, 2022 ("Second Period"). ECF No. 329. Plaintiff computed the calculations the same as previously mentioned. *Id.* Defendants dispute the calculations in their Motion; however, as stated above, the Court denied Defendants' Motion. ECF No. 411. Lastly, Plaintiff submitted Defendants owe $271,377.57 in back wages for January 29, 2022 through January 30, 2023 ("Third Period"). ECF No. 382. Plaintiff computed the calculations the same as previously mentioned. *Id.* However, Plaintiff compared its calculations to Defendants' calculations that Defendants' auditor submitted, ECF No. 375 at. Ex. A, and found a discrepancy of $557.57.[2] ECF No. 382. Defendants agreed to pay the additional $557.57. *Id.* Thus, the Court finds that Defendants owe $3,619,716.49 for the First Period, $917,926.34 for the Second Period,

---

[2] Defendants' auditor determined Defendants owe $270,820.00. ECF No. 375 at Ex. A.

and $271,377.57 for the Third Period.

### B. Liquidated Damages

Plaintiff established an award of liquidated damages is appropriate in this case. The FLSA provides that an employer who fails to pay minimum wages and overtime is liable for liquidated damages in the amount equal to the unpaid minimum wages and overtime compensation. 29 U.S.C. § 216(b). Defendants contest the liquidated damages for the three periods; however, the Court will grant liquidated damages for two periods.[3] In the Court's Memorandum Opinion and Order issued on December 7, 2023, the Court stated that Defendants failed to introduce evidence to counter Plaintiff's calculations at trial nor did Defendants object to Plaintiff's calculations at trial. ECF No. 411. Those calculations became part of the record, and the Court ruled in favor of Plaintiff. *Id.* Additionally, the Court directed Plaintiff to provide an updated back wage and liquidated damages calculation. *Id.* Plaintiff submitted its calculations on March 11, 2022, ECF No. 329, and on July 14, 2022. ECF Nos. 346, 347. Given Defendants' knowledge of their violations, the Court awards Plaintiff liquidated damages equal to the amount of back wages for the First Period and the Second Period.

However, the Court will not award liquidated damages for the Third Period. A court can deny or reduce liquidated damages if the defendants can show they acted in good faith. 29 U.S.C. § 260. Here, Defendants began complying with the Court's Order on February 8, 2022. ECF No. 375 at Ex. A. Although delayed, the Court will not penalize Defendants for being 1% out of compliance. *See Id.* (concluding Defendants' noncompliance accounted for 1% of the back pay they owe to their employees). Thus, the Court grants Plaintiff liquidated damages for the First Period and the Second Period.

---

[3] The Court grants liquidated damages for the First Period and the Second Period.

6

**JA2165**

### C. Award Calculation

The Court finds that Defendants owe Plaintiff $9,346,663.23. The Court calculated the back wages Defendants owe, adding $3,619,716.49 for the First Period, plus $917,926.34 for the Second Period, totaling $4,537,642.83, plus an equal amount of liquidated damages, totaling $9,075,285.66, plus $271,377.57 in back wages for the Third Period, for a final judgment of $9,346,663.23.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for an Updated Order and Final Judgment is **GRANTED** in part and **DENIED** in part. ECF No. 396.

The request to approve $9,618,040.08 in back wages plus liquidated damages is **DENIED**. After reviewing the briefs, the Court finds it appropriate to reduce the liquidated damages. The Court hereby **APPROVES $9,346,663.23 in back wages and liquidated damages.**

The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED.**

Norfolk, Virginia
December    , 2023

Raymond A. Jackson
United States District Judge

7

**JA2166**

**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

```
FILED

DEC 1 1 2023

CLERK, U.S. DISTRICT COURT
NORFOLK, VA
```

JULIE A. SU,                                    )
ACTING SECRETARY OF LABOR,       )
UNITED STATES DEPARTMENT OF LABOR,   )
                                                        )
                        Plaintiff,               )
                                                        )
            v.                                       )   Case No. 2:18-cv-226 (Lead)
                                                        )   Case No. 2:19-cv-475
MEDICAL STAFFING OF AMERICA, LLC,    )
 d/b/a STEADFAST MEDICAL              )
STAFFING, and LISA ANN PITTS,        )
                                                        )
                        Defendants.             )
_____)

### AMENDED FINAL JUDGMENT

Upon consideration of the Plaintiff's Motion for Entry of an Updated Order and Final

Judgment in this matter, it is hereby **ORDERED** that:

A total judgment of **$9,346,663.23** in back wages and liquidated damages, with interest,

be and is entered, jointly and severally, against Defendants Medical Staffing of America, LLC d/

b/a/ Steadfast Medical Staffing ("Steadfast") and Lisa Ann Pitts, in favor of the PLAINTIFF and

against the DEFENDANTS under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207.

It is further **ORDERED** that Defendants Steadfast and Lisa Ann Pitts, its officers, agents,

employees, and attorneys, and other persons who are in active concert or participation with them

are restrained and enjoined from future violations of the FLSA as follows:

a. Defendants shall not violate Section 7 of the Act, 29 U.S.C. § 207;

b. Defendants shall pay all non-exempt employees at least time and one-half their regular

rates for all hours worked in excess of forty per workweek under Section 7;

c. Defendant shall not violate Section 11 of the Act, 29 U.S.C. § 211, and 29 C.F.R. §

516, et seq.; and

**JA2167**

d. Defendants shall maintain and preserve records pursuant to Section 11 of the Act and

29 C.F.R. § 516, et seq.; and

e. Defendants shall preserve these records for at least three years.

The Clerk is directed to provide a copy of this Order to counsel of record.

**IT IS SO ORDERED**

Entered this 11th day of December, 2023
Norfolk, Virginia

Raymond A. Jackson
United States District Judge

**JA2168**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| JULIE A. SU, ACTING SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, <br><br> PLAINTIFF, <br><br> V. <br><br> MEDICAL STAFFING OF AMERICA, LLC, D/B/A STEADFAST MEDICAL STAFFING, <br><br> & <br><br> LISA PITTS, <br><br> DEFENDANTS. | Case No. 2:18-cv-226 <br><br> Case No. 2:19-cv-475 |

## AMENDED NOTICE OF APPEAL

Pursuant to Fed. R. App. P. 4(a)(1), notice is hereby given that Defendants Medical Staffing of America, LLC d/b/a Steadfast Medical Staffing and Lisa Pitts (collectively "Defendants") appeal to the United States Court of Appeals for the Fourth Circuit from the Memorandum Opinion and Order entered on December 8, 2023 (Dkt. No. 412) and Amended Final Judgment entered on December 11, 2023 (Dkt. No. 413), entering judgment in favor of the United States Department of Labor, and from all earlier adverse interlocutory orders and rulings subsumed into the foregoing December 8 Order and December 11 "Amended Final Judgment".

Dated:  December 11, 2023          Respectfully submitted,

**MEDICAL STAFFING OF AMERICA, LLC,
LISA ANN PITTS**

By: */s/ Abram J. Pafford*
Abram J. Pafford (VSB # 79999)
MCGUIREWOODS LLP
888 16th Street, NW, Suite 500
Washington, DC 20006
Phone: (202) 857-1725
Fax: (202) 828-3350
apafford@mcguirewoods.com

Robert W. McFarland (VSB #24021)
V. Kathleen Dougherty (VSB # 77294)
MCGUIREWOODS LLP
World Trade Center
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Phone: (757) 640-3716
Fax: (757) 640-3966
rmcfarland@mcguirewoods.com
vkdougherty@mcguirewoods.com

*Counsel for Defendants*

**JA2170**

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2023, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ Abram J. Pafford*
Abram J. Pafford (VSB # 79999)
